UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KIM DOTCOM *et al.,* | ) | |
| | ) | The Honorable Liam O'Grady |
| *Defendants.* | ) | Criminal No. 1:12CR3 |
| | ) | |

**RESPONSE OF MPAA MEMBER STUDIOS TO EMERGENCY MOTION FOR
PROTECTIVE ORDER FILED BY NON-PARTY CARPATHIA HOSTING, INC.**

INTRODUCTION

On March 20, 2012, non-party Carpathia Hosting, Inc. filed a motion for a protective

order in this criminal proceeding asking the Court to authorize the "reprovisioning" of

Carpathia's servers containing the voluminous files collected by Defendants Megaupload and its

principals through their alleged criminal copyright infringement scheme (the "Mega Servers").

This response to that motion is filed by the following non-party members of the Motion Picture

Association of America:  Paramount Pictures Corporation, Walt Disney Studios Motion Pictures,

Twentieth Century Fox Film Corporation, Universal City Studios LLC, Sony Pictures

Entertainment Inc., and Warner Bros. Entertainment Inc. (collectively, and together with their

affiliated companies, the "MPAA members").

According to the federal superseding indictment filed on February 16, 2012 ("the

indictment"), Megaupload used the Mega Servers leased by Carpathia as part of an illegal

worldwide enterprise in which Megaupload paid "affiliates" to upload popular copyrighted

content to the servers' hard drives so that Megaupload could charge users to access and

download that content.  In this manner, Megaupload made millions of dollars selling access to

copyrighted content it did not own or have authority to use, while causing immeasurable damage

to copyright owners, including the MPAA members.  Indeed, the scale of the international

criminal enterprise was mind-boggling.  According to the indictment, Megaupload had 66.6

million users registered in its database, and the Megaupload website claimed to have an average

of 50 million daily visits when it was in operation.

The MPAA members are the largest producers and distributors of motion pictures and

television programming in the United States.  As a result, they are certain to own the copyrights

in a substantial percentage of the infringing video files stored on Carpathia's 25,000 computer

hard drives leased by Megaupload.  During the time when the Megaupload service was

operative, those servers allegedly were used to make that infringing content available for

downloading and streaming worldwide on a massive scale.   This illegal distribution irreparably

harmed the MPAA members by depriving them of their right to control when and how their

copyrighted films and TV shows are made available to the public.  There are now hundreds of

millions, if not billions, of digital copies of these works sitting on computers of Megaupload

users around the world – and likely being further distributed by them.  Megaupload's wholesale

infringement also had a huge financial impact, including both lost royalties on illegal sales and

reduced demand in legitimate channels of distribution, such as paid downloads and sale or

rental of DVDs.  The total financial loss would be impossible to calculate but could easily be in

the billions of dollars.

After the indictment in this case, on January 31, 2012, counsel for the MPAA members

informed Carpathia by letter that Carpathia had an obligation to preserve evidence in its

possession potentially relevant to possible civil claims against the operators of Megaupload

(including the defendants in this action) and certain other entities.  That evidence includes the

contents of the Mega Servers as well as any other records of communications between Carpathia and the defendants.  *See* Carpathia Mot. Exh. F.

Shortly thereafter, counsel for the MPAA members learned that Carpathia had agreed to sell the servers, with all their film and TV content still intact, to *Megaupload*, the entity accused of criminal copyright violations based upon its unauthorized distribution of the content of those servers.  Concerned that this sale might allow Megaupload and the defendants to restart their illegal enterprise, presumably in an overseas location where the reach of U.S. criminal and civil remedies is limited, counsel for the MPAA members again contacted counsel for Carpathia.

Counsel for Carpathia responded by providing written assurances that no such transfer was imminent and Carpathia agreed to provide the MPAA members sufficient notice to seek judicial relief before transferring the servers to Megaupload.  Exh. A.  Later, Carpathia's counsel also agreed to provide the same notice before transferring the servers to any third party except the U.S government.  Exh. B.  In response, the MPAA members indicated they did not object to the powering down and storage of the Mega Servers, with the content intact, in a suitable location.  *Id*.

The next development was the filing of Carpathia's March 20 motion for a protective order seeking authority to reuse the Mega Servers for other customers of its hosting business. Nine days later, a single Megaupload user, Kyle Goodwin, filed a response to that motion asking the Court to create a receivership mechanism that would allow all users who posted material on Megaupload the opportunity to retrieve it.

ARGUMENT

The MPAA members' primary concern is preventing further infringing distribution of their copyrighted works.  To protect that interest, the MPAA members ask that this Court not authorize the transfer of ownership or possession of the Mega Servers to Megaupload, to

3

anyone associated with the alleged criminal enterprise, or indeed to any other third party, so long as those servers contain the MPAA members' film and TV content.

First, as a practical matter, a sale or transfer of the servers to Megaupload (or any of the defendants) would raise a significant risk that Megaupload will simply ship the servers, hard drives, or other equipment – and all of the infringing content they contain – to a foreign jurisdiction and re-launch the infringing Megaupload service, which would result in untold further infringements of the MPAA members' copyrighted works.  If so, the renewed criminal enterprise might be beyond any effective legal remedy.  The defendants currently charged in this criminal case are not in custody in the United States, but are living overseas.  They have demonstrated a propensity to violate copyright laws.  Based on their past conduct and their current locale, the possibility of a Megaupload re-launch resulting from their purchase of the Carpathia servers is real, and the resulting damage to the MPAA members would be significant.

