IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:12CR3 |
| KIM DOTCOM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF THE UNITED STATES TO MOTION OF
QUINN EMANUEL URQUHART & SULLIVAN LLP AND THE ROTHKEN FIRM
FOR LEAVE TO ENTER LIMITED APPEARANCE ON BEHALF OF
DEFENDANTS MEGAUPLOAD LIMITED AND KIM DOTCOM**

The United States opposes the motion of Quinn Emanuel Urquhart & Sullivan LLP

("Quinn Emanuel") and The Rothken Firm (collectively, "Defense Counsel") for leave to enter a

limited appearance in the above-captioned matter. The motion should be denied for four reasons.

*First*, the proposed limited appearance is inconsistent with Eastern District of Virginia Local

Criminal Rule 57.4(d)(3). *Second*, the motion is premature because the defendants have not

made an initial appearance before this Court, as required by the Federal Rules of Criminal

Procedure and the fugitive disentitlement doctrine. *Third*, Quinn Emanuel appears to have

potential conflicts of interest in its proposed representation of defendants Megaupload Limited

and Kim Dotcom; that is, possible client conflicts which the United States is required to bring to

the Court's attention. *Fourth*, the ultimate relief sought by Defense Counsel – the release of

restrained and forfeitable funds for their own anticipated legal fees (which has the potential to

reduce restitution that some of Quinn Emanuel's clients may be entitled to receive) – is

foreclosed both by Supreme Court precedent and the fact that a New Zealand court has already

released hundreds of thousands of dollars in restrained funds to the defendants. For these

reasons, the United States respectfully requests that the Court deny Defense Counsel's Motion at this time. The United States further requests that this Court decide the Motion on the papers and without an oral hearing, pursuant to Local Criminal Rule 47(J).

## I.   Background

On January 19, 2012, four defendants in the above-captioned matter were arrested in New Zealand pursuant to a request for mutual assistance from the government of the United States arising from a sealed Indictment. Shortly thereafter, a fifth defendant was arrested in the Netherlands. On February 16, 2012, a Superseding Indictment was returned against the same defendants. No arraignment date has been set, as all five defendants who have been arrested in foreign countries are contesting the jurisdiction of this Court in extradition proceedings.

Simultaneous with the January 19, 2012 arrests, the United States and law enforcement counterparts across the globe executed various search warrants related to the case, including a search warrant at warehouses in the Eastern District of Virginia leased by Carpathia Hosting, Inc. ("Carpathia"), which housed computer servers leased by Carpathia to the defendants. Within a span of approximately two weeks, three separate United States law firms (in addition to The Rothken Firm) – first Hogan Lovells, then Squire Sanders, and then Sidley Austin LLP – attempted to initiate negotiations with the United States government on behalf of defendants Megaupload Limited and/or Kim Dotcom, despite none of these law firms having entered an appearance before this Court. Given the government's then-current understanding that Carpathia would be shortly deleting data from and reprovisioning the servers previously leased by defendants, the United States agreed to discuss issues regarding the servers with various defense counsel purportedly representing Megaupload Limited and/or Kim Dotcom.

At the same time that counsel from Sidley Austin LLP was seeking to negotiate with the United States, other foreign counsel for defendants Megaupload Limited and/or Kim Dotcom in overseas jurisdictions – who *had* entered appearances in those jurisdictions – sought various forms of relief in those jurisdictions.  The government is unaware of whether counsel from Sidley Austin LLP was privy to these activities, but no notice was provided to the United States government by defense counsel in the United States.  The foreign activities included motions filed:  in Hong Kong seeking the release of funds; in New Zealand requesting the release of funds and the return of seized property; and in Canada seeking the return of seized property.  Funds in Hong Kong[1] and New Zealand[2] have been released, and litigation relating to the return of seized property, including wholesale challenges to the seizure warrants issued by this Court, is ongoing.

On March 30, 2012, notwithstanding the successful petitions for release of funds in New Zealand and Hong Kong by overseas counsel, Sidley Austin LLP and The Rothken Firm filed a motion for leave to enter a limited appearance in this Court, for the purpose of seeking to release

---

[1] On February 16, 2012, a Hong Kong court ordered the release of HKD $739,564.60 (roughly $95,000 in U.S. dollars) to pay for past salaries and reimbursements owed to defendant Megaupload Limited employees.  The court denied Megaupload Limited's request for legal fees and future salaries.  The court's decision was based, in part, on Megaupload Limited's insufficient disclosure of finances and the courts' desire to leave resolution of such matters to this Court.  The United States has received permission from Hong Kong authorities to attach a copy of the ruling as Exhibit A.

