IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | The Honorable Liam O'Grady |
| | ) | |
| KIM DOTCOM, et al., | ) | |
| | ) | Criminal No. 1:12-CR-3 |
| Defendants | ) | |
| | ) | |

**REBUTTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF
QUINN EMANUEL URQUHART & SULLIVAN LLP AND THE ROTHKEN LAW
FIRM FOR LEAVE TO ENTER LIMITED APPEARANCE ON BEHALF OF
MEGAUPLOAD LIMITED AND KIM DOTCOM**

Megaupload Limited (hereinafter, "Megaupload") is a corporate entity charged as a

Defendant in this case.  It has constitutional rights to due process and to the advice of counsel.

Yet, if the Government is to have its way in this case, the only lawyers before the Court will be

those representing the Government.  If the Government is to have its way, the only evidence

available to the Court would be that cherry-picked by the Government, for the Government, from

the universe of relevant servers slated to be wiped.  If the Government is to have its way, in sum,

Megaupload will never get its day in Court and the case will effectively be over before it has

even begun.  Megaupload's[1] fate will have been sealed by virtue of an indictment and

corresponding asset freeze executed without the benefit of any adversarial proceeding or

opportunity to be heard.  Megaupload's constitutional rights to contest the charges against it in a

---

[1] This reply principally addresses Megaupload's circumstances, rather than those of Co-
Defendant Kim Dotcom, because Mr. Dotcom remains under house arrest in New Zealand facing
extradition pursuant to the indictment and intends to exercise his rights under New Zealand law
to contest extradition.  Megaupload, as a corporation, may not, of course, avail itself of any such
proceeding.  In this submission, we focus primarily on the predicament the Government's tactics
have placed Megaupload in, because it lays bare the fundamental unfairness of the Government's
position.

fair proceeding would be rendered worse than nugatory; they would be transformed into empty promises, the quintessential "promise to the ear to be broken to the hope, a teasing illusion like a munificent bequest in a pauper's will." *Edwards v. California*, 314 U.S. 160, 186 (1941) (Jackson, J., concurring).  Stated simply and starkly, if the constitutional entitlements of the criminally accused are to have substance, if this criminal proceeding is to permit adversarial contest between opposing sides and opposing counsel, and if Megaupload's criminal conviction is not, in effect, a *fait accompli* as of the indictment, then the Government's instant position must be rejected.

The Government has invented and sprung what would amount (by its instant conception) to the perfect trap with which to ensnare a corporate defendant and seal its demise.  First, the Government sweepingly indicts the corporation and freezes all of its assets.  (This of course requires showing probable cause to the satisfaction of a grand jury and the Court, but no one could equate that with all the sentinels, hurdles, and adversarial contestation that should, according to the Constitution, safeguard the path to any ultimate conviction.)  Notably, however, the Government has not even served the corporate defendant.  Next, the Government resists any release of assets to fund the corporation's defense, notwithstanding that the corporation can appear only through counsel,[2] and has a constitutional right to counsel,[3] yet (unlike an individual defendant) has no right to have counsel appointed[4] if the corporation is rendered effectively

---

[2]   *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) ("A corporation may appear in the federal courts only through licensed counsel.").

[3]   *See United States v. Unimex, Inc.*, 991 F.2d 546, 550 (9th Cir. 1993).

[4]   *See United States v. Hartsell*, 127 F.3d 343, 350 (4th Cir. 1997) (holding that neither the Sixth Amendment nor the Criminal Justice Act requires appointment of counsel to represent corporation in criminal proceeding); *Unimex*, 991 F.2d at 550 ("[C]orporations have a right to counsel, but not right to appointed counsel, even if they cannot afford to retain their own.").

indigent by the Government's pre-conviction freezing of its assets.[5]  Then, when private counsel

attempt to enter a limited appearance to argue initial matters crucial to a fair trial, including

release of funds commensurate with the defense in a case the Government has called "among the

largest criminal copyright cases ever brought by the United States," Press Release, U.S.

