IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:12CR3 |
| v. | ) | |
| | ) | Hearing: April 13, 2012 |
| KIM DOTCOM, *et al.*, | ) | 10:00 a.m. |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] REDACTED REPLY OF THE UNITED STATES TO DEFENDANT MEGAUPLOAD LIMITED'S RESPONSE TO NON-PARTY CARPATHIA HOSTING, INC.'S EMERGENCY MOTION FOR A PROTECTIVE ORDER**

In the event that the Court chooses to allow Defendant Megaupload Limited ("Megaupload") to appear and file a response to Carpathia Hosting Inc.'s Emergency Motion for a Protective Order, the United States hereby replies to Megaupload's "Corrected [Proposed]¹ Response to Carpathia Hosting, Inc.'s Emergency Motion for a Protective Order." Simply put, Megaupload, prior to making itself available to receive any discovery in the criminal case from the government, complains that the government did not seize enough evidence and requests that the Court order the government to take possession of and responsibility for the 1,103 computer servers owned and held by a private third-party, Carpathia Hosting Inc., *and* hundreds of similar

---

¹ Defendant Megaupload, in its response, stated that it was "specially appear[ing]" for the limited purpose of responding to Carpathia Hosting, Inc.'s request for a protective order. It filed its response "*nunc pro tunc*," subject to the Court granting its pending motion to enter a limited appearance. The authority cited by Defendant Megaupload for its counsel's request to enter a limited appearance was *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2011), a case which concerns counsel entering a post-arraignment appearance for the purpose of securing the release of seized funds to pay for private counsel. Defendant Megaupload has cited no authority, and the government is aware of none, that allows a defendant, who is choosing not to surrender to the jurisdiction of the Court despite being able to do so, to enter a limited appearance for the purpose of raising speculative discovery issues prior to arraignment.

servers owned and held by a foreign third-party corporation, Leaseweb, in another country.[2] *See* Corrected [Proposed] Resp. at 13. The justification Megaupload provides for this extraordinary relief is speculation that the portions of the servers that may not have been copied by the government may contain information that might be helpful to the defense. *Id.* at 8. Speculation is not a sufficient basis for the unprecedented requested relief. Thus, the government respectfully suggests that, in the event the Court entertains the request from Megaupload at all, the request be denied.

## I. Additional Background Regarding the Execution of the January 18, 2012 Search Warrant at Carpathia Hosting, Inc.

Most of the relevant background is described in the pleadings already filed. *See, e.g.*, Response of the United States to Emergency Motion for Protective Order by Non-Party Carpathia Hosting, Inc. at 2-3; Corrected [Proposed] Resp. at 4-7; Mem. of Law in Support of Emergency Motion for Protective Order by Non-Party Carpathia Hosting, Inc. at 5-6. Though the government will not repeat the details indicated therein, the remainder of this section describes (briefly) the search warrants executed on January 19, 2012, and additional investigative steps taken by the government related to this and other criminal investigations. Pursuant to E.D. Va. Local Criminal Rule 49(F), and because much of the information in the remainder of this section is subject to the sealing order issued concurrent with the January 18, 2012 warrant, the remainder of this section is being filed under seal, for the Court's *ex parte* review, and will be appropriately disclosed as part of the post-arraignment discovery schedule ordered by this Court for the criminal case. A separate sealing motion is being filed concurrent with this pleading.

---

[2] Leaseweb is a foreign Internet service provider based in the Netherlands, over which the United States has no authority. Leaseweb hosted even more servers on behalf of Megaupload than did Carpathia Hosting, Inc. at a facility in Ashburn, Virginia.







