# EXHIBIT '

FILED
OCT 20 1997
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. CR-92-0425 DLJ |
| TUCOR INTERNATIONAL, INC., ) et al., ) | **ORDER** |
| Defendants. ) | |

On October 8, 1997, the Court heard argument on defendants' motion for leave to make a special appearance for the purpose of filing a motion to dismiss. Reginald K. Tom appeared on behalf of the plaintiff; Warren Dean, Jr., Jerrold M. Ladar, James R. Wyrsch and Phillip Torres appeared for defendants. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby grants defendants Luzon Moving & Storage Corp., Philippine-American Moving & Storage Corp., George Schulze, Sr. and George Schulze, Jr. leave to make a special appearance for the purpose of filing a motion to dismiss the indictment in this case.

I. **BACKGROUND**

A. <u>Factual Background and Procedural History</u>

Defendants are corporations and individuals engaged in the business of transporting goods to and from United States military bases in the Philippines. Defendants were indicted on September 9, 1992 for violating Section 1 of the Sherman Act,

15 U.S.C. § 1. The indictment charges that defendants[1] conspired "to suppress competition by fixing prices for moving services supplied in connection with the transportation of military shipments of household goods between the Philippines and the United States." Defendants contend that because they provided transportation services solely within the Philippines, any price fixing activity was not unlawful pursuant to the Shipping Act of 1984, § 7(a)(4), 46 U.S.C. app. § 1706(a)(4).

Defendants Luzon Moving & Storage Corp. ("Luzon"), Philippine-American Moving & Storage Corp. ("PAMSC"), George Schulze, Sr. and George Schulze, Jr. were charged with one count of conspiring to fix prices in violation of the Sherman Act, 15 U.S.C. § 1. Luzon and PAMSC claim to be corporations organized under Philippine's law with their principle and sole place of business in the Philippines. Defendants George Schulze, Sr. and George Shulze, Jr. claim to be Philippine citizens who reside in the Philippines and are officers and sole shareholders of defendants Luzon and PAMSC. These defendants have not appeared before this Court for arraignment.

On August 15, 1997, defendants Luzon, PAMSC, Schulze, Sr., and Schulze, Jr. ("the Luzon defendants"), filed a motion for leave to make a special appearance for the limited purpose of filing a motion to dismiss the indictment. On the same date,

---

[1] The original indictment was brought against Tucor International, Inc.; Tucor Industries, Inc. d/b/a Tucor Moving and Storage; Philippine-American Moving & Storage Corp.; Luzon Moving & Storage Corp.; D.M. Nazareno & Sons, Inc.; Apex Moving & Storage Corp.; Jose C. Singson, Jr.; George Schulze, Sr.; George Schulze, Jr.; Arturo G. Nazareno; Patrick B. Boll; and Dale C. Bailey.

defendants also filed their motion to dismiss the indictment. The Luzon defendants contend that the Shipping Act of 1984, § 7(a)(4), 46 U.S.C. app. § 1706(a)(4), immunizes these defendants from liability for price fixing and, as a result, the indictment should be dismissed.

On September 10, 1997, the government filed its opposition to defendant's motion for leave to make a special appearance. The government did not, however, file an opposition to defendant's motion to dismiss the indictment.

## II. DISCUSSION

The Luzon defendants move this Court for leave to enter a special appearance for the purpose of filing a motion to dismiss the indictment. The government contends that the Court should not grant defendants' motion for leave to appear because defendants are fugitives.

The decision whether to consider a fugitive defendant's motion to dismiss an indictment "rests in the sound discretion of the court." United States v. Shapiro, 391 F.Supp 689, 691 (S.D.N.Y. 1975); United States v. Noriega, 683 F.Supp. 1373, 1374 n.2 (S.D.Fla. 1988) (within court's discretion to entertain motions from a fugitive defendant); see also Hughes v. Thompson, 415 U.S. 1301, 1302, 94 S.Ct. 829 (1974) (whether motion to dismiss indictment should be disposed of prior to arraignment rests in sound discretion of the district court).

The government urges this Court to exercise its discretion

3

to refuse to hear the Luzon defendants' motion.[2] The government argues that the fugitive defendants should not be allowed to call upon the resources of the Court for a risk free adjudication of their motion. Indeed, courts have demonstrated a reluctance to allow fugitive defendants to gain from a favorable ruling without subjecting themselves to the risk of an adverse decision. See, e.g., Molinaro v. New Jersey, 396 U.S. 365 (1970); United States v. Sperling, 506 F.2d 1323, 1345 n.33 (2d Cir. 1974). However, these cases involve defendants who have already been convicted and flee while appeals of their convictions are pending. Id; Cf. Lewis v. Delaware State Hospital, 490 F.Supp. 177 (D.Del. 1980) (extending Molinaro and Sperling rationale to fugitive defendant seeking habeas review

