IN THE DISTRICT COURT
AT NORTH SHORE

CRI-2011-004-164712

MATHIAS ORTMANN
Applicant

v

UNITED STATES OF AMERICA
Respondent

Hearing: 25 January 2012
26 January 2012
7 February 2012

Appearances: Mr Foley for the Applicant
Ms Toohey for the Respondent

Judgment: 9 February 2012

---

RESERVE DECISION OF D J McNAUGHTON
[Opposed Bail Application]

---

[1]  The United States of America is seeking to extradite Mr Mathias Ortman from New Zealand. An indictment has been filed by the District Court for the Eastern District of Virginia charging Mr Ortmann and others with:

- Conspiracy to commit racketeering.
- Conspiracy to commit copyright infringement.
- Conspiracy to commit money laundering.
- Criminal copyright infringement by distributing copyrighted work being prepared for commercial distribution on a computer network and aiding and abetting of copyright infringement.

- Criminal copyright infringement by electronic means and aiding and abetting of copyright infringement

[2] I record that pursuant to s 20 of the Extradition Act 1999 I issued a provisional arrest warrant for Mr Ortman and others on 18 January 2012 and then the following day a number of search warrants. I was prepared to disqualify myself from hearing the bail application if counsel were concerned regarding any possible conflict of interest or actual or apparent bias but all counsel were content for me to deal with the bail application.

[3] Section 43(1)(b) of the Extradition Act 1999 provides that the provisions of part 1 of the Bail Act 2000 are to apply in respect of proceedings brought under the Act and therefore it is for the Crown to show that there is just cause for continued detention taking into account the mandatory and discretionary factors set out in s 8 of the Bail Act. Bail is opposed by the Crown primarily on the basis that Mr Ortmann is an extreme flight risk and also that there is a risk of reoffending on bail.

**Flight Risk**

[4] Mr Ortmann is a German citizen residing in Hong Kong maintaining credit cards and bank accounts in both countries. He is a 25% shareholder in the business which is the subject of the alleged conspiracy. Mr Ortmann travelled to New Zealand to attend the birthday party for Mr Dotcom arranged for 21 January 2012. At the time of his arrest on the morning of 20 January he was staying at 186 Mahoenui Valley Road, Coatesville which is Mr Dotcom's New Zealand residence.

[5] Mr Ortmann holds a German passport. His residence in Hong Kong is at the Convention Plaza Apartments. He was issued with an official identification for Hong Kong and holds a visa to reside there. The FBI allege that he maintains a relationship with a Ukrainian woman at that address and may also have a home in Munich, Germany. On the basis that he purchased a house for his sister in Great

Britain the US Government asserts that Mr Ortmann will rely on his ties to persons overseas to assist him to flee from New Zealand.

[6] Again the US Government relies on the affidavits filed by Malcolm Spence and a senior customs officer explaining how transport might be arranged out of New Zealand covertly to avoid the authorities by means of false identification and travel documents.

[7] Mr Ortmann is the chief technical officer and co-founder of Mega Upload Limited and the director of two additional companies, one of which is registered in the British Virgin Islands. He holds a 25% shareholding in Mega Upload Limited and is the second largest shareholder next to Mr Dotcom. He has access to numerous foreign bank accounts including one in Germany and two in Hong Kong. He maintains credit cards in both countries. One of his Hong Kong based accounts contained in excess of US$20 million. His compensation for the 2010 calendar year is said to be in excess of US$12 million.

[8] Again the US Government rely on the use of chartered private jets, helicopters and yachts by other named co-conspirators to suggest that Mr Ortmann also might utilise chartered transport to leave New Zealand without notice to the authorities.

[9] Ms Toohey submitted that the accounts restrained by the US Government are unlikely to represent all of Mr Ortmann's income or his available resources and that there would be substantial sums outstanding which would assist the applicant to organise transport out of the country and back to Germany and once in Germany he could not be extradited to the United States.

