IN THE DISTRICT COURT
AT NORTH SHORE

FINN BATATO
Applicant

v

UNITED STATES OF AMERICA
Respondent

Hearing:      25 January 2012

Appearances: Mr Foley for the Applicant
              Ms Toohey and Mr Sinclair for the Respondent

Judgment:     26 January 2012

---

**RESERVED JUDGMENT OF JUDGE D J McNAUGHTON**
**[Opposed Bail Application]**

---

[1]  The United States of America is seeking to extradite Mr Finn Batato from New Zealand. An indictment has been filed in the District Court for the Eastern District of Virginia charging Mr Batato and others with:

- Conspiracy to commit racketeering.

- Conspiracy to commit copyright infringement.

- Conspiracy to commit money laundering.

- Criminal copyright infringement by distributing copyrighted work being prepared for commercial distribution on a computer network and aiding and abetting of copyright infringement.

BATATO V USA DC NSD [26 January 2012]

- Criminal copyright infringement by electronic means and aiding and abetting of copyright infringement.

[2] I record that pursuant to s 20 of the Extradition Act 1999 I issued a provisional arrest warrant for Mr Batato and others on 18 January 2012 and then the following day a number of search warrants. I was prepared to disqualify myself from hearing the bail application if counsel were concerned regarding any possible conflict of interest or actual or apparent bias but all counsel were content for me to deal with the bail application.

[3] Presentation of the indictment follows a lengthy FBI investigation which commenced in March 2010. The FBI alleges that the applicant and others are involved in a worldwide criminal organisation known collectively as the Mega Conspiracy. There are seven persons targeted by the investigation and charged in the indictment. Mr Dotcom and Bram van der Kolk both reside in New Zealand. The remaining five defendants are resident in Europe and Hong Kong. Mr Dotcom is a 68% shareholder in a company called Mega Upload Limited the registered owner of Mega Upload.com allegedly the main website used to facilitate the operation of the Mega Conspiracy.

[4] The prosecution allege the business is run from servers in the Netherlands, Canada and the United States. Charges are laid in the United States on the basis that a large portion of the servers are located there but the prosecution assert the business could be run from any location and the seven alleged conspirators need not be proximate to the servers.

[5] Mega Upload.com claims to account for an estimated 4% of all internet traffic worldwide and to attract 50 million visits a day. The business is also highly profitable. Restraining orders have been issued in the United States for assets including some assets held in New Zealand valued at US$175 million, allegedly criminal proceeds acquired as a result of criminal offences.

[6]     Section 43(1)(b) of the Extradition Act 1999 provides that the provisions of part 1 of the Bail Act 2000 are to apply in respect of proceedings brought under the Act and therefore it is for the Crown to show that there is just cause for continued detention taking into account the mandatory and discretionary factors set out in s 8 of the Bail Act. Bail is opposed by the Crown primarily on the basis that Mr Batato is an extreme flight risk and also that there is a risk of reoffending on bail.

**Flight Risk**

[7]     Mr Batato is a German citizen holding a German passport. He maintains a physical residence in Munich Germany. At the time of his arrest on 20 January 2012 he was staying at 186 Mahoenui Valley Road, Coatsville which is Mr Dotcom's address. He has no residence in New Zealand and apart from Mr Dotcom and Mr van der Kolk, no known links in New Zealand.

[8]     Again the US Government rely on the affidavits of Malcolm and a senior customs officer to support the submission that it is possible for a foreign national to leave New Zealand covertly with false travel documents.

[9]     Mr Batato is the chief marketing and sales officer for Mega Media Limited and Mega Upload Limited. He has access to a number of bank and credit card accounts in Hong Kong and Germany. One of his Hong Kong accounts contained in excess of NZ$225,000. His total compensation for the 2010 calendar year was in excess of NZ$500,000. The US Government assert that the accounts located and frozen do not represent all of the funds or bank accounts available to Mr Batato. The US Government rely on the use of chartered jets, helicopters and yachts by other members of the so called Mega Conspiracy for domestic and international travel to suggest that Mr Batato also might avail himself of privately chartered transport in order to leave the country.

