# EXHIBIT 10

IN THE DISTRICT COURT
AT NORTH SHORE

BRAM VAN DER KOLK
Applicant

v

UNITED STATES OF AMERICA
Respondent

Hearing: 25 January 2012

Appearances: Mr Foley for the Applicant
Ms Toohey and Mr Sinclair for the Respondent

Judgment: 26 January 2012

---

**RESERVED JUDGMENT OF JUDGE D J McNAUGHTON**
[Opposed Bail Application]

---

[1]    The United States of America is seeking to extradite Mr Bram van der Kolk from New Zealand. An indictment has been filed in the District Court for the Eastern District of Virginia charging Mr van der Kolk and others with:

- Conspiracy to commit racketeering.

- Conspiracy to commit copyright infringement.

- Conspiracy to commit money laundering.

- Criminal copyright infringement by distributing copyrighted work being prepared for commercial distribution on a computer network and aiding and abetting of copyright infringement

- Criminal copyright infringement by electronic means and aiding and abetting of copyright infringement.

[2] I record that pursuant to s 20 of the Extradition Act I issued a provisional arrest warrant for Mr van der Kolk on 18 January 2012 and then the following day a warrant to search his address at Orakei. I was prepared to disqualify myself from hearing the bail application if counsel were concerned regarding any possible conflict of interest or actual apparent bias but counsel were content for me to deal with the bail application.

[3] Presentation of the indictment follows a lengthy FBI investigation which commenced in March 2010. The FBI alleges that the applicant and others are involved in a worldwide criminal organisation known collectively as the Mega Conspiracy. There are seven persons targeted by the investigation and charged in the indictment. Mr Dotcom and Bram van der Kolk both reside in New Zealand. The remaining five defendants are resident in Europe and Hong Kong. Mr Dotcom is a 68% shareholder in a company called Mega Upload Limited the registered owner of Mega Upload.com allegedly the main website used to facilitate the operation of the Mega Conspiracy.

[4] The prosecution allege the business is run from servers in the Netherlands, Canada and the United States. Charges are laid in the United States on the basis that a large portion of the servers are located there but the prosecution assert the business could be run from any location and the seven alleged conspirators need not be proximate to the servers.

[5] Mega Upload.com claims to account for an estimated 4% of all internet traffic worldwide and to attract 50 million visits a day. The business is also highly profitable. Restraining orders have been issued in the United States for assets including some assets held in New Zealand valued at US$175 million, allegedly criminal proceeds acquired as a result of criminal offences.

[6] Section 43(1)(b) of the Extradition Act 1999 provides that the provisions of part 1 of the Bail Act 2000 are to apply in respect of proceedings brought under the

Act and therefore it is for the Crown to show that there is just cause for continued detention taking into account the mandatory and discretionary factors set out in s 8 of the Bail Act. Bail is opposed by the Crown primarily on the basis that Mr van der Kolk is an extreme flight risk and also that there is a risk of reoffending on bail.

**Flight Risk**

[7] Mr van der Kolk is a citizen of the Netherlands. He is a 2.5% shareholder in a company called Mega Upload Limited which is the registered owner of Mega Upload.com which is the main website used to facilitate the operation of the alleged conspiracy. Mr van der Kolk holds a passport issued by the Netherlands. Mr Foley indicated that the passport was at his home address but somehow overlooked in the police search and he undertook to surrender the passport to the Court if bail was granted.

[8] Mr van der Kolk lives in rented accommodation at 37 Ngaiwi Street, Orakei. The FBI assert that he maintains a residence in the Netherlands and their enquiries show he is a frequent international traveller.

[9] The US Government rely on affidavit filed by Malcolm Spence, a detective with the Asian Crime Unit which explains how a Chinese National sought for extradition to the United States and subject to daily reporting to the New Zealand police and surrender of travel documents disappeared from New Zealand prior to the hearing of the request for surrender for extradition in the Wellington District Court.

[10] The respondent had also filed an affidavit from a senior customs official explaining the availability of false passports and travel documentation at a price. The affidavit described the porous nature of New Zealand's boarders should the applicant chose to leave the country by boat or from an airport or airstrip outside the main centres. The affidavit discusses also the mechanics of organising travel to Australia or other South Pacific destinations by small aeroplane, yacht or commercial vessel. The respondent was concerned that this material not fall into the public domain and the original affidavit was returned to the prosecutor.

