IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. 1:12CR3 |
| ) | |
| v.          ) | |
| ) | |
| KIM DOTCOM, *et al.*,          ) | |
| ) | |
| Defendants.          ) | |

**RESPONSE OF THE UNITED STATES TO NON-PARTY KYLE GOODWIN'S
MOTION FOR THE RETURN OF PROPERTY PURSUANT TO 18 U.S.C. § 1963
OR FEDERAL RULE OF CRIMINAL PROCEDURE 41(g)**

The United States, by and through its undersigned attorneys, hereby responds to non-party movant Kyle Goodwin's request that this Court exercise its equity jurisdiction to order that someone other than Mr. Goodwin fund the return of data that he entrusted to Megaupload Limited and Carpathia Hosting, Inc.  Because the extraordinary circumstances necessary for an exercise of this Court's equity jurisdiction do not exist, and because the Court has already given Mr. Goodwin the only arguable relief to which he is entitled, the Court should deny the motion. To do otherwise would create a new and practically unlimited cause of action on behalf of any third party who can claim that the government's execution of a search warrant adversely impacted a commercial relationship between the target of the search and the third party.  Finally, because Mr. Goodwin has already been heard by this Court on these claims, an additional hearing on this motion is unnecessary.  Thus, the United States requests that the Court decide the motion on the papers, pursuant to Local Criminal Rule 47(J).[1]

---

[1] Local Criminal Rule 47(J) provides: "Determination of Motions Without Oral Hearing: The Court may rule upon motions without an oral hearing."

## I.      BACKGROUND

Because the facts that give rise to the instant motion are basically unchanged since the

April 13, 2012 motions hearing, this brief includes only those facts that are necessary to resolve

the instant motion.  On January 5, 2012, a grand jury sitting in the Eastern District of Virginia

returned an indictment charging Megaupload Limited ("Megaupload") as well as numerous

individuals and an additional corporation with a number of federal crimes.  (Doc. No. 1.)  On

January 12, 2012, this Court authorized the restraint of certain funds belonging to Megaupload

(and other associated entities and individuals) as property subject to forfeiture pursuant to 18

U.S.C. §§ 981(a)(1)(C), 982(a)(1), 1963(a), and 2323.  On January 19, the United States

executed a number of search warrants at the premises leased by Carpathia Hosting, Inc.

("Carpathia"), for evidence related to Megaupload's criminal activities.  Megaupload leased

more than 1100 computer servers from Carpathia that were used by Megaupload to host data

associated with the sites it operated.  *See* Doc. No. 39 Ex. A at ¶ 3 (Decl. of Theresa Pittinger).

Many of these servers were located in the Eastern District of Virginia.

The government did not seize any of the Megaupload-leased servers.  Instead, pursuant to

the warrants, the government copied certain data from the servers.  While the search warrants

were being executed, servers belonging to Carpathia and leased by Megaupload were taken

offline so that they could be properly forensically imaged.  Because of the large number of

servers leased by Megaupload, not all of the servers were imaged by the government (based on

estimates provided by Megaupload, imaging all 1103 servers would have taken approximately

22,000 person-hours).  *See* Doc. No. 82 at 9-10.  After the execution of the search warrants was

completed (a process which took approximately one week), the government left the premises

leased by Carpathia, and did not retain any of the servers.  The government has reviewed the data

it imaged from the Megaupload servers, and the government did not image any of Kyle

Goodwin's content files.

## II.  THERE IS NO JUSTIFICATION FOR THIS COURT TO EXERCISE ITS EQUITABLE JURISIDICTION TO ORDER ANY PARTY TO FUND THE RETURN OF KYLE GOODWIN'S DATA OR DATA OF ANY OTHER MEGAUPLOAD USER

The government does not possess any of Mr. Goodwin's property, nor does it seek to

forfeit it.  The government also does not oppose access by Kyle Goodwin to the 1103 servers

previously leased by Megaupload.  But access is not the issue – if it was, Mr. Goodwin could

simply hire a forensic expert to retrieve what he claims is his property and reimburse Carpathia

for its associated costs.  The issue is that the process of identifying, copying, and returning Mr.

