IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | The Honorable Liam O'Grady |
| | ) | |
| KIM DOTCOM, et al., | ) | |
| | ) | Criminal No. 1:12-CR-3 |
| Defendants | ) | |
| | ) | |

**REBUTTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION OF QUINN EMANUEL URQUHART & SULLIVAN LLP,
THE ROTHKEN LAW FIRM, AND CRAIG C. REILLY, ESQ. FOR LEAVE
TO ENTER LIMITED AND SPECIAL APPEARANCES ON BEHALF OF
MEGAUPLOAD LIMITED, KIM DOTCOM, MATHIAS ORTMANN,
BRAM VAN DER KOLK & FINN BATATO AND TO EXCEED PAGE LIMIT**

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA 94949
(415) 924-4250

*(Counsel for Defendants Megaupload Ltd & Kim Dotcom)*


Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, VA 22314
(703) 549-5354

*(Counsel for Defendants Mathias Ortmann,
Bram Van der Kolk & Finn Batato)*


June 21, 2012

William A. Burck
Derek L. Shaffer
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000


Carey R. Ramos
Robert L. Raskopf
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, N.Y. 10010
(212) 849-7000


*(Counsel for Defendants Megaupload Ltd &
Kim Dotcom)*

The Government has frozen all of Defendants' assets based on scant evidence of direct copyright infringement and problematic theories of criminal liability for secondary infringement —which the Government casts as a conspiracy by Megaupload to induce millions of unknown customers to upload unidentified infringing material. The Government has frozen these assets, by its own admission, without serving a key defendant, the company itself. Defendants wish simply to exercise their rights to contest the Government's actions, without waiving jurisdictional defenses that are among their rights. Yet the Government continues to urge this Court not to permit the undersigned to so much as argue on behalf of Defendants.

Given that the Government's opposition largely repeats (often verbatim) the same arguments earlier advanced, the undersigned endeavor not to repeat themselves here and instead incorporate by reference prior rejoinder on behalf of Defendants Megaupload and Kim Dotcom by Quinn Emanuel Urquhart & Sullivan LLP and the Rothken Law Firm.[1] There is, however, one point on which there is now general agreement—namely, that counsel's motion for limited appearance may be decided based on the pleadings. Of course, Defendants part ways with the Government in maintaining that the Court should grant their counsels' motion for limited appearance and then proceed to the merits of dismissal and *Farmer* relief.

As for the Government's request that the June 29, 2012 hearing date be adjourned, Defendants object. This Court might use the currently scheduled date instead to hear oral arguments on Defendants' substantive motions. The Government belatedly contests this Court's setting of a hearing on June 29th, on the ground that "multiple members of the prosecution team

---

[1] Defendants Mathias Ortmann, Bram van der Kolk and Finn Batato are in full agreement with the arguments counsel for Megaupload and Mr. Dotcom have made in prior pleadings. Those points, as relevant here, are incorporated by reference.

are expected to be out of the district" on that date.  D.E. 104 at 2.[2]  The Government made no such objection when the hearing date was set by the Court on May 30, 2012, *see* D.E. 97,[3] or in its June 8th response to the motion for release of property filed by Mr. Goodwin.  *See* D.E. 99. Nor did the Government at any time prior to filing its instant opposition contact the undersigned to confer about scheduling issues and propose alternative hearing dates.

In these circumstances, the Court has every reason to take the same stance that the High Court of New Zealand did this past week when it denied a similar request for postponement by the United States (specifically of the Government's 21-day deadline for producing materials and information in support of its allegations against Defendants), relying upon the "ample means" and staff that the United States has available to respond to such requests.  *See In the Matter of App. for Jud. Review Between the U.S. and Kim Dotcom, Finn Batato, Mathias Ortmann & Bram van der Kolk*, Res. Judg. of Winkelmann J ¶ 24 (High Ct. of New Zealand June 15, 2012) (Exhibit 1).  Certainly the Government has "ample means" to participate at a June 29th hearing.

The Government should not be permitted to forestall adjudication by seeking postponement of the June 29th hearing, followed by "at least two weeks to respond to any underlying motions" "[i]n the event the Court grants any part of Defense Counsel's Motion to Enter Limited Appearance."  D.E. 104 at 2.  Again, to quote the High Court of New Zealand, the United States "must already have assembled what it considered relevant material before it sought the approval of two grand juries for the laying of the indictment and the amended indictment." Exhibit 1 ¶ 24.  Now, six months later, the Government should not need additional time to substantiate the basic premises of its prosecution, which has already laid waste to Defendants'

---

[2]  All citations to "D.E." refer to Docket Entries in Case No. 1:12-CR-3.
[3]  The June 29, 2012 hearing date was requested by interested-party Kyle Goodwin on May 28th.  *See* D.E. 92.

business, deprived them of tens of millions of dollars in assets along with their ability to earn a living, and branded them as criminals whose liberty is confined.

In the spirit of compromise, however, Defendants suggest that the June 29th date be used to hear oral arguments on Megaupload's motion to dismiss for the Government's failure to serve the company. The Government has conceded that it has not served Megaupload, nor can it under the letter of the rules; accordingly, there is no factual issue in dispute. Moreover, the Government's brief addresses Megaupload's service arguments on the merits, urging the Court to hold that Rule 4 does not mean what it says in requiring mailing of a summons to a foreign company's U.S. address. Defendants respectfully submit that, at least as to Megaupload's motion to dismiss, the merits have been fully briefed such that oral argument on June 29th would be timely and appropriate. Defendants would have no objection to setting a later date for oral argument on their *Farmer* motion, nor do they object to the Government's request for two weeks from any grant of a limited appearance to file a more meaningful *Farmer* response.

