# EXHIBIT 1

**IN THE HIGH COURT OF NEW ZEALAND**
**AUCKLAND REGISTRY**

CIV-2012-404-3026
[2012] NZHC 1353

| | |
|---|---|
| UNDER | the Judicature Amendment Act 1972 |
| IN THE MATTER OF | an application for Judicial Review |
| BETWEEN | THE UNITED STATES OF AMERICA<br>Applicant |
| AND | KIM DOTCOM, FINN BATATO, MATHIAS ORTMANN AND BRAM VAN DER KOLK<br>First Respondents |
| AND | THE DISTRICT COURT AT NORTH SHORE<br>Second Respondent |

Hearing:   6 June 2012

Counsel:   F Sinclair for Applicant
           W Akel and R Woods for first respondent Mr Dotcom
           G J Foley for first respondents Mr Batato, Mr Ortmann and Mr Van Der Kolk

Judgment:  15 June 2012

---

**RESERVED JUDGMENT OF WINKELMANN J**

---

This judgment was delivered by me on 15 June 2012
at 12 pm, pursuant to r 11.5 of the High Court Rules

Registrar/Deputy Registrar

Solicitors: Crown Law, PO Box 2858, Wellington 6140
            Simpson Grierson, Private Bag 92518, Auckland 1141
Counsel:    Paul Davison QC, PO Box 105513, Auckland 1143
            G J Foley, PO Box 105267, Auckland 1143

UNITED STATES OF AMERICA V DOTCOM HC AK CIV-2012-404-3026 [15 June 2012]

[1]     The first respondents were arrested at the request of the United States of America, because of their involvement with the Megaupload business, an internet based business operated through a group of companies.  It is alleged by United States investigating authorities that Megaupload provided on line data storage facilities and those facilities were intended to be, and were used by third parties to unlawfully share copyrighted movies, music and other electronic media.

[2]     The first respondents await an extradition hearing on 6 August 2012.  In anticipation of that hearing they have sought disclosure of documents and materials relating to the issue of whether the United States has a prima facie case against them so that they should be extradited to the United States to face charges there.

[3]     On 29 May 2012, Judge Harvey granted the first respondents' application for disclosure, although in terms more limited than the orders sought.  The applicant was given 21 days to comply with the order for discovery, a period which expires on 19 June 2012.  The United States has applied to judicially review Judge Harvey's decision on the grounds that the disclosure order exceeded the District Court's jurisdiction under the Extradition Act 1999 and the Treaty on Extradition between New Zealand and the United States, 1970.  The relief sought in the judicial review proceedings is the setting aside of the orders made in the judgment and the making of orders as to the applicant's obligations, if any, to give disclosure of any material "consistently with the law and practice of extradition".

[4]     To maintain the status quo pending the hearing of its application for judicial review, the United States now seeks an order that the disclosure ordered by Judge Harvey on 29 May 2012 has no force or effect until further order of this Court.

The first respondents are opposed to the making of interim orders to maintain the status quo. Before it can be determined whether such interim relief should be granted, it is necessary to deal with a preliminary point taken by Mr Akel for Mr Dotcom. Mr Akel argues that the proceeding should be commenced as an appeal rather than by way of judicial review. I heard oral argument from the parties on both issues but gave leave to them to file written submissions which the applicant and Mr Dotcom did over the two days following the hearing of these preliminary issues.

**First issue: Correct Procedure?**

[5] Mr Akel for Mr Dotcom argues that where a right of appeal exists, a remedy by way of review should only be granted in exceptional circumstances. He argues that the applicant has a right of appeal under s 72 of the District Courts Act 1947 so that the proceeding should have been commenced as an appeal. Section 72 provides:

> **72 General right of appeal**
>
> (1) This subsection applies to every decision made by a District Court other than a decision of a kind in respect of which an enactment other than this Act—
>
>     (a) expressly confers a right of appeal; or
>
>     (b) provides expressly that there is no right of appeal.
>
> (2) A party to proceedings in a District Court may appeal to the High Court against the whole or any part of any decision to which subsection (1) applies made by the District Court in or in relation to the proceedings.

