# EXHIBIT 2

Case 1:12-cr-00003-LO   Document 107-2   Filed 06/21/12   Page 1 of 11 PageID# 1182

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLUMBIA

 3  UNITED STATES OF AMERICA      .
                  Plaintiff,      .
 4  vs.                           .  Docket No. CR 10-223
                                  .
 5  WILLIAM R. CLEMENS,           .  Washington, D.C.
     aka Roger Clemens,           .
 6                                .  February 2, 2011
                  Defendant.      .
 7  . . . . . . . . . . . . . . . .x

 8                 TRANSCRIPT OF MOTIONS HEARING

 9         BEFORE THE HONORABLE JUDGE REGGIE B. WALTON

10                   UNITED STATES DISTRICT JUDGE

11  APPEARANCES:

12  For the Government:   Steven J. Durham, AUSA
                          Daniel P. Butler, AUSA
13                        U.S. ATTORNEY'S OFFICE
                          555 Fourth Street, NW
14                        Washington, D.C. 20530

15
    For the Defendant:    Russell Hardin, Esquire
16                        RUSTY HARDIN & ASSOCIATES, P.C.
                          1401 McKinney Street, Suite 2250
17                        Houston, Texas 77010

18                        Michael Anthony Attanasio, Esquire
                          COOLEY, GODWARD, KRONISH, LLP
19                        4401 Eastgate Mall
                          San Diego, CA 92121
20
    Court Reporter:   Cathryn J. Jones, RPR
21                    Official Court Reporter
                      Room 6521, U.S. District Court
22                    333 Constitution Avenue, N.W.

23
    Proceedings recorded by machine shorthand, transcript
24  produced by computer-aided transcription.

25
```

```
 1                    P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Criminal Action Number 10-223,
 3  United States of America versus Williams R. Clemens.  Daniel
 4  Butler and Steven Durham on behalf of the government and
 5  Rusty Hardin and Michael Attanasio on behalf of the
 6  defendant.
 7            THE COURT:  Good afternoon.
 8            MR. BUTLER:  Good afternoon, Your Honor.
 9            THE COURT:  Mr. Hardin, I was advised by
10  government counsel that at one point either you or someone
11  from your firm was involved in providing legal
12  representation to Mr. Pettitte; is that correct?
13            MR. HARDIN:  It is, Your Honor.
14            THE COURT:  Come up.
15            MR. HARDIN:  You want me to come up?
16            THE COURT:  Yes.  And I assume there was some
17  legal advice that you provided to him?
18            MR. HARDIN:  There were certainly an interview
19  with him in which he relayed certain information.  I'm not
20  trying to be cutesie.  I'm not sure I gave him any advice,
21  but we certain, we had about a six-day attorney/client
22  communication relationship.
23            THE COURT:  And, obviously, I'm not going to ask
24  you regarding what those discussions were about, but the
25  information that you would have acquired from Mr. Pettitte
```

```
 1   was that in any way disseminated to other counsel in this
 2   case who are not a part of your firm?
 3              MR. HARDIN:  No, Your Honor.
 4              THE COURT:  And I assume that you'll be able to
 5   continue to not reveal or certainly anybody from your firm
 6   reveal that information to those other members of the
 7   defense team?
 8              MR. HARDIN:  That's correct, Your Honor.  And as
 9   the Court may be aware Mr. Attanasio was specifically
10   retained by Mr. Clemens and I to try to deal with that
11   particular issue.  And we've made certain that Mr. Attanasio
12   has not been told anything Mr. Pettitte ever told us.  We've
13   had no contact with anybody else in Mr. Attanasio's firm.
14   And his firm is the only other firm connected with this.
15   We've not passed on -- we've arranged within the firm to
16   make sure none of the materials we have dealing with
17   Mr. Pettitte are shared with Mr. Attanasio.
18              THE COURT:  And the government proposes that it
19   would be Mr. Attanasio who would conduct if Mr. Pettitte
20   testifies the cross-examination.  Are you in agreement with
21   that?
22              MR. HARDIN:  I am and have discussed it with my
23   client and he's aware of it and in agreement.  And really
24   this issue we've started foresaw a year and a half ago.  I
25   believe Mr. Attanasio joined the team around January or so
```

