IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12CR3 |
| | ) | |
| KIM DOTCOM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF THE UNITED STATES TO MOTION OF
SPECIALLY APPEARING DEFENDANT MEGAUPLOAD LIMITED
TO DISMISS INDICTMENT FOR LACK OF PERSONAL JURISDICTION**

Defendant Megaupload Limited ("Megaupload") has moved to dismiss the Superseding

Indictment, claiming that foreign corporations cannot be prosecuted for violations of federal

criminal law.[1]  This line of reasoning leads to the incredible conclusion that a foreign corporation

can commit crimes in the United States and secure what amounts to complete immunity from

prosecution, simply by ensuring that it has no address or principal place of business here.  The

United States opposes the motion for the following reasons.  As an initial matter, this Court has

personal jurisdiction over Defendant Megaupload, a company who, as alleged in the Superseding

Indictment, maintained a continuous business presence in the United States and the Eastern

District of Virginia for more than six years, during which the company earned millions of dollars

in criminal proceeds at the expense of copyright victims.  With respect to the service requirement

of Federal Rule of Criminal Procedure 4, the United States will be in a position to serve

---

[1] *See* Mem. of Law in Supp. of Mot. of Specially Appearing Def. Megaupload Limited to
Dismiss Indictment for Lack of Personal Jurisdiction at 1, (July 3, 2012) (Dkt. 115) (hereinafter
"Motion to Dismiss").  The Motion to Dismiss is limited to Defendant Megaupload and does not
address any of the other defendants charged in this case, including Defendant Vestor Limited, a
foreign corporation owned and controlled by Defendant Dotcom.

Defendant Megaupload with a summons through the individual co-defendants, who are officers and agents of the organization, after they arrive in the United States following extradition.[2]  The United States can satisfy Rule 4's separate mailing provision by sending a copy of the summons to either the defendants themselves, following extradition; or to Defendant Megaupload's constructive address in the United States at the Commonwealth of Virginia's State Corporation Commission, pursuant to Virginia Code §§ 13.1-601–792; or to Defendant Megaupload's last known address in Hong Kong, pursuant to a mutual legal assistance treaty.  Neither the facts, the law, nor common sense and the interests of justice, which the Federal Rules of Criminal Procedure are designed to serve, support as extreme a remedy as the outright dismissal sought by defense counsel.  For these reasons, the United States respectfully requests that the Court deny the Motion to Dismiss.[3]

I.      **Argument**

    A.      **This Court Has Personal Jurisdiction Over Defendant Megaupload.**

Defendant Megaupload insists that this Court cannot exercise jurisdiction over it, but as the Supreme Court held long ago, "[t]he principle that a man, who outside the country willfully put in motion a force to take effect in it, is answerable at the place where the evil is done, is recognized in the criminal jurisprudence of all countries." *Ford v. United States*, 273 U.S. 593, 623 (1927) (exercising jurisdiction and affirming convictions of British citizens for conspiring to import liquor into the United States in violation of prohibition laws, despite some conspirators

---

[2] On July 6, 2012, at the defendants' request, the New Zealand District Court at North Shore continued the extradition hearing from August of 2012 until March of 2013.

[3] The parties have not presented the Court with any factual disputes, and therefore the United States further requests that the Court decide this motion on the papers and without an oral hearing, pursuant to Local Criminal Rule 47(J), which provides: "Determination of Motions Without Oral Hearing: The Court may rule upon motions without an oral hearing."

having never been present in the United States); *see Int'l Shoe Co. v. Washington,* 326 U.S. 310,

316 (1945) (federal court has personal jurisdiction over a corporation given certain "minimum

contacts").[4]   The Supreme Court in *Ford* further stated, in a conclusion as apt today as it was

in 1927:  "And the methods which modern invention has furnished for the performance of

criminal acts in that manner has made this principle one of constantly growing importance and of

increasing frequency of application."  *Id.*[5]

---

[4] There is little case law evaluating the appropriate service of a summons on a foreign corporation under Rule 4(c)(3)(C).  *See, e.g.*, *United States v. Chitron Elecs. Co. Ltd.*, 668 F. Supp. 2d 298 (D. Mass. 2009) (recognizing that "case law discussing the specific issue of personal jurisdiction over foreign corporations in the criminal context is surprisingly sparse and poorly developed").  In determining compliance with Rule 4, federal courts have frequently looked to analogous case law in the civil context, which is more developed.  *See, e.g.*, *United States v. Pub. Warehousing Co. K.S.C.*, Case No. 1:09-cr-490, 2011 WL 1126333, at *5 n.3 (N.D. Ga. Mar. 28, 2011) (considering service of process "in a civil context" because "there is little precedent dealing with service in criminal cases"); *Chitron*, 668 F. Supp. 2d at 304-05 (considering service of process on wholly owned subsidiaries "in a civil context" to illuminate validity of service under Rule 4); *United States v. Alfred L. Wolff GmbH*, Case No. 1:08-cr-417, 2011 WL 4471383, *3 (N.D. Ill. Sept. 26, 2011) (turning to civil case law to evaluate the appropriateness of service under Rule 4).  The government will follow this practice and look to more developed civil case law when necessary.

