# Exhibit B

1

| 105TH CONGRESS<br>*1st Session* | SENATE | TREATY DOC.<br>105–6 |
|---|---|---|

# AGREEMENT WITH HONG KONG ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS, WITH ANNEX

————

# MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE AGREEMENT BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF HONG KONG ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS, WITH ANNEX, SIGNED IN HONG KONG ON APRIL 15, 1997



MAY 6, 1997.—Agreement was read the first time and, together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

————

U.S. GOVERNMENT PRINTING OFFICE

39–118                    WASHINGTON : 1997

# LETTER OF TRANSMITTAL

⸺⸺⸺

THE WHITE HOUSE, *May 5, 1997*.

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Agreement Between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters, with Annex, signed in Hong Kong on April 15, 1997 (hereinafter referred to as "the Agreement"). I transmit also, for the information of the Senate, a related exchange of letters, with attached forms, signed the same date, and the report of the Department of State with respect to the Agreement.

The Agreement is one of a series of modern mutual legal assistance treaties that the United States is negotiating in order to counter criminal activities more effectively. The Agreement should be an effective tool in our continued cooperation with Hong Kong after its reversion to the sovereignty of the People's Republic of China on July 1, 1997, to assist in the prosecution of a wide variety of modern criminals, including members of drug cartels, "white-collar" criminals, and terrorists. The Agreement is self-executing.

The Agreement provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Agreement includes: (1) taking evidence, testimony, or statements of persons; (2) providing information, documents, records, and items; (3) locating or identifying persons or items; (4) serving documents; (5) transferring persons in custody and others to provide assistance; (6) executing requests for search and seizure; (7) confiscating and forfeiting the proceeds and instrumentalities of crime and otherwise assisting in relation thereto; (8) delivering property, including lending exhibits or other items; and (9) any other form of assistance not prohibited by the law of the Requested Party.

I recommend that the Senate give early and favorable consideration to the Agreement and give its advice and consent to ratification so that the Agreement can enter into force no later than July 1, 1997, when Hong Kong reverts to the sovereignty of the People's Republic of China.

WILLIAM J. CLINTON.

# LETTER OF SUBMITTAL

––––––––––

DEPARTMENT OF STATE,
*Washington, April 21, 1997.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Agreement between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters with Annex ("the Agreement"), signed at Hong Kong on April 15, 1997. I recommend that the Agreement be transmitted to the Senate for its advice and consent to ratification. Accompanying the Agreement is a related exchange of letters, with attached forms, signed on April 15, 1997. I recommend that these letters be transmitted for the information of the Senate.

The Agreement covers mutual legal assistance in criminal matters. In recent years, similar bilateral treaties have entered into force with a number of other countries. This Agreement contains many provisions similar to other treaties in this area.

Upon entry into force, this Agreement will enhance our ability to investigate, prosecute, and variety of offenses, including violent crimes, drug trafficking, money laundering, alien smuggling and tax fraud and other white-collar crimes. For narcotics-related crime, it will supersede an Agreement between the Government of the United States of America and the Government of Hong Kong Concerning the Confiscation and Forfeiture of the Proceeds and Instrumentalities of Drug Trafficking done at Hong Kong November 23, 1990, which expires on June 30, 1997.

Although entitled an "agreement" to reflect Hong Kong's unique juridical status, for purposes of United States law, the instrument will be considered to be a treaty and, thus, is hereby submitted to you for transmittal to the Senate for advice and consent to ratification. In that regard, I note that Hong Kong is entering into this Agreement with the authorization of "the sovereign government which is responsible for its foreign affairs." At present, that is the United Kingdom. However, the People's Republic of China, through the Sino-British Joint Liaison Group, has also approved this Agreement, as well as the related exchange of letters and forms, and authorized its continuation in force after July 1, 1997. The Agreement is designed to be self-executing and will not require implementing legislation.

Article 1 contains a non-exhaustive list of the major types of assistance to be provided under the Agreement, including taking evidence, testimony or statements of persons; providing information, documents, records and items; locating or identifying persons or items; serving documents; transferring persons in custody and oth-

(V)

VI

ers to provide assistance; executing requests for search and seizure; confiscating and forfeiting the proceeds and instrumentalities of crime and otherwise assisting in relation thereto; delivering property, including lending exhibits or other items; and any other form of assistance not prohibited by the law of the Requested Party. The scope of the Agreement includes not only criminal offenses, but also proceedings related to criminal matters, which may be civil or administrative in nature except as to certain revenue matters enumerated in paragraph (3). The article makes clear that the Agreement is designed to be utilized only by governmental authorities who seek evidence for use in criminal investigations and prosecutions and proceedings related to criminal proceedings. The Agreement is not intended to create any right in a private person to seek, suppress or exclude evidence.

Article 2 provides for the establishment of Central Authorities and specifies that, for the United States, the Central Authority is the Attorney General or a person duly authorized by the Attorney General. For Hong Kong, the Central Authority is the Attorney General of Hong Kong or a person duly authorized by the Attorney General. The Central Authorities shall communicate directly between each other for purposes of the Agreement.

Article 3 sets forth circumstances under which the Requested Party shall or may deny assistance under the Agreement. A request shall be denied if it impairs the sovereignty, security, or public order of the United States or the sovereign government responsible for the foreign affairs relating to Hong Kong, which, after revision on July 1, 1997, will be the People's Republic of China; or if the Central Authority is of the opinion that granting the request would impair the Requested Party's essential interests or that the request for assistance relates to a political offense or that there are substantial grounds for believing the request was made for the purpose of prosecuting, punishing, or otherwise proceeding against a person on account of the person's race, religion, nationality, or political opinions.

Article 3(1)(d) provides that the Central Authority shall refuse assistance if it is of the opinion that the acts or omissions alleged to constitute the criminal offense would not have constituted a criminal offense if they had taken place within the jurisdiction of the Requested Party, or, irrespective of that analysis, would not constitute in the Requesting Party any of the offenses described in the Annex to the Agreement. Thus, for offenses described in the Annex, assistance must be provided without regard to whether the offense would constitute an offense under the laws of the Requested Party.

Finally, the Central Authority is permitted to deny assistance if the request relates to an offense under military law that would not be an offense under ordinary criminal law, the request relates to the prosecution of a person for a criminal offense for which the person has been convicted or acquitted in the Requested Party, or the request is not made in conformity with the Agreement.