Second, as a legal matter, Carpathia's transfer of ownership or possession of the servers to anyone would constitute an actionable violation of the copyright owners' exclusive right of distribution of their works.  *See* 17 U.S.C. § 106(3).  Section 106(3) grants copyright owners the exclusive right to "distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106(3).  The Carpathia hard drives at issue in this case certainly contain "copies" of Plaintiffs' copyrighted works, as that term is defined in the Copyright Act: "'Copies' are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102.  The sale or transfer of those copies from Carpathia to Megaupload or any other third party would constitute an unauthorized "distribut[ion] . . . to the

public" under the Copyright Act. *See Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 299 (3d Cir. 1991) (holding that that the distribution right is infringed "when illicit copies of a copyrighted work are only distributed to one person"); *Jalbert v. Grautski*, 554 F. Supp. 2d 57, 68-69 (D. Mass. 2008) (quoting *Ford* in holding that transfer of an overrun print to an employee of a printing shop infringed the distribution right); *see also William A. Graham Co. v. Haughey*, 430 F. Supp. 2d 458, 470 (E.D. Pa. 2006).[1]  In addition to this direct infringement, Carpathia could also be a contributory infringer if, after the transfer, Megaupload then resumed its infringing practices.  This Court should not order or allow actions that constitute infringement.

Carpathia suggests that perhaps the parties could take possession of the servers, with appropriate compensation to Carpathia.  Emergency Motion (Dkt # 38) at 3.  The MPAA members would not object to the servers being transferred to the United States government, if that is what the United States seeks.  However, the MPAA members are concerned that the servers not be transferred to the custody and control of Megaupload's counsel.  To our knowledge, no counsel have entered general appearances for the defendants in this proceeding, thus subjecting themselves to the control and supervision of this Court.  Moreover, it is our understanding that Megaupload has already had full access to the servers for the purposes of inspecting, analyzing and preserving whatever evidence they thought necessary to mount a potential defense.  In these circumstances, it seems likely that the only reason Megaupload and its co-defendants sought to purchase the 25,000 Carpathia servers (and incur the expense of

---

[1] There need be only one relevant sale or transaction to infringe the distribution right. *E.g.*, *Little Toy Co. v. Fred Silber Co.*, Case No. 97-3177, 1998 U.S. App. LEXIS 14866 (6th Cir. June 29, 1998) (finding direct infringement where defendant shipped infringing good from Canada to distributor in United States that, in turn, distributed to public).

buying, transporting and housing them) was simply to be in position to re-launch the Megaupload service in the near future.

Finally, the MPAA members' principal concern is assuring that adequate steps are taken prevent the MPAA members' content on the Mega Servers in Carpathia's possession from falling back into the hands of Megaupload or otherwise entering the stream of commerce. Accordingly, we take no position on whether the more appropriate disposition now is to allow the servers to be reprovisioned or to require them to be preserved in their current state.

Regarding Kyle Goodwin's request for creation of a receivership mechanism to allow retrieval of material previously uploaded to the Mega Servers by users, although the Megaupload terms of use clearly disclaimed any guarantee of continued access to uploaded materials, there may unfortunately be users whose legitimate files are now caught up in the illegal activity of Megaupload. We are sympathetic to those users, although we do not know how many there actually are, as the Goodwin brief only identifies one. However, if the Court is willing to consider creating a receivership mechanism to allow retrieval of files, it is essential that the mechanism include a procedure that ensures that any materials the users download are not files that have been illegally uploaded to their accounts. Goodwin's suggested procedure under which users could access data simply by providing a "username and password," Goodwin Br. at 16, would be grossly insufficient, given the fact (as alleged in the indictment) that huge amounts of infringing material were uploaded during the operation of the Megaupload criminal enterprise.

Dated:  April 2, 2012           By:     /s/ Julie M. Carpenter
                                             Julie M. Carpenter

JENNER & BLOCK LLP
Julie Carpenter (Virginia Bar No. 30421)
Paul M. Smith (*Pro Hac Vice to be Filed*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Attorneys for Motion Picture Association of America*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2012 the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users, as well as by first-class U.S. mail, postage pre-paid, upon the following:


Jay V. Prabhu
Chief, Cybercrime Unit
Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

Ed McNicholas
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005
*Counsel to Megaupload Limited*

Ira Rothken
Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
*Counsel to Megaupload Limited*

Cindy A. Cohn
Legal Director and General Counsel
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
*Counsel to Electronic Frontier Foundation*

Christopher L. Harlow
SNR Denton US LLP
1301 K St. NW, Suite 600, East Tower
Washington, DC 20005
(202) 408-6400 Telephone
(202) 408-6399 Facsimile
charlow@snrdenton.com
*Counsel to Carpathia Hosting, Inc.*

Marc J. Zwillinger
Robert F. Huff Jr.
ZwillGen PLLC
1705 N Street, NW
Washington, DC 20036
(202) 296-3585
*Counsel to Carpathia Hosting, Inc.*


Dated: April 2, 2012            By: /s/ Julie M. Carpenter
                                    Julie M. Carpenter

                                    JENNER & BLOCK LLP
                                    Julie Carpenter (Virginia Bar No. 30421)
                                    Paul M. Smith (*Pro Hac Vice to be Filed*)
                                    1099 New York Ave., N.W.
                                    Suite 900
                                    Washington, DC 20001
                                    Phone: 202-639-6000
                                    Fax: 202-639-6066

                                    *Attorneys for Motion Picture Association of America*