[2] On March 21, 2012, a New Zealand court ordered the release of NZD $301,758.70 (more than $240,000 in U.S. dollars) to be released to defendant Kim Dotcom in monthly installments of NZD $40,000 (roughly $32,000 per month in U.S. dollars) until the funds are depleted, plus a monthly stipend of NZD $20,000 for Dotcom's living expenses (roughly $16,000 per month in U.S. dollars), to be paid indefinitely.  Other shareholders of Megaupload Limited also received access to or benefit from funds released by the Court.  The United States has received permission from New Zealand authorities to attach a copy of the order as Exhibit B.

restrained funds for payment of anticipated legal fees.[3]  A hearing was noticed for April 13,

2012.  On April 5, 2012, Sidley Austin LLP withdrew its motion, which was then immediately

refiled by yet another United States law firm, Quinn Emanuel, which now claims to have stepped

into the shoes of Sidley Austin LLP.[4]

## II.   Argument

### A.   The Eastern District of Virginia's Local Rules Do Not Contemplate Allowing Potential Counsel to Pick and Choose the Issues for Which They Appear in a Criminal Matter

Eastern District of Virginia Local Criminal Rule 57.4(d)(3) does not contemplate or

authorize limited appearances.  Rather, Rule 57.4(d)(3) provides that:

> [N]o pleading or notice required to be signed by counsel shall be filed unless signed by counsel who shall have been admitted to practice in this Court . . . and who shall have such authority that the Court can deal with *the attorney alone* in *all matters connected with the case*. Such appearance shall not be withdrawn without leave of the Court.

(emphases added).  A limited appearance, which leaves the Court unable to deal with the

attorney alone on any other matter connected with the case and which eliminates counsel's need

to seek leave to withdraw an appearance, runs directly contrary to the plain language of the rule.

The importance of such a rule is highlighted by the difficulties the United States has

faced in attempting to negotiate with various law firms, both domestic and abroad, who have

---

[3] *See* Memorandum in Support of Motion of Sidley Austin LLP and The Rothken Firm for Leave to Enter Limited Appearance on Behalf of Megaupload Limited and Kim Dotcom, at 4 (March 30, 2012) (Dkt. 49) (hereinafter "Sidley Motion").

[4] *See* Memorandum in Support of Motion of Quinn Emanuel Urquhart & Sullivan LLP and The Rothken Firm for Leave to Enter Limited Appearance on Behalf of Megaupload Limited and Kim Dotcom, at 3 (Apr. 5, 2012) (Dkt. 60) (hereinafter "Quinn Emanuel Motion").  Because the Quinn Emanuel Motion was a new motion, the 11-day response clock was reset as of April 5, 2012, which means the government's response is due April 16, 2012.  *See* E.D.Va. Local Cr. R. 47(F)(1).  However, because the Court appears to have retained a hearing date of April 13, 2012, the United States is filing its opposition today.

claimed to represent the defendants.  As explained above, the government was approached by three different United States law firms in the span of two weeks – all of which claimed to represent Megaupload Limited and/or Kim Dotcom.  At the same time that counsel from Sidley Austin LLP (the third law firm to approach the United States) was seeking to negotiate with the United States over potential consent to release seized funds, counsel for defendants Megaupload Limited and/or Kim Dotcom in overseas jurisdictions were seeking the release of funds and the return of property seized in those jurisdictions.  Again, the government is unaware of whether domestic counsel were privy to these activities, but no notice was provided to the United States government by counsel for Megaupload Limited or Kim Dotcom.[5]  Then, a week before the Sidley Motion was scheduled to be argued, Sidley Austin LLP withdrew its motion and was replaced by a fourth United States law firm, Quinn Emanuel.[6]

The proposed limited appearance will do nothing to alleviate these concerns; to the contrary, it will allow defendants to continue a multi-pronged attack on this Court's orders and authority, as well as strain the government's resources.  If Defense Counsel "alone" cannot speak on behalf of Megaupload Limited and Kim Dotcom "in all matters connected with the case," Local Cr. R. 57.4(d)(3), then there will be no obligation for the left hand (in the United States) to know or control what the right (in overseas jurisdictions) is doing.  In other words, there will be

---

[5] The Quinn Emanuel Motion (at 5), however, discusses and defends the foreign petitions in Hong Kong and New Zealand.