Department of Justice, Justice Department Charges Leaders of Megaupload with Widespread

Online Copyright Infringement (Jan. 19, 2012), http://www.justice.gov/opa/pr/2012/January/12-

crm-074.html, the Government resists that too, claiming the corporate defendant and its chosen

counsel must be either all in or else altogether out.[6]

　　Here, the corporation and its would-be counsel confront a conundrum at the threshold:

Part and parcel of appearing for arraignment, the corporation may be required to surrender its

jurisdictional objections (particularly as to lack of service) and submit itself to the Court; defense

counsel, for their part, must conscientiously advise the corporation in connection with entering

its plea. *See Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 (D.C. Cir. 1984) ; *United

States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 743 (3d Cir. 1979).  But conscientious

counsel can scarcely be rendered.  For should counsel thereafter withdraw (particularly because

there are no funds to enable a defense), the corporation—again, bereft of entitlement to assigned

counsel as well as ability to speak for itself without counsel—would be left mute and unable to

defend itself.  The unrepresented corporation may then be subject to a conviction without being

able to retain counsel, to have counsel appointed, or to represent itself.  Thus, by the

---

[5]  Nor can counsel ethically represent Megaupload on a contingent fee basis.  *See* Rule 1.5(d)(2), Virginia Rules of Professional Conduct.

[6]  No doubt, for any private counsel who may be willing to come all in, the Government is prepared to greet them with spurious arguments that they are conflicted such that they "cannot provide constitutionally sufficient representation to a criminal defendant."  Government Opposition at 9.

Government's account, the criminally accused corporation must either sit still without challenging seizure of its assets (which the Government says cannot proceed until after the corporation has appeared and entered a plea) or else march blindly into court, possibly heading straight towards conviction without benefit of counsel.

The Government well knows that the stakes in this case are massive; the intellectual property issues complex and novel; the universe of electronically stored information ("ESI") potentially oceanic in scope (provided that the ESI remains preserved, over the Government's objections).  It well knows that mounting a robust defense will test the resources of even the largest, most sophisticated law firms; will require canvassing and mining ESI on the scale associated with the largest civil discoveries; will entail teams of lawyers working with teams of forensic imagers and other outside experts.  It well knows that having the right counsel, Megaupload's chosen counsel, on the side of the defense could make all the difference.  And it knows that no such counsel would realistically be willing to litigate this case through to trial for free or without sufficient resources—or that any such counsel, even if willing, would have litigated at least a prior copyright dispute or two involving a work or a client somehow implicated within the ocean of ESI stored by Megaupload, which the Government would then claim is itself disqualifying.  Knowing all this, the Government appears unwilling to litigate fair and square.  Instead, it is acting to vitiate Megaupload's defense before the merits are ever reached.

The instant circumstances are such that the Government is insisting upon continued freezing of all of Megaupload's assets without regard for either the costs of its defense or the disconnect between assets seized and charges substantiated; seeking to disqualify any counsel positioned to represent Megaupload effectively; resisting the only procedural mechanism

whereby a *Farmer* motion for release of assets might be prudently heard; and opposing

preservation of servers potentially critical to Megaupload's defense. Each circumstance is, by

itself, unsettling. Taken together, however, they would amount to denying any semblance of due

process and fundamental fairness. In the pages that follow, we explain why the Government is

wrong on each of its points. It should be apparent at the outset, however, that the Government's

position, taken as a whole, cannot be right, and does grave disservice to advancing the cause of

justice.