## II. Argument

Defendant Megaupload's primary argument is that if the Court does not order the government to take possession of and responsibility for private third-party property in the United States and abroad, potentially exculpatory evidence will be destroyed. Despite full knowledge of the server architecture from the defendants and their counsel's post-takedown forensic access to the Carpathia servers, Megaupload fails to identify any actual exculpatory evidence that it believes may be present on the servers, or even how the data on the servers could be relevant to a defense against the criminal counts in the Superseding Indictment.[3] Instead, Megaupload emphasizes that the servers house a large amount of data, see Corrected [Proposed] Resp. at 1 (noting that the servers house "the universe of relevant evidence" against Megaupload) & 8

---

[3] Megaupload did specifically identify how the servers may be relevant to prospective future civil litigation against Megaupload. See Corrected [Proposed] Resp., at 9. Megaupload cites no authority for the proposition that a United States District Court in a criminal matter may order the United States to take possession of (and assume the cost of storage and access to) property belonging to private parties around the world to preserve a criminal defendant's ability to defend itself from prospective civil litigation. The government is aware of none.

(describing the "awesome universe" of data housed by Megaupload), and imply that the government somehow nefariously managed to avoid locating exculpatory evidence during its searches, *see id.* at 8.[4] Neither the vastness of the "universe" of data on the servers nor the necessarily limited nature of the government's search, however, justify the Court ordering the government to take possession of private third-party property and bear the cost of the acquisition, transfer, storage, and access to thousands of computer servers located around the world.

        A.        <u>Megaupload's Claims That the Servers Contain Exculpatory Data Are Pure Speculation</u>.

Of course, the government has an obligation to disclose exculpatory information that is in its possession. *See Brady v. Maryland*, 373 U.S. 83, 86 (1963); *United States v. Higgs*, 663 F.3d 726, 734-35 (4th Cir. 2011); Fed. R. Crim. P. 16(a)(1)(E)(i). The government is not, however, required to produce information that is not within its possession, custody, or control. *See United States v. Celestin*, 612 F.3d 14, 22 (1st Cir. 2010) ("The government's obligations under *Brady* only extend to information in its possession, custody, or control[.]" (internal quotations and citation omitted)); *United States v. Sarras*, 575 F.3d 1191, 1215 (11th Cir. 2009) ("But the government does not have a duty to disclose items it does not possess. Nor does it have a duty to obtain evidence it does not possess." (citations omitted)); *United States v. Hughes*, 211 F.3d 676, 688 (1st Cir. 2000) ("[t]he government . . . is not responsible for the preservation of evidence that was never in its control in the first place.").

Nor is the government required to seek out, via subpoena or other legal process, exculpatory evidence that is known to the defendant. *See Higgs*, 663 F.3d at 735 ("There is no

---

[4] Since the defense was given forensic access to the Carpathia servers and apparently did not locate or copy any of "exculpatory information" alleged to exist, this claim is specious.

*Brady* violation if the evidence is available to the defense from other sources . . . ."); *see also Celestin*, 612 F.3d at 22 (holding that the government does not "have a duty to obtain evidence it does not possess"); *Sarras*, 612 F.3d at 22 ("*Brady* . . . [does not] require[ ] a prosecutor to seek out and disclose exculpatory material not in the government's possession." (citation omitted)); *United States v. Bartko*, No. 5:09-CR-321-D, 2011 WL 2471556, at *3-*4 (E.D.N.C. June 21, 2011) (rejecting claim that government had an obligation to obtain exculpatory evidence in the hands of third parties and noting that "[v]arious courts of appeals have addressed this issue, and all have rejected that such a duty exists"). Moreover, rank speculation by a defendant that *Brady* material may exist, even in materials that the government already possesses, is not sufficient to create an obligation on the part of the government to search for the requested information. *See United States v. Paulino*, 103 F.3d 122 (table), 1996 WL 671346, at *2 (4th Cir. Nov. 20, 1996) ("Mere speculation that Brady material exists does not justify fishing expeditions in government files."); *see also United States v. Caro-Muniz*, 406 F.3d 22, 29-30 (1st Cir. 2005) (rejecting defense request for *in camera* review of tapes as a "precisely the type of fishing expedition that *Brady* does not permit").