---

[2] The government cites United States v. Weinstein, 511 F.2d 622 (2d Cir.), cert. denied, 422 U.S. 1042 (1975), to support its position that defendants' remedy is to avail themselves of a speedy and public trial rather than contest the indictment from afar. However, read in context Weinstein does not support the government's argument. Weinstein vacated Judge Weinstein's order in United States v. Lockwood, et al., 382 F.Supp. 1111 (E.D.N.Y. 1974). In Lockwood, Judge Weinstein had appointed counsel, without the consent of defendants, to represent fugitive "draft dodgers." The Judge had also required the government to turn over files on these defendants to the appointed counsel. The Second Circuit issued a writ of mandamus, directing the district court to vacate its order to turn over the Selective Service files of fugitive defendants who had not authorized appointed counsel to act on their behalves, and to cease entertaining non-jurisdictional motions on behalf of defendants who had not authorized counsel to act on their behalves. Weinstein, 511 F.2d at 629. The Court did not, however, "intend to preclude Judge Weinstein from entertaining motions on behalf of fugitive defendants who have agreed that [counsel] represent them." Id. Since the Luzon defendants have retained counsel to appear on their behalves, Weinstein does not support the government's position that fugitive defendants in the instant case should not be allowed to contest the validity of the indictment.

4

of his involuntarily commitment to a state mental hospital following a finding that he had committed rape but was not guilty by reason of insanity).

Unlike defendants who flee following a conviction, the Luzon defendants have not been convicted and are therefore presumed innocent. This is a significant factor in determining whether to exercise discretion to entertain a fugitive defendant's motion. See Shapiro, 391 F.Supp. at 691; see also Noriega, 683 F.Supp at 1375.

Furthermore, the Court notes that there are special circumstances in this case warranting the decision to allow defendants' special appearance. In Noriega, the district court considered whether to allow the de facto head of the Panamanian government to challenge an indictment naming him as part of an international conspiracy to import cocaine into the United States. Id. at 1373-74. Emphasizing that the case was surrounded with special circumstances, the court rejected the argument that allowing Noriega to attack the validity of his indictment while a fugitive would open the "floodgates" to similar motions by thousands of fugitives. Id. at 1374. The Court agreed to hear arguments addressing the validity of the indictment. Id. at 1375.

While the political overtones of the prosecution of the Luzon defendants are not those of the Noriega case, there are ramifications to this case that extend beyond the parties to the action. Specifically, the Court notes that the government

5

of the Philippines has repeatedly protested these indictments as a infringement of its sovereignty. See Luzon Def. Mot. to Dismiss Indictment, Exhs. 4, 5, 6, 7, 8, 9; Def. Reply, Exh. A. The Philippine Government has also made its views known directly to this Court. Def. Mot., Exh 17. In a March 25, 1997 letter to the Court, the Philippine Government stated its belief that the conduct alleged in the indictment is immunized by the Shipping Act exemption. It also expressed the view that the prosecution of Philippine nationals in circumstances where no crime had been committed violated the United States treaty obligations under Article 15 of the International Covenant on Civil and Political Rights.[3] The strong views of the Philippines government suggest that resolution of the validity of the indictment would be appropriate despite the Luzon defendants' fugitive status.

Finally, the Court notes that the government makes no suggestion that it would be prejudiced in any manner by resolution of the issues raised in defendants' motion to dismiss the indictment. As the district court wrote in the context of the Noriega case:

> Presumably the factual and legal bases for the indictment were considered by the Justice Department to be entirely adequate when the indictment was

---

[3] Article 15 of the ICCPR states that "No one shall be held guilty of any criminal offense on account of any act or omission which did not constitute a criminal offense, under national or international law, at the time when it was committed." International Covenant on Civil and Political Rights, art. 15, G.A.Res. 2200, 21 U.N. GAOR Supp. (No. 16), U.N. Doc. A/6316 (1966).

6

returned. The implication permissible by the government's objection to the parties' arguing the legality of the indictment is unacceptable. If the charge is to stand in the records of this court with the implications which flow from an unanswered indictment, the Government should be quite willing to support its position and disavow any idea that the continuation of a possibly defective indictment should remain outstanding until the defendant appears with his attorney to demonstrate such a defect.

Id. at 1375. This reasoning is compelling in the instant case. Defendants have presented evidence that, following the Tucor indictment, counsel for the government learned of the relevant Shipping Act exemption during an investigation of similar conduct by companies in Greece. One would think that the government would now be eager to clarify whether or not the exemption applies to the conduct alleged in the instant indictment. Under these circumstances, the Court exercises its discretion to grant the Luzon defendants' motion for leave to make a special appearance for purpose of filing a motion to dismiss the indictment.

III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion for leave to make a special appearance for the purpose of filing a motion to dismiss the indictment.


IT IS SO ORDERED.

Dated:     October 20, 1997.

_____
D. Lowell Jensen
United States District Judge

7