**Risk of Offending on Bail**

[10] Again the US Government submits that given the compact nature of the business and the geographical spread of the conspirators across Hong Kong, New Zealand, Germany, Estonia and Slovakia, operating websites through servers located in the United States, Netherlands and Canada, there is a high risk that the two

conspirators still at large together with any other defendants granted bail here in New Zealand will continue to operate the business from alternative sites outside the jurisdiction of the United States.

**Section 8(2) Discretionary Factors**

[11] It is submitted that this is the largest prosecution to date for infringement of copyright in the United States. The offending is described as unprecedented and most serious. The conspiracy to commit racketeering and money laundering charges carry maximum penalties of 20 years imprisonment and Ms Toohey is instructed that prosecutors in the United States will press for the maximum penalty if the defendants are convicted.

[12] It is acknowledged that no assessment of the strength of the evidence can be made at this point. Supporting evidence will be filed along with the request for surrender.

[13] In relation to delay the request for surrender for extradition must be made within 45 days of the arrest. Once the request is received extradition proceedings will be filed and a hearing date set. Ms Toohey indicated that the hearing might take a day given the pro forma nature of the evidence in a summary form. At this point I am unable to determine precisely how long the hearing would take but even if it were a full day the North Shore court could not accommodate such a hearing for some months.

**Defence Submissions**

[14] Mr Ortmann, in his affidavit, confirms that he lives in Hong Kong and has been based there for the last two years. He holds a German passport which was seized by the police on his arrest together with a Hong Kong identity card.

[15] Mr Ortmann denies hiding any funds overseas and says his only other account is with a German bank holding €500.

[16] Mr Ortmann outlines his involvement in starting Mega Upload together with Mr Dotcom, Mr van der Kolk and Mr Bencko in 2005. He emphasises that he had no intention to conduct the company's business unlawfully. He denies the existence of any criminal conspiracy. The main computer servers are in the United States and therefore Mr Ortmann says he was at all times conscious that the business was required to comply with United State's law. There were specific discussions regarding the location of the servers but after considering legal advice it was decided to retain the business in the United States because there was no breach of American law.

[17] Mr Ortmann, in his affidavit, refers to the take down of copyright infringing material which he says went beyond the standards required by the US Digital Millennium Copyright Act. Mr Ortmann accepts that the systems were "not perfect" and that it "had flaws" but to a certain extent that was due to the amount of material uploaded to the company's servers. He refers also to arrangements with Microsoft, Disney, Warner and others to take down content directly. Mr Ortmann denies personally uploading or making available any material in breach of copyright.

[18] Mr Ortmann has visited the United States half a dozen times including one business trip and has been a reasonably frequent visitor to New Zealand over the last five years for work and vacation. Mr Ortmann states in his affidavit that he wishes to defend the charges and has no intention to flee the jurisdiction.

[19] References provided in support of Mr Ortmann describe him as a totally different character to Mr Dotcom. Mr Ortmann is said to be disinterested in money or a lavish lifestyle and has scrupulously complied with any legal obligations including payment of tax. Family members expressed their shock at the charges brought against him. He is described as shy, very straight and a humble person living a modest life in rented accommodation with a long-term girlfriend. Other references describe him as dependable and of high moral standards. His brother suggests it is inconceivable that the applicant could do anything unlawful.

[20] Mr Foley, relying on the references, described his client as modest, honest, reliable and trustworthy. He submitted that whilst the business had prospered

exponentially over the last five years that the applicant was not a leader in a business sense rather a highly skilled technician in computer systems. Mr Foley submitted it was never the applicant's intention to break the law and that he and the others had taken significant legal advice in relation to compliance. He submitted that the inability of the prosecution to demonstrate that his client had downloaded a single item of copyright infringing material indicted that Mr Ortmann is a careful law abiding and honest person.