[10]    Ms Toohey submitted that there was no reason for the applicant to remain in New Zealand he was only here to attend a birthday party for Mr Dotcom. His family all live in Germany and she noted the US Government has not extradition treaty with Germany. Mr Toohey acknowledged that Mr Batato's known resources are relatively

modest compared to the other conspirators arrested here in New Zealand but suggested there were considerable resources available to the two conspirators still at large. Mr Bencko, a Slovakian national, has a 2.5% shareholding equivalent to Mr van der Kolk's share. He is a graphic director. He holds ownership by virtue of a company registered in the British Virgin Islands with access to bank accounts holding in excess of NZ$1 million and his annual compensation for the 2010 calendar year was NZ$1.4 million.

[11] Mr Echternach is the head of business development. His Hong Kong based account over an 18 month period transferred in excess of $750,000 and his annual compensation for the 2010 calendar year was $684,000. Ms Toohey submitted that Mr Bencko was a key member of the conspiracy who could be assisted by others to reinstate the business and again she emphasised the popularity of the Mega Upload website and the huge demand for its business.

[12] Regarding the mechanics of any bail conditions Ms Toohey submitted that the only available addresses are Mr Dotcom's address in Coatesville or Mr van der Kolk's home in Orakei. She submitted at the Coatesville address there might difficulties in enforcing any prohibition against internet access given the size of the property and the number of people who live there. The US Government seek an non-association clause if any of the applicants are granted bail and it is submitted that it would be meaningless if Mr Batato was sharing an address.

**Risk of Offending on Bail**

[13] Again the US Government submits that given the compact nature of the business and the geographical spread of the conspirators across Hong Kong, New Zealand, Germany, Estonia and Slovakia operating websites through servers located in the United States, Netherlands and Canada that there is a high risk that the two conspirators still at large together with any other defendants granted bail here in New Zealand will continue to operate the business from alternative sites outside the jurisdiction of the United States.

**Section 8(2) Discretionary Factors**

[14] It is submitted that this is the largest prosecution to date for infringement of copyright in the United States. The offending is described as unprecedented and most serious. The conspiracy to commit racketeering and money laundering charges carry maximum penalties of 20 years imprisonment and Ms Toohey is instructed that prosecutors in the United States will press for the maximum penalty if the defendants are convicted.

[15] It is acknowledged that no assessment of the strength of the evidence can be made at this point. Supporting evidence will be filed along with the request for surrender.

[16] In relation to delay the request for surrender for extradition must be made within 45 days of the arrest. Once the request is received extradition proceedings will be filed and a hearing date set. Ms Toohey indicated that that hearing might take a day given the pro forma nature of the evidence in a summary form. At this point I am unable to determine precisely how long the hearing would take but even if it were a full day this Court could not accommodate such a hearing for some months.

**Defence Submissions**

[17] Mr Batato has sworn an affidavit in support of his application for bail. He lives in Munich with his partner. He has no criminal convictions. He commenced employment with Mega Upload as head of advertising sales in 2007. He was responsible for 10 other staff working on advertising sales which was a significant source of income for the business. Mr Batato emphasises that he is an employee not a shareholder albeit he is well remunerated.

[18] Like Mr Dotcom and Mr van der Kolk he absolutely refutes any suggestion that the named defendants were involved in any criminal conspiracy and Mr Batato says that he believed at all times he was acting within the law. He considered that the business was run professionally and that the protection of copyright was an important issue at a management level.

[19]   Mr Batato accepts that he was a frequent visitor to the United States for business and pleasure and has visited New Zealand four or five times over the last 2 years for management meetings.

[20]   He undertakes not to flee the jurisdiction and will accept any conditions of bail including electronic monitoring. His passport is now in the possession of the police.

[21]   Mr Batato rejects the assertion that he has any resources available to him to organise covert transport out of New Zealand. All of his accounts are frozen apart from one account at an Austrian bank which contains a minimal sum. He does not wish to live as a fugitive and wishes to defend the allegations made by the US Government.