[11]  Mr van der Kolk is the lead programmer for Mega Upload Limited. He holds ownership and director positions with companies based in Hong Kong, the British Virgin Islands and the Netherlands giving him access to bank accounts with funds totalling in excess of NZ$3.5 million. His income for the 2010 calendar year, according to a financial report from Mega Upload Limited, was in excess of NZ$2.75 million.

[12]  The US Government submitted that the use of chartered private jets, helicopters and yachts on previous occasions for domestic and international travel by Mr van der Kolk and others was a factor to take into account in assessing Mr van der Kolk's willingness and ability to charter private transport to leave the country illegally.

**Risk of Offending on Bail**

[13]  It is submitted that the applicant's business is compact involving the seven alleged conspirators and a total worldwide staff of 30. A computer server is required to maintain the various websites and the business is able to be run at a distance given that the various alleged conspirators reside in Hong Kong, New Zealand, Germany, Estonia and Slovakia whilst the websites themselves are operated through servers in the United States of America, Netherlands and Canada.

[14]  Four of the alleged conspirators were arrested and detained in New Zealand. A fifth defendant named Nomm in the indictment was arrested in the Netherlands on a provisional arrest warrant. A sixth defendant named Echternach was in the Philippines at the time the warrant to arrest was executed but has since travelled to Germany which has no extradition treaty with the United States and Ms Toohey advised that Germany will not extradite German nationals to the United States.

[15]  It was submitted that if Mr van der Kolk were granted bail he would assist the remaining two defendants still at large who may be trying to reinstate the business in some modified form from overseas jurisdictions. Various domain names have been registered in other countries outside the United States from which that business could be operated. The seventh defendant, a Mr Bencko who is still at large, attempted to

contact Mr van der Kolk by telephone as the police were executing the warrant at Mr van der Kolk's address on the morning of 20 January 2012. Ms Toohey placed some stress on placed some stress on the applicant's position as chief programmer with Mega Upload Limited. She submitted he featured repeatedly in high level contact with the other named defendants and that whilst there may not be frequent physical contact between them there was a high volume of email traffic. She submitted that Mr van der Kolk would be a key role in any attempt to restart the business from another site.

[16] There is a huge demand for the business given the volume of internet traffic and the number of visits to the site per day, estimated at 50 million. It is submitted that the vast profits generated are a further incentive to restart the business from another location. In response to the taking down of websites in the United States various hacker groups have attacked government sites in response and it is submitted this also is an indicator of strong demand.

**Section 8(2) Discretionary Factors**

[17] I am advised that this is the largest prosecution to date for infringement of copyright in the United States. The offending is described as unprecedented and most serious. The conspiracy to commit racketeering and money laundering charges carry maximum penalties of 20 years imprisonment and Ms Toohey is instructed that prosecutors in the United States will press for the maximum penalty if the defendants are convicted.

[18] It is acknowledged that no assessment of the strength of the evidence can be made at this point. Supporting evidence will be filed along with the request for surrender.

[19] In relation to delay the request for surrender for extradition must be made within 45 days of the arrest. Once the request is received extradition proceedings will be filed and a hearing date set. Ms Toohey indicated that that hearing might take a day given the pro forma nature of the evidence in a summary form. At this point I

am unable to determine precisely how long the hearing would take but even if it were a full day this Court could not accommodate such a hearing for some months.

**Defence Submissions**

[20] Mr van der Kolk in his affidavit filed in support of the application for bail states that he worked for Mega Upload from 2005 and that from the outset he was a 2.5% minority shareholder of the business which was part of the employment package.

[21] Since April 2011 he has resided in New Zealand with his wife at 37 Ngaiwi Street, Orakei together with his two year old son. Mr van der Kolk is a New Zealand resident and has no convictions of any kind.

[22] Mr van der Kolk denies any involvement in a conspiracy to breach copyright, racketeering or money laundering. He states that he was responsible for taking down copyright infringing material complying with the US Digital Millenium Copyright Act. This involved taking down thousands of files each day and Mr van der Kolk refers also to the direct co-operation with major copyright holders including Disney, Microsoft, Warner Bros and others.