Goodwin's data will be inordinately expensive, and Mr. Goodwin wants the government, or

Megaupload, or Carpathia, or anyone other than himself, to bear the cost.  *See* Goodwin Br. at

10.  Such a request is not supported by 18 U.S.C. § 1963, Rule 41, or any other applicable law.

As such, the Court should decline Mr. Goodwin's request to order the government to bear his

costs.[2]

### A.  18 U.S.C. § 1963 Does Not Give the Court Jurisdiction to Grant the Requested Relief.

Title 18, United States Code, Section 1963 governs the forfeiture of property pursuant to

violations of Section 1962 of the same title.  Specifically, Section 1963(l)(2) governs the claims

of third parties who have interests in forfeited property.[3]  It states, in relevant part:

---

[2] Mr. Goodwin also claims to be asserting his claims on behalf of other similarly-situated parties. Though millions of people uploaded files to Megaupload, no other similarly-situated person has come forward.  To the extent other third parties assert claims that would require the discretionary exercise of this Court's equitable jurisdiction, such requests should be denied for the reasons stated in this pleading.

[3] The property that was seized and restrained in this case was restrained pursuant to a number of statutes, not just Section 1963.  Because, as noted by Mr. Goodwin, the language of those

> Any person, other than the defendant, asserting a legal interest in
> property which has been ordered forfeited to the United States
> pursuant to this section may, within thirty days of the final
> publication of notice or his receipt of notice under paragraph (l),
> whichever is earlier, petition the court for a hearing to adjudicate
> the validity of his alleged interest in the property. The hearing shall
> be held before the court alone, without a jury.

Mr. Goodwin argues that this Section authorizes the Court to issue a post-indictment and pre-trial order directing the return of his property.[4]

Section 1963 does not authorize the relief requested, however, because the property at issue here has not been, and will never apparently be, forfeited.  The Carpathia servers were not seized by the United States nor are they subject to the Court's restraining orders – those orders covered specific assets and real property of named individuals and entities located in the United States and in various locations overseas.  No restraining order governs the Carpathia servers, and the government has not indicated any intent to commence a forfeiture proceeding against Carpathia's property (which was leased by Megaupload and then offered by Megaupload to Mr. Goodwin for his use, subject to Megaupload's terms of service and any other applicable agreement between Megaupload and Mr. Goodwin).  Nor has Mr. Goodwin asserted any specific interest in the assets or real property that are subject to the Court's restraining orders.  Thus, Mr.

---

statutes is substantially similar, if not identical, to the language of Section 1963, Goodwin Br. at 6 n.4, the government here focuses on Section 1963 alone to avoid redundancy.  Some of the caselaw cited in this pleading references other forfeiture statutes which are identical to Section 1963, such as 21 U.S.C. § 853.  *See United States v. Bromwell*, 222 Fed. Appx. 307, 311-12 (4th Cir. 2007) ("We need not address whether 21 U.S.C.A. § 853 now applies rather than 18 U.S.C.A. § 1963 because the result is the same. For the most part, the distinction between 18 U.S.C.A. § 1963 and 21 U.S.C.A. § 853 is without a difference.").

[4] Although Mr. Goodwin styles his motion as a motion for the "return" of his property, the relief he contemplates appears to be using Megaupload's restrained assets to pay for an expert to access the servers, locate, and copy the data that Mr. Goodwin entrusted to Carpathia and Megaupload, and then provide the data to him.  It is unclear to which party the Court would direct such an Order, though Mr. Goodwin's intended target is the government.  Goodwin Br. at 10-11.

Goodwin's claim falls outside the scope of Section 1963(l)(2), because he is not asserting an interest in property "which has been ordered forfeited to the United States." *See United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) ("Section 853 requires more than a showing of a legal interest in the debtor's property. It requires that the interest exist in the property subject to forfeiture.").