Defendants respectfully request that this Court (i) maintain the June 29th hearing date for oral argument on either the motion for limited appearance and/or Megaupload's motion to dismiss, and (ii) set oral argument on the *Farmer* motion for a date in the second half of July so as to provide the parties with adequate time for further briefing (including Defendants' prompt rebuttal to the Government's proposed further *Farmer* opposition).[4]

---

[4] Notably, the issues raised by Mr. Goodwin are antecedent to those raised by Defendants. Unless and until a framework has been established and funds have been made available for Defendants to access their own Megaupload servers, no larger solution encompassing the interests of third-party users can be achieved. As stated in open court, although Megaupload strongly supports consumer data access, substantial questions must be resolved in connection with privacy concerns (*i.e.*, compliance with the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510–2522), technical and legal hurdles surrounding data handling, and the costs, propriety and benefits of appointing a receiver; these should be addressed only after fundamental questions associated with jurisdiction and release of funds have

## I.   THE *PRO HAC VICE* RULES DO NOT SAP THIS COURT'S INHERENT AUTHORITY TO PERMIT A LIMITED APPEARANCE.

The Government continues to invoke Local Rule 57.4(D)(3) as though it extinguishes this Court's discretion to permit limited or special appearances.  But Rule 57.4(D)(3) requires merely that any notice or pleading filed by *pro hac* counsel also be signed by a locally admitted attorney who has the same authority to represent the client as does foreign counsel.  *See* LOCAL CRIM. R. 57.4(D)(3).  The Rule does not purport to diminish the Court's longstanding, inherent authority to regulate attorneys appearing before it.  *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).[5]  Indeed, this Court implicitly rejected the Government's position when it granted undersigned counsel leave to make a limited appearance to argue for server preservation.  *See* D.E. 84 at 27:21-23 ("I am going to allow you to appear … on a limited basis.").

## II.   DEFENDANTS CAN AND SHOULD BE HEARD FROM PRE-APPEARANCE.

### A.   The Government's Reliance On Rule 43 Is Misplaced.

The Government again maintains that Federal Rule of Criminal Procedure 43 bars the courthouse doors to Defendants because they are challenging extradition in New Zealand.  *See* D.E. 104 at 10-11.  Rule 43 itself refutes the Government's position, requiring a criminal defendant's presence only at certain proceedings:  specifically at "the initial appearance, the initial arraignment, and the plea"; at "every trial stage"; and at "sentencing."  *See* FED. R. CRIM. P. 43(a).  It has no application at the *pre-appearance* stage.  Although the Government cites *Lewis v. United States*, 146 U.S. 370, 372 (1892), that case instead addresses a defendant's right

---

first been decided.  To be clear, Defendants and their counsel remain very much committed to addressing the interests of third-party users such as Mr. Goodwin; they need and seek the proposed merits relief for that purpose as well as to mount a full and fair defense.

[5]   *See also United States v. Thomas*, 391 Fed. App'x 321, 322 (4th Cir. 2010); *United States v. Moya-Gomez*, 860 F.2d 706, 717 (7th Cir. 1988); *United States v. Calor*, 172 F. Supp. 2d 900, 905 (E.D. Ky. 2001); *United States v. Spatola*, No. Cr 94-1238(S1)(RJD), 1996 WL 705271, at *1 (E.D.N.Y. Nov. 21, 1996).

to be present *at trial*. In any event, the broad *dicta* in *Lewis* "that a trial can never continue in the defendant's absence ha[s] been expressly rejected." *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (citing *Diaz v. United States*, 223 U.S. 442 (1912)).

### B.    The Fugitive Disentitlement Doctrine Finds No Application Here.

The Government's arguments relating to the fugitive disentitlement doctrine, *see* D.E. 104 at 7-9, are equally out of place. The "fugitive" disentitlement doctrine does not apply to this case by its very terms, and, even if it did, this Court retains discretion to reject such a "harsh sanction." *See Degen v. United States*, 517 U.S. 820, 827 (1996).

The statute on which the Government relies, *see* D.E. 104 at 8 n.9, confirms its inapplicability here. By its terms, 28 U.S.C. § 2466 applies only to "any related *civil* forfeiture action or a claim in *third party* proceedings." (emphasis added). This case falls under neither heading. Rather, it involves *criminal* forfeiture of the assets of *these Defendants* as actual, direct parties. It is only fitting and fair for these Defendants, while proceeding before the courts that have frozen their assets, also to contest the claimed warrant for criminal forfeiture at its source.