[6] Section 22(1)(a) of the Extradition Act 1999 provides that the Court should conduct proceedings under that Act as if they were a committal hearing for an indictable offence. Mr Akel accepts that committal hearings for indictable offences are currently regulated by the Summary Proceedings Act 1957 and that challenges to

decisions during the committal phase are normally dealt with by way of judicial review. However he submits that it is significant that there is no express statutory provision in these Acts precluding the existence of an appeal right for the purposes of s 72.

[7] He also concedes that the definition of "proceeding" in s 2 of the District Courts Act relevantly states:

> **Proceeding** means any application to the Court for the exercise of the civil jurisdiction of the Court other than an interlocutory application.

Nevertheless, he submits that it is the nature of the application, rather than the subject matter of the underlying proceeding which should be determinative for these purposes. He refers to *Mafart v Television New Zealand*.[1] In that case the Supreme Court was concerned with whether an application under the Criminal Proceedings (Search of Court Records) Rules 1974 for access to court documents from a long concluded criminal proceeding, was a civil or criminal proceeding. Elias CJ, Blanchard & McGrath JJ held:

> In all cases it is necessary to look to the substance of the application and the order sought under it. The underlying proceedings, which provide the occasion for the application, are not determinative.

Mr Akel submits that an order for disclosure, made in the context of extradition proceedings, can be viewed as the exercise of the Court's civil jurisdiction.

[8] For the applicant Mr Sinclair says that application for review is the correct procedure by which to challenge the disclosure decision. He argues that because of s 22(1)(a) of the Extradition Act, it is inappropriate to apply the provisions of s 72 of the District Courts Act which deal with civil matters. The Summary Proceedings

---

[1] *Mafart v Television New Zealand Ltd* [2006] NZSC 33, [2006] 3 NZLR 18.

Act 1957 is a code and it is that Act which deals with the committal procedures for indictable offences. There is no ability for a party to appeal against the decisions made during the committal phase and the only appropriate course for the applicant is to ask that the decision be reviewed. He emphasises that Courts have previously entertained judicial review of District Court interlocutory decisions in extradition proceedings.[2] Finally he submits that hearing this matter as a judicial review will expedite any future appeal process with the potential for all the matters before this Court to be consolidated on an appeal. In this he refers to another set of judicial review proceedings before this Court in which the first respondents challenge the validity of warrants issued, the lawfulness of execution of the warrants and subsequent actions taken by the New Zealand Police.[3]

*Discussion*

[9]     The issue of whether a right of appeal exists in these proceedings is not straightforward. There is no appeal right contained in the Extradition Act for applications determined at the pre-hearing stage. Section 22(1) of the Extradition Act provides:

> (a)   The court has the same jurisdiction and powers, and must conduct the proceedings in the same manner, as if the proceedings were a committal hearing of an information for an indictable offence alleged to have been committed within the jurisdiction of New Zealand; and
>
> (b)   The following provisions apply to the proceedings, so far as applicable and with the necessary modifications:
>
>> (i)   Parts 5 and 5A and sections 203, 204, and 206 of the Summary Proceedings Act 1957:
>>
>> (ii)  Parts 1 (except sections 9 to 12), 2, and 4 of the Bail Act 2000:

---

[2]   Citing as an example *Bujak v Republic of Poland* [2007] NZCA 392, [2008] 2 NZLR 604.
[3]   CIV-2012-404-1928.

(iii) the Criminal Procedure (Mentally Impaired Persons) Act 2003

[10] The Summary Proceedings Act also provides no right of appeal for pre-trial determinations, but then, nor does it regulate disclosure obligations in committal proceedings in New Zealand. Those are regulated by the provisions of the Criminal Disclosure Act 2008, which does provide for a right of appeal in respect of an order for disclosure.[4] But, that Act has no application to extradition proceedings.