```
 1   of 2010, specifically with this issue in mind.
 2           THE COURT:  I don't recognize everybody on the
 3   team.  You're not Mr. Attanasio?
 4           MR. ATTANASIO:  I am, Your Honor.
 5           THE COURT:  Oh, you want to come up, please.
 6           MR. ATTANASIO:  Sure.
 7           THE COURT:  Do you agree with everything that's
 8   been represented about your lack of knowledge regarding any
 9   information that Mr. Pettitte would have provided?
10           MR. ATTANASIO:  Yes, Your Honor.
11           THE COURT:  And you are confident that no
12   information that he provided to Mr. Hardin has been in any
13   way conveyed to you?
14           MR. ATTANASIO:  That's correct, Your Honor.
15           THE COURT:  Therefore, you have no basis for using
16   that information in the cross-examination of Mr. Pettitte if
17   he testified?
18           MR. ATTANASIO:  That is correct, Your Honor.
19           THE COURT:  Mr. Clemens.  As I'm sure you
20   understand I've read the transcript from the prior
21   proceeding down in Texas.  You have a right to have counsel
22   who is free of any potential conflict that might exist
23   between your interests and your rights and somebody else's
24   interests and rights, who that lawyer also had previously
25   represented.  I'm sure you understand that?
```

```
 1                THE DEFENDANT:  I do understand that, Your Honor.
 2                THE COURT:  And, obviously, the problem that can
 3   come up, and this is really theoretical because I don't know
 4   exactly what Mr. Pettitte said to Mr. Hardin or his
 5   associates.  But, for example, if by chance when they talked
 6   to him he did not reveal information that he would testify
 7   about in this trial absent a conflict a lawyer who would
 8   know about the lack of information having been provided
 9   would be able to ask about that in order to suggest that the
10   witness now adding facts that weren't provided previously
11   that that's a suggestion that the witness is not being
12   truthful.  I'm sure you understand that?
13                THE DEFENDANT:  I do, Your Honor.
14                THE COURT:  Or if they acquired some other
15   information that directly conflicted with his testimony they
16   then would be able to use that conflicting information,
17   again to suggest that the witness now is not being truthful.
18   You understand that?
19                THE DEFENDANT:  I do, Your Honor.
20                THE COURT:  And if anything of that nature did
21   occur then obviously Mr. Hardin or his associates can't
22   reveal that to Mr. Attanasio.  And, therefore, he's not
23   going to have that at his disposal if theoretically that
24   type of information would exist.  Do you understand that?
25                THE DEFENDANT:  I understand that, Your Honor.
```

```
 1            THE COURT:  And if by chance that did occur, and
 2   if at some later time that became known to you and that was
 3   not used, you would not be able to raise that as an issue
 4   later as a grounds, if assuming you were convicted in this
 5   case, as a grounds for seeking to have your conviction
 6   overturned.  Do you understand that?
 7            THE DEFENDANT:  I do understand that, Your Honor.
 8            THE COURT:  So you're willing to waive any
 9   potential conflict that might exist in reference to
10   Mr. Hardin as a result of his prior representation of
11   Mr. Pettitte?
12            THE DEFENDANT:  That is correct, Your Honor.
13            THE COURT:  Government have any questions?
14            MR. BUTLER:  No, Your Honor, I think that's fine.
15            THE COURT:  Okay.  There's just one other thing I
16   need to reveal.  I've talked to my staff about it.  And I
17   feel it's not of significance, but I think probably more so
18   from the government's prospective I probably should.  Years
19   ago when I was a city judge was out at an event and somebody
20   said something to me about a defendant in a case that I had.
21   And I didn't think it was of significance and I didn't
22   reveal that.  It came out later.  And the Court of Appeals
23   raked me over the coals for not having revealing it.  So
24   when somebody says anything to me about somebody outside of
25   the courtroom I feel an obligation to let it be know so
```