[5] There is a lengthy history of federal courts exercising jurisdiction over foreign persons and corporations.  *See, e.g.*, *Chitron*, 668 F. Supp. 2d at 302 ("One bedrock principle of personal jurisdiction over foreign corporations in the criminal context is the 'effects' doctrine."); *In re Sealed Case*, 832 F.2d 1268, 1274 (D.C. Cir. 1987) (concluding that federal court has personal jurisdiction over a foreign corporation when "founded on conduct abroad that causes injury within the United States"); *see generally* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 50 (1971) ("A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.").  Accordingly, the United States even has personal jurisdiction to prosecute a foreign defendant for conspiring to violate United States laws where only one overt act occurred in the United States and the remaining activities occurred on foreign soil. *See In the Matter of Marc Rich & Co., A.G.,* 707 F.2d 663, 667-68 (2d Cir. 1983) (district court had personal jurisdiction to enforce grand jury subpoena *duces tecum* against foreign corporation through service on its wholly owned subsidiary located in the United States where grand jury was investigating activities of both foreign parent and local subsidiary for engaging in a conspiracy to evade tax laws and at least some of the conspiratorial acts occurred in United States).

For more than six years, Defendant Megaupload's business took place in, profited from, and injured copyright holders in the United States and in this District. Its equipment, machinery, and servers are here.[6] *See, e.g.*, Superseding Indictment at ¶ 39 (Feb. 16, 2009) (Dkt. 34) (Defendant Megaupload leased more than 1,000 servers from Carpathia Hosting in North America, with more than 500 servers in this District); ¶ 41 (Defendant Megaupload leased servers from Leaseweb, including servers in this District); *see also* Aff. of Bram Van der Kolk in Supp. of Application for Bail at ¶ 13 (Jan. 23, 2012) (Dkt. 96-12) ("I was aware the main servers were in the United States, and considered there was no difficulty with that."). Many of its victims are in the United States. *See, e.g.*, Superseding Indictment at ¶¶ 63, 73gg, 73kk, 73jjj, 73kkk, 73jjjj, and 73tttt (countless American works illegally reproduced and distributed include, for example, works originally available on YouTube.com, The Sopranos, Seinfeld, Dexter, Chuck, Meet Dave, and The Simpsons). Its data files – the heart of its business – are here. *Id.* at ¶¶ 39, 55 (defendants reproduced and distributed copyright-infringing works on servers located in this District), and 73a (copyright-infringing works stored on servers located in this District); *see generally* Mem. of Law in Supp. of Emergency Mot. for Protective Order by Non-Party Carpathia Hosting, Inc. (hereinafter "Motion for Protective Order"), (Mar. 20, 2012) (Dkt. 39) (describing the enormous amounts of equipment and data on servers controlled by Defendant Megaupload). And the company believed its contacts with the United States were significant enough to warrant designating an agent to receive copyright infringement notices with the

---

[6] It is well settled that in ruling on a motion to dismiss an indictment, courts must accept all well pleaded facts as true. *See, e.g.*, *United States v. Regina*, 504 F. Supp. 629, 630 (D. Md. 1980); *United States v. Chrysler Corp. Parts Wholesalers, Nw. Region*, 180 F.2d 557, 558 (9th Cir. 1950) ("In considering the sufficiency of the indictment we should keep in mind the rule that all allegations, well pleaded, must be taken as true."); *United States v. Dove*, 70 F. Supp. 2d 634, 636 (W.D. Va. 1999) ("The court should regard all well pleaded facts as true when considering a motion to dismiss an indictment.").

U.S. Copyright Office in October of 2009.  *See* Superseding Indictment at ¶ 21 n.1.

Defendant Megaupload's financial infrastructure is here.  *See, e.g.*, *id*. at ¶ 42 (Defendant Megaupload used PayPal, Inc., a U.S.-based global e-commerce business, to collect over $110 million in revenue); ¶¶ 84-85 (payments from the U.S. to defendants' offshore accounts); ¶¶ 87-89 (payments to U.S. service providers, including payments into this District); ¶¶ 73h & 90 (payments to and from U.S. customers and unindicted conspirators in this District); and ¶ 115 (forfeitable property includes Citibank and PayPal accounts in the U.S.).  Its business, marketing, and contractual relationships are here.  *Id.* at ¶ 19 (American companies with which Defendant Megaupload contracted included Google AdSense); ¶ 44 (business relationship with AdBrite, Inc., an online advertising company based in the U.S.); and ¶ 73z (payments to Chief Financial Officer of Carpathia Hosting in this District).  And its customers – who both provided and consumed copyright-infringing files as part of the platform that Defendant Megaupload sold and promoted – are here.  *Id.* at ¶¶ 73jj, 73pp, 73qq, 73ppp, 73qqq, 73www, 73xxx, 73gggg (uploading customers residing in this District).

In addition, Defendant Megaupload has selectively sought out the jurisdiction of courts in the United States.  In December of 2011, for example, Defendant Megaupload brought a civil lawsuit in federal court against a major record label.  *See generally* Compl. for Damages and Injunctive Relief for Misrepresentation Pursuant to the DMCA (17 U.S.C. § 512(F)), *Megaupload Ltd. v. Universal Music Group, Inc.*, Case No. 4:11-cv-6216 (N.D. Cal. Dec. 12, 2011) (Dkt. 1).  Similarly, the Megaupload.com "Service Agreement" provided:  "These terms and conditions will be governed by and construed in accordance with the laws of the State of California, excluding that body of law governing conflict of laws. Any legal action or proceeding relating to or arising out of these Terms or your use of the Web site will be brought in a federal

or state court in Santa Clara County, California, and you submit to the venue and personal

jurisdiction of such court." It appears that Defendant Megaupload, for its own convenience,

would subject itself and its users to the jurisdiction of courts in the United States, even as the

company now argues that it cannot be brought before a federal court to face criminal charges.