Before denying assistance under Article 3, the Central Authority of the Requested Party is required to consult with its counterpart in the Requesting Party to consider whether assistance can be given subject to such conditions as it deems necessary. If the Re-

questing Party accepts assistance subject to conditions, it shall comply with the conditions. If the Central Authority of the Requested Party refuses assistance, it shall inform the Central Authority of the Requesting Party of the reasons for the refusal.

Article 4 prescribes the form and content of written requests under the Agreement, specifying in detail the information required in each request. The article permits oral requests in urgent cases but requires written confirmation promptly thereafter. The article specifies further information to be provided to the extent necessary and possible to assist in locating individuals and effecting particular types of assistance. All requests and supporting documents are to be provided in an official language of the Requested Party.

Article 5 requires the Central Authority of the Requested Party to execute promptly a request, or to arrange for its execution through its competent authorities. The competent authorities of the Requested Party are to use their best efforts to execute a request. The courts of the Requested Party shall have the authority to issue subpoenas, search warrants, or other orders necessary to execute the request.

Requests are to be executed as empowered by this Agreement or by applicable law; the method of execution specified in the request is to be followed except to the extent that it is not incompatible with the law of the Requested Party. If the Central Authority of the Requested Party determines that execution of the request would interfere with an ongoing criminal investigation or proceeding, it may postpone execution or, after consultations with the Requesting Party, impose conditions on such execution. If the Requesting Party accepts assistance subject to such conditions, it shall comply with them.

Article 5 further requires the Requested Party, if so requested, to use its best efforts to keep confidential a request and its contents, and to inform the Requesting Party if the request cannot be executed without breaching confidentiality so that the Requesting Party can then determine whether the request should nevertheless be executed.

Article 6 apportions between the two Parties the costs incurred in executing a request. Generally, the Requested Party pays all ordinary costs relating to the execution of the request, except for the fees of experts and of counsel retained at the request of the Requesting Party, travel expenses and allowances for the travel of persons traveling at the request of the Requesting Party (*e.g.*, pursuant to Articles 11 or 12), and the costs of transcription, translation and interpretation. If it is apparent that expenses of an extraordinary nature will be required to fulfill the request, the Parties are to consult to determine the conditions under which the execution of the request may continue.

Article 7 provides that the Central Authority of the Requested Party may require that any information or evidence obtained under the Agreement be kept confidential or be used only subject to specified conditions, including that it not be used for investigations, proceedings, or prosecutions other than those described in the request without the prior consent of the Requested Party. If the Requested Party requests that information or evidence furnished be kept confidential or be used in accordance with conditions specified by its

VIII

Central Authority, the Requesting Party is required to comply with the conditions specified. This does not, however, preclude the use or disclosure in a criminal proceeding of information or evidence to the extent required for the United States under its Constitution or for Hong Kong under its law. If information is made public in the Requesting Party in accordance with the Agreement, no further limitations on use apply.

Article 8 obligates the Requested Party, upon request, to endeavor to obtain a statement of a person for the purpose of an investigation, prosecution, or proceeding related to a criminal matter, with the consent of the person.

Article 9 provides that the Requested Party shall compel, if necessary, the taking of testimony or production of documents or other evidence in its territory on behalf of the Requesting Party and shall, upon request, inform the Requesting Party in advance of the date and place of the taking of testimony.

Article 9 also requires the Requested Party to permit the presence of any persons specified in the request (such as the accused, counsel for the accused, or other interested persons) and, to the extent permitted by its law, to permit such persons to question the person whose testimony is being taken. In the event that a person whose testimony or evidence is being taken asserts a claim of immunity, incapacity, or privilege under the laws of the Requested Party, it is to be resolved pursuant to the Requested Party's laws. If such claim is made under the laws of the Requesting Party, the testimony or evidence shall be taken and the claim made known to the Requesting Party for resolution by its authorities.

Finally, Article 9(6) provides that the Requesting Party may ask that evidence that is produced pursuant to this article or is the object of testimony under this article be certified in accordance with procedures specified in the request and that, if so certified, such evidence shall be admissible in evidence in the Requesting Party as proof of the truth of the matters set forth therein. Letters signed and exchanged between the Parties at the time of the signing of the Agreement on April 15, 1997, and included herewith for the information of the Senate, set forth the understanding of the Parties that those letters and forms attached thereto serve to establish the procedures for application of this article and of Articles 10(3) and 16(3) of the Agreement. Where the Government of the United States requests that copies of business records be certified under Article 9(6) of the Agreement, it will request the use of Form A, entitled Certificate of Authenticity of Business Records, attached to the letter. Where the Government of Hong Kong requests certification under this article, it will request the use, subject to Article 5(3) of the Agreement, of forms forwarded with the request.

Article 10 requires that the Requested Party provide the Requesting Party with copies of publicly available records in the possession of government departments or agencies. The Requested Party may also, in its discretion, provide copies of documents, records or information in the possession of a governmental department or agency in that Party but not publicly available, to the same extent and under the same conditions as it would to its own law enforcement or judicial authorities. Article 10(3) provides that the Requesting Party may ask that official records produced pursu-

ant to this article be certified in accordance with procedures speci-
fied in the request and that documents so certified shall be admis-
sible in evidence in the Requesting Party as proof of the truth of
the matters set forth therein Where the Government of the United
States requests that copies of Hong Kong documents be certified
under this article, it will request the use of Form B entitled Certifi-
cate of Authenticity of Foreign Public Documents, included in the
April 15, 1997 exchange of letters. Where the Government of Hong
Kong requests certification under this article, it will request the
use, subject to Article 5(3) of the Agreement, of forms forwarded
with the request.

Article 11 provides for the voluntary transfer to one Party of a
person in custody in the other Party for purposes of assistance
under the Agreement, provided that the person in question and the
Central Authorities of both Parties agree. This could occur either
in transfers from the Requested Party for assistance such as testi-
mony in a trial or from the Requesting Party to, for example, at-
tend the taking of evidence in the Requested Party. The article es-
tablishes the express authority and the obligation of the receiving
Party to maintain the person transferred in custody unless other-
wise authorized by the sending Party. It further obligates the re-
ceiving Party as soon as circumstances permit or as otherwise
agreed by both Central Authorities, without the need for extra-
dition proceedings, and provides that the person transferred shall
receive credit for time served in the custody of the receiving Party.

Article 12 requires the Central Authority of the Requested Party,
upon request, to invite a person not in custody to travel to the Re-
questing Party to provide assistance and promptly to inform the
Requesting Party of the person's response.