[6] The Quinn Emanuel Motion and the Sidley Motion are nearly identical.  For example, on page 4 of the Quinn Emanuel Motion and page 5 of the Sidley Motion, counsel writes:  "The government claims it is confused about who represents Megaupload and Mr. Dotcom in the United States.  There is no confusion here."  Where the Sidley Motion went on to claim that "Megaupload and Mr. Dotcom have retained Sidley Austin and the Rothken Firm," Sidley Motion at 4, the Quinn Emanuel Motion now states, "Megaupload and Mr. Dotcom have retained Quinn Emanuel and the Rothken Firm," Quinn Emanuel Motion at 5.

nothing to stop overseas counsel for the defendants to continue to request further dissipation of restrained funds abroad—even as Defense Counsel seeks to do the same in the United States.  If the Court were to grant the unprecedented motion of Defense Counsel, the defendants would remain free to act in defiance of this Court's jurisdiction with the Court having no practical ability to exert judicial authority over them.

Moreover, an unfavorable ruling on a *Farmer* motion could simply embolden overseas counsel and even hasten the dissipation of seized assets currently located abroad.  Should the Court grant leave for Defense Counsel to enter a limited appearance, then deny Defense Counsel's request to appropriate seized funds (causing Defense Counsel to withdraw, *see* Quinn Emanuel Motion at 3), overseas counsel for Megaupload Limited and Kim Dotcom may very well argue abroad that this Court's denial makes additional, more generous awards from overseas seized assets imperative (while defendants continue to remain outside the reach of this Court).  Absent a general appearance by Defense Counsel, there is simply no reasonable alternative that permits the Court to deal with counsel in all matters connected with the case.[7]

### B.    Defendants May Not Seek Pre-Appearance Relief From This Court

At the same time that Kim Dotcom is contesting this Court's jurisdiction through his extradition proceeding, he (and one of his corporate entities, Megaupload Limited) has authorized Defense Counsel in the United States to petition this Court for relief *in absentia*.  The

---

[7] In *Boyless v. United States*, 101 F.3d 702 (6th Cir. 1996), relied on by Defense Counsel, *see* Quinn Emanuel Motion at 3-4, the Sixth Circuit's affirmance was based on withdrawing counsel's securing of appointed counsel to take her place.  Thus, in stark contrast to Defense Counsel's proposal here, the defendant in *Boyless* was never left without an attorney who could deal with the court on all matters relating to the case.  *Harris v. Marsh*, 123 F.R.D. 204 (E.D.N.C. 1988), is inapposite, as counsel's appearance in that case was "limited" informally to specific issues, with co-counsel handling other issues, and did not involve a withdrawal.  *See id.* at 219-22.

Court should reject this attempt, which violates fundamental principles of American criminal procedure requiring a defendant's appearance. *See Lewis v. United States*, 146 U.S. 370, 372 (1892) ("A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner."). Federal Rule of Criminal Procedure 43(a) requires a defendant to be present at "the initial appearance, the initial arraignment, and the plea"[8] as well as "every trial stage" and "sentencing." Although Rule 43(b)(3) permits a defendant to be absent from a conference or hearing on a pure "question of law," the Federal Rules do not contemplate or explicitly authorize such a hearing or conference *before* the defendant has made an initial appearance. *See*, *e.g.*, Fed. R. Cr. P. 12(c) (authorizing court to set pretrial motion deadline and/or schedule motion hearing "at the arraignment or as soon afterward as practicable"); Rule 12, Advisory Committee Notes to 1974 Amendments (noting that subdivision (c) is designed to encourage the disposition of pre-trial motions "in a single hearing rather than in a series of hearings"). Indeed, allowing Quinn Emanuel to litigate the release of seized assets prematurely could result in a procedurally awkward (and improper) situation wherein Kim Dotcom successfully resists this Court's jurisdiction by prevailing in his extradition challenge in New Zealand, and this Court loses the ability to adjudicate the underlying criminal matter for which it has already entertained a motion for release of funds.

Defendant Kim Dotcom's attempt to seek pre-appearance relief likely also runs afoul of the fugitive disentitlement doctrine, which "provides that the fugitive from justice may not seek

---

[8] Rule 43(a) notes that Rules 5 (governing initial appearance) or 10 (governing arraignment) may except a defendant's appearance. The 2002 Amendments make clear that such an exception exists only when the court permits a defendant to appear by video conferencing or accepts a defendant's waiver of appearance at arraignment. *See* Rule 43, Advisory Committee Notes to 2002 Amendments.