**ARGUMENT**

## I.  THE LOCAL RULES DO NOT CURTAIL THIS COURT'S DISCRETION TO PERMIT A LIMITED APPEARANCE.

Titled "Foreign Attorneys," Rule 57.4(D) sets forth the procedures for admission of

counsel *pro hac vice*. Subsection 57.4(D)(3) specifically governs the filing of pleadings pursuant

to *pro hac* admissions, providing that:

> [N]o pleading or notice required to be signed by counsel shall be filed unless signed by counsel who shall have been admitted to practice in [the Eastern District of Virginia] . . . and who shall have such authority that the Court can deal with the attorney alone in all matters connected with the case.

*See* Government Opposition at 4.[7] The Government claims that the Rule, by virtue of that

Subsection, bars this Court from authorizing counsel to make a limited appearance. That is an

untenable reading. Subsection 3 requires merely that any notice or pleading filed by *pro hac*

counsel also be signed by a locally admitted attorney who has the same authority to represent the

client as does foreign counsel. *See* Local Cr. R. 57.4(D)(3). The Rule in no way speaks to,

much less negates, this Court's inherent discretion and authority to allow a limited appearance.

---

[7]   It should be noted that Local *Civil* Rule 83.1 contains *identical* language requiring signature by counsel with "such authority that the Court can deal with the attorney alone in all matters connected with the case." It would therefore follow from the Government's position that this Court can *never* authorize a limited or special appearance in *any* case.

*See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (recognizing courts' inherent authority to regulate attorneys who appear before them).  Indeed, the Court itself has pointed this out to the parties. Letter from the Hon. Liam O'Grady, United States District Judge, dated March 23, 2012 ("The Court is unaware of any limitations that would prevent a law firm from filing a motion for limited appearance on its own behalf.") (Exhibit A).  In the face of that guidance, the Government has identified no unfair prejudice that would be posed by permitting the limited appearance, nor is any such prejudice evident.

The Government cites not a single case to support its proposition that courts cannot permit limited appearances.  To the contrary, federal courts around the country regularly exercise their discretion to allow such appearances.  *See, e.g.*, *United States v. Thomas*, 391 Fed. App'x 321, 322 (4th Cir. 2010) (noting that attorney entered limited appearance for arraignment); *United States v. Moya-Gomez*, 860 F.2d 706, 717 (7th Cir. 1988) (noting that attorney entered a limited appearance to litigate the forfeitability of attorneys' fees before committing to the unconditional representation of defendant); *United States v. Calor*, 172 F. Supp. 2d 900, 905 (E.D. Ky. 2001) (attorney allowed to make limited appearance to ask for extension); *United States v. Spatola*, No. Cr 94-1238(S1)(RJD), 1996 WL 705271, at *1 (E.D.N.Y. Nov. 21, 1996) (court authorized attorney to make a limited appearance to resolve possible reimbursement issue).

The Government's further argument against permitting a limited appearance—that doing so will allow overseas counsel to assert defendants' rights under foreign law in foreign jurisdictions—is mystifying to the point of incomprehensible.  To the extent that the Government laments confronting different counsel in "overseas jurisdictions," Government Opposition at 5, that is the predictable, one would think, inexorable, result of it reaching out (successfully) to

seize assets and defendants in overseas jurisdictions, subject to overseas laws and overseas courts.[8]   To the extent that the Government complains it received "no notice" before overseas counsel sought "the release of funds and the return of property seized in those jurisdictions," *id.*, the complaint comes with poor grace:  requisite notice was provided as a matter of course to the responsible authorities, and it was notice superior to any Megaupload and the other Defendants received from the Government prior to its actual seizures.