Here, the defendant has not yet asked the government to go on a fishing expedition, instead it seeks to have the Court preserve the pond. Defense counsel has stated that they have no idea if there is any information worth examining on the servers. *See* Corrected [Proposed] Response at 12 n.7 (noting that it is unrealistic to expect counsel to have actual knowledge of the material on the servers). Of course, the defendant knows exactly what is on these servers,[5] since it, and not Carpathia, directly operated and designed the server infrastructure. Since defense

---

[5] For instance, the Defendant or defense counsel was able to point a forensic expert to particular servers which they desired to image immediately. *See* Corrected [Proposed] Response Exh. B.

counsel has been unable articulate what, if any, exculpatory information it believes resides on the servers (despite access to the defendants for nearly three months and forensic access to the actual servers), it seems the defendant is hoping the Court will order the government to preserve the "awesome universe" of data on the servers in the hope that, at some later, unidentified date, Megaupload will identify why those servers are relevant and material to the case.

That distinguishes this case from the only authority cited by defendant for its requested relief – *United States v. Salad*, 779 F. Supp. 2d 503 (E.D. Va. 2011). In *Salad*, the defendants sought to maintain a yacht moored in Djibouti upon which the defendants had murdered four U.S. citizens. *Id.* at 504-05. In that case the defendants argued the yacht was material to the defense because "viewing the scene of the crime is an absolute requirement in a crime that involves multiple shootings, multiple victims, and multiple alleged shooters." *Id.* at 507 (quoting Def.'s Brief). Megaupload has made no such representation here. Indeed, it cannot, as it has disclaimed knowledge of the information on the servers. *See* Corrected [Proposed] Response at 12 n.7. Moreover, Megaupload has not explained, despite repeated requests from the government, how any information on the servers that it has assumed was not gathered by the U.S. government can support a defense to the charges in the indictment at issue in the criminal case. The mere existence of some non-infringing content hosted on a Megaupload server obviously does not negate any of the criminal allegations in the indictment.[6] *Cf. United States v.*

---

[6] Defendant announces its intention "to invoke the Sony doctrine protecting non-infringing uses of the cloud storage systems." Corrected [Proposed] Resp. at 9. The government does not concede that the doctrine would have any applicability at all in a criminal prosecution, but notes that, even in a civil context, the doctrine provides no protection to a defendant who acts "with a purpose to cause and profit from third-party acts of copyright infringement." *MGM Studios v. Grokster, Ltd.*, 545 U.S. 913, 941 (2005) (denying Sony protection to defendants that distributed free software products that allowed computer users to share digital files through peer-to-peer

*Reed*, 156 F.3d 1241 (table), 1998 WL 403360, at *2-*3 (9th Cir. July 7, 1998) (rejecting claim that a fire which destroyed a fraud defendant's client files prior to trial destroyed exculpatory evidence because the fact that "[defendant] may have generated legitimate client files does not establish that he was not involved in the conspiracy.").

One other major factor distinguishes this case from *Salad*. The court in *Salad* found that, pursuant to the operation of 22 U.S.C.§ 2715(a)(1) and because the United States was paying the docking and security fees for the vessel, the yacht was in possession of the United States. *Salad*, 779 F. Supp. 2d at 506. Thus, the court found that Rule 16(a)(1)(E), which applies to items within the government's possession, custody, and control, and the court's inherent power "to order the preservation of evidence *in the hands of a party before the Court*," authorized the court's order that the United States retain possession of the yacht. *Id.* at 506-08. Indeed, the government in *Salad* admitted that the yacht was in its possession. *Id.* at 505. Here, however, it is uncontested that the servers are not in the possession of the United States. Thus, by its plain terms, Rule 16(a)(1)(E) does not apply. In addition, *Salad* does not support the conclusion that the Court's inherent power authorizes it to order the government to take possession of tangible objects from third parties for the purposes of preservation.