[21] Mr Foley submitted that, and just because the applicant has $20 million in a single account, that is no basis on which to draw an inference that there is any other substantial funds available to him. Mr Foley submitted that the funds in that account were equivalent, more or less, to the applicant's income over the past six years and from the bar he provided the following figures:

| 2005 | US $50,000 |
|---|---|
| 2006 | US $200,000 |
| 2007 | US $1 million |
| 2008 | US $2 million |
| 2009 | US $2.7 million |
| 2010 | US $12 million |
| 2011 | US $3 million (Waiting for dividend call) |

[22] Counsel for the US Government then provided a memorandum with figures based on a spreadsheet prepared by Bonney Lam from the Mega Upload finance book 2010 in a statement prepared for the Hong Kong Revenue Department.

| 2005 | No information |
|---|---|
| 2006 | No information |
| 2007 | US $389,000 salary and dividend |
| 2008 | US $1.1 million salary and dividend |
| 2009 | US $6.1 million salary and dividend |
| 2010 | US $9 million salary US $9 million dividend |
| 2011 | No information |

[23] Counsel for the United States filed a further memorandum annexing a spreadsheet of 13 transactions between 8 November 2010 and 7 June 2011 showing a series of transfers from Mr Ortmann's Hong Kong bank account to an account in his name at the HSBC Australia. A total of $943,000 Australian dollars was transferred during that period.

[24]   Mr Ortmann then filed a second affidavit dated 1 February 2012 in relation to his bank accounts. The accounts are:

- HSBC Hong Kong
- ICBC Hong Kong
- HSBC Australia
- Deutsche Bank Munchen
- Deutsche Bank Bonn
- St Galler Kantonal Bank Switzerland

[25]   All of these accounts are in Mr Ortmann's name. He deposes that all of these accounts were located by the US investigators apart from the Deutsche Bank Bonn and St Galler Kantonal Bank Switzerland accounts which contain €500 and less than €15,000 respectively. Mr Ortmann's evidence is that he only recalled the existence of the Swiss account upon returning from court on 25 January 2012 and that all of the funds in that account were from previous computer work prior to commencing employment for Mega Upload and there had been no movement of funds from that account for over six years. All other accounts are referred to in the US Government indictment including the HSBC Australia account.

[26]   Mr Ortmann acknowledges transferring funds to the Australia account for investment reasons to take advantage of favourable exchange and interest rates. Me Ortmann assumed that the Australia account also would be the subject of a restraining order and that is now apparently the case.

[27]   Mr Ortmann's evidence is that his only sources of income were from Mega Upload and related companies and income from investments and that there were no transfers of funds from Mega Upload to any other accounts than those listed in the indictment.

[28]   Mr Ortmann says that funds invested were either through the HSBC Hong Kong or Australia accounts and records of transfer of funds are already available to the US Government in relation to both those accounts. Mr Ortmann estimates his current savings and investment total approximately US$19.4 million dollars, consistent with the US Government figure for funds held in his Hong Kong account

at NZ$20,557,641 (US$16,664,023.79). Mr Ortmann's evidence says that the current balance of the HSBC Australian main and sub account are $2.5 million Australian dollars.

[29]  Mr Ortmann also lists his expenses during the period 2006 – 2011:

- Purchase and renovation of his sister's apartment in the UK (less than €500,000).
- Supporting his appearance €4,500 per month.
- Renovation, furniture and rent for Hong Kong apartment $700,00 Hong Kong dollars; $50,000 Hong Kong dollars per month.
- Tax payments in Germany and Hong Kong - €1.5 million.
- Credit card bill.
- Tickets, hotels, reimbursements.
- Cash withdrawals for day to day purchases.

[30]  Mr Ortmann's evidence is that there is no missing money or hidden accounts and any difference between the seized accounts, total balance and payments received from the Mega Load company stem from trading profits and withdrawals.

**Findings**

[31]  The starting point is s 8 of the Bail Act. It is for the prosecution to establish that there is just cause for continued detention. Flight risk and the risk of reoffending on bail are mandatory considerations.