[22]   Mr Foley submitted that Mr Batato together with Mr van der Kolk and Mr Ortmann were in a completely different category from Mr Dotcom in terms of flight risk because none of them hold multiple passports or credit cards in other names. He submitted their lifestyle was relatively modest, and that there was no basis for any assumption regarding access to other funds outside those accounts restrained by the US Government and that none of them had access to firearms.

[23]   In relation to Mr Batato himself Mr Foley referred to a number of references describing the applicant as law abiding, hardworking, a person who would meet his obligations to the Court, living modestly, responsible, reliable and of good character. Included in the bundle of references were letters from Mr Batato's father and fiancé.

[24]   Mr Foley stressed the applicant's position in the business. He is not a shareholder, nor does he have any particular computer expertise. His area of responsibility is solely marketing and advertising. Mr Foley submitted that his client had the strongest case for bail given his position in the business and relatively modest remuneration. He submitted any risk of flight could be met by appropriate bail conditions. If granted bail Mr Batato's fiancé would travel to New Zealand to be with him and Mr Foley submitted that was a factor to be taken into account in assessing whether the applicant would comply with bail conditions. As to any

relationship between the applicant and Mr Bencko and Mr Echternach, Mr Foley submitted they are co-workers and meet each other approximately two or three times a year.

**Findings**

[25] The starting point is s 8 of the Bail Act. It is for the prosecution to establish that there is just cause for continued detention. Flight risk and the risk of reoffending on bail are mandatory considerations.

[26] In relation to the offences charged in the indictment whilst the maximum penalties for the money laundering and racketeering offences are 20 years' imprisonment the copyright charges are relatively less serious carrying maximum penalties of five years imprisonment.

[27] I am mindful of the scale of the offending described in the indictment and that this is the biggest case of its kind ever prosecuted in the United States. I cannot be sure as to the ultimate penalty if the applicant were convicted and Counsel were not able to assist me with any relevant sentencing decisions relating to breach of copyright from the United States but taking into account the nature and duration of the alleged offending and the profits generated from it, it is safe to assume that substantial terms of imprisonment would be imposed although whether those sentences would be anywhere close to the maximum available penalties of 20 years I simply cannot say at this point.

[28] As to the strength of the prosecution case I am in no position to assess that as the evidence has not yet been filed. I am asked to determine that issue on the basis of the indictment, the summary of facts and counsel submissions regarding the respective merits. It is simply impossible for me to determine at this very early stage whether the US Government has a strong case or whether the applicant has a good defence to any or all of the offenses charged. All I can say is that there appears to be an arguable defence at least in respect of the breach of copyright charges and no doubt very considerable resources will be brought to bear both for the prosecution and the defence should the matter proceed to trial.

[29] There is no direct evidence produced by the US Government which establishes that Mr Batato has access to any undisclosed substantial funds and there is no evidential basis from which I could draw that inference. The submission that he will be assisted by other co-defendants still at large is, in my view, somewhat speculative.

[30] As discussed in my decision declining bail for Mr Dotcom I would expect that there are contingency plans in place should Mega Upload.com be closed down in the United States. There are domain names registered outside the jurisdiction. Restarting the business from another site is in my mind a very real possibility but that could occur irrespective of any decision regarding bail and so the alleged risk of reoffending becomes a neutral factor in determining bail for Mr Batato.

[31] All of the material before me suggests that he is a man of good character and conscientious in his work and family obligations. He is in a different position to the other three men arrested here, both in terms of his relatively modest income and his position in the business.

[32] If Mr Batato were able to leave New Zealand covertly and reach Germany he would be safe from extradition to the United States. To that extent there is an incentive to flee the jurisdiction regardless of the strength of the defence case in answer to the charges.

[33] Mr Foley repeatedly emphasised the presumption of innocence throughout his submissions but it seems to me that even if the applicants were 100% confident in the correctness of their legal position, still they might elect not to risk trial in the United States where the full resources of the US Government would be brought to bear against them and knowing that if convicted they face substantial prison terms. Weighing up the litigation risk each of them might decide that flight was the safer option.

[34] However while that remains a possibility I am satisfied in Mr Batato's case the risk of flight is low and such risk as there is can be met by appropriate bail conditions. I am persuaded to grant bail to Mr Batato.

D J McNaughton
District Court Judge