[23] Mr van der Kolk's position is that at all times he understood the business was operating within the law and that legal advice received from in house counsel and outside sources confirmed that position. He undertakes to comply with any conditions of bail and denies any intention to flee the jurisdiction because he is established in this country with his family.

[24] He acknowledges the various bank accounts restrained by the US Government and acknowledges two other accounts, one in Hong Kong holding HK$250,000 which equates to approximately €25,000 and a separate Rabo bank account in Amsterdam €15,000. He denies possession or access to any hidden funds. He describes himself as "overwhelmed" by this experience.

[25] References supplied by Mr van der Kolk's wife father describe him as responsible, hardworking, at times excessively so and a dedicated husband and father. Mr van der Kolk senior is shocked at the allegations and had recently spent three months with his son and family in Auckland.

[26] Mr Foley in his submission stressed his client's good character demonstrated by the various references. He submitted there was no ability to access any other funds to arrange covert transport out of the country. He submitted the applicant has a good defence to all of the charges brought against him believing at all times that the business was conducted lawfully. He submitted Mr van der Kolk will comply with any bail conditions and would not leave the country.

**Discussion**

[27] The starting point is s 8 of the Bail Act. It is for the prosecution to establish that there is just cause for continued detention. Flight risk and the risk of reoffending on bail are mandatory considerations.

[28] In relation to the offences charged in the indictment whilst the maximum penalties for the money laundering and racketeering offences are 20 years imprisonment the copyright charges are relatively less serious carrying maximum penalties of five years imprisonment.

[29] I am mindful of the scale of the offending described in the indictment and that this is the biggest case of its kind ever prosecuted in the United States. I cannot be sure as to the ultimate penalty if the applicant were convicted and Counsel were not able to assist me with any relevant sentencing decisions relating to breach of copyright from the United States but taking into account the nature and duration of the alleged offending and the profits generated from it, it is safe to assume that substantial terms of imprisonment would be imposed although whether those sentences would be anywhere close to the maximum available penalties of 20 years I simply cannot say at this point.

[30]     As to the strength of the prosecution case I am in no position to assess that as the evidence has not yet been filed. I am asked to determine that issue on the basis of the indictment, the summary of facts and counsel submissions regarding the respective merits. It is simply impossible for me to determine at this very early stage whether the US Government has a strong case or whether the applicant has a good defence to any or all of the offenses charged. All I can say is that there appears to be an arguable defence at least in respect of the breach of copyright charges and no doubt very considerable resources will be brought to bear both for the prosecution and the defence should the matter proceed to trial.

[31]     Mr van der Kolk is in a different position to Mr Dotcom whose bail application I have already declined. He is a citizen of the Netherlands but the Netherlands has an Extradition Treaty with the United States so should he chose to flee the jurisdiction avoiding extradition would be a much more difficult exercise if he is not able to return to his homeland. All of the material presented to me suggests that Mr van der Kolk is of good character, hard working, reliable, honest and with family commitments. He has no criminal convictions. Ms Toohey conceded during the course of argument that of the four conspirators arrested here in New Zealand, Mr van der Kolk presents the lowest flight risk.

[32]     Mr Foley was careful to distinguish the position of his clients Mr van der Kolk, Mr Osterman and Mr Batato from Mr Dotcom. There is no issue in Mr van der Kolk's case of multiple identity or multiple passports, no connection to any firearms and whilst he is a shareholder in the business and well remunerated there is no direct evidence in his case of access to any other funds nor any evidential basis upon which I could draw that inference.

[33]     The US Government are concerned about the prospect of reoffending particularly given Mr van der Kolk's key position in the business as chief programmer. However as noted in my earlier decision the possibility of reviving the business from another site outside the jurisdiction of the United States is a factor completely outside the Court's control and remains an open question irrespective of any decision regarding bail and as in Mr Dotcom's case the risk of reoffending on this bail application is a neutral factor.

[34]   On balance I am satisfied that the risk of flight here is minimal and such risk as remains can be met by the imposition of strict bail conditions including electronic monitoring and bail should be granted.

Judge D J McNaughton
District Court Judge