Mr. Goodwin recognizes as much, noting, in a footnote, that his property "does not fit [the] definition of property" subject to Section 1963(l).  Goodwin's Br. at 7 n.5.  Mr. Goodwin then asks the Court to create a cause of action, not authorized by the statute, for third parties who "lost rightful property at the hand of government actions." *Id.*  Mr. Goodwin relies on two cases for the proposition that the Court can entertain his motion. *See* Goodwin Br. at 7.  Neither of those cases, however, involves a situation where the third-party claimant lacks any cognizable interest in the property that was actually subject to the forfeiture or restraining order.  In both *United States v. Wu*, 814 F. Supp. 491 (E.D. Va. 1993), and *United States v. Siegel*, 974 F. Supp. 55 (D. Mass. 1997), the claimant asserted a specific interest in the restrained property.  Here, however, Mr. Goodwin has asserted an interest in property that is neither restrained, nor seized, nor subject to forfeiture.  Instead, an apparent consequence of the government's restraint of Megaupload's assets was a termination of the Megaupload service.  No case cited by Mr. Goodwin, however, holds that such an effect can give rise to a claim under Section 1963.  Indeed, the most analogous case law indicates it does not. *See Reckmeyer*, 836 F.2d at 205.

In addition, Mr. Goodwin's position that Section 1963(l) provides jurisdiction to consider his claim at this time is simply incorrect.  Section 1963(i) provides that "no party claiming an interest in property subject to forfeiture may -- . . . (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property

subsequent to the filing of an indictment . . . alleging that the property is subject to forfeiture under this section." It is clear that Congress intended that persons claiming an interest in property subject to forfeiture must wait until after conviction for the ancillary hearing in order to assert an interest in property subject to forfeiture. *Libretti v. United States*, 516 U.S. 29, 44 (1995) (rejecting the notion that courts must engage in a pre-conviction nexus determination as to forfeiture in order to better protect potential third party interests; "Congress has determined that § 853(n) . . . provides the means by which third party rights must be vindicated."); *United States v. Cone,* 627 F.3d 1356, 1358 (11th Cir. 2010) ("Section 853(k) affirmatively bars interference by non-party petitioners outside of the ancillary proceeding"); *United States v. Messino*, 122 F.3d 427, 428 (7th Cir. 1997) (holding that under Sections 853(k) and (n), third parties must wait to challenge the forfeiture action until the court has entered a preliminary order of forfeiture); *see also United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) ("Section 853(n) provides the process for vindicating a third party's interest in forfeited property. The law appears settled that an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property.") (citing Section 853(k) and the Advisory Committee Note to Rule 32.2(b)); *DSI Assocs. LLC v. United States,* 496 F.3d 175, 183 (2d Cir. 2007) (Section 853(k)'s bar on intervention by third parties applies to attempts to intervene pursuant to Rule 24, even though that means that an unsecured creditor, who will lack standing to file a claim in the ancillary proceeding, will be left with no judicial remedy). Congress obviously would not have created a remedy in Section 1963(l) for pre-conviction relief as to property which is not even subject to forfeiture if it intended to defer until after conviction any ability of a third party to seek relief as to property which is actually subject to forfeiture,[5] and this Court should decline Mr.

---

[5] To the extent that the *Wu* case cited by Mr. Goodwin recognized a limited right of a third party

Goodwin's invitation to judicially create such a remedy.

Finally, even if Mr. Goodwin were correct that Section 1963(l) authorizes this motion, Mr. Goodwin has already received all of the relief to which he is entitled. Section 1963(l) simply entitles a third-party claimant with an interest in forfeited property to a hearing before a judge. This Court provided him such a hearing on April 13, 2012, and referred his issues (along with the other parties) to Magistrate Judge Anderson. There is no reason the Court should grant Mr. Goodwin an additional hearing. Even where equitable jurisdiction exists, courts frequently decline to exercise it. *See Matthews v. United States*, 917 F. Supp. 1090, 1101 (E.D. Va. 1996) ("[J]udicial restraint cautions against exercising equitable jurisdiction whenever it exists.").