To call these Defendants "fugitives" where the Government has taken no action to so much as serve one of them and where the remainder are simply invoking their rights and the rule of law in their home countries, is to deny that term any fair meaning.[6] A fugitive is "[a] person

---

[6]    The cases relied on by the Government, *see* D.E. 104 at 13-14 & n.17, are inapposite; these Defendants differ from the foreign nationals in those cases because Defendants resided overseas, where they were arrested overseas at the United States' behest, and made no effort to evade authorities. *See, e.g.*, *Maydak v. U.S. Dep't of Educ.*, 150 Fed. App'x 136, 136 (3d Cir. 2005) (*per curiam*) (defendant, a U.S. citizen, fled to Canada while on supervised release); *In re Assets of Martin*, 1 F.3d 1351, 1356 (3d Cir. 1993) (defendant failed to surrender to Russian authorities after learning of indictment); *Catino*, 735 F.2d at 720 (defendant, a U.S. citizen, fled to France while on bail pending appeal); *United States v. Gayatrinath*, No. 02 Cr. 673(RMB), 2011 WL 873154, at *1-2 (S.D.N.Y. Mar. 11, 2011) (defendant, a U.S. citizen, fled to India a week before criminal complaint was filed); *In re Grand Jury Subpoena*s, 179 F. Supp. 2d 270, 287 (S.D.N.Y. 2001) (defendants, U.S. citizens, fled to Spain and Israel "while their lawyers

who flees or escapes; a refugee." BLACK'S LAW DICTIONARY 694 (8th ed. 2004). Megaupload is a corporation that cannot "flee" and has not even been confronted with service of a summons (or attempted service of a summons) from which it might flee; as for the individual Defendants, they have not intentionally departed the United States in anticipation or in the wake of criminal prosecution. The Seventh Circuit recently recognized these distinctions in *In re Hijazi*, 589 F.3d 401, 412 (7th Cir. 2009), holding the fugitive disentitlement doctrine inapplicable to a defendant who "did not flee from the jurisdiction or from any restraints placed upon him[;]" "own[ed] no property in the United States[;]" and "surrendered himself to the Kuwaiti authorities" when indicted outside the country.[7] Much the same holds for the individual Defendants in this case, who are not U.S. citizens; do not own property in the United States; and were not in the United States around the time of their indictment. Moreover, all of the individual Defendants are currently in the custody of the United States' representatives—specifically, the nations of Hong Kong, New Zealand, and the Netherlands—and were arrested at the U.S. Government's request without attempting to flee. To nonetheless brand them "fugitives" would be to take issue either with residence abroad or else with resort to the courts and rule of law in a cooperating nation.

Even if these Defendants were susceptible to being deemed "fugitives," this Court should exercise its discretion to withhold such a "harsh sanction." The Fourth Circuit, like sister circuits, recognizes that "[a] court has discretion in determining whether to apply the [fugitive

---

were negotiating a resolution of the impending criminal charges"); *United States v. Nabepanha*, 200 F.R.D. 480, 481-82 (S.D. Fla. 2001) (defendant relocated to Israel from the United States prior to being indicted and "fail[ed] to surrender himself to authorities once he learned of charges against him").

[7]   *See also United States v. Kashamu*, No. 94 CR 172, 2010 WL 2836727, at *3 (N.D. Ill. July 15, 2010); *Maluf v. Vance*, No. 100807/2010, 2012 WL 1521859, at *3 (N.Y. Sup. Ct. Apr. 24, 2012); *United States v. Nabepanha*, 200 F.R.D. 480, 482 (S.D. Fla. 2001) (cited in D.E. 104 at 14 n.17); *United States v. Tucor Int'l, Inc.*, No. CR-92-0425 DLJ, slip op. at 5 (N.D. Cal. Oct. 20, 1997) (attached as D.E. 96-3).

disentitlement] doctrine, which is equitable rather than jurisdictional in nature." *Jaffe v. Accredited Sur. & Cas. Co.*, 294 F.3d 584, 595 (4th Cir. 2002) (citing *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970)); *see also United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 886 (9th Cir. 2009). The Supreme Court likewise considers the fugitive disentitlement doctrine a "blunt instrument" and is "most severe[,]" such that its indiscriminate application "could disserve the dignitary purposes for which it is invoked." *Degen*, 517 U.S. at 828. Contrary to the Government's account, this is not a deserving case for slamming the courthouse doors shut.

The Government reached out to foreign jurisdictions to freeze Defendants' assets, obliterate Megaupload's global business, and arrest the individual Defendants in their home countries. Despite failing to so much as serve Megaupload, the Government now argues that "the fugitive disentitlement doctrine prevents defendants from resisting extradition and *hiring Defense Counsel in the United States*." D.E. 104 at 14 (emphasis added). The Government so argues at the same time it proclaims concern that Defendants' chosen counsel would violate their rights to effective counsel (due to alleged conflicts). The inconsistency of the Government's position is evident. These Defendants are not fugitives from justice; they are seekers of justice whose whereabouts are well known and whose legal entitlements are well established.

## III.   NO CONFLICT EXISTS THAT WOULD PRECLUDE LIMITED APPEARANCE.

The Government renews its contention that Quinn Emanuel should not be allowed to enter a limited appearance "until all potential conflict situations are resolved," citing concerns that Defendants would not receive "constitutionally sufficient representation."[8] D.E. 104 at 6. Of course, the right to retain counsel *of choice* has a "constitutional dimension," and "should not be unnecessarily obstructed by the court." *United States v. Cunningham*, 672 F.2d 1064, 1070

---

[8]   The undersigned respectfully incorporate by reference the arguments contained in their Rebuttal Brief filed on April 12, 2012 (D.E. 79) and offer the following additional arguments.

(2d Cir. 1982).  Because disqualification of defense counsel is "a measure of last resort," *United States v. Gearhart*, 576 F.3d 459, 464 (7th Cir. 2009), the Court should be wary of any attempts by the Government "to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side[,]" *Wheat v. United States*, 486 U.S. 153, 163 (1988).  *Accord Gearhart*, 576 F.3d at 464 ("'the government bears a heavy burden of establishing that disqualification is justified.'").