[11] I have concluded that there is no statutory right of appeal in respect of Judge Harvey's decision. The answer to the argument advanced by Mr Akel is that the application for disclosure is not properly categorised as a civil proceeding and therefore s 72(4) does not apply. Disclosure is sought in the context of quasi-criminal (extradition) proceedings to be conducted as if under the committal provisions of the Summary Proceedings Act 1957. Challenges to decisions in the committal phase would normally proceed by way of judicial review.

[12] Of course even if a right of appeal exists, the Court has a discretion to allow judicial review proceedings to be commenced. Where that discretion will be exercised is very fact dependent, but a relevant factor is the nature of the challenge to the decision and in particular, whether it is appropriate for judicial review. In this case the challenge is as to jurisdiction or is in relation to limited points of law. Relevant portions of the pleading are as follows:

> **Orders wrong in law and principle**
>
> 7. The judgment of the second respondent is wrong in principle in that:
>
>   7.1 It holds that a proceeding under the Extradition Act 1999 is in effect as adversarial as a criminal trial of the alleged

---

[4] Criminal Disclosure Act 2008, s 33.

|   |   |
|---|---|
|   | offending, in that the weight of the applicant's case is to be determined having regard to material that is neither: |
| 7.1.1 | part of the Record of the case; or |
| 7.1.2 | mandated by s 25(2)(b) of the Extradition Act 1999 |
|   | (judgment: paras [224]-[233] and [235]). |
| 7.2 | It is based in part on a determination that disclosure is necessary in this case because the applicant's Record of the Case does not comply with s 25(2)(b) of the Extradition Act (judgment: para [232]). |
| 7.3 | It takes into account an irrelevant consideration, the seizure of the first respondent's computers, as a factor mandating the disclosure order made (judgment: para [230]). |
| 8. | The judgment of the second respondent is wrong in law in that: |
| 8.1 | It holds that selected elements of s 24 of the New Zealand Bill of Rights Act 1990 must apply to an extradition hearing so as to mandate the disclosure ordered (judgment: paragraph [234]). |
| 8.2 | It determines that a proceeding under the Extradition Act 1999 is, without evident limitation, to be equated with a pre-trial process (judgment: para [234]). |
| 8.3 | It proceeds on a mistaken statement of law as to the purpose of an extradition hearing, which would allow the District Court to determine matters of USA law, and decide eligibility according to whether the extradition offences would be proved, rather than could be proved on the basis of the Record of the Case (judgment: paragraphs [232], [234]-[235], [245]-[249], [252]). |
| 8.4 | It identifies the existence of a prima facie case, under the Extradition Act 1999, s 24(2)(d) as the kind of "justiciable issue" that warrants disclosure of material not embodied in the Record of the Case (judgment: paragraph [243]. |
| 8.5 | It holds that the respondents may adduce evidence at the eligibility hearing without first obtaining an oral evidence order under the Summary Proceedings Act 1957, Part V (judgment: paragraph [163]). |
| 9. | As a consequence of these errors of law and principle, the order for disclosure was in excess of the District Court's jurisdiction under the Extradition Act 1999 and the Treaty on Extradition between New Zealand and the United States of America, 1970. |

[13] Although there is some obscurity in the pleading which will need to be addressed, the grounds for review pleaded are well suited to the judicial review

procedure. Given that, it is not likely that the first respondents will be prejudiced by the absence of the power to proceed by way of rehearing, a power which would be present if this were an appeal. For these reasons, even if I am wrong that no right of appeal exists, I am prepared to exercise the discretion to allow the proceedings to continue by way of judicial review.