```
 1   counsel can factor that in as to whether there's going to be
 2   some issue raised about my remaining as the Judge in the
 3   case.
 4             But a couple of months ago I was in my hometown.
 5   I grew up in a small town in western Pennsylvania where Stan
 6   Musial is from and Ken Griffin, Sr., who I grew up with and
 7   played ball with.  And he came to the event we were at.  It
 8   was a homecoming event.  And he said oh, I see something to
 9   the effect you are handling the Roger Clemens case.  And I
10   said something, yes.  And he said well, he's a good guy.
11   And I said I can't talk about the case.
12             That's all that happened.  But, again, I feel
13   obligated when something of that nature occurs to reveal
14   that so that counsel can factor that in to their assessment
15   as to whether they want to make any type of motion.
16             MR. HARDIN:  Are we allowed to say amen?
17             THE COURT:  Yes -- say what?
18             MR. HARDIN:  Are we allowed to say amen?  We
19   obviously have no problems.
20             THE COURT:  Government?
21             MR. BUTLER:  Your Honor, we have, we know the
22   Court.  We understand that the Court can be fair and
23   impartial in all circumstances and we have no objection.
24             THE COURT:  Okay.  Any other matters we need to
25   address today?  Mr. Clemens, you can be seated.
```

```
 1            MR. BUTLER:  May I have one moment, Your Honor.
 2            [Brief pause.]
 3            THE COURT:  And I might as a caveat I don't
 4   believe in any way he was seeking to try and influence me
 5   one way or the other.  I just think it was a statement that
 6   was made, you know.
 7            MR. BUTLER:  Just one matter, Your Honor.  We
 8   talked to Mr. Hardin about this.  But the, because of
 9   Mr. Hardin's prior representation of Mr. Pettitte there is
10   not just the privileged information but the duty to a former
11   client, those types of things which might limit Mr. Hardin's
12   comments in closing argument as to you know direct attacks
13   upon Andy Pettitte.  I don't think it's going to be an
14   issue.  We talked to Mr. Hardin about it.
15            That's all just a way of leading up to that we
16   will just to close the circle on this, Your Honor, we will
17   also seek and if it's all right with the Court just by way
18   of an affidavit from Andy Pettitte that he too waives any
19   potential conflict.  But it would not just be a conflict as
20   to privileged information.  He would waive a conflict as to
21   Mr. Attanasio cross-examining Mr. Pettitte, but that doesn't
22   give license to then a former attorney attacking
23   Mr. Pettitte.
24            I'm not suggesting Mr. Hardin would do that.  But
25   that's just to give the Court a heads up that the affidavit
```

```
 1   may address that issue.  I think we can work out the issue
 2   with Mr. Hardin in an appropriate fashion.  As I said we've
 3   talked with him today about it.  And I don't think it's
 4   going to be an issue, but I just want to -- I don't want any
 5   issues to catch the Court unaware.
 6            THE COURT:  Any comment on that?
 7            MR. HARDIN:  I understand their sense of caution.
 8   I don't think it's necessary to worry about that.  We can
 9   work out something.  Throughout this litigation, of course,
10   the Court is not aware, we have never attacked Andy
11   Pettitte.  I don't intend to participate in that.  My guess
12   is is that final argument probably not even going to be
13   addressing Andy Pettitte.  That would be reserved for
14   Mr. Attanasio also, but we haven't really thought our way
15   through that.
16            But the thing that he's raising I understand why
17   he's raising.  He's explained it to me, but I don't intend
18   to be going after Andy Pettitte.
19            THE COURT:  Any other matters?
20            MR. MUTHYALA:  No, Your Honor.
21            THE COURT:  Mr. Hardin, any other matters?
22            MR. HARDIN:  Nothing, Your Honor.  Thank you very
23   much.
24            THE COURT:  Thank you.
25
```

```
 1         [Thereupon, the proceedings adjourned at 2:20
 2         p.m.]
 3                        CERTIFICATE
 4         I, Cathryn J. Jones, an Official Court Reporter
 5   for the United States District Court of the District of
 6   Columbia, do hereby certify that I reported, by machine
 7   shorthand, the proceedings had and testimony adduced in the
 8   above case.
 9         I further certify that the foregoing 9 pages
10   constitute the official transcript of said proceedings as
11   transcribed from my machine shorthand notes.
12         In witness whereof, I have hereto subscribed my
13   name, this the 4th day of February, 2011.
14
15
16                              _____
                                Cathryn J. Jones, RPR
17                              Official Court Reporter
18
19
20
21
22
23
24
25
```