Although Defendant Megaupload now claims that it "lies beyond the intended class of

criminal defendants," Mot. to Dismiss at 7 n.3, in every relevant respect, the company's day-to-

day business and operations took place on these shores and in this District. "Due process

requires only that in order to subject a defendant to a judgment in personam, if he be not present

within the territory of the forum, he have certain minimum contacts with it such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Int'l Shoe*, 326 U.S. at 316; *see also Chitron*, 668 F. Supp. 2d at 304 (recognizing that "though

personal jurisdiction and service of process are distinguishable, they are inextricably intertwined,

since service of process constitutes the vehicle by which the court obtains jurisdiction," and

concluding that foreign corporation had sufficient contacts through its American subsidiary for

the court to exercise personal jurisdiction). To dismiss the Superseding Indictment against

Defendant Megaupload – whose business model is not based on traditional goods and services

delivered through brick-and-mortar stores but instead on online intellectual property piracy –

because the company has purposefully avoided establishing an office in the United States would

be unprecedented and unjust. It would also reward Defendant Megaupload, whose business was

dedicated to criminal copyright violations (it is charged with a RICO offense), for having

consistently taken steps to evade detection in the United States. *See, e.g.,* Superseding

Indictment at ¶ 73ooo (defendant directing co-defendants to ignore copyright takedown notices

except from "major organization[s] in the US"); ¶ 73iiii (defendant describing Internet domain

name seizures in the United States as "a serious threat to our business" and directing co-
defendants to "[p]lease look into this and see how we can protect ourselves", with co-defendant
responding that "it would be safer to choose a non-US registrar"); ¶ 73ssss (defendant
summarizing the status of measures taken to prevent Internet domain names from being seized
by the U.S. government").[7]  Finally, dismissal would frustrate the enforcement of criminal
copyright laws, which Congress enacted to address the worldwide problem of intellectual
property theft.[8]

---

[7] These and other steps taken by Defendant Megaupload, a criminal enterprise, to avoid
detection in the United States would also bar the relief it seeks here under the fugitive
disentitlement doctrine, because the individual defendants, though aware of the charges pending
against them, have taken steps to avoid facing criminal charges.  *See* 28 U.S.C. § 2466 (applying
to corporation if majority shareholder is fugitive); *see also In re Grand Jury Subpoenas*, 170 F.
Supp. 2d 270, 285-86 (S.D.N.Y. 2001). Courts have held that a defendant resisting extradition to
the United States to face criminal charges is a "fugitive" for purposes of the doctrine. *See, e.g.*,
*Maydak v. U.S. Dep't of Educ.*, 150 Fed. Appx. 136, 137-38 (3d Cir. 2005) ("[P]rior to
[Maydak's] return, he contested extradition. Thus, he was indeed a fugitive"; affirming district
court dismissal of FOIA requests filed from Canada); *In re Assets of Martin*, 1 F.3d 1351, 1356
(3d Cir. 1993) (concluding, where criminal defendant had been indicted and defense counsel
could "present no facts from which [the court] could conclude that he is unable to return [from
Russia] to answer the indictment," that the court "can regard him as a fugitive"); *United States v.
Catino*, 735 F.2d 718, 779 (2d Cir. 1984) (where criminal defendant "actively resisted the
extradition request throughout the proceedings" defendant engaged in "constructive flight from
justice").  The government incorporates its previous arguments on the fugitive disentitlement
doctrine here.  *See* Opp. of United States to Mot. of Quinn Emanuel Urquhart & Sullivan
LLP, The Rothken Firm, and Craig C. Reilly, Esq. for Leave to Enter Limited and Special
Appearances on Behalf of Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram van der
Kolk & Finn Batato at 12-14 (June 13, 2012) (Dkt. 104).

[8] The legislative history of 18 U.S.C. § 2319 plainly acknowledges criminal copyright
infringement as a global problem to be enforced internationally. *See, e.g.*, 154 CONG. REC.
E2141-01 (Sept. 28, 2008) (statement of Rep. Blackburn) (stating that music and entertainment
industries "are suffering from rampant theft of their intellectual property online, and in
marketplaces *around the world* to the tune of $58 billion each year."); 154 CONG. REC. S9583-02
(Sept. 26, 2008) (statement of Sen. Coburn) ("It is necessary for the Federal Government to
protect and enforce intellectual property rights domestically *and internationally*."); *id.* (statement
of Sen. Leahy) ("Intellectual property is just as vulnerable as it is valuable. The Internet has
brought great and positive change to all our lives, but it is also an unparalleled tool for piracy.
*The increasing inter-connectedness of the globe, and the efficiencies of sharing information*

**B.     Service of Process in Accordance with Rule 4 Can and Will Be Made Upon Extradition of Defendant Megaupload's Officers.**

Dismissal is inappropriate not only because the Court has personal jurisdiction over

Defendant Megaupload; but also because – as the company itself concedes – its officers can be

served with a summons following extradition.  Rule 4(c)(3)(C) contains both a service provision

and a separate mailing provision.  It states:

> A summons is served on an organization by delivering a copy to an officer, to a
> managing or general agent, or to another agent appointed or legally authorized to
> receive service of process.  A copy must also be mailed to the organization's last
> known address within the district or to its principal place of business elsewhere in
> the United States.

Defendant Megaupload has already conceded that the government will be in a position to deliver

a copy of the summons to the individual defendants, who are officers and agents of the

organization, as required by Rule 4, after they arrive in the United States following extradition.

*See* Mot. to Dismiss at 6.