Article 13 provides that, unless otherwise specified in the re-
quest, a person transferred pursuant to Article 11 or 12 shall not
be subject to service of process, or be prosecuted, punished or sub-
jected to any restriction of personal liberty. This "safe conduct" is
limited to acts or omissions that preceded the person's departure
from the sending Party. For transferred persons not held in cus-
tody in the sending Party, any safe conduct provided under this ar-
ticle shall cease 15 days after the person has been notified that his
presence is no longer required in the receiving Party or whenever
the person voluntarily returns to the receiving Party after leaving
it. Further, Article 13 provides that a person providing evidence
pursuant to Article 11 or 12 cannot be subject to prosecution based
on his testimony except for perjury and shall not be required to
provide assistance other than that to which the request relates.
Furthermore, refusal to consent to provide assistance under Article
11 or 12 cannot be used as a basis for liability to any penalty or
coercive measure by the courts of either Party.

Article 14 requires the Requested Party to endeavor to ascertain
the location or identity of any person or item specified in a request.

Article 15 requires the Requested Party to use its best efforts to
effect service of any documents transmitted to it pursuant to this
Agreement for the purpose of service. The article further requires
that any request for the service of a document pertaining to a re-
sponse or appearance in the Requesting Party be transmitted by
the Requesting Party within a reasonable time before the sched-

x

uled response or appearance. The Requested Party is required to return proof of service. Article 15 also provides that a person shall not be liable to any penalty or coercive measure for failure to comply with any process served on him under this article unless the person is a national or permanent resident of the United States and the United States is the Requesting Party.

Article 16 obligates the Requested Party to carry out requests for search, seizure and delivery of any item to the Requesting Party if the request includes the information justifying such action under the law of the Requested Party. If requested by the Requested Party, the article further provides for the certification by every official of the Requested Party who has had custody of a seized item of its identity, the continuity of custody, and the integrity of its condition. Any such certificates shall be admissible in evidence in the Requesting Party as proof of the truth of the matters set forth therein. Where the Government of the United States requests such certification, it will request the use of Form C entitled Certificate with Respect to Seized Items, included in the April 15, 1997 exchange of letters. Where the Government of Hong Kong requests certification under this article, it will request the use, subject to Article 5(3) of the Agreement, of forms forwarded with the request. In addition, Article 16 provides that the Requesting Party shall observe any conditions placed on the transfer of the seized items by the Requested Party, *e.g.,* to protect third-party interests in the property.

Article 17 obliges the Central Authority of the Requested Party to return to the Central Authority of the Requesting Party as soon as possible any documents, records, or articles of evidence furnished under the Agreement, if the Requested Party so requires.

Article 18 obligates the Requested Party, upon request, to endeavor to ascertain and notify the Requesting Party whether any proceeds or instrumentalities of a crime against the law of the Requesting Party are located in its jurisdiction and to take measures permitted by its law to prevent any dealing in, transfer or disposal of these suspected proceeds or instrumentalities of crime pending a final determination by a court of the Requesting Party. The request must include the Requesting Party's basis for believing that such items may be located in the Requested Party's jurisdiction. Article 18 also obligates the Parties, upon request, by whatever means are appropriate, to assist one another in providing assistance in securing the confiscation or forfeiture of proceeds or instrumentalities of crime. The article further permits the Parties to agree to share forfeited assets, or the proceeds of their sale, to the extent permitted by applicable laws and upon such terms as may be agreed.

Article 19 requires documents, records, or items transmitted to the Requesting Party to be certified or authenticated only if the Requesting Party so requests. Such certification or authentication is to be performed by consular or diplomatic officers only if required by the law of the Requesting Party.

Article 20 states that the Parties may also provide assistance to each other pursuant to other agreements or to applicable laws, arrangements or practices.

XI

Article 21 provides that the Central Authorities of the Parties shall consult as appropriate to promote the most effective use of this Agreement and may agree on practical measures necessary to facilitate implementation of the Agreement.

Article 22 provides that any disputes arising out of the interpretation, application, or implementation of this Agreement that cannot be resolved by the Central Authorities are to be resolved through diplomatic channels.

Article 23 provides that the Agreement shall enter into force thirty days after the date on which the Parties notify each other in writing that their requirements for the entry into force of the Agreement have been complied with. The Agreement shall apply to requests whether or not the relevant acts or omissions occurred prior to this Agreement's entry into force. In addition, Article 23 allows either Party to terminate the Agreement by giving written notice to the other Party, termination to be effective three months after the date of the receipt of such notice. Requests for assistance that have been received prior to receipt of such notification are to be processed in accordance with the terms of the Agreement as if the Agreement were still in force.

A Technical Analysis explaining in detail the provisions of the Agreement is being prepared by the United States negotiating delegation, consisting of representatives from the Departments of Justice and State, and will be transmitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in recommending approval of this Agreement by the Senate as soon as possible.

Respectfully submitted,

MADELEINE ALBRIGHT.



**CONSULATE GENERAL OF THE**
UNITED STATES OF AMERICA

**Hong Kong**

April 15, 1997

Dear Mr. Lai:

I write in reference to the Agreement Between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters, signed at Hong Kong on April 15, 1997, and in particular to express the understanding of the Government of the United States of America with respect to Articles 9(6), 10(3), and 16(3) of the Agreement.

These three articles provide for evidence obtained under the Agreement to be certified in accordance with procedures specified in the request, and if certified in accordance with such procedures, the evidence shall be admissible in the Requesting Party as proof of the matters stated therein.

During the course of the negotiations, each side achieved a greater understanding and appreciation of the legal principles that are generally applied by the courts of the other in deciding issues dealing with the admission into evidence of various types of documents, records, and items. As a result, representatives of the Governments of Hong Kong and the United States who participated in the negotiation of the Agreement have jointly developed three certificate forms, which are attached to this letter.

Where the Government of the United States requests that copies of business records be certified under Article 9(6) of the Agreement, it will request the use of the form entitled Certificate of Authenticity of Business Records, attached to this letter as Form A. Where the Government of the United States requests that copies of foreign public documents be certified under Article 10(3), it will request the use of the form entitled Certificate of Authenticity of Foreign Public Documents, attached to this letter as Form B. Where the Government of the United States requests that continuity of custody of seized items be certified under Article 16(3), it will request the use of the form entitled Certificate with Respect to Seized Items, attached to this letter as Form C.