relief from the judicial system whose authority he or she evades." [9] *In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285-86 (S.D.N.Y. 2001).  Other circuits have already held that a defendant who resists extradition to the United States to face criminal charges is a "fugitive" for purposes of the doctrine.  *See, e.g., Maydak v. U.S. Dep't of Education*, 150 Fed. App'x 136, 137-38 (3rd Cir. 2005) ("[P]rior to [Maydak's] return, he contested extradition. Thus, he was indeed a fugitive"; affirming district court dismissal of FOIA requests filed from Canada); *In re Assets of Martin*, 1 F.3d 1351, 1356 (3d Cir. 1993) (concluding, where criminal defendant had been indicted and defense counsel could "present no facts from which [the court] could conclude that he is unable to return [from Russia] to answer the indictment," that the court "can regard him as a fugitive"); *United States v. Catino*, 735 F.2d 718, 779 (2d Cir. 1984) (where criminal defendant "actively resisted the extradition request throughout the proceedings" defendant engaged in "constructive flight from justice").[10]  A ruling to the contrary would create perverse incentives wherein a defendant could resist extradition abroad, hire counsel in the United States to litigate

---

[9] The fugitive disentitlement doctrine is codified at 28 U.S.C. § 2466 and provides, in full:  "(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person -- (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution -- (A) purposely leaves the jurisdiction of the United States; (B) declines to enter or reenter the United States to submit to its jurisdiction; or (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction. (b) Subsection (a) may be applied to a claim filed by a corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies."

[10] *See also, e.g., United States v. Gayatrinath*, No. 02 cr 673, 2011 WL 873154, *2 (S.D.N.Y. Mar. 11, 2011) (declining to consider motion to dismiss indictment by defendant resisting extradition in India); *United States v. Nabepanha*, 200 F.R.D. 480, 482-83 (S.D. Fla. 2001) (denying criminal defendant's motion for discovery from government where defendant's failure to voluntarily enter United States was based, at least in part, on fear of arrest).

his case in his absence (and at the expense of his victims), and remain inaccessible if proceedings in the United States were not favorable.

### C.   The Court Cannot Permit Counsel to Enter any Appearance Until All Potential Conflict Situations Are Resolved

"Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981).  The Supreme Court of the United States has repeatedly held that conflicted counsel cannot provide constitutionally sufficient representation to a criminal defendant.  As such, where criminal defense counsel has even a potential conflict of interest, a district court may refuse to allow a criminal defendant to waive the potential conflict in order to retain that counsel.  *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 162-63 (1988).  Consistent with this principle, the Fourth Circuit has instructed that "when a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel."  *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991).[11]  The government believes its duty to bring conflict situations to the Court's attention has been implicated by the Quinn Emanuel Motion.

According to publicly available information, a Quinn Emanuel partner appears to represent YouTube, Inc., and YouTube, LLC (collectively, "YouTube"), in an ongoing copyright

---

[11] In addition, defense attorneys "have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem."  *Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978).

dispute with Viacom International, Inc.[12]  This is critical because YouTube is a victim explicitly named in Counts Two and Eight of the Superseding Indictment and the government intends to call at least one company representative as a witness during the government's case-in-chief.

Nor is YouTube the only victim and potential witness in the government's case-in-chief that appears to be represented by Quinn Emanuel.  According to Quinn Emanuel's marketing materials, it has also represented Google, Inc. ("Google"), YouTube's parent company, in multiple matters including those involving Google's advertising service, AdSense.  *See* www.quinnemanuel.com.[13]  As alleged in the Superseding Indictment (at ¶ 73(cc)), Google AdSense terminated its business relationship with Megaupload Limited in part due to concerns over copyright infringement on websites operated by Megaupload Limited.  Thus, the government also plans to call a representative of Google as a witness in its case-in-chief.

Quinn Emanuel has also apparently represented a number of companies in copyright matters that are alleged victims of the defendants' copyright infringement.  Testimony and/or documentation from many of these victims is likely to be needed in the government's case-in-

---

[12] *See* Tom Huddleston, Jr., "Quinn Emanuel Adds High-Profile Litigator Schapiro," *American Lawyer*, October 6, 2011 ("Andrew Schapiro, most recently a litigation partner at Mayer Brown, joined Quinn Emanuel as a partner and will split his time between New York and Chicago. Schapiro, 48, made headlines last year when he led YouTube and its parent company, Google, to a summary judgment win in June in a $1 billion copyright infringement suit brought by Viacom in federal district court in New York.").  On April 5, 2012, the Second Circuit reversed the grant of summary judgment to defendant YouTube on civil copyright infringement claims and remanded for trial – presumably with Mr. Schapiro (and Quinn Emanuel) as trial counsel.  *See Viacom Int'l, Inc. v. YouTube, Inc.*, No. 10-3270-cv, slip op. at 2 (2d Cir. Apr. 5, 2012); *id*. at 3 (listing Andrew Schapiro as counsel for YouTube).