Finally, to the extent that the Government fears what it calls "a multi-pronged attack" by defendants seeking relief overseas for seizures made overseas, *id.*, that same prospect looms regardless of how the instant request for leave is resolved, and it looms purely as a function of the Government's own "multi-pronged attack" enlisting foreign authorities, governed by foreign courts, wherein foreign counsel practice.  Indeed, because we seek leave to represent only two of the named Defendants, others will presumably continue to retain other counsel to vindicate other interests bound up in other assets no matter what.  However expansive the Government's notion of what is "connected with the case" may be, *id.* at 4,[9] it must surely allow room for counsel to appear on behalf of one defendant but not another.  There is no reason in logic, law, or Rule 57.4(d)(3), governing submissions by lawyers admitted *pro hac vice*, why this Court may not

---

[8]   Underlying the Government's position is the view that foreign courts—without which the funds could not have been frozen in the first place—are not entitled to reciprocal respect for their proceedings, except as convenient to support the restraining orders.  Such impatience with foreign courts and foreign procedures, except when those serve the immediate objectives of the United States, seems discordant with principles of due process, fairness, and comity as they obtain here and abroad.

[9]   The Government seemingly reads Local Criminal Rule 57.4(D)(3)'s requirement that a locally admitted attorney be authorized to handle "all matters connected with the case" as requiring Quinn Emanuel and the Rothken Law Firm to act as global mega-counsel exerting plenary control over separately retained counsel in foreign jurisdictions.  Setting aside the facts that no such requirement is evident in the Rule and no precedent can be found supporting it, there would be no realistic means to comply with it in a case such as this, where different defendants have retained different counsel to vindicate different interests before different tribunals.

admit of similar distinctions when it comes to granting counsel leave to appear as to one aspect of a defendant's representation but not another.

For the reasons already explained, there is every good reason, indeed, compelling reason, why the Court should permit Quinn Emanuel and the Rothken Law Firm to enter a limited appearance in this case.

## II.   THE GOVERNMENT'S ARGUMENTS REGARDING PRE-APPEARANCE RELIEF ARE SPURIOUS.

Quinn Emanuel and the Rothken Law Firm seek a limited appearance to address two issues of immediate concern:  (1) to preserve critical—potentially exculpatory—evidence that faces an imminent risk of destruction, and (2) to unfreeze untainted assets so that defendants can adequately prepare a defense.  The Government contends that these efforts are premature, unless and until defendants surrender their rights—in the case of Kim Dotcom, his right to challenge extradition; for Megaupload, its jurisdictional objections (especially as to lack of service)—and enter an unconditional appearance in this case.  *See* Government Opposition at 6-9.  Unable to cite any on-point authority holding that the Court is prohibited from fashioning appropriate relief at the pre-appearance stage of proceedings, the Government turns to wholly inapplicable procedural rules in attempting to deny defendants essential relief.

First, the Government cites Federal Rule of Criminal Procedure 43 to argue that the Court is prohibited from hearing any arguments and from granting any relief on behalf of Defendants so long as Kim Dotcom challenges extradition in New Zealand.  Rule 43's plain language, however, undermines the Government's position.  Rule 43 requires a criminal defendant's presence only at certain, specified proceedings:  "the initial appearance, the initial arraignment, and the plea"; "every trial stage"; and "sentencing."  *See* Fed. R. Crim. P. 43(a).  Thus, by its

very terms, Rule 43 has no application here at the pre-appearance stage.[10]  The Government also

seems to ignore (perhaps deliberately) that Quinn Emanuel and the Rothken Law Firm are also

seeking relief on behalf of Megaupload—a separately indicted defendant.  Rule 43 explicitly

permits counsel to appear on Megaupload's behalf, whatever the status of Kim Dotcom's

extradition proceedings.  *See* Fed. R. Crim. P. 43(b)(1) (stating that a defendant need not be

present when the "defendant is an organization represented by counsel who is present.").[11]

The Government's only other proffered basis for denying pre-appearance relief, the

fugitive-disentitlement doctrine, is likewise unavailing.  The Government cannot seriously

maintain that Megaupload is a "fugitive" when the Government has made no ostensible attempt

to properly serve the company and thereby bring it before this Court.[12]  To say that Megaupload

is attempting to avoid this Court's jurisdiction, when the Government has declined to take the

---

[10]  *Lewis v. United States*, 146 U.S. 370, 372 (1892), a case addressing a defendant's right to be present at *trial*, cited by the Government, does not hold otherwise.  Moreover, *Lewis's* broad *dicta* "that a trial can never continue in the defendant's absence have been expressly rejected." *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (citing *Diaz v. United States*, 223 U.S. 442 (1912)).