The remainder of Megaupload's argument regarding exculpatory information consists of accusations that the government somehow "cherry-picked" the evidence it chose to seize from the servers. *See* Corrected [Proposed] Response, at 1. Such claims are interesting since the government has not yet disclosed any of the evidence that it obtained to the defendants, because discovery in the criminal case has not begun. Of course, the government only took certain

---

networks).

information from the massive collection of servers. In executing any search warrant, the government selects the materials to be seized based on the scope of the warrant and an on-scene assessment of materials believed to be of evidentiary value. This is entirely proper, as a search warrant, to be valid, must state with particularity the items to be seized by the government. U.S. Const. Amend. IV. In addition, when executing a search warrant, agents should also take care to minimize the intrusiveness of the search. *United States v. Gray*, 78 F. Supp. 2d 524, 528 (E.D. Va. 1999).

Assuming that all imaging could be done at the rate of speed of the defense's computer forensic specialist (approximately 40 hours to copy two servers), if the government had attempted to copy all 1,100 servers owned by Carpathia, executing the search warrant would have taken approximately 22,000 hours, or nearly two and a half years. Copying the Leaseweb servers would add at least another one and a half years. Instead, the government executed the search warrant in a manner that was designed to locate the most significant evidence within the scope of the warrant. As Megaupload itself has failed to identify what, if any, exculpatory information might be held on the servers, it is impractical to require the government to search and copy information for preservation simply on the chance that Megaupload may find the information useful in the future.

    B. <u>The Lawful Restraint of Megaupload's Funds Does Not Justify the Forced Transfer of the Servers to the Government at Taxpayer Expense.</u>

The other current carrying Megaupload's unprecedented relief request is the argument that the government's lawful restraint of Megaupload's assets somehow demonstrates that the government is acting in bad faith with respect to any unseized servers. *See* Corrected

[Proposed] Response at 2. This claim has no merit and may be an unfortunate product of the lack of prior involvement of yet another new defense counsel.

Though it had no duty to engage with counsel who has refused to make an appearance in the criminal case, the government has had repeated discussions with various counsel for the defendants in trying to address their concerns about the Carpathia Servers, and, in fact, the parties asked the government to examine and approve a transaction transferring the servers from Carpathia to the defendant Megaupload. During those discussions, the government was informed by the Motion Picture Association of America ("MPAA") that it previously filed with Carpathia on January 31, 2012 a demand to preserve the servers in anticipation of civil litigation. Given that MPAA represents victims of the defendants' alleged conduct and the parties to the proposed transaction had failed to inform the government about the prior preservation demand, the government then proceeded to tell Carpathia that it would not re-engage in the discussions until the parties had worked out the preservation demand issue. Carpathia eventually informed the government that it had agreed to provide MPAA with the opportunity to file an injunction prior to any transfer of the servers and that MPAA specifically objected to providing the many thousands of allegedly infringing copies of its members' copyrighted works to the alleged infringer Megaupload. Once this arrangement was made known to the government, the United States was unable to further engage in discussions regarding any possible transfer to the defendants.

To be clear, however, throughout the discussions with both defense counsel and Carpathia, the government has not received any realistic and sufficiently detailed proposals for transferring the servers to any entity and/or preserving them. The government told the parties

that it could not approve any private transaction but that it might have to react to an inappropriate one. As the government has previously indicated, a realistic proposal would have had to demonstrate sufficient and untainted resources for the acquisition and preservation of the servers; provide a resourced, realistic capability for dealing with requests for access from third-parties such as civil litigants; provide sufficient safeguards against misuse or additional transfers; deal with expressed problems raised by victims of the defendants' conduct; and deal with contraband allegedly on the servers.

Defendant Megaupload's filing suggests that the government has done something wrong by seeking the restraining orders issued by this Court. As the Court is aware, however, the government has a duty to investigate the proceeds of crime and, where appropriate, obtain restraints on those illicit proceeds. Two grand juries and this Court have found that there was probable cause to restrain as forfeitable the assets and funds in this matter. Rather than some nefarious purpose, the government merely did its duty, and the efforts of the government to address the defendants' concerns by pre-appearance discussions with counsel shows that the government did much more than was required under the circumstances.