[32]  In relation to the offences charged in the indictment, whilst the maximum penalties for the money laundering and racketeering offences are 20 years' imprisonment, the copyright charges are relatively less serious carrying maximum penalties of five years' imprisonment.

[33]  I am mindful of the scale of the offending described in the indictment and that this is the biggest case of its kind ever prosecuted in the United States. I cannot be sure as to the ultimate penalty if the applicant were convicted. Counsel were not able to assist me with any relevant sentencing decisions relating to breach of copyright cases from the United States. Taking into account the nature and duration

of the alleged offending and the profits generated from it, it is safe to assume that substantial terms of imprisonment would be imposed on conviction but whether those sentences would be anywhere near the maximum available penalty of 20 years, I simply cannot say at this point.

[34] As to the strength of the prosecution case, I am in no position to assess that as the evidence has not yet been filed. I am asked to determine that issue on the basis of the indictment, the summary of facts, and counsel submissions regarding the respective merits. It is simply impossible for me to determine at this very early stage whether the US Government has a strong case or whether the applicant has a good defence to any or all of the offences charged. All I can say is that there appears to be an arguable defence, at least in respect of the breach of copyright charges, and no doubt very considerable resources will be brought to bear, both for the prosecution and the defence, should the matter proceed to trial.

[35] As I have already noted in my decision declining Mr Dotcom bail the risk of reoffending is essentially a neutral factor. I consider that there is a possibility of Mega Upload continuing its business from other sites outside the jurisdiction of the United States and that remains a risk whether or not Mr Ortmann and his co-offenders are granted bail. The essential issue is flight risk. Given Mr Ortmann's position in the Mega Upload business as Chief Technical Officer and co-founder the potential penalties he faces are considerably more serious that either Mr van der Kolk who is a 2.5% shareholder and programmer or Mr Batato in charge of marketing but not a shareholder.

[36] Mr Ortmann's level of remuneration is also significantly higher. As a German citizen if Mr Ortmann were able to leave New Zealand and travel back to Germany he would then be safe from extradition to the United States as Germany has no extradition treaty with the United States.

[37] Mr Foley in his submission repeatedly emphasised the burden of proof and the courts inability to test the strength of the prosecution's case at this early stage. With respect, that seems to be very much a secondary consideration. Even if Mr Ortmann were 100% confident that he could successfully defend the charges if

extradited to the United States none the less he might still elect to avoid any litigation risk by fleeing to Germany taking into account the full weight of the government's resources will be behind this prosecution.

[38] As in the case of Mr Dotcom there is a real financial incentive to remain in New Zealand and challenge the extradition and if extradited also the charges in the United States because of the tens of millions of dollars worth of assets now restrained by the US Government which will remain frozen if he absconds. It may well be that Mr Ortmann and the others wish to let the legal process take its course and have no desire to live as fugitives.

[39] On the other hand, Mr Ortmann might form the view that with all his assets frozen, the Mega Upload site shut down and the charges now brought against him that the safer course is to flee to Germany. In assessing that risk, there is nothing in the material before which suggests that Mr Ortmann is anything other than the hard working and honest person described in the references. I have carefully observed his demeanour in court in his numerous appearances before me. He is quiet, polite and respectful at all times and that is entirely consistent with the various descriptions given in the references provides.

[40] He has no prior convictions; there are no issues of multiple identities, passports and no bank accounts in any other names; and he has no connection with any firearms.

[41] The only basis upon which the US Government could persuade me that Mr Ortmann is a significant flight risk would be to point to a significant source of funds unaccounted for in the FBI investigation to date of the very full affidavit supplied by Mr Ortmann. After carefully considering that affidavit and the various memoranda supplied by the Crown I am satisfied that Mr Ortmann's financial position is precisely as he describes it. I am satisfied that there are no other accounts and no hidden funds and with such accounts which he does have frozen he is in no position to fund a covert operation to smuggle him out of the country should he be mindful to take that route.

[42]   I am persuaded to grant bail subject to conditions including electronic monitoring.

D J McNaughton
District Court Judge