## B. Federal Rule of Criminal Procedure 41 Does Not Authorize the Requested Relief.

Mr. Goodwin next argues that Federal Rule of Criminal Procedure 41(g) grants this Court jurisdiction to order that the government fund the return of his property. Federal Rule of Criminal Procedure 41(g) states, in relevant part, that a person aggrieved "by a deprivation of property" may move for the property's return.[6] However, the United States is not currently depriving the defendant of his property – the United States does not have possession, custody, or control of any property belonging to the defendant. Even assuming *arguendo* that the United States did at one time possess the property, the Court lacks jurisdiction to award the requested relief, which is, at bottom, money damages.

The exercise of equitable jurisdiction is disfavored unless exceptional circumstances

---

to challenge a forfeiture prior to conviction, that right was short lived. As the Fourth Circuit subsequently made clear: "Third parties claiming an interest in the property have no right to intervene in the criminal proceeding or to receive notice of the forfeiture proceedings before the entry of a preliminary order of forfeiture. *See* 21 U.S.C.A. § 853(k) . . ." *United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009).

[6] Rule 41(g) also authorizes such motion where there is an allegation of an unlawful search and seizure. Mr. Goodwin has made no such allegation here.

exist.  *Matthews*, 917 F. Supp. at 1101; *see also Johnson v. Collins Entertainment Co..*, 199 F.3d 710, 727 (4th Cir. 1999) ("The Supreme Court has rejected the 'expansive view' that equity jurisdiction vests federal courts with 'a general power to grant relief whenever legal remedies are not practical and efficient.'" (quoting *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321-22 (1999)).  In analyzing whether exceptional circumstances exist, a court should look to whether the claimant will suffer irreparable harm and whether an adequate remedy at law exists for him to be made whole.  *Matthews*, 917 F. Supp. at 1101; *see also Chaim v. U.S.*, 692 F. Supp. 2d 461, 469 (D.N.J. 2010) (listing these factors as well as "whether the government showed a callous disregard for the constitutional rights of the movant" and "whether the movant has an individual interest in the property he wants returned.").  Here, Mr. Goodwin meets neither test.

Initially, Mr. Goodwin has not suffered irreparable harm.  The harm he identifies is a potential loss of business and marketing opportunities (with a likely value far less than the costs he would have imposed on someone other than himself to access the data).  However, monetary loss alone is not "irreparable harm."  *See A Helping Hand, LLC v. Baltimore County, MD*, 355 Fed. Appx. 773, 776 (4th Cir. 2009); *Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 120 (4th Cir. 1993); *Strauss v. Peninsula Regional Medical Ctr.*, 86 F.3d 1152, 1996 WL 265928, at *2 (4th Cir. May 20, 1996); *FBR Capital Markets & Co. v. Short*, No. 1:09 CV 1016, 2009 WL 3254458, at *5-*6 (E.D. Va. Oct. 9, 2009).[7]

One reason that monetary loss does not constitute irreparable harm is that Mr. Goodwin

---

[7] The fact that it may take a long time for Mr. Goodwin to recover his losses does not instantly make his harm "irreparable."  Any remedy that must be obtained through litigation is a remedy that will likely take "years."  Moreover, where this litigation delay is not due to any action of the government, it does not weigh in favor of equitable relief.  *See In re Billman*, 915 F.2d 916, 922 (4th Cir. 1990).

has a legal remedy to recover any monetary losses.  For instance, if Megaupload (by failing to maintain its leased servers with data he uploaded) or Carpathia (by terminating Megaupload's lease and choosing not to continue to provide access to the servers) violated a term of service or other contract with Mr. Goodwin, he can sue Megaupload or Carpathia to recover his losses. The existence of a contract-based remedy for Mr. Goodwin is a remedy at law which is sufficient to defeat any argument justifying that the court exercise equity jurisdiction.  *See Orix Credit Alliance, Inc. v. Young Express, Inc.*, 43 Fed. Appx. 650, 656 n. 4 (4th Cir. 2002).  That these remedies may not be the specific remedies Mr. Goodwin wants does not mean they are not sufficient as a matter of law.  *See, e.g.*, *Grupo Mexicano*, 527 U.S. at 321-22 (noting that the lack of a "practical and efficient" legal remedy does not give rise to equity jurisdiction).