When a disqualifying conflict is alleged, the Court must first determine whether the alleged conflict is actual as opposed to perceived, or presents a potential conflict.  *See United States v. Stein*, 410 F. Supp. 2d 316, 323-24 (S.D.N.Y. 2006).  Only if the Court determines that there is an actual or a potential conflict should it "investigate further... advise the defendant personally, and... receive a knowing waiver if that is the expressed wish of the defendant." *United States v. Tatum*, 943 F.2d 370, 379 (4th Cir. 1991).  Moreover, asserted conflicts must be more than hypothetical to warrant inquiry.  *See Aetna Casualty & Surety Co. v. United States*, 570 F.2d 1197 (4th Cir. 1978) (the mere possibility that co-defendants would try to cast blame on each other was not sufficient to generate an actual conflict of interest).

The conflicts alleged by the Government here are too theoretical and attenuated to occasion further inquiry.[9]  Indeed, the Government's cited concern about possible "misuse of confidential attorney-client information gained in the course of representing other clients," D.E. 104 at 8, rings hollow.  The defense of this case—and, specifically, resolution of Defendants'

---

[9]   Although the Government acknowledges Defendants' right to counsel, the practical upshot of its position would imperil that right.  We have already noted, without refutation, that the Government's putative basis for disqualifying Quinn Emanuel stands to disqualify any law firm with requisite resources and experience to handle this case.  In a case such as this, where disqualification would deny defendants the ability to hire competent counsel, the "practical consideration" of the parties' "ability to secure alternative representation" should be paramount. *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146-47 (4th Cir. 1992) (reversing district court's disqualification of counsel).  The Government offers no substantive answer on this point.

- 8 -

instant proposed motions—will revolve around the inapplicability of civil copyright doctrines to the criminal sphere; the lack of extraterritorial reach of the statutes in question; and the lawfulness and good faith with which Defendants ran their site—not challenging any copyright holder's ownership of intellectual property rights.  The Government does not explain how addressing any issue actually perceived would pose a disqualifying conflict.

To the extent that the Government seeks to disqualify undersigned counsel based on potential testimony, then the Government should be required to proffer that testimony so that the Court may determine its admissibility.  *See Cunningham*, 672 F.2d at 1075-76 (ruling on admissibility may obviate the need for defense counsel testimony).  For example, the Government argues that Quinn Emanuel should be disqualified because it represents YouTube, Inc. and YouTube, LLC, representatives of which the Government intends to call during its case-in-chief.  D.E. 104 at 7.  But the Government stops short of specifying why YouTube would testify, much less how representation of YouTube and of Defendants might conflict.

The Superseding Indictment suggests that testimony from YouTube would do little more than provide historical context and would, therefore, have little probative value as to the alleged crimes.[10]  *See* D.E. 34 ¶ 63 (alleging that Defendants reproduced copyrighted works from third-party websites, including YouTube, to "create the false impression that Megavideo.com hosted primarily user generated content instead of copyright-infringing content.").  Only if the Government clarifies how YouTube's testimony will substantiate its charges and, significantly,

---

[10]   The same holds for the Government's suggestion that it may rely on witnesses from other companies in its case-in-chief.  The Government indicates that it "*will likely* call representatives of the remaining companies … or in the alternative *may* offer into evidence documentation from these companies for the purpose of establishing the existence of copyrights . … " D.E. 104 at 8 (emphasis added).  That the Government remains uncertain whether it will present such evidence confirms that the evidence is tangential at best.  Regardless, it is doubtful that the existence of copyrights will be in dispute.

how YouTube's theoretical role in this case conflicts with Quinn Emanuel's limited appearance in this case, might the Court determine whether such testimony poses a conflict that warrants further inquiry. Defendants' "Sixth Amendment right to be represented by counsel of [their] own choice is too important to be denied on the basis of a mere, though substantial possibility[]" that counsel's prior client *might* testify in the future, and that counsel's ability to cross-examine that testimony *might* be compromised.[11] *Id.* at 1075.

Even assuming *arguendo* that the Government's theoretical conflicts might ripen down the road, the conflicts are rendered moot by the involvement of attorney Ira Rothken, who is not affiliated with Quinn Emanuel. It is standard procedure in criminal cases to permit unaffiliated co-counsel to cross-examine witnesses whose testimony may pose potential conflicts. *See, e.g.*, *United States v. White Buck Coal Co.*, No. 2:06-00114, 2007 WL 130322, at * 14 (S.D. W. Va. Jan. 16, 2007); *United States v. Lebed*, Nos. CRIM.A.05-362-01, CRIM.A.05-362-022005, 2005 WL 1971877, at *8 (E.D. Pa. Aug. 12, 2005); *see also Chandler v. French*, 252 F. Supp. 2d 219, 236 (M.D.N.C. 2003) (denying habeas petition predicated on putative conflict where co-counsel cross-examined relevant witness); Transcript of February 2, 2011 Motions Hearing in *United States v. Clemens*, No. 1:10-cr-223-RBW (D.D.C.) at 3-6 (permitting defendant's chosen counsel to represent him even though former client would testify against him, where the defendant waived conflict and unconflicted counsel could cross-examine) (Exhibit 2).