**Application for interim relief**

[14] Interim relief pending final determination of an application for judicial review is provided for by s 8 of the Judicature Amendment Act 1972. In *Carlton and United Breweries Ltd v Minister of Customs*[5] the Court of Appeal said that the first issue for the Court when considering an application for interim relief was whether relief was reasonably necessary to preserve the position of the applicant. If satisfied of that, the Court has a wide discretion as to whether to grant relief or not in all the circumstances of the case. The strengths and weaknesses of the case are relevant, so too the competing advantages and detriments to the parties of the making of the order, the status quo, the balance of convenience, public repercussions as well as private, and the overall justice position.[6]

[15] The applicant argues that the first respondents will not be prejudiced by the suspension of the 21 day period because the 6 August hearing is unlikely to proceed. The present issues require resolution by this Court, and most likely the Court of Appeal. So too do the issues in the related judicial review proceedings. The first respondents also have access to some documents including email accounts from which messages were intercepted and their own bank records and data from a server

---

[5] *Carlton and United Breweries Ltd v Minister of Customs* [1986] 1 NZLR 429.
[6] *ENZA Ltd v Apple and Pear Export Permits Committee* HC Wellington CP266/00, 18 December 2000 at [17].

network in the United States. The applicant however will be prejudiced because it will have to give disclosure at a time and in a manner that it would not be obliged to under United States law.

[16] The applicant argues that the scope of the order trespasses upon the trial procedures of the requesting country and exceeds the disclosure obligations of that country. As to the extent of the disclosure obligation that would exist under United States law in respect of the criminal proceedings there, Mr Jay Prabhu, an Assistant United States Attorney with the Eastern District of Virginia, has sworn an affidavit in which he says that the obligation on the prosecution to give discovery is triggered when a defendant first makes his appearance before a Court in the United States. The government has an obligation to provide the defendant with access to any items that were obtained from or belong to the defendant, if the items are in the government's possession, custody or control. Those items are subject to inspection, copying or imaging. Any costs of copying or imaging are borne by the defendant, but impecunious defendants may request funding from the trial Court for that purpose. The government also has an obligation to provide the defendants with access to any items that it intends to use in its case in chief at trial or that are material to preparing the defence, if the item is in the government's possession, custody or control. Again those items are subject to inspection, copying or imaging and any costs of imaging or copying are borne by the defendant. Again an impecunious defendant may request funding from the trial Court. Defendants have reciprocal discovery obligations.

[17] He says that the United States is opposed to providing defendants with discovery or disclosure while they are awaiting extradition because they have not

surrendered to the jurisdiction of the United States Court, which is the initial step upon which discovery law in the United States is premised. Moreover, government attorneys do not provide discovery before an attorney enters their appearance in the United States because of the ethical obligations government attorneys have to protect the confidentialities of their client. They cannot know that information provided to private counsel, who claim to represent the defendants in a criminal case but who do not actually make an appearance in the United States, will not be used to the detriment of the government unless they can be sure that private counsel are bound by the appropriate rules and standards of the forum in which the criminal case is to be heard.

[18] As to the strength of the case, the applicants say that there is clearly a serious issue to be tried in these proceedings because no New Zealand Court has previously ordered disclosure in extradition proceedings to such an extent or on such grounds. Ordering disclosure on such terms is inconsistent with New Zealand's obligations under the Treaty, and unless corrected, will place New Zealand well outside the disclosure regimes that operate in comparable jurisdictions.

[19] The applicant says that if the effect of the order is not suspended, it will in any case be quickly in default. This is because the 21 day period for compliance is too brief. The material captured by the order includes intercepted emails that exceed 10 million in number. There are in addition it says, voluminous financial records obtained from a number of different countries. The investigation has included analysis of computer servers rented in United States by the respondents' business, the contents of which are very large.

[20] Moreover the disclosure order does not discriminate between the electronic items seized from the first respondents in New Zealand, and material held by the United States. In an affidavit filed in the related judicial review proceedings, Special Agent Michael Postin of the Federal Bureau of Investigation stated that the New Zealand items alone are estimated to contain more than 150 terabytes of data, and it has previously taken 10 days of full time work to image certain items representing 29 terabytes. The process of providing forensic images of the New Zealand items not already copied will take a minimum of two and a half months. The disclosure order also does not resolve the issue of encryption. The United States is not able to provide readable copies of the items it has imaged while much of the content remains encrypted.