Nor could Defendant Megaupload deny that the individual defendants currently resisting

extradition are high-level officers of the organization and collectively hold more than 95% of the

company's shares.  *See* Superseding Indictment at ¶ 30 (Defendant Dotcom was the Chief

Executive Officer of Defendant Megaupload for nearly six years, is currently the Chief

Innovation Officer, and holds 68% of the company's shares);[9] ¶ 36 (Defendant Ortmann is the

---

*quickly and accurately between continents, has made foreign piracy and counterfeiting
operations profitable in numerous countries.* Americans suffer when their intellectual property is
stolen[.]" ); 154 CONG. REC. H3075 (May 6, 2008) (statement of Rep. Berman) (creative works
"unfortunately, are being *ripped off around the world.* The rampant counterfeiting and piracy of
U.S. products is having a devastating impact on our economy"); 154 CONG. REC. H3076 (May 6,
2008) (statement of Rep. Cohen) ("The PRO-IP Act will help strengthen enforcement of
intellectual property rights domestically *and internationally* through enhanced criminal and civil
penalties") (emphases added).

[9] In a sworn declaration submitted in a separate proceeding, Defendant Dotcom stated:

Chief Technical Officer and holds 25% of the company's shares); and ¶ 38 (Defendant Van der Kolk is the Programmer-in-Charge and holds 2.5% of the company's shares).[10]   As the Superseding Indictment makes clear, the defendants controlled the company and were actively involved in the day-to-day operation of the business, *see, e.g.*, *id.* at ¶ 73, such that delivering a copy of the summons to any one of them would constitute proper service of process.[11]

Defendant Megaupload claims that the separate mailing requirement is an indispensable prerequisite for service of process.  *See* Mot. to Dismiss at 1.  This is not so.  The plain language of Rule 4(c)(3)(C) imposes a singular service requirement and a separate mailing provision.  This is in stark contrast to the requirement contained in the rule's preceding subsection for summoning an individual defendant, which explicitly requires both service on an appropriate individual *and* a mailing to the individual's last known address.  *Compare* Rule 4(c)(3)(C),

---

"I am the Chief Innovation Officer of Plaintiff Megaupload Ltd. ('Megaupload'), and have been employed at Megaupload since September 2005."  *See* Decl. of Kim Dotcom in Supp. of Pl.'s *Ex Parte* Application for TRO and Order to Show Cause Re Prelim. Inj. at ¶ 1, *Megaupload Ltd. v. Universal Music Group, Inc.*, Case No. 4:11-cv-6216 (N.D. Cal.) (Dec. 14, 2011) (Dkt. 6).

[10] In a sworn declaration submitted in a separate proceeding, Defendant Van der Kolk stated:  "I am an employee of Megaupload Limited ('Megaupload'), which operates a virtual locker service at <megaupload.com>.  I am responsible for taking down content in response to Digital Millennium Copyright Act (DMCA) takedown notices which are sent to Megaupload. As such, I am familiar with and have personal knowledge regarding its practices for receiving and acting on takedown notices, including those sent to the email address legal@megaupload.com."  *See* Decl. of Bram van der Kolk in Supp. of Def. Megaupload Limited's Mot. to Dismiss at ¶ 1, *Perfect 10, Inc., v. Megaupload Limited et al.*, Case No. 3:11-cv-191 (S.D. Cal.) (Mar. 28, 2011) (Dkt. 7-6).

[11] After Defendant Dotcom became Defendant Megaupload's Chief Innovation Officer, the company appears to have employed at least two Chief Executive Officers in the United States:  first David Robb and then Kasseem David Dean (also known as Swizz Beatz).  These individuals represented the company before the Office of the United States Trade Representative ("USTR") in relation to Megaupload.com's inclusion on the Notorious Markets Review, and, more recently, Mr. Dean through counsel has refused to cooperate with the government's investigation.  Delivering a summons to Mr. Dean, a resident of the United States, in his capacity as apparent Chief Executive Officer should also constitute proper service of process upon an officer of the company.

*supra*, with Rule 4(c)(3)(B)(ii) ("A summons is *served* on an individual defendant . . . by leaving a copy at the defendant's residence or usual place of abode with a person of suitable age and discretion residing at that location *and* by mailing a copy to the defendant's last known address.") (emphasis added).  In the individual defendant context, two steps are required to effect service: the summons must be left at the defendant's residence with a person who has apparent authority – but who may not have any actual duties to the individual defendant – *and* a mailing to the defendant's last known address so that service can be perfected.  Service of process in the corporate context, in contrast, is complete upon delivering the summons to an officer or agent who (unlike in the individual defendant context) would have actual fiduciary and other duties to the corporation (and so would make it more likely that the corporation would be notified).

Furthermore, the remedy sought by defense counsel – an immediate and blanket dismissal of the charges against Defendant Megaupload – runs directly contrary to the plain language of Rule 4, which imposes no deadline on service and neither contemplates nor provides for any remedy, much less dismissal.[12]  *Compare* Fed. R. Crim. P. 4 *with* Fed. R. Civ. P. 4(m) (in the civil context, a plaintiff has 120 days to serve a defendant with a complaint; however, the deadline can be extended and does not apply to service in a foreign country).[13]  In the criminal

---

[12] Defendant Megaupload's insistence that the service issue be resolved immediately is also at odds with the company's position in contemporaneous civil litigation, where the company has sought to stay the civil action pending the arrival of the individual defendants following extradition.  *See generally* Mem. of Law in Supp. of Mot. by Defendants Kim Dotcom and Megaupload Ltd. for a Stay Pending a Parallel Criminal Prosecution, *Microhits, Inc. et al. v. Megaupload, Ltd., et al.*, Case No. 1:12-cv-327 (E.D. Va. May 10, 2012) (Dkt. 17).  On May 30, 2012, the motion was granted, and the civil matter was stayed for 180 days, absent a substantive change in circumstances.  *See* Order at 1, *Microhits*, (Dkt. 31).