Mr. Peter Lai,
        Secretary for Security,
                Government Secretariat,
                        Lower Albert Road.

(1)

2

- 2 -

   Where the Government of Hong Kong requests certification under Article 9(6), 10(3), or 16(3), it will request the use, subject to Article 5(3) of the Agreement, of forms forwarded with the request.

   I would appreciate a letter in reply confirming that the understanding described above is also the understanding of the Government of Hong Kong. If that is the case, this letter, with attachments, and your reply will serve to establish the procedures for application of Article 9(6), 10(3) or 16(3) of the Agreement, to be utilized upon entry into force of the Agreement.

Sincerely,

Richard A. Boucher
Consul General

Enclosures:

   (1) Form A
   (2) Form B
   (3) Form C

3

**Form A**

### CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, _____*[name]*_____, make this statement knowing that if I willfully state anything that I know to be false or do not believe to be true, I may be liable to prosecution for a criminal offence.  I am employed by/associated with *[name of business from which documents are sought]*_____ and my official title is _____*[official title]*_____.  Each of the records attached hereto is the original or a duplicate of the original record in the custody of _____*[name of business from which documents are sought]*_____.  I further state that:

    (A)    such records were made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

    (B)    such records were kept in the course of a regularly conducted business activity;

    (C)    the business activity made such records as a regular practice; and

    (D)    if any such record is not the original, it is a duplicate of the original.

_____*[signature]*_____          _____*[date]*_____

Sworn to or affirmed before me, _____*[name]*_____, a _____*[Notary Public/Commissioner for Oaths and Declarations/Judicial Officer/etc.]*_____ this _____ day of _____, 19____.

4

**Form B**

**CERTIFICATE OF AUTHENTICITY OF FOREIGN PUBLIC DOCUMENTS**

I, _____*[name]*_____, make this statement knowing that if I willfully state anything that I know to be false or do not believe to be true, I may be liable to prosecution for a criminal offence.

(1)   I am employed in _____*[entity]*_____, which is a department of the Government of Hong Kong/a public entity and which in the course of its functions maintains official records;

(2)   my official position is _____ *[official title]*_____;

(3)   in my official capacity I have caused the production of true and accurate copies of records maintained by _____*[entity]*_____; and

(4)   those copies are described below and attached.

Description of documents:

_____*[signature]*_____          _____*[date]*

Sworn to or affirmed before me, _____*[name]*_____, a _____*[Notary Public/Commissioner for Oaths and Declarations/Judicial Offficer/etc.]*_____ this _____ day of _____, 19___.

5

**Form C**

### CERTIFICATE WITH RESPECT TO SEIZED ITEMS

I, _____ *[name]_____*, make this statement knowing that if I willfully state
anything that I know to be false or do not believe to be true, I may be liable to
prosecution for a criminal offence.  My position with the Government of Hong
Kong is _____*[official title]_____*.  I received custody of the items listed
below from _____*[name of person]_____* on _____*[date]_____*, at
*[place]_____*.  I relinquished custody of the items listed below to
*[name of person]_____* on _____*[date]_____*, at _____*[place]_____* in
the same condition as when I received them (or, if different, as noted below).
Description of items:

Changes in condition while in my custody:

_____*[signature]_____*          _____*[date]*

    Sworn to or affirmed before me, _____*[name]_____*, a _____*[Notary*
*Public/Commissioner for Oaths and Declarations/Judicial Officer/etc.]_____* this _____ day of
_____, 19___.

T.Doc. 105-006 - 97 - 2

6

 

**GOVERNMENT SECRETARIAT**
Lower Albert Road
Hong Kong

Our Ref: SBCR 5/22/581/87

15 April 1997

Mr. Richard Boucher
Consul-General
American Consulate General
26 Garden Road
Hong Kong

Dear Mr. Boucher,

    I write in response to your letter of today's date concerning the Agreement Between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters, signed at Hong Kong on 15 April, 1997, which reads as follows:

    "I write in reference to the Agreement Between the Government of the United States of America and the Government of Hong Kong on Mutual Legal Assistance in Criminal Matters, signed at Hong Kong on 15 April, 1997, and in particular to express the understanding of the Government of the United States of America with respect to Articles 9 (6), 10 (3), and 16 (3) of the Agreement.

    These three articles provide for evidence obtained under the Agreement to be certified in accordance with procedures specified in the request, and if certified in accordance with such procedures, the evidence shall be admissible in evidence in the Requesting Party as proof of the matters stated therein.

7

- 2 -

During the course of the negotiations, each side achieved a greater understanding and appreciation of the legal principles that are generally applied by the courts of the other in deciding issues dealing with the admission into evidence of various types of documents, records, and items. As a result, representatives of the Governments of Hong Kong and the United States who participated in the negotiation of the Agreement have jointly developed three certificate forms, which are attached to this letter.

Where the Government of the United States requests that copies of business records be certified under Article 9 (6) of the Agreement, it will request the use of the form entitled Certificate of Authenticity of Business Records, attached to this letter as Form A. Where the Government of the United States requests that copies of foreign public documents be certified under Article 10 (3), it will request the use of the form entitled Certificate of Authenticity of Foreign Public Documents, attached to this letter as Form B. Where the Government of the United States requests that continuity of custody of seized items be certified under Article 16 (3), it will request the use of the form entitled Certificate with Respect to Seized Items, attached to this letter as Form C.

Where the Government of Hong Kong requests certification under Article 9 (6), 10 (3) or 16 (3), it will request the use, subject to Article 5 (3) of the Agreement, of forms forwarded with the request.

I would appreciate a letter in reply confirming that the understanding described above is also the understanding of the Government of Hong Kong. If that is the case, this letter, with attachments, and your reply will serve to establish the procedures for application of Article 9 (6), 10 (3) or 16 (3) of the Agreement, to be utilized upon entry into force of the Agreement."

8

- 3 -

I am pleased to confirm on behalf of the Government of Hong Kong that the understanding described in your letter is also the understanding of the Government of Hong Kong. Accordingly, your letter, with attachments, and this reply, with identical attachments, will serve to establish the procedures for application of Articles 9 (6), 10 (3) and 16 (3) of the Agreement, to be utilized upon entry into force of the Agreement.