[13] In addition, on April 9, 2012, in another case in which Quinn Emanuel represents Google on intellectual property matters, the Fourth Circuit vacated in part Judge Gerald Bruce Lee's grant of summary judgment to Google and remanded for further proceedings.  *See Rosetta Stone, Ltd. v. Google, Inc.*, No. 10-2007 (Apr. 9, 2012), *available at*: http://pacer.ca4.uscourts. gov/dailyopinions/opinion.pdf/102007.P.pdf

chief, since they can establish the copyrights involved in the alleged reproduction and distribution by the defendants and their systems.

(1)  The Walt Disney Company

Many infringing copies of the 2003 Walt Disney Company film "Bringing Down the House" were allegedly reproduced and distributed on Megaupload.com using computer servers controlled directly by the defendants.[14]  According to its website, Quinn Emanuel represented the Walt Disney Company in a matter directly involving the infringement of this particular film: "Flaherty v. Filardi [, 2009 WL 749570] (S.D.N.Y. 2009). We represented The Walt Disney Company, Executive Producer Dana Owens (p/k/a "Queen Latifah"), screenwriter Jason Filardi and various independent producers of the hit comedy film 'Bringing Down the House' (starring Steve Martin) in a long-running copyright infringement lawsuit filed by an aspiring screenwriter."  *See* www.quinnemanuel.com/media/101910/copyright3.12.pdf.  Additional Walt Disney Company motion picture properties were allegedly reproduced and distributed by Megaupload.com and/or Megavideo.com, including the Pirates of the Caribbean: At World's End (2007); The Lion King (1994); and Cars 2 (2011).[15]

(2)  Fox Entertainment Group

Infringing copies of the 2004 Twentieth Century Fox film "Dodgeball: A True Underdog Story" were also allegedly reproduced and distributed on Megaupload.com using computer

---

[14] For example, one such copy was entitled "Bringing Down the House (2003) [www.Filmy24h.org]PLDVDRip.XviD.avi".

[15] Titles of these motion picture copies included, for example, "FLM_Pirates.of.the. Caribbean.-.At.World.s.End.2007.avi"; "Le.Roi.Lion.DVDRiP-www.moviz.net.avi"; and "Cars2.TS.Lat_wWw.FanaticoWarez.org_avi".

servers controlled by the defendants.[16] According to its website, Quinn Emanuel, in *Price v. Fox Entertainment Group*, No. 05-civ-5259 (SAS), 2007 WL 1259101 (S.D.N.Y. Apr. 27, 2007), represented "Twentieth Century Fox and other defendants" in "a case alleging infringement claims arising out of the Ben Stiller movie 'Dodgeball: A True Underdog Story.'" *See* www.quinnemanuel.com/media/101910/copyright3.12.pdf.

In *Ninox Television v. Fox Entertainment Group*, No. 04-civ-7891, 2006 WL 1643300 (S.D.N.Y. June 13, 2006), Quinn Emanuel "represented Fox Entertainment Group and FreemantleMedia against a New Zealand-based production company over the format to 'The Complex: Malibu,' a home renovation reality competition series" in a copyright matter. *See* www.quinnemanuel.com/media/101910/copyright3.12.pdf. There, Fox, through Quinn Emanuel, unsuccessfully sought attorney's fees. *See* 2006 WL 1643300, at *2.

Additional Fox Entertainment motion picture and television properties were allegedly reproduced and distributed by Megaupload.com and/or Megavideo.com, including Avatar (2009); X-Men: First Class (2011); and entire seasons of the television series' Modern Family, Glee, and Family Guy.[17]

(3)  Time Warner Entertainment Company; Warner Brothers Entertainment; and Home Box Office ("HBO")

In describing *Funky Films, Inc. v. Time Warner Entertainment Co.*, 462 F.3d 1072 (9th Cir. 2006) in its marketing materials, Quinn Emanuel writes "[o]n behalf of Time Warner

---

[16] For example, one such copy was entitled "Dodgeball.A True Underdog Story.2004.HDRip x264.utkuemre Hub-Sub By xStyle19 For Horadot.mkv".

[17] Titles of these copies included, for example, "Avatar.3D-BluRay.1080p.Dual.Ãudio.-.www. globofilmesgratis.com.mkv.013"; "X.Men.First.Class.TRUEFRENCH.DVDRip. REPACK.1CD.XviD-HYPER.avi"; "Modern.Family.S01E04.The.Incident.hdtv.xvid-2hd.avi"; "Glee.S03E08.FASTSUB.VOSTFR.HDTV.XviD-MiND.avi"; and "Family.Guy.S10E11.HDTV. XviD-LOL.avi".