[11]  In any event, even if Rule 43 precludes defendants from seeking relief themselves at this time, Quinn Emanuel and the Rothken Law Firm nonetheless have third-party standing to vindicate defendants' Fifth Amendment due process rights and Sixth Amendment right to counsel.  *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989) (attorney of defendant who suffered forfeiture of assets that were needed to pay attorney fees had standing to advance defendant's Sixth Amendment rights; the attorney had sufficient stake in the forfeited assets and the forfeiture statute at issue threatened to impair the ability of persons in defendant's position to exercise their constitutional rights).

[12]  It is unclear whether the Government will ever be able to serve Megaupload—a foreign company with no U.S. offices—in accordance with the Federal Rules.  *See* Fed. R. Crim. P. 4(c)(3)(C) (requiring that the government deliver a copy of the summons to "an officer, to a managing or general agent, or to another agent appointed or legally authorized to receive service of process," and also mail a copy of the summons to the corporate defendant's last known address within the district, or to its principal place of business elsewhere in the United States).  In this case, however, it appears that the Government has not even attempted to effectuate service.

necessary steps to bring it under this Court's authority, is misconceived.[13]  Far from evading the Court, Megaupload is seeking the release of funds precisely so that competent counsel is available to advise the corporation in connection with entering a plea.

## III.   THE POTENTIAL CONFLICTS CITED BY THE GOVERNMENT ARE NONEXISTENT, AND, IN ANY EVENT, WAIVED BY THE DEFENDANTS.

The Government contends that Quinn Emanuel should not be allowed to enter a limited appearance "until all potential conflict situations are resolved," maintaining that Megaupload infringed copyrights owned by other Quinn Emanuel clients and citing concern that Megaupload would not be receiving "constitutionally sufficient representation."  Government Opposition at 9. The cited concern should be no concern at all, for the conflicts conjured by the Government are fanciful and Megaupload and Mr. Dotcom have, in any event, agreed to waive them.  Moreover, the undersigned assure this Court that Quinn Emanuel has carefully considered its ethical obligations in this case, as it always does, and is satisfied that it can properly proceed with this representation consistent with those obligations.

As a preliminary matter, the Government's putative basis for disqualifying Quinn Emanuel would stand to disqualify essentially any law firm equipped to litigate one of "the largest criminal copyright cases ever brought by the United States."  Press Release, U.S. Department of Justice, Justice Department Charges Leaders of Megaupload with Widespread

---

[13]   It is similarly misleading to suggest that Defendant Dotcom has "fled" the jurisdiction, when he is a resident of both Hong Kong and New Zealand, and a dual citizen of Finland and Germany, *see* Superseding Indictment at ¶ 30 (Feb. 16, 2012) (Dkt. 34), who was not present in the United States when the indictment was filed. *See Strassheim v. Daily*, 221 U.S. 280, 285 (1911) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the foreign actor] had been present at the effect, . . . it does not follow that [the person] is a fugitive from justice."); *United States v. Fonseca–Machado*, 53 F.3d 1242, 1243–44 (11th Cir. 1995) ("Mere absence from the jurisdiction in which a crime occurred does not render the suspect a fugitive from justice; he must be found to have absented himself from the jurisdiction with the intent to avoid prosecution.").