Defendant Megaupload is simply under the mistaken impression that it has some claim to the funds restrained by this Court. This issue has, however, been resolved by *United States v. Monsanto*, 491 U.S. 600 (1989), where the Supreme Court rejected the suggestion that there should be an exception to a pre-trial restraining order for assets used to pay for a private purpose, even when that purpose is a defense:

> Section 853(c) states that "[a]ll right, title, and interest in [forfeitable] property . . . vests in the United States upon commission of the act giving rise to forfeiture." Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction

occurs cannot be sanctioned.

419 U.S. at 613.[7] Similarly, in *Caplin & Drysdale, Chartered v. United States*, the Court said:

> We are called on to determine whether the federal drug forfeiture statute includes an exemption for assets that a defendant wishes to use to pay an attorney who conducted his defense in the criminal case where forfeiture was sought. Because we determine that no such exemption exists, we must decide whether that statute, so interpreted, is consistent with the Fifth and Sixth Amendments. We hold that it is.

491 U.S. 617, 619. The government has simply not "forbidden Megaupload from using any of its assets" to pay for continued preservation. Corrected [Proposed] Response at 2. It has merely done what the law requires and attempted to prevent the unnecessary dissipation of forfeitable assets.

### III. Conclusion

Because Megaupload seeks an unprecedented, extraordinary, and legally unsupportable order from this Court compelling the United States to take possession of and responsibility for

---

[7] As the Fourth Circuit has noted, for the most part, the distinction between the forfeiture provisions in 18 U.S.C. § 1963 and 21 U.S.C. § 853 is without a difference. Both authorize courts to issue pre-trial restraining orders to preserve property and provide that property vests in the United States upon commission of the offense giving rise to forfeiture. *Compare* 18 U.S.C. §§ 1963(d) and (c) *with* 21 U.S.C. §§ 853(e) and (c). Because the sections are nearly identical, courts often consider the provisions interchangeably. *See United States v. Bromwell*, 222 Fed. Appx. 307, 311-312 (4th Cir. 2007); *see In re Restraint of Bowman Gaskins Fin. Group*, 345 F. Supp. 2d 613, 627 n.31 (E.D. Va. 2004).

objects in the possession of third parties on no basis other than speculation, Megaupload's request should be denied.

Dated: April 12, 2012

<div style="margin-left: 3em;">
Respectfully submitted,

Neil H. MacBride
United States Attorney

By:    /s/
Andrew Peterson
Jay V. Prabhu
Lindsay A. Kelly
Ryan K. Dickey
Assistant United States Attorneys

Lanny M. Breuer
Assistant Attorney General
U.S. Department of Justice
Criminal Division

Glenn Alexander
Trial Attorney
Computer Crime & Intellectual Property Section
U.S. Department of Justice
</div>

# CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

Christopher L. Harlow, Esq.
SNR Denton US LLP
*Counsel for Carpathia Hosting, Inc.*
1301 K Street NW, Suite 600, East Tower
Washington, DC 20005
Tele: (202) 408-6816
christopher.harlow@snrdenton.com

Julie Moore Carpenter, Esq.
Jenner & Block LLP
*Counsel for Motion Picture Association
 of America*
1099 New York Ave, NW, Suite 900
Washington, DC 20001-4412
Tele: (202) 639-6000
jcarpenter@jenner.com

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
*Counsel for Quinn Emanuel Urquhart &
 Sullivan LLP*
1299 Pennsylvania Avenue NW, Suite 825
Washington, DC 20004
Tele: (202) 538-8000
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com

John S. Davis, Esq.
Williams Mullen
*Counsel for Kyle Goodwin*
200 South 10th Street, 16th Floor
Richmond, VA 23219
Tele: (804) 420-6296
jsdavis@williamsmullen.com

Ira P. Rothken, Esq.
The Rothken Law Firm
Counsel for The Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
Tele: (415) 924-4250
ira@techfirm.net

 

                                                                          /s/
Andrew Peterson
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tele: 703-299-3700
Fax: 703-299-3981