Assuming the Court considers the other factors outlined by the district court in *Chaim v. U.S.*, 692 F. Supp. 2d 461 (D.N.J. 2010), Mr. Goodwin's claim still fails.  First, the government did not show a callous disregard for Mr. Goodwin's rights.  A violation of the Fourth Amendment, or some other constitutional right, is a prerequisite for demonstrating a callous disregard for a claimant's right.  *See In Re Hoover's Residence,* No. 1:10 MJ 9, 2010 WL 7351761, at *3 (N.D. W.Va. Dec. 30, 2010).  Typically, the government demonstrates a "callous disregard" for a claimant's rights by wantonly seizing items for which there is no justification, s*ee, e.g.*, *Mesa Valderrama v. U.S.*, 417 F.3d 1189, 1197 (11th Cir. 1989).  Courts have found there was no callous disregard for an individual's rights where the search was conducted pursuant to a lawful search warrant.  S*ee, e.g.*, *Chaim*, 692 F. Supp. 2d at 475; *In re Seizure of a Light Green 2009 Toyota Prius*, No. MC 09-00101, 2009 WL 2143542, at *4 (D. Haw. July 14, 2009); *Labor Force Partners v. U.S.*, No. Civ. S-06-0311, 2006 WL 1328262, at *2 (E.D. Cal. May 16, 2006).

Here, Mr. Goodwin does not argue that the actual search violated his rights – he actually argues the opposite.  Mr. Goodwin claims that the government's *failure to seize* his information led to its abandonment "under circumstances in which it was both inaccessible and potentially subject to destruction."  Goodwin Br. at 8-9.  Instead of "abandoning" his data, he argues that to avoid violating his constitutional rights the government must have (1) provided notice to him and the opportunity to retrieve his data; or (2) secured all data belonging to Megaupload pending the creation of a procedure for the retrieval of property by third parties.  *Id.*  Presumably, such notice would have to be provided to every Megaupload user (of which there were millions), and the government would have been required to secure the approximately 28 Petabytes of servers leased by Megaupload from Carpathia.

Mr. Goodwin cites no law for the proposition that the government violates the Constitution by failing to notify a third party prior to the execution of a search or seizure warrant. Black letter law is just the opposite.  For instance, in this district, search warrants are automatically sealed prior to their execution to prevent notification to any person prior to the execution of the warrant.  *See* E.D. Va. Local Cr. R. 49(B).  Nor does Mr. Goodwin cite any law for the proposition that the government must seize and hold the property of third parties (that the third party himself states is not evidence of a crime) located at a place being searched pending the resolution of third parties' claims to the property.[8]  No such requirement exists, and there is

---

[8] Mr. Goodwin's argument that, to be reasonable, the government must seize the property of innocent third parties pending resolution of their claims to access that property expressly contradicts the argument made in the last section of his brief.  In the final section, Mr. Goodwin implores the Court not to ignore third-party interests in seizure cases, and quotes the Ninth Circuit regarding the risk to privacy from broad government searches that seize innocent users' data.  *See* Goodwin Br. at 11-12.  Here, the government attempted to accommodate those concerns *by not seizing Mr. Goodwin's data*.  However, he alleges this, too, violated the Fourth Amendment and that the government should have seized the data and held it for him.  These positions are not consistent.

no basis for creating one simply because the property at issue is in digital form.