The Government also mistakenly asserts that Quinn Emanuel proposes to represent "Defendants Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram van der Kolk and Finn

---

[11]   The Government's attempt to disqualify Quinn Emanuel because the assets it seeks to have released via Defendants' proposed *Farmer* motion "may eventually be restored to victims—including possibly [] current and former Quinn Emanuel clients[,]" D.E. 104 at 8—lacks force. If Defendants succeed in obtaining the release of their funds, it will be because the funds are not tainted and should not have been seized in the first place.

Batato in this matter." D.E. 104 at 7. The Government presses this point to disqualify Quinn Emanuel alone. As the undersigned counsels' pleadings spell out in the signature block, the lawyers from Quinn Emanuel and the Rothken Law Firm, contrary to the Government's mistaken premise, do *not* seek to represent multiple individual Defendants; they seek only, as they did before, *see* D.E. 59, to enter a limited appearance on behalf of corporate defendant Megaupload and individual defendant Kim Dotcom. Craig C. Reilly, on the other hand, seeks to enter a limited appearance on behalf of the other individual Defendants—Mathias Ortmann, Bram Van der Kolk and Finn Batato—at this stage of the proceedings.

The undersigned and Defendants remain advised of the Government's conflict concern and ready to proceed as previously submitted. *See* D.E. 79 at 10-14. Independent counsel is available to perform cross-examinations to the extent Quinn Emanuel may become conflicted. This Court should rely on "the good faith and good judgment of defense counsel in determining whether an actual conflict of interest exists." *Samuels v. Commonwealth*, No. 2849–09–3, 2010 WL 4823021, at *5 (Va. Ct. App. Nov. 30, 2010) (citing *United States v. Young*, 644 F.2d 1008 (4th Cir. 1981)); *see also* Virginia Rules of Prof'l Conduct 1.7 cmt. 9 ("Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation.").

Defendants should not face the Hobson's choice of either forgoing their jurisdictional defenses to appear for a conflict-resolution hearing, or else foregoing their constitutional right to counsel of their choice. Such "a mechanical and didactic" conflicts analysis would produce "more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits." *Aetna*, 570 F.2d at 1202 (quoting *Int'l Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2nd Cir. 1975)). The Court has "broad discretion to adopt a remedy other than disqualification," including requiring the Government to supply its proof by alternate

means.  *Gearhart*, 576 F.3d at 465.  The Court may determine for itself whether any colorable conflicts exist before crediting the Government's concerns.  And, if not otherwise satisfied, the Court would have ample authority to fashion some remedy short of making Defendants forego one constitutional right in order to preserve their constitutional right to choose their counsel.

## IV.    MEGAUPLOAD SHOULD BE DISMISSED FOR LACK OF SERVICE.

The Government bears the burden of proving that it has validly served Megaupload.  *United States v. Porter*, No. 03-CR-0129 (CPS), 2008 WL 5377946, at *10 (E.D.N.Y. Dec. 23, 2008).  To state the obvious, the Government has made no such showing here.  Indeed, the Government does not dispute that, because Megaupload has never had an office in the United States, it can *never* be properly served under Federal Rule of Criminal Procedure 4.  Instead, the Government attempts to nullify Rule 4(c)(3)(C)'s mailing requirement, arguing that mere notice to a criminal defendant that an indictment has issued satisfies the rule.  *See* D.E. 104 at 15.

The Government further argues that, to the extent it must comply with Rule 4, it may do so at its leisure.  *See id.*  Having unilaterally destroyed Megaupload's business and seized the entirety of its assets without so much as a hearing, the Government apparently believes it can indefinitely delay initiating proceedings against Megaupload and thereby deny Megaupload any opportunity to clear its name or recover its assets.  Defendants disagree.

### A.    Mere Notice Does Not Substitute For Requisite Service.

Rule 4(c)(3)(C) expressly prescribes that a copy of the summons "must also be mailed to the organization's last known address within the district or to its principal place of business elsewhere in the United States."  FED. R. CRIM. P. 4(c)(3)(C).  The Government has not done so and cannot do so with respect to Megaupload, so it seeks to rewrite—or, rather, erase—the Rule's express mailing requirement.  Specifically, the Government contends that service should

be upheld "so long as the government acts in good faith and the corporate defendant receives sufficient notice of the charges." D.E. 104 at 15. To the extent the Government's formulation is predicated upon its "good faith," it would be dubious for that reason alone. But the Government's formulation, even as stated, is self-invented. The Government cites two cases, *United States v. The Public Warehousing Company K.S.C.* and *United States v. Chitron Electronics Company, Ltd.*, in claimed support. D.E. 104 at 15-16. Each of these cases, however, merely applied the alter-ego doctrine to determine whether service of a criminal summons on a *subsidiary* corporation would constitute service on its *parent*. *See United States v. The Pub. Warehousing Co. K.S.C.* ("*PWC*"), No. 1:09–CR–490–TWT, 2011 WL 1126333, at *8 (N.D. Ga. Mar. 28, 2011); *United States v. Chitron Elecs. Co. Ltd.*, 668 F. Supp. 2d 298, 305-06 (D. Mass. 2009). Neither case remotely suggests that actual notice to a corporate criminal defendant can replace Rule 4's explicit mailing requirement. To the contrary, in both cases the Government mailed a copy of the summons as required by Rule 4(c)(3)(C).[12]

The Government's assertion that actual notice can substitute for Rule 4(c)(3)(C)'s unambiguous mailing requirement contravenes established precedent. Proper service of process—quite apart from actual notice—is a prerequisite to a federal court exercising personal jurisdiction over a criminal defendant. *See Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987). As the United States Supreme Court has cautioned,

> [B]efore a court may exercise personal jurisdiction over a defendant, *there must be more than notice to the defendant* and a constitutionally sufficient relationship between the defendant and the forum. *There also must be a basis for the defendant's amenability to service of summons*. Absent consent, this means there must be authorization for service of summons on the defendant.