[21] The first respondents submit that they will be prejudiced by any stay as it will inevitably result in an adjournment of the hearing on 6 August 2012. Mr Akel for Mr Dotcom suggests a compromise position. The applicant should commence copying documents and hard drives preparatory to providing disclosure. But should the application for review be successful that disclosure need not be delivered to the first respondents in compliance with Judge Harvey's existing orders.

**Discussion**

[22] The applicants' grounds for seeking the interim relief can be summarised as follows:

    (a)    The respondents will not be prejudiced by the stay;

    (b)    The applicants will be prejudiced by a failure to grant the stay;

  (c)  There is no legal basis upon which that obligation for disclosure can be imposed upon the United States, the case for review is strong; and

  (d)  The applicant cannot comply with the 21 day time limit;

[23] As to the first point; will there be prejudice to the respondents if the stay is granted? It is now more than seven months since the first respondents were arrested. During that time they have been in prison for a period and until relatively recently have been subject to restrictive bail conditions. Two of the first respondents are effectively being detained in a foreign country away from their families and ordinary places of residence. The first respondents have made plain that they wish to keep the 6 August date for the extradition hearing. If a complete stay were issued, that date would inevitably be lost. Whilst it is certainly possible that, given the issues that remain outstanding between the parties, the 6 August 2012 date will be jeopardised, the applicant, as the prosecuting party, must accept an obligation to do all that it can to maintain that date.

[24] As to the issue of prejudice caused to the applicant if it is compelled to give disclosure at this time, there is merit in the point made by the first respondents that the applicant must already have assembled what it considered relevant material before it sought the approval of two grand juries for the laying of the indictment and the amended indictment. There may be additional expense involved for the applicant in compiling the particular disclosure ordered, and that is a factor to be weighed. However, in assessing the weight to be attached to this prejudice I consider relevant that the applicant has ample means, and that the expense involved in copying must be dwarfed by the other costs of an investigative and prosecutorial operation of this

size. It is also relevant that if the extradition proceedings are successful, the time taken to prepare disclosure will not be wasted effort.

[25] As to the timing of disclosure and the risk to the United States Government's confidentialities, I note that Mr Phabhu does not identify any category of information that should not be disclosed. In any case the compromise suggested by Mr Akel removes the difficulty, because all that is contemplated in the interim is preparation of disclosure rather than the provisions of the copies.

[26] As to (c), that is the issue which is the subject matter of the review application. I accept there is a serious issue to be tried as to the extent of any disclosure obligations on the United States. In the absence of full argument it is not possible to conclude that the grounds for review are overwhelming, as the applicants would have it.

[27] As to (d), the time that will be taken to provide the disclosure, the longer the United States delays in commencing copying for disclosure, the longer it will take. The compromise position advocated for by Mr Akel meets the concerns that the 21 day timeframe cannot be complied with. The applicant has raised the issue of encryption. I am told by the first respondents that they seek a clone of the encrypted hard drive, and that the absence of passwords provides no barrier to this. The evidence I have seen from the applicants does not contradict this assertion.

[28] I am therefore satisfied that the appropriate resolution of the competing interests in this case is that suggested by Mr Akel for Mr Dotcom. That is that interim relief be granted to the applicant on the following terms:

1.   The applicant is not required, until further order of the Court, to provide to the first respondents the disclosure copies ordered by Judge Harvey.

2.   This order is made on condition that, if the applicant has not already done so, it must immediately commence preparation of the disclosure that has been ordered.

[29]   I direct that this application for judicial review be allocated an urgent two day fixture. I also direct that the registry organise a telephone conference to discuss any timetable orders that are required prior to the hearing of the application.

Winkelmann J