[13] Similarly, Rule 4 does not impose a deadline for executing an arrest warrant.  *See United States v. Hewlett*, 395 F.3d 458, 461 n.4 (D.C. Cir. 2005) (recognizing that Rule 4 specifies no time period for executing arrest warrants); *United States v. Williams*, 134 Fed. Appx. 510, 515 (3d Cir. 2005) ("Fed. R. Crim. P. 4 . . . does not require execution within a specified

context, outright dismissal at this time is simply not an appropriate remedy where the corporate

defendant has actual notice of the proceedings and so can show no prejudice, and the government

will be in a position to serve the company's officers following their extradition.

      **C.**     **Mailing the Summons to an Address in the United States Should Be Required Only Where Such an Address Exists.**

      After service of process is completed, Rule 4(c)(3)(C) requires that a copy of the

summons be mailed to the organization's last known address within the district or to its principal

place of business elsewhere in the United States.  This mailing provision, however, should not

defeat a proper indictment where no such address exists, and especially where – as described

above – the defendant has actively taken steps to frustrate law enforcement and avoid criminal

prosecution in the United States, all while conducting crimes in this country and this District.

The reading that Defendant Megaupload urges on the Court (automatic dismissal where no

United States address exists) defies both common sense and the spirit of the Federal Rules of

Criminal Procedure, which were not intended to bestow online or offshore companies engaged in

widespread domestic criminal violations with the sort of windfall the defendant seeks here.

      Rule 2 instructs that the "rules are to be interpreted to provide for the just determination

of every criminal proceeding, to secure simplicity in procedure and fairness in administration,

and to eliminate unjustifiable expense and delay."  The rules, therefore, "are not an end in

themselves."  *United States v. Mihalopoulos*, 228 F. Supp. 994, 1012 (D.D.C. 1964).  "They are

merely the means and the instruments by which the purpose of the administration of justice is

achieved.  The safeguards that surround a defendant are not intended to constitute obstacles and

hurdles against conviction of the guilty, but are designed to prevent the possible conviction of an

---

time period."); *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983) ("[t]he concept of
staleness is . . . not generally applicable to showing required to issue an arrest warrant.").

innocent person, or a person whose guilt has not been satisfactorily established beyond a

reasonable doubt." *Id*.; *see also United States v. Claus*, 5 F.R.D. 278, 280 (E.D.N.Y. 1946)

(concluding that "the Rules are to be liberally construed to apply them in the intended spirit

devoid of technical niceties . . . Adjudication on the merits should be the motivating policy in

determining rights rather than technicalities of procedure or form"); *United States v. Young*, 14

F.R.D. 406, 407-08 (D.D.C. 1953) ("One of the purposes of the new rules was to abrogate the

technicalities which all too often had led to dismissal of indictments and to reversals of

convictions on grounds that had no connection with the guilt or innocence of the defendant.").[14]

Applying Rule 2, a rule of statutory construction, to the mailing provision of Rule 4, as at

least one district court has already done,[15] the provision should be read to require mailing a copy

---

[14] The legislative history of Rules 4 and 9, attached to this pleading as Exhibit A, demonstrates that the drafters intended the rules to be applied in a practical manner. *See, e.g.*, Ex. A, *Proceedings of the Institute on Fed. Rules of Crim. Procedure* at 138 (Feb. 15-16, 1946) (statement of the Hon. G. Aaron Youngquist) ("As I recall the discussion in the Committee, the purpose of putting in the provision for a summons was not to use it as a substitute for a warrant in any respect, but principally for the convenience of both the government and the defendant, when it was known that the defendant would, in all probability, voluntarily appear."); *id.* at 141 (statement of the Hon. Alexander Holtzoff) ("Of course, the Committee was composed of men who were trying to do a practical job, rather than to furnish answers to theoretical questions. As a practical proposition, this isn't much of a problem. Ordinarily, in practically every instance where there is a corporate defendant, one or more officers would be named as co-defendants, because the corporation can only act through its agents, and an agent is a participant in the offense charged. Naturally, he appears, and counsel also appears for the corporation."). With respect to personal jurisdiction: "The Rules would never apply to a foreign corporation unless the foreign corporation committed a crime in the district where the court sits, which would give the court its jurisdiction." *Id.* at 138 (statement of Fred Strine). The drafters also recognized that "if a corporation sees fit to ignore a summons that the court would have a jurisdiction to impose a fine." *Id.* at 135 (statement of the Hon. Alexander Holtzoff).

[15] *See Pub. Warehousing*, 2011 WL 1126333, at *7 (relying in part on Rule 2 to hold that service on parent company was appropriate where subsidiary acted as alter ego, even though parent company had no office in the United States). Courts have routinely applied a practical and common-sense reading to the Federal Rules of Criminal Procedure, rather than a slavishly inflexible and hypertechnical one. *See, e.g.*, *United States v. Arevalo*, 628 F.3d 93, 99 (2d Cir. 2010) ("It is clear that a district court's failure to follow the procedural requirements of Rule

of the summons to the organization's last known address within the district or to its principal place of business elsewhere in the United States, only where such an address or place of business exists.  Other courts have broadly interpreted Rule 4 to uphold service, so long as the government acted in good faith and the corporate defendant received sufficient notice of the charges.  *See, e.g.*, *Pub. Warehousing,* 2011 WL 1126333, at *7; *Chitron*, 668 F. Supp. 2d at 304 (concluding that service of a criminal summons on an officer of a foreign corporate defendant's United States subsidiary – rather than the corporate defendant itself – satisfied Rule 4).  Under these circumstances, because Rule 4 requires that a copy of the summons be mailed to an address "in the United States," mailing the summons to the individual defendants once extradited should satisfy the requirement.  In the alternative, as discussed below, the government could mail the summons to the Commonwealth of Virginia's State Corporation Commission or to Defendant Megaupload's address in Hong Kong through the MLAT process.[16]