Sincerely,

(Peter Lai)
Secretary for Security

Attachments:
  (1)   Form A
  (2)   Form B
  (3)   Form C

9

**Form A**

**CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS**

I, _____*[name]*_____, make this statement knowing that if I willfully state anything
that I know to be false or do not believe to be true, I may be liable to prosecution for a
criminal offence.  I am employed by/associated with _____*[name of business from which documents are sought]*
and my official title is _____*[official title]*_____.  Each of the records attached hereto
is the original or a duplicate of the original record in the custody of _____*[name of business
from which documents are sought]*_____.  I further state that:

      (A)      such records were made, at or near the time of the occurrence of the matters
                  set forth, by (or from information transmitted by) a person with knowledge
                  of those matters;

      (B)      such records were kept in the course of a regularly conducted business
                  activity;

      (C)      the business activity made such records as a regular practice; and

      (D)      if any such record is not the original, it is a duplicate of the original.

_____*[signature]*_____       _____*[date]*_____

Sworn to or affirmed before me, _____*[name]*_____, a _____*[Notary Public/Commissioner
for Oaths and Declarations/Judicial Officer/etc.]*_____ this _____ day of _____, 19___.

10

**Form B**

**CERTIFICATE OF AUTHENTICITY OF FOREIGN PUBLIC DOCUMENTS**

I, _____*[name]*_____, make this statement knowing that if I willfully state anything
that I know to be false or do not believe to be true, I may be liable to prosecution for a
criminal offence.

    (1)    I am employed in _____*[entity]*_____, which is a department of the
Government of Hong Kong/a public entity and which in the course of its
functions maintains official records;

    (2)    my official position is _____*[official title]*_____;

    (3)    in my official capacity I have caused the production of true and accurate
copies of records maintained by _____*[entity]*_____; and

    (4)    those copies are described below and attached.

Description of documents:

_____*[signature]*_____        _____*[date]*_____

Sworn to or affirmed before me, _____*[name]*_____, a _____*[Notary Public/Commissioner
for Oaths and Declarations/Judicial Officer/etc.]*_____ this _____ day of _____, 19___.

11

**Form C**

### CERTIFICATE WITH RESPECT TO SEIZED ITEMS

I, _____ *[name]*_____, make this statement knowing that if I willfully state anything that I know to be false or do not believe to be true, I may be liable to prosecution for a criminal offence. My position with the Government of Hong Kong is _____*[official title]*_____. I received custody of the items listed below from _____*[name of person]* on _____*[date]*_____, at _____*[place]*_____. I relinquished custody of the items listed below to _____*[name of person]*_____ on _____*[date]*_____, at *[place]*_____ in the same condition as when I received them (or, if different, as noted below).

Description of items:

Changes in condition while in my custody:

_____*[signature]*_____    _____*[date]*_____

Sworn to or affirmed before me, _____*[name]*_____, a _____*[Notary Public/Commissioner for Oaths and Declarations/Judicial Officer/etc.]*_____ this _____ day of _____, 19____.

12

AGREEMENT

BETWEEN

THE GOVERNMENT OF

THE UNITED STATES OF AMERICA

AND

THE GOVERNMENT OF HONG KONG

ON

MUTUAL LEGAL ASSISTANCE IN

CRIMINAL MATTERS

13

## TABLE OF CONTENTS

Article 1 . . . . . . . . . . . . . . . . Scope of Assistance

Article 2 . . . . . . . . . . . . . . . Central Authorities

Article 3 . . . . . . . Limitations on Providing Assistance

Article 4 . . . . . . . . . . . Form and Contents of Requests

Article 5 . . . . . . . . . . . . . . Execution of Requests

Article 6 . . . . . . . . . . . Representation and Expenses

Article 7 . . . . . . . . . . . . . . . Limitations on Use

Article 8 . . . . . . . . . . . . . Statements of Persons

Article 9 . . . . . . . . Taking of Evidence or Testimony
in the Requested Party

Article 10 . . . . . . . . . . . . . Publicly Available
and Official Documents

Article 11 . . . . . . . . Transfer of Persons in Custody

Article 12 . . . . . . . . . . Attendance of Other Persons

Article 13 . . . . . . . . . . . . . . . . Safe Conduct

Article 14 . . . Location or Identity of Persons or Items

Article 15 . . . . . . . . . . . . Service of Documents

Article 16 . . . . . . . . . . . . . . Search and Seizure

Article 17 . . . . . . . . . . . . . . . . Return of Items

Article 18 . . . . . . . . . . Confiscation and Forfeiture

Article 19 . . . . . . . Certification and Authentication

Article 20 . . . . . . . . . . . . . . . Other Assistance

Article 21 . . . . . . . . . . . . . . . . . Consultation

Article 22 . . . . . . . . . . . Resolution of Disputes

Article 23 . . . . . . . Entry Into Force and Termination

14

The Government of the United States of America and the
Government of Hong Kong, having been duly authorized by the
sovereign government responsible for the foreign affairs
relating to Hong Kong, hereinafter called "the Parties",

Desiring to improve the effectiveness of law enforcement of
both Parties in the investigation, prosecution, and prevention
of crime and the confiscation or forfeiture of the proceeds and
instrumentalities of crime through cooperation and mutual legal
assistance related to criminal matters,

Have agreed as follows:

15

- 2 -

### Article 1
### Scope of Assistance

(1)  The Parties shall provide mutual assistance, in accordance with the provisions of this Agreement, in connection with the investigation, prosecution, and prevention of criminal offences, and in proceedings related to criminal matters.

(2)  Assistance shall include:
- (a)  taking evidence, testimony, or statements of persons;
- (b)  providing information, documents, records, and items;
- (c)  locating or identifying persons or items;
- (d)  serving documents;
- (e)  transferring persons in custody and others to provide assistance;
- (f)  executing requests for search and seizure;
- (g)  confiscating and forfeiting the proceeds and instrumentalities of crime and otherwise assisting in relation thereto;
- (h)  delivering property, including lending exhibits or other items; and
- (i)  any other form of assistance not prohibited by the law of the Requested Party.

(3)  This Agreement shall include assistance for criminal offences related to taxation, customs duties, foreign exchange

16

- 3 -

control, or other revenue matters but shall not include
assistance for non-criminal proceedings relating thereto.

(4)  This Agreement is intended solely for mutual legal
assistance between the Parties, and is not intended or designed
to provide such assistance to private parties.  A private party
may not rely upon any provision of this Agreement to impede the
execution of a request, or to exclude or suppress evidence
obtained under this Agreement.

Article 2
Central Authorities

(1)  Each Party shall establish a Central Authority.