Entertainment and HBO, we obtained a summary judgment dismissal of copyright and trademark infringement claims valued in excess of $50 million challenging the originality of the popular hit series 'Six Feet Under.'  Our win was later affirmed by the Ninth Circuit in an oft-cited ruling." *See* www.quinnemanuel.com/media/101910/copyright3.12.pdf.  All sixty-three episodes of the HBO series "Six Feet Under" were allegedly reproduced and distributed on Megaupload.com and/or Megavideo.com using computer servers controlled by the defendants.

In *Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620 (9th Cir. 2010), Quinn Emanuel successfully defended Warner Brothers in a copyright infringement claim involving the motion picture "The Last Samurai."  On servers controlled by the defendants, that motion picture was allegedly reproduced and distributed repeatedly.[18]

Additional Time Warner Entertainment Company motion picture and television properties were allegedly reproduced and distributed by Megaupload.com and/or Megavideo.com, including The Hangover Part II (2011); Harry Potter and the Deathly Hallows – Part 2 (2011); Lord of the Rings: The Return of the King (2003); Sherlock Holmes (2009); and entire seasons of the series' Big Bang Theory, Boardwalk Empire, Entourage, and True Blood.[19]

---

[18] One such title of that motion picture was "Le.Dernier.Samourai.MULTI.1080p. Bluray.x264.AC3.wWw.Mega-Exclue.Com.mkv".

[19] Titles of these copies included, for example, "The.Hangover.Part.II.2011.PROPER. TRUEFRENCH.BRRiP.XviD-AUTOPSiE.avi"; "Harry.Potter.And.The.Deathly.Hallows. Part.2.DVDRip.XviD-FUSION.avi"; "TLOTR.The.Return.of.the.King.2003.Extended-FLAWL3SS.MegaRelease.Net.avi"; "Sherlock.Holmes.FRENCH.BDRiP. REPACK.1CD. XViD.AC3-NIKKA.avi"; "the.big.bang.theory.s03e17.hdtv.xvid-fqm.avi"; "Boardwalk.Empire. S01E08.Hold.Me.in.Paradise.HDTV.XviD-FQM.avi"; "entourage.808.hdtv-lol.www. elosohormiguero.es.avi"; and "true.blood.s04e10.hdtv.xvid-fqm.filewarez.tv.avi".

(4)     Paramount Pictures Corporation

According to publicly available marketing materials, Quinn Emanuel has also represented Paramount Pictures Corporation in copyright litigation, *see* www.quinnemanuel.com/media/ 101910/copyright3.12.pdf, yet another alleged copyright infringement victim in the case before the Court.  A number of Paramount Pictures Corporation's motion pictures were allegedly reproduced and distributed by Megaupload.com and/or Megavideo.com, including Iron Man 2 (2010); Madagascar (2005); Madagascar Escape 2 Africa (2008); and Titanic (1997).[20]

(5)     Danjaq LLC

In *Danjaq LLC v. Sony Pictures Entertainment* (C.D. Cal. 1998), a Quinn Emanuel partner "represented the producers and distributors of the James Bond film franchise in a copyright and trademark dispute concerning the right to create James Bond films.  He obtained a preliminary injunction (affirmed by the 9th Circuit) and later won a defense judgment on a copyright infringement." *Id.*  Numerous copies of motion pictures from the James Bond series have allegedly been reproduced and distributed by Megaupload.com and/or Megavideo.com, including an infringing copy of Casino Royale (2006) entitled "007 - Casino Royal.avi."

(6)     Brøderbund Software, Inc.

In *Brøderbund Software, Inc. v. Unison World, Inc.*, 648 F. Supp. 1127 (N.D. Cal. 1986), a Quinn Emanuel partner represented Brøderbund in litigation involving the copyright of its "Print Shop" software product.  *Id.*  Numerous copies of various versions of Print Shop and other company products (such as Carmen Sandiego, Instant Immersion, Mavis Bacon Teaches

---

[20] Titles of these copies included, for example, "iron man 2 By PressiZ for Wawa-mania.avi"; "Madagascar DVD-Rip [WWW.RIVASANIMES.COM].rar"; "Madagascar. Escape.2.Africa.2008.720p.BluRay.X.mp4"; and "Titanic (1997) ... MegavideoGratis.es.avi".

Typing, Oregon Trial, and Reading Rabbit) have allegedly been reproduced and distributed by Megaupload.com and/or Megavideo.com.

    (7)    <u>Intuit</u>

In *Trio v. Intuit* (C.D. Cal. 1997), a Quinn Emanuel partner reportedly "represented Intuit, successfully defending a claim that Intuit had incorporated the plaintiff's code into its award-winning Quicken software products." *Id.* Quicken products have allegedly been infringed by Megaupload.com and/or Megavideo.com.