Online Copyright Infringement (Jan. 19, 2012), http://www.justice.gov/opa/pr/2012/January/12-crm-074.html.  As Carpathia, a third party, has noted, "Twenty-five petabytes is equal to approximately half of all the entire written works of mankind, from the beginning of recorded history, in all languages."  Emergency Motion for Protective Order by Non-Party Carpathia Hosting, Inc. at 8 n.12 (March 20, 2012) (Dkt. 39) (citing http://articles.mercola.com/sites/articles/archive/2009/08/01/How-Large-Is-a-Petabyte.aspx). Any law firm that knows its way around intellectual property litigation will presumably have handled a case involving a client or work that can be spotted somewhere amidst the sprawling electronic repository.  Of course, only the Government has had meaningful opportunity to scour the relevant servers, and only the Government knows precisely what is in its resulting discovery files.  This leaves the Government positioned to play "Gotcha" with any firm that may step up to make an appearance.

Certainly Quinn Emanuel is not the first such firm.  As the Government recounts, within the span of two weeks following Megaupload's indictment, three large law firms—Hogan Lovells, Squire Sanders and Sidley Austin—approached the Government on behalf Megaupload. Government Opposition at 29.  But firm after firm receded for various reasons.  The last of those three firms, Sidley, withdrew from representation days after moving for leave to enter a limited appearance on behalf of Megaupload.  We ourselves were contacted by the Government, purportedly as a courtesy, shortly after filing our initial submission; the Government noted its perception of a conflict and indicated it would be submitting its concern to the Court, just as it has.  Suffice it to say that, if Quinn Emanuel is disqualified as the Government suggests that it should be, it seems dubious that any law firm with the necessary capacity and experience to defend Megaupload competently would meet the Government's self-serving standard.

In this criminal case, the Court's responsibilities with respect to an alleged conflict are simply "to investigate further, to advise the defendant personally, and to receive a knowing waiver if that is the expressed wish of the defendant."  *United States v. Tatum*, 943 F.2d 370, 379 (4th Cir. 1991).  *Tatum* makes clear that the Court's only obligations are to the criminal defendants before it.  Contrary to the Government's suggestion, Government Opposition at 16, there is no need and no occasion to undertake roving inquiry into defense counsel's plan for discharging its ethical duties across all of its non-party clients.  In any event, Quinn Emanuel stands well aware of its ethical obligations, apprised of the Government's concerns, and equipped with appropriate measures for safeguarding itself and its clients, including where appropriate, use of informed consents.

At bottom, the Government's conflict argument rests on two false assertions:  (1) the "interests" of twelve putative Quinn Emanuel clients (whether present or former) "are directly opposed to those of the defendants," *id*. at 16; and (2) the supposed prospect that the Government will call one of Quinn Emanuel's clients to testify against Megaupload, as a "victim" or otherwise, is itself disqualifying.  *Id*. at 9-11.  We address each in turn.

Quinn Emanuel does not now, nor has it ever, represented any of the twelve entities identified by the Government in a matter adverse to Megaupload.  In fact, Quinn Emanuel has represented parties who were directly adverse to certain of the entities identified by the Government.  The litigations identified by the Government, moreover, do not substantially relate to the subject matter of this proceeding.  For instance, the Government identifies The Walt Disney Company as a premier exemplar of a Quinn Emanuel client adverse to defendants' interests.  *See id*. at 11.  In that case, however, Quinn Emanuel *defended* Walt Disney against civil claims of copyright infringement alleged by a screenwriter.  *See*

www.quinnemanuel.com/media/101910/copyright3.12.pdf.  The question there—whether Walt

Disney civilly infringed the copyright of a third party—does not relate to the question here—

whether Megaupload, by virtue of what users uploaded or downloaded from its servers, thereby

criminally infringed Walt Disney's copyright.  Defense of Megaupload should not be expected to

call into question the validity of Walt Disney's copyright, much less whether Walt Disney

infringed someone else's copyright.  Rather, defense of Megaupload should be expected to focus

on questions of whether, how, where, and by whom any infringement occurred—questions that

are well removed from anything that was at issue in the prior case seized on by the Government.