Mr. Goodwin's final argument is that, because he believes that his loss of data can be blamed on the government, the government has an obligation to make Mr. Goodwin whole, regardless of any other remedy he possesses against any other party.  It is true that, where the government has improperly disposed of a person's property, or destroyed it, a court does not lose jurisdiction to hear a Rule 41 claim.[9]  *See United States. v. Chambers*, 192 F.3d 374,375 (3d Cir. 1999).  But that is not tantamount to saying that the government is liable to any party who claims to be collaterally aggrieved by the execution of a search warrant.  No court has ever exercised jurisdiction over a claim of the type here – a Rule 41 motion for return of property where the government *never seized the property at issue*.  And it is equally clear that the only relief a court may award under Rule 41(g) is the return of the property in its possession. Where the federal government never had possession of the property in question, denial of a Rule 41(g) motion is proper.  *See United States v. Obi*, 100 Fed. Appx. 498, 499 (6th Cir. 2004); *see also United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) ("Rule 41(g) permits only the recovery of property in the possession of the Government. Therefore, if the Government no longer possesses the property at issue, no relief is available under Rule 41(g)."); *Okoro v. Callaghan*, 324 F.3d 488, 492 (7th Cir. 2003)("The fact that the government doesn't have [the property sought in a Rule 41(g) motion] is ordinarily a conclusive ground for denial of the motion.").

No matter the merits of Mr. Goodwin's argument, any such claim that the government must make him whole is plainly barred in the Fourth Circuit.  Congress has not expressly waived the United States' sovereign immunity against suits for money damages pursuant to Federal Rule of Criminal Procedure 41(g).  Thus, the Court lacks jurisdiction to order the government to

---

[9] As discussed above, a Rule 41 claim brought subsequent to an indictment is barred by 21 U.S.C. § 853(k)(2).

provide the funds to Mr. Goodwin to make him whole.  *See United States v. Jones*, 225 F.3d 468, 469-70 (4th Cir. 2000) (sovereign immunity deprives court of jurisdiction to award damages under Rule 41(g) for property destroyed by government); *see also Ordonez v. United States*, ___ F.3d ___, 2012 WL 1921490, *3 (9th Cir. 2012) ("The Rule by its very terms provides only for the 'return [of] the property to the movant,' nothing more. Fed. R. Crim. P. 41(g). There is no alternative provision for money damages, and such a provision cannot be implied.").  Other circuits have reiterated this very point, a point which Mr. Goodwin seeks to ignore: "Rule 41(e) contains no such waiver [of sovereign immunity], and we may not use general equitable principles to fill the gap."  *United States v. Hall,* 269 F.3d 940, 943 (8th Cir.2001); *see also Ordonez*, 2012 WL 1921490, at *3 & n. 2 (noting that eight circuits have held that money damages may not be awarded in a Rule 41(g) action and citing relevant caselaw).

One final point requires brief comment.  Mr. Goodwin, understandably, is frustrated by his inability to access data that he entrusted to Megaupload and Carpathia.  However, Mr. Goodwin's proposed solution is to have the government bear the financial cost of restoring his data, even if that means releasing assets of the defendants which are subject to mandatory forfeiture.  Twenty-three years ago, the Supreme Court made clear that a criminal defendant does not have a right to use someone else's money to finance his defense.

> A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice. A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended. The money, though in his possession, is not rightfully his; the Government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the defendant to use them to pay for his defense. "[N]o lawyer, in any case, ... has the right to ... accept stolen property, or ... ransom money, in payment of a fee. ...

12

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989).  If a defendant does not have a right to use forfeitable assets to hire counsel, then surely a third party, who cannot even assert an interest in the restrained funds he seeks to expend, has no right to use forfeitable assets to try to ameliorate alleged financial injury associated with a commercial transaction.[10] The two situations are hardly comparable, yet the Court found no right in the case of a defendant even when a Constitutional right was at stake.

## III.    CONCLUSION

Because Mr. Goodwin has not demonstrated any of the factors necessary to justify the