---

[12]  *See PWC*, 2011 WL 1126333, at *2; *Chitron*, 668 F. Supp. 2d at 301-02.

*Id.* (emphases added); *see also Harding v. Williams Prop. Co.*, No. 96–2713, 1998 WL 637414, at *4 (4th Cir. Aug. 31, 1998) (Table) (rejecting plaintiff's argument that actual notice suffices absent proper service, because a summons entails "much more than a mere notice."); *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service.... ").

### B.       This Court Should Reject the Government's Attempt to Rewrite Rule 4.

The Government also seeks to rewrite Rule 4(c)(3)(C)'s mailing requirement by arguing that "the provision should be interpreted to require mailing a copy of the summons to the organization's address or to its principal place of business in the United States, only where such an address or place of business exists." D.E. 104 at 15. The Government's reading of Rule 4 fails for several reasons.

*First*, the Government's proposed limitation can be found neither in the text of Rule 4 nor in the Advisory Committee Notes to the Rule. *See* FED. R. CRIM. P. 4. In fact, the notes to Rule 4 directly contradict the Government's interpretation, stating that, "[u]nder the amended rule, *in all cases* in which a summons is being served on an organization, a copy of the summons *must be* mailed to the organization." *See* FED. R. CRIM. P. 4, Committee Notes on Rules—2002 Amendment (emphasis added).

*Second*, comparing Criminal Rule 4(c)(3)(C) with the parallel civil rule confirms that the drafters intended to exempt wholly foreign corporations from service of criminal process. Civil Rule 4(h), unlike its criminal equivalent, has a provision specifically authorizing service on foreign organizational defendants like Megaupload. *See* FED. R. CIV. P. 4(h) ("[A] domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:... at a place not within any judicial district of the United

- 14 -

States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."); *see also* FED. R. CIV. P. 4(f) (setting forth methods of service on individuals abroad, including pursuant to the Hague Convention). Civil Rule 4(h) thus demonstrates that, where the drafters wanted to provide for service of process on a foreign organizational defendant, they well knew how to do it.

Criminal Rule 4, in contrast, contains no comparable provision.   To the contrary, Criminal Rule 4 requires both that a summons be served "*within the jurisdiction of the United States* or anywhere else a federal statute authorizes an arrest," FED. R. CRIM. P. 4(C)(2) (emphasis added), and that a copy of the summons be mailed to the corporate defendant's "last known address *within the district* or to its principal place of business elsewhere *in the United States*," FED. R. CRIM. P. 4(c)(3)(C) (emphasis added).   It stands to reason that the strictures of *criminal* service, as distinct from civil service, with respect to *corporations* (as defined by their legal identity), as distinct from individuals, were designedly confined to those corporations that have some legal presence within the United States.   That a different, more expansive rule *might have been* enacted only confirms that such a rule *was not actually* enacted.

If the drafters' sole objective in imposing the mailing requirement was to ensure that a corporate defendant received sufficient notice, they could have drafted the rule to require that the Government send a copy of the summons to the company's last known address anywhere in the world.   Instead, the drafters specifically mandated that the summons be mailed to an address *within the United States*.   Expanding Criminal Rule 4's reach to allow service on a corporation with no U.S. address, as the Government urges, would directly undermine the drafters' clear intent and would negate Criminal Rule 4's requirement that the summons be mailed to the last known address in the United States.

*Third*, whether the mailing requirement precludes service of criminal process on foreign organizational defendants intentionally (as it appears) or inadvertently, it would be improper for this Court to amend the Rule as the Government requests.   Although Rule 2 affords some flexibility in interpreting ambiguous rules, the Supreme Court has made clear that Rules cannot "be construed to mean something other than what they plainly say." *See, e.g.*, *Carlisle v. United States*, 517 U.S. 416, 424 (1996).   Rule 4(c)(3)(C)'s language is indisputably clear, and the Government's attempt to rewrite it in this Court should be rejected, especially given the extraterritorial and foreign policy implications here at stake.   *See, e.g.*, *Omni*, 484 U.S. at 109; *Lott v. United States*, 367 U.S. 421, 426 n.9 (1961).

## C.   Only By Dismissing The Indictment Can This Court Properly Protect Megaupload's Due Process Rights.

In a further attempt to dispel its service obligations, the Government suggests that— regardless whether the Government has failed to comply with Rule 4's express terms—this Court lacks authority to dismiss the indictment.   *See* D.E. 104 at 15.[13]   Here, the Government points to the text of Rule 4 and argues "Rule 4 does not provide either a deadline for mailing or any remedy for failing to do so, let alone a remedy as severe as dismissal." *Id.*

Megaupload, like all corporate defendants, is entitled to constitutional protections of due process, *see Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 285 (1989), and this Court "may dismiss an indictment as an exercise of [its] inherent supervisory power or to protect a defendant's due process rights," *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983) (internal citations omitted).   It seems beyond dispute that (1) Megaupload has been deprived of its property, has had its reputation tarnished and has had its

---

[13]   This appears to be the Government's position regardless whether it has not bothered to attempt service or is inherently incapable of performing service upon a particular defendant.

business destroyed by the Government's actions in this case; (2) to date, Megaupload has not been afforded a hearing or any other proceeding to contest these deprivations; and (3) absent service of process, this Court altogether lacks jurisdiction over the company, *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Further, as set forth above, *see supra* at Section IV.A. and in Megaupload's proposed Motion to Dismiss, *see* D.E. 96-1, the Government will *never* be able to serve the company with requisite promptness. Criminal proceedings against Megaupload stand never to commence, and, as the Court observed, we "frankly don't know that we are ever going to have a trial in this matter." D.E. 84 at 39:10-11. In these circumstances, where Megaupload is being denied due process by which to clear its name or recoup its property, the indictment against it is due to be dismissed.