---

32(i)(3) alone does not give rise to a due process violation."); *United States v. Latu*, 208 Fed. Appx. 585, 586-7 (9th Cir. 2006) (concluding that failure to serve a search warrant at the start of a search, in violation of Fed. R. Crim. P. 41(f)(3), did not require suppression); *United States v. Gonzalez-Ramirez*, 59 Fed. Appx. 36, 37 (6th Cir. 2003) (technical failure to comply with Rule 11 does not require vacating plea); *United States v. Wright*, Case No. 92-5527, 1993 WL 18321, *3 (4th Cir. Jan. 29, 1993) (per curiam) (Rule 7(e) states that technical errors in information should be rectified by amendment, not dismissal).

[16] It is not a foregone conclusion that Defendant Megaupload's "principal place of business" is outside the United States, as defendants claim. *See* Mot. to Dismiss at 6. This is because the defendants' websites were principally hosted and housed at a facility in this District. *See, e.g.,* Superseding Indictment at ¶ 39 (describing the Carpathia Hosting datacenters in this District and elsewhere).  Typically, the principal place of business "is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *The Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010) (referring to the "nerve center" test for diversity jurisdiction determinations).   In *Hertz Corp.*, however, the Supreme Court went on to conclude: "We recognize as well that, under the 'nerve center' test we adopt today, there will be hard cases. For example, in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." *Id.* at 1194.  In the event this Court finds that the Carpathia datacenter was such a nerve center, the government would mail the summons there.

### D. The Summons Can Be Mailed To the Commonwealth of Virginia's State Corporation Commission.

Based on Defendant Megaupload's extensive history of transacting business in the Commonwealth of Virginia, which as described above included years of leasing and controlling hundreds of servers in this District at a cost of millions of dollars, and making payments to and receiving payments from customers in this District, the United States can comply with Rule 4 by mailing a copy of the summons to the State Corporation Commission, pursuant to Virginia law.

### 1. Defendant Megaupload's history of transacting business in Virginia required the company to obtain a certificate of authority and establish a registered agent and office here.

The Virginia Stock Corporation Act requires that, before transacting business within the Commonwealth of Virginia, foreign corporations such as Defendant Megaupload must first obtain a certificate of authority from the State Corporation Commission ("Commission"). *See* Va. Code at §§ 13.1-613 & 757.[17]  Authorized corporations must maintain both a "registered office" and a "registered agent" within the Commonwealth of Virginia, *id.* at §§ 13.1-763(A), such agent being someone "upon whom any process, notice, order or demand required or permitted by law to be served upon the corporation may be served," *id.* at § 13.1-766(A).  By its plain language, the statute is not limited to civil or criminal proceedings, but covers any process to be served upon a corporation.  As alleged in the Superseding Indictment (at ¶ 31), Defendant Megaupload is a foreign corporation registered in Hong Kong, and was therefore required to seek authority from the Commission before transacting business[18] in the Commonwealth of

---

[17] The Virginia Nonstock Corporation Act, passed at the same time, contains virtually identical language for the regulation of nonstock corporations. *See* Va. Code §§ 13.1-812–919.

[18] The Virginia Code does not define "transacting business," but instead provides a non-exhaustive list of activities that do not trigger the registration requirements.  *See* Va. Code § 13.1-757(B).  The list includes activities such as "[m]aintaining bank accounts;" "selling

Virginia, which the company did for more than six years.

The Fourth Circuit Court of Appeals examined these registration requirements in *Moore-McCormack Lines, Inc., v. Bunge Corp.*, where it concluded that two foreign corporations with no offices or employees in Virginia transacted business in the state by maintaining long-running business arrangements with Virginia companies to process and re-ship imports at the port of Norfolk, and could therefore be served through the Commission.  307 F.2d 910, 911 (4th Cir. 1962).  In reaching its conclusion, the Fourth Circuit relied on the "substantial and continuous" transactions that took place in Virginia, without which the foreign corporations' business "could not have been carried on." *Id.* at 915.  Defendant Megaupload, like the *Moore-McCormack* corporations who chose to ship goods into and through Virginia, maintained a long-running business relationship with at least one Virginia firm, Carpathia Hosting.  And while the *Moore-McCormack* corporations interacted with Virginia only through the independent companies they hired, Defendant Megaupload, through the individual defendants, directly managed the servers housed in Virginia.  *See, e.g.*, Mot. for Protective Order at 2 ("Although Carpathia owns and has remained in physical possession of the Mega Servers, Carpathia does not own and cannot access the data[.]").[19]  As described above, Defendant Megaupload also had direct relationships with

---

through independent contractors;" "[o]wning, without more, real or personal property;" and conducting "an isolated transaction that is completed within 30 days and is not one in the course of repeated transactions of a like nature[.]"  *Id.*  In contrast with these limited activities, Defendant Megaupload maintained significant business contacts with the Commonwealth of Virginia, as described above.  These activities constitute a "course of repeated transactions" demonstrating a sustained history of transacting business in the Commonwealth.