(2)  The Central Authority for the United States of America
shall be the Attorney General of the United States or a person
duly authorized by the Attorney General.  The Central Authority
for Hong Kong shall be the Attorney General of Hong Kong or a
person duly authorized by the Attorney General.

(3)  Requests and other communications pursuant to this
Agreement shall be made directly between the Central Authorities
of the Parties.

17

- 4 -

### Article 3
### Limitations on Providing Assistance

(1)   The Central Authority of the Requested Party shall refuse assistance if:

      (a)   the request for assistance impairs the sovereignty, security, or public order (*ordre public*) of the United States of America or, in the case of Hong Kong, the sovereign government responsible for the foreign affairs relating to Hong Kong;

      (b)   it is of the opinion that the granting of the request would impair the Requested Party's essential interests;

      (c)   it is of the opinion that the request for assistance relates to a political offence or that there are substantial grounds for believing the request was made for the purpose of prosecuting, punishing, or otherwise proceeding against a person on account of the person's race, religion, nationality, or political opinions; or

      (d)   it is of the opinion that the acts or omissions alleged to constitute the criminal offence would not have constituted a criminal offence if they had taken place within the jurisdiction of the Requested Party, or, irrespective of whether they would have done so, would not constitute in the Requesting Party an offence within any of the descriptions in the Annex to this Agreement.

18

- 5 -

(2)   In considering whether acts or omissions constitute an offence for the purpose of paragraph (1)(d), it shall be irrelevant whether any of those acts or omissions involve interstate transportation or the use of the mails or other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

(3)   The Central Authority of the Requested Party may refuse assistance if:

    (a)   the request relates to an offence under military law that would not be an offence under ordinary criminal law;

    (b)   the request for assistance relates to the prosecution of a person for a criminal offence in respect of which the person has been convicted or acquitted in the Requested Party; or

    (c)   the request is not made in conformity with the Agreement.

(4)   Before refusing assistance pursuant to this Article, the Central Authority of the Requested Party:

    (a)   shall promptly inform the Central Authority of the Requesting Party of the reason for considering refusal; and

    (b)   shall consult with the Central Authority of the Requesting Party to determine whether assistance may be given subject to such terms and conditions

19

- 6 -

as the Central Authority of the Requested Party deems necessary.

(5)   If the Requesting Party accepts assistance subject to the terms and conditions referred to in paragraph (4)(b), it shall comply with those terms and conditions.

(6)   If the Central Authority of the Requested Party refuses assistance, it shall inform the Central Authority of the Requesting Party of the reasons for the refusal.

Article 4
Form and Contents of Requests

(1)   Requests shall be made in writing except in urgent cases.  In urgent cases, requests may be made orally, but shall be confirmed in writing promptly thereafter.

(2)   Requests and supporting documents shall be submitted in, or accompanied by a translation into, an official language of the Requested Party.

(3)   Requests shall include the following:
    (a)   the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates;
    (b)   a description of the subject matter and nature of the investigation, prosecution, or proceeding,

20

- 7 -

including the specific criminal offences that
relate to the matter;

(c) a description of the evidence, information, or
other assistance sought;

(d) a statement of the purpose for which the
evidence, information, or other assistance is
sought; and

(e) a summary of the relevant facts and law.

(4) To the extent necessary and possible, requests shall
also include:

(a) information on the identity and location of any
person from whom evidence, information, or other
assistance is sought;

(b) information on the identity and location of a
person to be served, that person's relationship
to the proceedings, and the manner in which
service is to be made;

(c) information on the identity and whereabouts of a
person to be located;

(d) a description of the place or person to be·
searched and of the items to be seized;

(e) a description of the manner in which any
testimony, evidence, or statement is to be taken
and recorded;

(f) a list of questions to be asked of a person or a
description of the subject matter about which the
person is to be examined, or both;

- 8 -

(g)   a description of any particular procedure to be followed in executing the request;

(h)   information as to the allowances and expenses to which a person asked to appear in the Requesting Party will be entitled;

(i)   any requirements for confidentiality;

(j)   any time limits relevant to the request;

(k)   a certified copy of any court order sought to be enforced, and a statement to the effect that it is a final order not subject to appeal;

(l)   a copy of any certificates or forms to be completed in order to meet the standards of admissibility in the Requesting Party; and

(m)   any other information that may be brought to the attention of the Requested Party to facilitate its execution of the request.


### Article 5
### Execution of Requests

(1)  The Central Authority of the Requested Party shall promptly execute the request or arrange for its execution through its competent authorities.

(2)  Such authorities shall use their best efforts to execute the request.  The Courts of the Requested Party shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request.

22

- 9 -

(3)  Requests shall be executed as empowered by this
Agreement or by applicable law.  The method of execution
specified in the request shall be followed to the extent that it
is not incompatible with the law of the Requested Party.

(4)  If the Central Authority of the Requested Party
determines that execution of a request would interfere with an
ongoing criminal investigation, prosecution, or proceeding in
that Party, it may postpone execution, or make execution subject
to conditions determined necessary after consultations with the
Central Authority of the Requesting Party.  If the Requesting
Party accepts the assistance subject to the conditions, it shall
comply with the conditions.

(5)  The Requested Party shall promptly inform the
Requesting Party of any circumstances that are likely to cause a
significant delay in responding to the request.

(6)  The Requested Party shall use its best efforts to keep
confidential a request and its contents if such confidentiality
is requested by the Central Authority of the Requesting Party.
If the request cannot be executed without breaching such
confidentiality, the Central Authority of the Requested Party
shall so inform the Central Authority of the Requesting Party,
which shall then determine whether the request should
nevertheless be executed.

23

- 10 -

(7)  The Central Authority of the Requested Party shall respond to reasonable requests by the Central Authority of the Requesting Party on progress toward execution of the request.

(8)  The Central Authority of the Requested Party shall promptly inform the Central Authority of the Requesting Party of the outcome of the execution of the request.  If the request cannot be executed in whole or in part, the Central Authority of the Requested Party shall inform the Central Authority of the Requesting Party of the reasons therefor.


Article 6
Representation and Expenses


(1)  The Requested Party shall make all necessary arrangements for the representation of the Requesting Party in any proceeding arising out of a request for assistance and shall otherwise represent the interests of the Requesting Party.

(2)  The Requested Party shall assume all ordinary expenses of executing a request, except:

      (a)  fees of counsel retained at the request of the Requesting Party;

      (b)  fees of experts;

      (c)  expenses of transcription, and language interpretation and translation; and

24

- 11 -

    (d)   travel expenses and allowances of persons
travelling at the request of the Requesting Party.