    (8)    <u>Bulletproof Software</u>

Bulletproof Software, another reported copyright litigation client of Quinn Emanuel, *see id.*, has at least two products that were allegedly infringed by Megaupload.com and/or Megavideo.com: "Bulletproof FTP Server v2.4.0 31.exe" and "Label Magic v.2.1".

In sum, there are a number of potential conflicts of interests raised by publicly available information regarding current and previous representations by Quinn Emanuel.

The possibility of a conflict of interest raised by Quinn Emanuel's proposed representation of Megaupload Limited and Kim Dotcom is not limited to mere subject matter. The assets seized by the government from defendants may eventually be restored to victims – including possibly the current and former Quinn Emanuel clients listed above – as restitution. *See* 21 U.S.C. § 853(i)(1); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629 (1989) ("The Government's interest in winning undiminished forfeiture thus includes the objective of returning property, in full, to those wrongfully deprived or defrauded of it."). But as Quinn Emanuel admits, it seeks this Court's permission to release restrained funds (that might otherwise go to its current or former clients) as payment for legal services. *See* Quinn

Emanuel Motion at 2 ("A full and fair trial of the issues presented here will require thousands of hours of preparation and an enormous electronic discovery effort to preserve and analyze data."). It is unclear how Quinn Emanuel intends to zealously represent defendants Megaupload Limited and Kim Dotcom while also protecting confidential attorney-client information gained in the course of representing other clients, as required by Rule 1.7(a) of the Virginia Rules of Professional Conduct, particularly where those clients' interests are directly opposed to those of the defendants.[21]

"When the risk of a conflict of interest is brought to the attention of the trial court," as the government is doing here, "the court has the responsibility to investigate further, to advise the defendant personally, and to receive a knowing waiver if that is the expressed wish of the defendant." *Tatum*, 943 F.2d at 379. The immediate resolution of any potential conflicts is essential in light of Supreme Court precedent holding that where a conflict adversely affects counsel's performance, the proper remedy on appeal is to void any conviction. *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 173-4 (2002); *Holloway*, 435 U.S. at 489-90. If the Court is not satisfied that Defense Counsel's representation would be conflict-free, then the Court has

---

[21] This rule, which is incorporated by Local Criminal Rule 57.4(I) and Section II of Part Six of the Rules of the Virginia Supreme Court, provides that a lawyer shall not represent a client, such as defendants here, if "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Subsection (b) of the rule provides a narrow exception: "a lawyer may represent a client if each affected client consents after consultation," and, among other requirements, "the consent from the client is memorialized in writing." Somewhat unique to Virginia, these ethical standards extend to other lawyers practicing at the same law firm, pursuant to Rule 1.10(a), and cannot be cured by setting up an internal screen (commonly known as a "Chinese wall"), without full disclosure and written consent: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.6, 1.7, 1.9, or 2.10(e)."

discretion to refuse a waiver by the defendant,[22] "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163 (recognizing that "the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them").  Here, it would be inappropriate to permit Defense Counsel to enter even a limited appearance without first fully investigating and resolving these potential conflicts.

### D.    Any *Farmer* Motion Would be Meritless

Finally, any *Farmer* motion has little likelihood of success.  Even assuming that some restrained assets were "wrongly seized" (they were not), the initial inquiry in the *Farmer* analysis is whether, due to the government's restraint of property, the criminal defendant does not have funds to hire counsel for his defense.  *See* 274 F.3d at 804.  "If a defendant does not make such a threshold showing of need to use wrongly seized assets to pay his attorneys, 'then the private interest of the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing.'"  *Id.* at 804.  "In sum, a defendant must 'show a bona fide need to utilize [seized] assets . . . to conduct his defense' in order to be entitled to a hearing."  *Id.* (internal brackets and ellipses in original).

Here, it is undisputed that a New Zealand court, despite objections from the United States, has ordered that defendant Kim Dotcom receive NZD $301,758.70 (more than $240,000

---

[22] Here, of course, defendants could not even *request* a waiver until they make their initial appearance, are "personally" advised of their constitutional rights by this Court as required by *Tatum*, 943 F.2d at 379, and are informed of the facts surrounding the potential or actual conflicts.  For this additional reason, Defense Counsel's motion for leave to enter a limited appearance is, at best, premature.