The Government's claim that Megaupload's interests are directly opposed to the interests of

Walt Disney, therefore, is meritless; the other eleven examples cherry-picked by the government

similarly lack merit because, *inter alia*, they, too, do not involve the type of infringement alleged

here.

        Nor are the interests of Megaupload and Quinn Emanuel's other clients likely to become

adverse in the future.  It is difficult to imagine a defense wherein Megaupload would challenge

any copyright holder's ownership of intellectual property rights.  The facts of this case, therefore,

do not pose the risk of direct adversity that the Government posits.

        The Government's assumption that other third parties are "victims" of copyright

infringement by Megaupload, Government Opposition at 10, seems even less plausible.  To be

sure, the Superseding Indictment alleges that Megaupload hosted infringing files originating

from YouTube's "platform."  *See, e.g.*, Superseding Indictment Dkt. 34 ¶¶ 73(e), 97.  But more

telling is what the Superseding Indictment does *not* allege—it does not allege that Megaupload

infringed YouTube's intellectual-property rights.  The Government's argument concerning

another Google subsidiary, AdSense, is similarly half-baked, as the Government does not allege

that AdSense owned or licensed copyrighted works that were infringed by Megaupload. Government Opposition at 10.

To be sure, the Government has yet to disclose its case, much less prove it. It comes with some irony, however, that it offers the first glimpses only in an opportunistic effort to disqualify Quinn Emanuel. The Government's assertions of conflict, as stated, are misguided, inaccurate, and self-serving. Megaupload and Mr. Dotcom have been advised of the Government's assertion and remain willing to proceed with Quinn Emanuel as their counsel, including by providing any waivers the Court may believe necessary or advisable under the circumstances.

## IV.    A *FARMER* HEARING WILL BE CRITICAL.

Last, the Government asks the Court to deny our motion for leave to enter a limited appearance because "[a]ny *Farmer* [m]otion [w]ould be [m]eritless" and "has little likelihood of success." Government Opposition at 17. Not only is this argument premature, but it distorts the facts and misreads *Farmer*.

As a threshold matter, the Government is badly mistaken in its account of the relevant orders abroad. By the Government's account, a court in New Zealand "has ordered that defendant Kim Dotcom receive" a monthly income of $48,000 USD for at least the next seven-and-a-half months and a monthly income of at least $16,000 USD thereafter; the availability of these funds, according to the Government, precludes us from presenting a meritorious *Farmer* argument because there can be no threshold showing of indigence. *Id.* (citing *Caplin & Drysdale*, 491 U.S. at 624). In so arguing, the Government ignores two critical facts and distorts a third. First, the released funds are expressly reserved for living expenses by the New Zealand court and are not meant to go towards legal fees. *See* Exhibit B to Government Opposition (Dkt. 76-2) at 2 ¶¶ 6.1.1, 6.1.2, 6.2 (releasing assets for "living expenses" and indicating that the court

- 14 -

will consider "further applications for any matter other than living expenses."). Second, as the Government concedes, the money has been released to Kim Dotcom, not to Megaupload, the corporation. Mr. Dotcom may have funds to cover his living expenses (as distinct from legal fees), but Megaupload has nothing.

Furthermore, contrary to what it claims in its brief, Government Opposition at 17, the Government did not object to the release of funds. As stated in the order, the release of limited funds for living expenses was entered "by consent." *See* Exhibit B to Government Opposition (Dkt. 76-2) at 2 ¶6.[14] A release of limited funds, on limited terms, with the assent of all concerned, including the Government, ought not extinguish a *Farmer* motion before it has even been filed.