---

[10]  Forfeiture is mandatory, and forfeited property belongs to the United States.  *See., e.g.,* 18 U.S.C. §1963(a) ("Whoever violates any provision of section 1962 of this chapter . . . ***shall forfeit to the United States***, irrespective of any provision of State law . . .") (emphasis added). Restitution is likewise mandatory for most federal crimes including those charged in the indictment in this case.  18 U.S.C. §3663A(a)(1) ("Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court ***shall order,*** in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . .") (emphasis added).  These mandatory sentencing provisions are not mutually exclusive.  *See, e.g., United States v. Pescatore*, 637 F.3d 128, 137 (2nd Cir. 2011) (forfeiture and restitution are separate remedies with different purposes; defendant was not entitled to have the Government apply $2.5 million in forfeited funds to a $3 million restitution order); *United States v. McGinty*, 610 F.3d 1242, 1247-48 (10th Cir. 2010) (forfeiture and restitution serve different purposes and both are mandatory; ordering defendant to pay a money judgment equal to the proceeds of his offense and to pay restitution to his victim is not unfair)(collecting cases).  However, when a defendant ordered to pay restitution lacks the resources to do so and assets have been forfeited to the United States, the government may, and typically does, restore the forfeited property to the victim named in a restitution order.  *See, e.g.,* 21 U.S.C. §853(i) (Attorney General is authorized to grant petitions for mitigation or remission of forfeiture and to restore forfeited property to victims); *Pescatore*, 637 F.3d at 138 ("[T]he DOJ Manual dealing with forfeitures and with compensation for crime victims indicates that discretion may be exercised to transfer forfeited assets to victims 'where ... other property is not available to satisfy the order of restitution[.]'"); *United States v. Drier*, No. 09-CR-085, 2010 U.S. Dist. LEXIS 33249, at *1 (S.D.N.Y. Mar. 24, 2010) (noting Attorney General's authority to restore forfeited assets to victims); *United States v. O'Connor*, 321 F. Supp. 2d 722, 729-30 (E.D. Va. 2004) (holding that although defendant has no right to use forfeited funds to satisfy a restitution order, the government may, pursuant to 21 U.S.C. § 853(i)(1), ask the court to apply the forfeited funds to restitution for benefit of the victims).  Accordingly, any diminution of assets subject to forfeiture typically comes out of the victims' pockets at the end of the forfeiture process.

exercise of this Court's equity jurisdiction, his motion should be denied.  Because Mr. Goodwin

has already had an opportunity to raise his claims to both this Court and Judge Anderson, his

motion should be denied on the papers.

                                               Respectfully submitted,

                                               Neil H. MacBride
                                               United States Attorney

By:          /s/
                                               Andrew Peterson
                                             Jay V. Prabhu
                                             Lindsay A. Kelly
                                             Ryan K. Dickey
                                             G. Wingate Grant
                                             Assistant United States Attorneys

                                             Lanny A. Breuer
                                             Assistant Attorney General
                                             U.S. Department of Justice
                                             Criminal Division

                                             Glenn C. Alexander
                                           Trial Attorney
                                             U.S. Department of Justice
                                             Computer Crime & Intellectual Property Section

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2012, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF)

to:

Christopher L. Harlow, Esq.
SNR Denton US LLP
*Counsel for Carpathia Hosting, Inc.*
1301 K Street NW, Suite 600, East Tower
Washington, DC 20005
Tele:  (202) 408-6816
christopher.harlow@snrdenton.com

John S. Davis, Esq.
Williams Mullen
*Counsel for Kyle Goodwin*
200 South 10th Street, 16th Floor
Richmond, VA 23219
Tele:  (804) 420-6296
jsdavis@williamsmullen.com

Julie Moore Carpenter, Esq.
Jenner & Block LLP
*Counsel for Motion Picture Association
     of America*
1099 New York Ave, NW, Suite 900
Washington, DC 20001-4412
Tele:  (202) 639-6000
jcarpenter@jenner.com

Ira P. Rothken, Esq.
The Rothken Law Firm
*Counsel for The Rothken Law Firm*
3 Hamilton Landing, Suite 280
Novato, CA 94949
Tele:  (415) 924-4250
ira@techfirm.net

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
*Counsel for Quinn Emanuel Urquhart &
     Sullivan LLP*
1299 Pennsylvania Avenue NW, Suite 825
Washington, DC 20004
Tele:  (202) 538-8000
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com

　　　/s/＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Andrew Peterson
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tele: 703-299-3700
Fax: 703-299-3981