## V.   *FARMER* RELIEF IS IMPERATIVE.

Finally, the Government argues that "[a]ny *Farmer* [m]otion [w]ould be [m]eritless" and "has little likelihood of success." D.E. 104 at 16. The argument rings false in all respects.

As an initial matter, the Government mischaracterizes a New Zealand court order as releasing funds with which Defendant Kim Dotcom may fund his legal defense. *See* D.E. 104 at 17. By the Government's account, the New Zealand court's release of funds to Mr. Dotcom was not limited to "living expenses" and, consequently, those funds are available to pay legal expenses. *See id.* But the New Zealand order itself is to the contrary. Specifically, Paragraph 6.1.1 of the New Zealand order provides that the sum of NZD $20,000 per month is to be released "for living expenses." *See* D.E. 76-2 at 2 ¶¶ 6.1.1. The next paragraph orders that Mr. Dotcom will receive NZD $301,758.70, to be released in monthly installments of NZD $40,000. *See id.* ¶ 6.1.2. And the section that immediately follows contemplates "further applications for any matter *other than living expenses*." *See id.* ¶ 6.2 (emphasis added). These provisions

indicate that the released funds are reserved for living expenses and are not meant to be applied towards legal fees.  Only if Mr. Dotcom were the scofflaw the Government paints him as, which he is not, might he take the Government's suggested liberty of using funds released by the New Zealand court specifically to cover his living expenses to instead cover his legal expenses.

The Government further argues, without citation, that, because *Farmer* dealt with *pre*-indictment *civil* forfeiture, as opposed to post-indictment criminal forfeiture, Defendants are not entitled to any *Farmer* determination.  This argument does not square with the constitutional entitlements at issue, nor with the on-point precedents construing them.  Courts in this Circuit have long recognized that *post*-indictment seizures pursuant to *criminal* forfeiture statutes imperil the same Fifth and Sixth Amendment rights, such that 'the Due Process Clause requires a post-restraint, pretrial hearing in order to allow a defendant an attempt to rebut the government's probable cause for forfeiture. . . ."  *United States v. Modi*, 178 F. Supp. 2d 658, 660 (W.D. Va. 2001) (*citing United States v. Farmer*, 274 F. 3d 800, 803-04 (4th Cir. 2001)).[14]

Without engaging this authority, the Government cites *United States v. Monsanto* and *Caplin & Drysdale* for the proposition that there is no exemption to pre-trial seizure that permits a defendant to use forfeitable assets to hire an attorney.  *See* D.E. 104 at 18.  That is beside the point.  Defendants are not requesting that this Court release forfeitable assets; instead, they are requesting only that this Court determine whether the Government in fact has probable cause to

---

[14]  *See also United States v. Harvey*, 814 F.2d 905, 928-929 (4th Cir. 1987); *United States v. Wingerter*, 369 F. Supp. 2d 799, 808 (E.D. Va. 2005); *United States v. Benyo*, 384 F. Supp. 2d 909 (E.D. Va. 2005); *United States v. Ziadeh*, 230 F. Supp. 2d. 702, 704 (E.D. Va. 2002); *United States v. Varner*, No. 5:05CR00025, 2005 U.S. Dist. LEXIS 19754, at *5 (W.D. Va. Sept. 9, 2005).  Other circuits recognize the same need for pretrial determinations of the propriety of criminal forfeitures.  *See, e.g., United States v. E-Gold, Ltd.*, 521 F.3d 411, 415 (D.C. Cir. 2008); *Moya-Gomez*, 860 F.2d at 731; *United States v. Monsanto*, 924 F.2d 1186, 1191 (2nd Cir. 1991); *United States v. Spilotro*, 680 F.2d 612, 616-19 (9th Cir. 1982); *United States v. Holy Land Foundation for Relief and Development*, 493 F.3d 469, 475 (5th Cir. 2007).

deem all of the seized assets forfeitable or whether some assets remain untainted such that they are available for Defendants to hire attorneys of their choice.  Notably, the Supreme Court in *Monsanto* remanded to the Second Circuit on precisely this question of pre-trial forfeiture hearings, 491 U.S. at 615—and the Second Circuit then held that, "after an *ex parte*, post-indictment, pretrial restraining order is entered . . . a pre-trial adversary hearing is required where the question of attorney's fees is implicated."  924 F.2d at 1191.[15]  The procedural posture of this case is no different than that addressed in *Monsanto* and the above-referenced cases; the propriety of a *Farmer* determination should be no more controversial here than it was there.

Finally, the Government offers a purported defense of the supposed merits of its case:

> As charged in the Superseding Indictment, this prosecution does not rely on "concepts from the civil copyright context."  The defendants and their various defense counsel have introduced civil concepts in an attempt to exaggerate the complexity of the criminal charges, and to distract from allegations in the Superseding Indictment that the defendants themselves used the Mega Sites to infringe copyrighted works and knowingly encouraged users to do the same— even going so far as to pay repeat infringers who uploaded and distributed copyright-infringing materials, in this district and elsewhere.