[19] During the April 13, 2012 hearing on Carpathia's Motion for Protective Order, counsel for Carpathia represented: "We didn't run or manage the Internet sites.  We had no access to the computers at all.  In fact, we just ran the platform.  And when I say we had no access, it's because when we set up the servers and gave the default passwords to Megaupload, they would invariably change the passwords immediately to control access.  So, we were responsible for the platform only."  Tr. of Hr'g on Mots. at 6:7-13 (Dkt. 84).  Counsel for Defendant Megaupload

customers in Virginia, to include receiving payments from, and making payments to, Virginia residents and unindicted conspirators who uploaded copyright-infringing content to the defendants' websites.  Finally, Defendant Megaupload stored in Virginia its most valuable asset, namely, the copyright-infringing content that attracted the vast majority of its users and formed the basis of the company's unlawful business.

These activities constitute transacting business in the Commonwealth, and Defendant Megaupload was therefore required to obtain a certificate of authority from the Commission and to designate both a registered agent and office here.  Where a foreign corporation either fails to appoint a registered agent, as Defendant Megaupload has done here, or where the registered agent cannot be found, "then the clerk of the Commission shall be an agent of the corporation upon whom service may be made in accordance with [the procedures described in] § 12.1-19.1." Va. Code at § 13.1-766(B).  In addition, a foreign corporation who transacts business in the Commonwealth without authorization is guilty of a Class 1 misdemeanor, *id.* at § 13.1-613, and "shall by transacting such business be deemed to have thereby appointed the clerk of the Commission its attorney for service of process," *id.* at § 13.1-758(F).[20]

---

similarly represented, during the June 29, 2012 hearing, that the individual defendants are the system administrators who "are the ones who have sort of the password access" to the servers that they operated in this District.  Tr. of Hr'g on Mots. at 31:23–32:1 (Dkt. 116).  "They are the ones who would be able to log in and change around the system so that other domains could talk to it and so there would be security."  *Id.* at 32:1-3.

[20] In addition, such foreign corporations "may not maintain a proceeding in any court in the Commonwealth" until they obtain the required authorization, Va. Code § 13.1-758(A), although they may defend themselves against proceedings, *id.* at § 13.1-758(E).  Determining whether a corporation has transacted business for purposes of service of process requires a lesser showing than for purposes of preventing the corporation from bringing a legal action in Virginia.  *See Questech v. Liteco*, 735 F.Supp. 187, 188 (E.D. Va. 1990) (distinguishing between "transacting business" tests in several contexts).  In determining whether a foreign corporation transacted business for purposes of Virginia's closed door statute, the court in *Liteco* concluded that there "must be significant contacts with the forum state," and that the transactions must be

### 2.   Service on the State Corporation Commission, Defendant Megaupload's constructive agent in Virginia, would be proper.

Defense counsel have repeatedly asserted that "Megaupload does not have an office in the United States." Mot. to Dismiss at 6.[21] The company's decision to transact business in the Commonwealth of Virginia and its failure to obtain a certificate of authority must, by law, result in the clerk of the Commission being appointed as the company's agent for service of process. Federal courts have repeatedly upheld service on the clerk of the Commission as directed by the Virginia Code as a valid method for serving corporations. *See, e.g.*, *Moore-McCormack*, 307 F.2d at 915; *World Carriers v. Bright*, 276 F.2d 857, 858 (4th Cir. 1960) (holding that service on foreign corporations doing business in Virginia could not be delivered to the Secretary of the Commonwealth, but only to the clerk of the State Corporation Commission, as directed by Virginia state law); *Joe Hand Promotions, Inc., v. Citibars, Inc.*, Case No. 2:11-cv-58, 2012 WL 503212, *2 (E.D. Va. 2012 Feb. 8, 2012) (upholding service on the clerk of the State Corporation Commission where the plaintiff was unable to serve the defendant's registered agent at its usual place of business); *Gallant v. Deutsche Bank Nat. Trust Co.*, Case No. 3:10-cv-6, 2010 WL 1540053, *2 (W.D. Va. Apr. 16, 2010) (recognizing that, in Virginia, process may be served

---

more than "incidental to a company's ordinary business[.]" *Id.* Defendant Megaupload's multi-million dollar agreement with Carpathia Hosting, its long-running and exclusive practice of managing the servers, and its direct relationship with customers and conspirators in Virginia demonstrate that the company transacted business in Virginia under any standard.

[21] The Virginia State Corporation Commission maintains a public list of all domestic and foreign businesses that have obtained certificates of authority to transact business in the Commonwealth of Virginia. *See* Commonwealth of Virginia State Corporation Commission: Entity Search, available at http://www.scc.virginia.gov/clk/bussrch.aspx (last visited July 6, 2012). A search of this public list revealed no entities named "Megaupload." Only a single registration bore any resemblance to Megaupload Limited: On May 24, 1999, years before Megaupload.com or Megavideo.com first became available to the public, Crosspointe Enterprise, Inc., an entity apparently unrelated to this matter, registered the name "Mega Video."

upon a domestic corporation by "service on the clerk of the State Corporation Commission").

The United States can therefore comply with Rule 4 by mailing a copy of the summons to the

clerk of the State Corporation Commission, Defendant Megaupload's constructive "address

within the district," pursuant to Virginia law.

### E. The Summons Can Be Mailed to Defendant Megaupload's Address in Hong Kong, Pursuant to a Mutual Legal Assistance Treaty.