    (3)  If, during the execution of the request, it becomes
apparent that expenses of an extraordinary nature are required
to fulfill the request, the Parties shall consult to determine
the terms and conditions under which the execution of the
request may continue.


## Article 7
## Limitations on Use


    (1)  The Central Authority of the Requested Party may
require that the Requesting Party not use any information or
evidence obtained under this Agreement in any investigation,
prosecution, or proceeding other than that described in the
request without the prior consent of the Central Authority of
the Requested Party.  In such a situation, the Requesting Party
shall comply with the requirement.


    (2)  The Central Authority of the Requested Party may
request that information or evidence furnished under this
Agreement be kept confidential or be used only subject to terms
and conditions it may specify.  If the Requesting Party accepts
the information or evidence subject to such conditions, the
Requesting Party shall comply with the conditions.

25

- 12 -

(3)  Nothing in this Article shall preclude the use or disclosure in a criminal proceeding of information or evidence to the extent that there is an obligation to do so for the United States under its Constitution or for Hong Kong under its law.  The Requesting Party shall notify the Requested Party in advance of any such proposed disclosure.

(4)  Information or evidence that has been made public in the Requesting Party in accordance with paragraph (1) or (2) may thereafter be used for any purpose.

### Article 8
### Statements of Persons

Where a request is made to obtain the statement of a person for the purpose of an investigation, prosecution, or proceeding related to a criminal matter, the Requested Party shall endeavour, with the consent of the person, to obtain such statement.

### Article 9
### Taking of Evidence or Testimony in the Requested Party

(1)  Where a request is made that evidence be taken for the purpose of an investigation, prosecution, or proceeding related to a criminal matter, the Requested Party shall arrange to have such evidence taken.  A person in the Requested Party from whom

26

- 13 -

evidence is requested pursuant to this Agreement shall be
compelled, if necessary, to appear and give evidence.

(2)  For the purposes of this Agreement, the giving or
taking of evidence shall include the giving or taking of
testimony and the production of documents, records, or items.

(3)  Upon request, the Central Authority of the Requested
Party shall furnish information in advance about the date and
place of the taking of evidence pursuant to this Article.

(4)  The Requested Party shall permit such persons as are
specified in the request to be present during the execution of
the request and, to the extent permitted by its law, shall allow
such persons to question the person giving the testimony or
evidence.

(5)  If the person referred to in paragraph (1) asserts a
claim of immunity, incapacity, or privilege under the law of the
Requested Party, it shall be resolved pursuant to the Requested
Party's law.  If such a claim is asserted under the law of the
Requesting Party, the evidence shall nonetheless be taken and
the claim made known to the Central Authority of the Requesting
Party for subsequent resolution by the authorities of that
Party.

(6)  The Requesting Party may request that documents,
records, and any other items produced in the Requested Party
pursuant to this Article or that are the subject of testimony

27

- 14 -

taken under this Article be certified in accordance with
procedures specified in the request.  If certified in accordance
with such procedures, they shall be admissible in evidence in
the Requesting Party as proof of the truth of the matters set
forth therein.


Article 10

Publicly Available and Official Documents

(1)  The Requested Party shall provide the Requesting Party
with copies of publicly available records, including documents
or information in any form, in the possession of government
departments and agencies in the Requested Party.

(2)  The Requested Party may provide copies of any
documents, records, or information in the possession of a
government department or agency, but not publicly available, to
the same extent and under the same conditions as such copies
would be available to its own law enforcement or judicial
authorities.

(3)  The Requesting Party may request that official records
produced pursuant to this Article be certified in accordance
with procedures specified in the request.  If certified in
accordance with such procedures, they shall be admissible in
evidence in the Requesting Party as proof of the truth of the
matters set forth therein.

28

- 15 -

## Article 11
### Transfer of Persons in Custody

(1)  A person in the custody of the Requested Party whose presence in the Requesting Party is sought for the purpose of providing assistance pursuant to this Agreement shall be transferred from the Requested Party to the Requesting Party for that purpose if the person consents and if the Central Authorities of both Parties agree.

(2)  Where the presence of a person in custody in the Requesting Party is desired in the Requested Party pursuant to Article 9(4) or at the request of the Requesting Party to assist in execution of a request, the person shall be transferred from the Requesting party to the Requested Party if the person consents and if the Central Authorities of both Parties agree.

(3)  For the purposes of this Article:
    (a)  the receiving Party shall have the authority to keep the person transferred in custody and shall be obliged to do so unless otherwise authorized by the sending Party;
    (b)  the receiving Party shall return the person transferred to the custody of the sending Party as soon as circumstances permit or as otherwise agreed by both Central Authorities;
    (c)  the receiving Party shall not require the sending Party to initiate extradition proceedings for the return of the person transferred; and

29

- 16 -

   (d)   the person transferred shall receive credit for service of the sentence imposed in the sending Party for time served in the custody of the receiving Party.

### Article 12
### Attendance of Other Persons

The Central Authority of the Requesting Party may request the assistance of the Requested Party in making a person who is not in custody available in the Requesting Party for the purpose of providing assistance pursuant to this Agreement.  Upon receipt of such a request, the Central Authority of the Requested Party shall invite the person to travel to the Requesting Party to provide assistance.  The Central Authority of the Requested Party shall promptly inform the Central Authority of the Requesting Party of the response of the person.

### Article 13
### Safe Conduct

(1)  Unless otherwise specified in the request, a person transferred pursuant to Article 11 or 12 shall not be subject to any service of process or be prosecuted, punished, or subject to any restriction of personal liberty by reason of any acts or omissions that preceded the person's departure from the sending Party.

30

- 17 -

(2)   If the request provides for any limitations on the safe conduct referred to in paragraph (1), the person whose presence is requested shall be advised by the Central Authority of the Requested Party of the nature of those limitations.

(3)   Paragraph (1) shall not apply if the person, not being a person transferred in custody under Article 11, and being free to leave, has not left the Requesting Party within a period of fifteen days after being notified that his presence is no longer required, or having left the Requesting Party, has returned.

(4)   A person who consents to provide evidence pursuant to Article 11 or 12 shall not be subject to prosecution based on his testimony, except for perjury.

(5)   A person who consents to provide assistance pursuant to Article 11 or 12 shall not be required to provide assistance other than that to which the request relates.