in U.S. dollars), to be released in monthly installments of NZD $40,000 (roughly $32,000 per month in U.S. dollars), until the funds are depleted, plus a monthly stipend of NZD $20,000 for living expenses (roughly $16,000 per month in U.S. dollars), to be paid indefinitely.  These funds are being paid from assets that have been restrained in New Zealand, pursuant to restraining orders issued by this Court at the request of the United States.  Though Defense Counsel characterizes this release as "limited," *see* Quinn Emanuel Motion at 5, it will be a high hurdle to prove that an individual with a monthly income of $48,000 USD for at least the next 7 ½ months), and a monthly income of at least $16,000 USD thereafter, is prevented from retaining competent defense counsel – even if such funds prove insufficient to pay Quinn Emanuel's billing rates.  *See Caplin & Drysdale*, 491 U.S. at 624 ("[A] defendant may not insist on representation by an attorney he cannot afford.") (quoting *Wheat*, 486 U.S. at 159).

In addition, the procedural posture of *Farmer* is different from the present case in a dispositive way:  whereas Farmer sought access to assets seized pursuant to civil forfeiture statutes *pre-indictment*, *see* 274 F.3d at 801, here, all seizures were effected following a grand jury's finding of probable cause that they were subject to criminal forfeiture.  *See* Superseding Indictment at 81-90; *United States v. Monsanto*, 491 U.S. 600, 615 (1989) (holding that "assets in a defendant's possession may be restrained . . . based on a finding of probable cause to believe that the assets are forfeitable").  As such, the seized assets are simply not the defendants' to spend – and they never were.  *See Caplin & Drysdale*, 491 U.S. at 627 (explaining "long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture").  The Supreme Court in *Monsanto* held explicitly that "there is no exemption from § 853's forfeiture or pretrial restraining order

provisions for assets which a defendant wishes to use to retain an attorney." *Id.* at 614.[23]  Where, as here, the government seeks to preserve seized and restrained assets for a "restitutionary end, the Government's interest in forfeiture is virtually indistinguishable from its interest in returning to a bank the proceeds of a bank robbery; and a forfeiture-defendant's claim of right to use such assets to hire an attorney, instead of having them returned to their rightful owners, is no more persuasive than a bank robber's similar claim." *Id.* at 629-30.

---

[23] Similarly, the Supreme Court explained in *Caplin & Drysdale*:

A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain the attorney of his choice.  A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended.  The money, though in his possession, is not rightfully his; the Government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the defendant to use them to pay for his defense.  No lawyer, in any case, has the right to accept stolen property, or ransom money, in payment of a fee.  The privilege to practice law is not a license to steal.

491 U.S. at 626 (internal bracketing and ellipses omitted).

## **CONCLUSION**

For these reasons, the United States respectfully suggests that an oral hearing on this matter is unnecessary and requests that this Court deny on the papers the motion of Quinn Emanuel and The Rothken Firm for leave to enter a limited appearance.


Dated:  April 11, 2012                         Respectfully submitted,


                                               Neil H. MacBride
                                               United States Attorney


                              By:        /s/ Lindsay A. Kelly_____
                                               Lindsay A. Kelly
                                               Jay V. Prabhu
                                               Ryan K. Dickey
                                               Assistant United States Attorneys

                                               Lanny A. Breuer
                                               Assistant Attorney General
                                               U.S. Department of Justice
                                               Criminal Division

                                               Glenn C. Alexander
                                               Trial Attorney
                                               U.S. Department of Justice
                                               Computer Crime & Intellectual Property Section
                                               Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2012, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF, which will send a notification of filing (NEF) to:

Christopher L. Harlow, Esq.
SNR Denton US LLP
1301 K Street NW, Suite 600, East Tower
Washington, DC 20005
Tele:  (202) 408-6816
christopher.harlow@snrdenton.com
*Counsel for Carpathia Hosting, Inc.*

John S. Davis, Esq.
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA 23219
Tele:  (804) 420-6296
jsdavis@williamsmullen.com
*Counsel for Kyle Goodwin*

Ira P. Rothken, Esq.
The Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
Tele: (415) 924-4250
ira@techfirm.net
*Counsel for The Rothken Law Firm*

Julie Moore Carpenter, Esq.
Jenner & Block LLP
1099 New York Ave, NW, Suite 900
Washington, DC 20001-4412
Tele:  (202) 639-6000
jcarpenter@jenner.com
*Counsel for Motion Picture Association of America*

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Avenue NW, Suite 825
Washington, DC 20004
Tele:  (202) 538-8000
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com
*Counsel for Quinn Emanuel Urquhart & Sullivan LLP*

  /s/  Lindsay A. Kelly
Lindsay A. Kelly
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tele: 703-299-3700
Fax: 703-299-3981
lindsay.a.kelly@usdoj.gov