The Government also misconstrues *Farmer* itself. *Farmer* held that a defendant has a Fifth Amendment right to a pretrial hearing to determine whether some or all of the seized assets may properly be used to fund his criminal defense. 274 F.3d at 803 (noting that due process requires a pretrial adversarial hearing when a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and he has no other funds from which to secure the counsel of his choice). By urging the Court to find at this early stage of the proceedings (and without a modicum of evidence before it) that the entirety of Megaupload's assets are bound up in the criminal charges such that they are subject to forfeiture in toto, *see* Government Opposition at 18, the Government gives exceedingly short shrift to the constitutional rights that concerned the Fourth Circuit in *Farmer*. In the wake of *Farmer*, the question whether all of Megaupload's assets are tainted is due to be subjected to rigorous inquiry and evidentiary testing—it cannot be brushed aside on the strength of an initial finding of

---

[14] The interests of the United States Government are represented in New Zealand by the Commissioner of Police.

probable cause combined with the Government's self-serving *ipse dixit*.[15]  *Id.* at 801; *accord Marker v. United States*, Nos. 1:08CV647, 1:04CR10–1, 2009 WL 511052, at *4 (M.D.N.C. Feb. 27, 2009) (noting that a "defendant who makes a motion to have a seized asset released to pay defense costs is entitled to a pretrial hearing on the matter.") (citing *Farmer*, 274 F.3d at 804–05).  If the Government thinks it will prevail at a *Farmer* hearing, then let it embrace the *Farmer* hearing.

The ostensible disconnect between the all-encompassing asset seizure and the proper contours of this case warrants final emphasis:  The Government has frozen tens of millions of dollars in assets derived from fees generated mostly outside of the United States, where U.S. copyright law does not apply.  Moreover, the Government is attempting here to take the unprecedented step of holding Megaupload secondarily liable, and, what is more, *criminally* liable, for copyright infringement even though no such liability obtains under the Copyright Act.  Suffice it to say that Defendants have a number of arguments they believe will cast serious doubt on the vast majority, if not all, of the merits of the seizure.  Accordingly, a *Farmer* hearing more than has its place in this case.

---

[15]   The mere fact that the seizure follows a showing of probable cause obviously "is not the end of the story."  *Farmer*, 274 F.3d at 804.  Where a defendant can show that at least some of the assets were legitimate, opportunity for rebutting the finding of probable cause "would afford [him] an important opportunity to be heard before his assets to pay attorneys are, in effect, permanently seized."  *Id.* at 805 (citing *United States v. Michelle's Lounge*, 39 F.3d 684, 700 (7th Cir. 1994); *United States v. Jones*, 160 F.3d 641, 646-47 (10th Cir. 1998); *United States v. Monsanto*, 924 F.2d 1186, 1195 (2d Cir. 1991)).  Megaupload desires nothing more than the opportunity to make such a showing here.  At present, the Court need look no further than the declaration of Kyle Goodwin, *see* Dkt. 51, for evidence that the government has seized legitimate assets from Megaupload.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court enter an Order granting lawyers from Quinn Emanuel Urquhart & Sullivan LLP and the Rothken Law Firm leave (1) to enter limited appearances on behalf of Defendants Megaupload Limited and Kim Dotcom for the purpose of filing and litigating a motion under *United States v. Farmer* and seeking to preserve evidence for the defense of this case, and (2) to withdraw their limited appearances at their option after the Court's resolution of the *Farmer* motion.

Respectfully submitted,

*/s/ Paul F. Brinkman*_____
William A. Burck
Derek L. Shaffer
Paul F. Brinkman (VSB # 35950)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100 (fax)
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
paulbrinkman@quinnemanuel.com

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

*Counsel for Quinn Emanuel Urquhart &
Sullivan LLP and the Rothken Law Firm*

Dated:  April 12, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2012, the foregoing REBUTTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF QUINN EMANUEL URQUHART & SULLIVAN LLP AND THE ROTHKEN LAW FIRM FOR LEAVE TO ENTER LIMITED APPEARANCE ON BEHALF OF MEGAUPLOAD LIMITED AND KIM DOTCOM was filed and served electronically by the Court's CM/ECF system upon all registered users.


_____*/s/ Paul F. Brinkman*_____
Paul F. Brinkman (VSB # 35950)