D.E. 104 at 16 n.19.[16]  Tellingly, the Government does not deny that civil concepts of copyright liability upon which it might otherwise rely are wholly inapplicable in this criminal context.  Nor does the Government point to specific proof of any criminal intent to willfully infringe on the

---

[15]   Defendants' entitlement to a pre-trial forfeiture hearing never arose in *Caplin & Drysdale* because that case centered on a forfeiture hearing requested by Caplin & Drysdale, as a third-party law firm, pursuant to its statutory right to such hearing under 21 U.S.C. § 853(n).

[16]   The Government's critique of the New Zealand court's May 29, 2012 decision regarding discovery is unwarranted.  Although the Government may disagree with Judge Harvey's reasoning, it is unfair for it to suggest that the discovery issue was "wrongly" decided or is based on no more than "New Zealand defense counsels' unsupported assertions," D.E. 104 at 16 n.19.  Judge Harvey is a well respected judge and renowned expert on intellectual property whose leading treatise, "internet.law.nz," is now in its third edition.  *See* LexisNexis New Zealand    eBookstore,    internet.law.nz    (3d    ed.    2011), http://www.lexisnexis.com/store/catalog/apac/productdetail.jsp?pageName=relatedProducts&catId=cat230017&prodId=prod740035 (last visited June 20, 2012).

part of Megaupload or even on the part of the "repeat infringers who [allegedly] uploaded and distributed copyright infringing materials."  Instead, the Government appears to be relying upon the mere fact that Defendants maintained a rewards program that compensated users according to the popularity of whatever works they might upload.  And the Government somehow equates proof of that basic rewards program with proof of *intentional* requisitioning by Defendants of users' *intentional* infringement of *known*, *specific* copyrighted works—as though Megaupload's rewards program itself embodies a vast, criminal "copyright infringement for hire" conspiracy.

Such reasoning could lead to criminal allegations against, say, a cell-phone company for rewarding its best customers with free minutes if some subset wind up using their phones to traffic in narcotics or to conduct other criminal enterprises, or against a tennis tournament that pays out prize money if it turns out some number of winners employed performance-enhancing drugs en route to victory.  If this prosecution suffered no other defect (and we have identified several that are independently disabling), it would be crippled by this  *non sequitur*—whereby *criminal intent* to procure copyright infringement of a specific work by a specific user is meant to follow from general provision of rewards for whatever uploads may be favored by other users.

## CONCLUSION

For the foregoing reasons, undersigned counsel respectfully request that this Court enter an Order granting undersigned counsel leave to appear on a limited and special basis in order to argue on behalf of Defendants the merits of the proposed submissions filed with the Court on May 30, 2012, *see* D.E. 96 and the accompanying exhibits, without waiving any of Defendants' objections to this Court's jurisdiction, and that the Court deem the proposed submissions properly filed *nunc pro tunc* as of May 30, 2012.  Undersigned counsel further request that the Court grant them leave to exceed the page limit prescribed by Local Rule 47(F)(3).

Dated: June 21, 2012

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 280
Novato, CA 94949
(415) 924-4250
(415) 924-2905 (fax)
ira@techfirm.net

*(Counsel for Defendants Megaupload
Limited and Kim Dotcom)*

Respectfully submitted,

_____*/s/ Heather H. Martin*_____
William A. Burck
Derek L. Shaffer
Heather H. Martin (VSB # 65694)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1299 Pennsylvania Avenue N.W., Suite 825
Washington, D.C. 20004
(202) 538-8000
(202) 538-8100
williamburck@quinnemanuel.com
derekshaffer@quinnemanuel.com
heathermartin@quinnemanuel.com

Carey R. Ramos
Robert L. Raskopf
Andrew H. Schapiro
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, N.Y.  10010
(212) 849-7000
(212) 849-7100 (fax)
careyramos@quinnemanuel.com
robertraskopf@quinnemanuel.com
andrewschapiro@quinnemanuel.com

*(Counsel for Defendants Megaupload
Limited and Kim Dotcom)*

_____*/s/ Craig C. Reilly* _____
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, VA 22314
(703) 549-5354
(703) 549-2604 (fax)
craig.reilly@ccreillylaw.com

*(Counsel for Defendants Mathias Ortmann,
Bram Van der Kolk & Finn Batato)*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2012, I caused the foregoing REBUTTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF QUINN EMANUEL URQUHART & SULLIVAN LLP, THE ROTHKEN LAW FIRM, AND CRAIG C. REILLY, ESQ. FOR LEAVE TO ENTER LIMITED AND SPECIAL APPEARANCES ON BEHALF OF MEGAUPLOAD LIMITED, KIM DOTCOM, MATHIAS ORTMANN, BRAM VAN DER KOLK & FINN BATATO AND TO EXCEED PAGE LIMIT to be filed and served electronically by the Court's CM/ECF system upon all registered users.

      */s/ Heather H. Martin*
      Heather H. Martin (VSB # 65694)
      QUINN EMANUEL URQUHART &
      SULLIVAN LLP
      1299 Pennsylvania Avenue N.W., Suite 825
      Washington, D.C. 20004
      (202) 538-8000
      (202) 538-8100 (fax)
      heathermartin@quinnemanuel.com