Although serving the individual co-defendants after extradition would satisfy Rule 4, as

would serving Defendant Megaupload's constructive agent at the State Corporation Commission,

there is at least one additional option. Federal courts considering proper service on a foreign

corporation pursuant to Rule 4 have recognized that mailing a copy of the summons to the

company's overseas address, pursuant to a mutual legal assistance treaty ("MLAT") or letter

rogatory, satisfies the rule. In *Wolff*, the district court identified multiple articles in the MLAT

between the United States and Germany that facilitated the service of documents. 2011 WL

4471383, at *4 n.3. The court then concluded, "Given these MLAT provisions, it appears the

government can effectuate service in compliance with Rule 4." *Id.* (recognizing that "if the

United States does not currently maintain a treaty or agreement with a foreign government,

'[l]etters rogatory are the customary method of obtaining judicial assistance from abroad . . .

[and] may be used . . . to effect service of process") (ellipsis and brackets in original).

The circumstances surrounding service of process in *United States v. Johnson Matthey*

*PLC*, the only case cited by defense counsel in support of their claim that Rule 4 requires

dismissal here, differ greatly from this case. Case No. 2:06-cr-169, 2007 WL 2254676 (D. Utah

Aug. 2, 2007). There the magistrate judge did not rule on a motion to dismiss but instead

quashed a summons that the government had mailed to the corporate defendant's subsidiary in

the United States.  *Id*. at *2.  The magistrate judge concluded that mailing the summons to the foreign corporation's wholly owned United States subsidiary was not sufficient because the foreign parent corporation "has not been shown to be present in the District of Utah . . . ." *Id*. That is plainly not the case here because, as described above, Defendant Megaupload was present and for years actively engaged in business in the United States and this District.  With respect to Rule 4's mailing provision, the magistrate judge in *Johnson Matthey* recognized that "an alternative means of service may be the Mutual Legal Assistance Treaty (MLAT)" between the two countries.  *Id*.  In the district court's subsequent order upholding the magistrate judge's decision, the district court left open the possibility of interpreting Rule 4 more broadly, stating: "If the United States attempts in good faith, but is unable, to serve the Summons and Indictment on [the corporate defendant] by a method that is an alternative to Rule 4 of the Federal Rules of Criminal Procedure, the United States may renew its Objection [to the magistrate judge's order] before the Court." Order at 2, *United States v. Johnson Matthey PLC*, Case No. 2:06-cr-169 (D. Utah Feb. 19, 2008) (Dkt. 125).

As alleged in the Superseding Indictment (at ¶ 31), Defendant Megaupload is – and to the best of the government's knowledge, remains – a registered company in Hong Kong.  There is an MLAT currently in force between the United States and Hong Kong, a copy of which is attached to this pleading as Exhibit B.  *See* Ex. B, Agreement Between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters, U.S.-H.K., Apr. 16, 1997, S. TREATY DOC. NO. 105-6 (1997).  Articles 1 and 15 of the MLAT provide for service of documents.  *Id*.  As a third alternative to either serving the individual defendants after they arrive in the United States following extradition or to serving the Commonwealth of Virginia's State Corporation Commission, the government could serve the

summons on Defendant Megaupload's office in Hong Kong, pursuant to the MLAT.

## II.   CONCLUSION

At this time, the United States intends to deliver a summons for Defendant Megaupload on the individual defendants, who are officers and agents of the company, after they arrive in the United States following extradition.  In the event the Court concludes that service must be accomplished immediately in accordance with any of the methods described above, the United States respectfully requests that the Clerk of Court issue a summons as directed by the Court. Given the numerous options described above, dismissal would be unwarranted and unjust.  The United States respectfully suggests that an oral hearing on this matter is unnecessary and requests that this Court deny on the papers the motion to dismiss.


Respectfully submitted,                                Dated:  July 13, 2012

Neil H. MacBride
United States Attorney

By:    /s/  Ryan K. Dickey
Jay V. Prabhu
Ryan K. Dickey
Alexander Nguyen
Andrew Peterson
Assistant United States Attorneys

Lanny A. Breuer                          Glenn C. Alexander
Assistant Attorney General               Nathaniel Gleicher
U.S. Department of Justice               Trial Attorneys
Criminal Division                        U.S. Department of Justice
                                         Computer Crime & Intellectual Property Section

## CERTIFICATE OF SERVICE

I hereby certify that on the July 13, 2012, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

Christopher L. Harlow, Esq.
Thomas R. Millar, Esq.
SNR Denton US LLP
1301 K Street, NW, Suite 600, East Tower
Washington, DC 20005
Tele:  (202) 408-6816
christopher.harlow@snrdenton.com
thomas.millar@snrdenton.com

John S. Davis, V, Esq.
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA 23219
Tele:  (804) 420-6296
jsdavis@williamsmullen.com

Julie Moore Carpenter, Esq.
Jenner & Block LLP
1099 New York Ave, NW, Suite 900
Washington, DC 20001-4412
Tele:  (202) 639-6000
jcarpenter@jenner.com

Ira P. Rothken, Esq.
The Rothken Law Firm
3 Hamilton Landing, Suite 280
Novato, CA 94949
Tele:  (415) 924-4250
ira@techfirm.net

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Heather H. Martin, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
1299 Pennsylvania Avenue, NW, Suite 825
Washington, DC 20004
Tele:  (202) 538-8000
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com
heathermartin@quinnemanuel.com

Craig C. Reilly, Esq.
111 Oronoco Street
Alexandria, VA 22314
Tele:  (703) 549-5354
craig.reilly@ccreillylaw.com

By:   /s/ Ryan K. Dickey
       Ryan K. Dickey
       Assistant United States Attorney
       United States Attorney's Office
       2100 Jamieson Avenue
       Alexandria, Virginia 22314
       Phone:  (703) 299-3700
       Fax:      (703) 299-3981
       E-mail: Ryan.Dickey@usdoj.gov