(6)   A person who does not consent to provide assistance pursuant to Article 11 or 12 shall not by reason thereof be liable to any penalty or coercive measure by the courts of the Requesting or Requested Party.

31

- 18 -

## Article 14

### Location or Identity of Persons or Items

The Requested Party shall, if requested, endeavour to ascertain the location or identity of any person or item specified in the request.


## Article 15

### Service of Documents

(1)  The Requested Party shall use its best efforts to serve any document transmitted to it pursuant to this Agreement for the purpose of service.

(2)  The Requesting Party shall transmit a request for the service of a document pertaining to a response or appearance in the Requesting Party within a reasonable time before the scheduled response or appearance.

(3)  The Requested Party may effect service of any document by mail or, if the Requesting Party so requests, in any other manner required by the law of the Requesting Party that is not prohibited by the law of the Requested Party.

(4)  The Requested Party shall return a proof of service in the manner specified by the Requesting Party.

(5)  A person who fails to comply with any process served on him shall not thereby be liable to any penalty or coercive

32

- 19 -

measure pursuant to the law of the Requesting Party unless that person is, where the United States of America is the Requesting Party, a national or permanent resident of the United States of America.

### Article 16
### Search and Seizure

(1)   The Requested Party shall carry out a request for the search, seizure, and delivery of any item to the Requesting Party if the request includes the information justifying such action under the law of the Requested Party.

(2)   The Requested Party shall provide such information as may be required by the Requesting Party concerning the result of any search, the place of seizure, the circumstances of seizure, and the subsequent custody of the property seized.

(3)   The Requesting Party may request that each official who has had custody of a seized item certify the identity of the item, the continuity of custody, and the integrity of its condition in accordance with procedures specified in the request. Each such certification shall be admissible in evidence in the Requesting Party as proof of the truth of the matters set forth therein.

(4)   The Requesting Party shall observe any conditions imposed by the Central Authority of the Requested Party in relation to any seized property that is delivered to the Requesting Party under this Article.

33

- 20 -

## Article 17
### Return of Items

If required by the Central Authority of the Requested Party, the Central Authority of the Requesting Party shall return as soon as possible any documents, records, or items delivered to it in execution of a request under this Agreement.

## Article 18
### Confiscation and Forfeiture

(1)  The Requested Party shall, upon request, endeavour to ascertain whether any proceeds or instrumentalities of a crime against the law of the Requesting Party are located within its jurisdiction and shall notify the Requesting Party of the result of its inquiries.  In making the request, the Requesting Party shall notify the Requested Party of the basis of its belief that such proceeds or instrumentalities may be located in its jurisdiction.

(2)  Where, pursuant to paragraph (1), suspected proceeds or instrumentalities of crime are found, the Requested Party shall take such measures as are permitted by its law to prevent any dealing in, transfer, or disposal of those suspected proceeds or instrumentalities of crime, pending a final determination by a court of the Requesting Party.

(3)  Where a request is made for assistance in securing the confiscation or forfeiture of proceeds or instrumentalities of

34

- 21 -

crime, such assistance shall be given by whatever means are
appropriate.  This may include enforcing an order made by a
court in the Requesting Party or initiating or assisting in
proceedings in relation to the request.

(4)  The Central Authority of the Requested Party shall
notify the Central Authority of the Requesting Party of any
action taken pursuant to this Article.

(5)  The Party that has custody over proceeds or
instrumentalities of crime shall dispose of them in accordance
with its law.  Either Party may transfer such assets, or the
proceeds of their sale, to the other Party, to the extent
permitted by the transferring Party's law and upon such terms as
may be agreed.

Article 19
Certification and Authentication

Documents, records, or items to be transmitted to the
Requesting Party shall only be certified or authenticated if the
Central Authority of the Requesting Party so requests.  Such
documents, records, or items shall be certified or authenticated
by consular or diplomatic officers only if required by the law
of the Requesting Party.

35

- 22 -

### Article 20
#### Other Assistance

The Parties may provide assistance to each other pursuant to other agreements or to applicable laws, arrangements, or practices.

### Article 21
#### Consultation

The Central Authorities of the Parties shall consult as appropriate to promote the most effective use of this Agreement. The Central Authorities may also agree on such practical measures as may be necessary to facilitate the implementation of this Agreement.

### Article 22
#### Resolution of Disputes

Any dispute arising out of the interpretation, application, or implementation of this Agreement shall be resolved through diplomatic channels if the Central Authorities are themselves unable to reach agreement.

36

- 23 -

## Article 23
### Entry Into Force and Termination

(1) This Agreement shall enter into force thirty days after the date on which the Parties have notified each other in writing that their respective requirements for the entry into force of the Agreement have been complied with.

(2) This Agreement shall apply to requests whether or not the relevant acts or omissions occurred prior to this Agreement's entry into force.

(3) Either Party may terminate this Agreement by giving notice to the other in writing. In that event, the Agreement shall cease to have effect three months after the date of the receipt of such notice. Requests for assistance that have been received prior to receipt of notice of termination of the Agreement shall nevertheless be processed in accordance with the terms of the Agreement as if the Agreement were still in force.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at Hong Kong this 15th day of April 1997 in duplicate, in the English and Chinese languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE            FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA:             HONG KONG:

37

## ANNEX

The Parties recognize the importance of providing broad mutual legal assistance in relation to investigations, prosecutions, and proceedings concerning offences such as trafficking in narcotic drugs, hijacking and other terrorist offences, offences against the laws protecting intellectual property, and offences relating to illegal immigration. In addition, the Parties agree to provide assistance in investigations, prosecutions, and proceedings concerning the following offences without regard to whether the acts or omissions alleged to constitute the offence would constitute an offence under the laws of the Requested Party:

(1) offences against the laws relating to money laundering;

(2) fraud against the government, including behaviour that has the effect of depriving the government or its agencies of money, valuable property, or the ability to conduct its affairs free from false statements and deceit;

(3) offences covered by Article 1(3);

(4) offences against the laws relating to foreign corrupt practices;

(5) export control offences, including conduct tending to evade the laws controlling the export of goods or arms, and other offences against the laws relating to the control of exportation or importation of goods of any type;

38

(6) criminal exploitation of children, whether for sexual or other purposes, including commercial dealing in child pornography;

(7) offences against the laws relating to organized crime and racketeering; and

(8) such further offences as may from time to time be agreed upon by exchange of diplomatic notes following consultation between the Central Authorities.