1

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)


- - - - - - - - - - x
                  :
UNITED STATES OF AMERICA   :
                  :
    -vs-           :      Case No. 1:12cr3
                  :
KIM DOTCOM, et al.,     :
                  :
      Defendants.   :
                  :
- - - - - - - - - - x

Courtroom 700
U.S. District Courthouse
Alexandria, Virginia

Friday, July 27, 2012

The above-entitled matter came on to be heard
before the HONORABLE LIAM O'GRADY, Judge, in and for the
United States District Court for the Eastern District of
Virginia, 401 Courthouse Square, Alexandria, Virginia,
beginning at 11:12 o'clock a.m.

APPEARANCES:

On Behalf of the United States:

RYAN DICKEY, ESQUIRE
JAY PRABHU, ESQUIRE
Assistant U.S. Attorneys

2

APPEARANCES (cont.):

On Behalf of the Defendants:

        HEATHER MARTIN, ESQUIRE
        WILLIAM BURCK, ESQUIRE
        IRA ROTHKEN, ESQUIRE
        CRAIG REILLY, ESQUIRE

3

1                    P R O C E E D I N G S

2              THE CLERK:  Criminal Case Number 1:12cr3,

3    United States of America versus Kim Dotcom, et al.

4              MR. PRABHU:  Good morning, Your Honor.  Jay

5    Prabhu and Ryan Dickey for the Government.

6              THE COURT:  Good morning.

7              MS. MARTIN:  Good morning, Your Honor.

8    Heather Martin on behalf specially appearing Defendant

9    Megaupload.  With me at counsel table are Bill Burck and

10   Ira Rothken.

11             THE COURT:  All right.

12             MR. BURCK:  Good morning, Your Honor.

13             MR. ROTHKEN:  Good morning, Your Honor.

14             THE COURT:  Good morning to each of you.  Good

15   to see you.

16             Mr. Reilly.

17             MR. REILLY:  Good morning, Your Honor. Craig

18   Reilly here on behalf of several of the individual

19   defendants.

20             THE COURT:  All right.  Good morning to you.

21             All right, this comes on Megaupload's motion

22   to dismiss for failure to comply with Criminal Rule 4, and

23   it's an interesting argument.

4

1          And I'm just certain that the judicial body

2   that formed Criminal Rule Number 4 intended to allow a

3   company which didn't register with any state corporation

4   commission or have a place of residence in the United

5   States should be able to violate our laws indiscriminately

6   from an island in the Pacific.

7          But maybe they did mean that.  They certainly

8   are an able-bodied group.

9          And I'm not trying to make light of this.  It

10  certainly is a very interesting argument, and I'll hear

11  anything that counsel from Megaupload would like to say

12  at this time.

13          MR. BURCK:  Thank you, Your Honor.

14          Your Honor, our position is a simple one.  The

15  Federal Rules of Criminal Proceedings, Rule 4(c)(3)(C),

16  has two requirements for service.

17          One is the delivery requirement, deliver the

18  summons to an agent, an officer of the company.  Second --

19  and this is where we have a dispute with the Government --

20  is the mailing requirement, mailing the summons to the

21  last known address or principal place of business of the

22  corporation.

23          That's our argument, very simple.  Now, the --

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

5

1    yes, sir?

2            THE COURT:  Now, so the service (inaudible)

3    issue, the Defendants are -- if and when they're -- why

4    was the extradition hearing continued until March of next

5    year, March or April or whatever?

6            MR. BURCK:  Your Honor, as I understand it,

7    the reason, the principal reason -- and the Government

8    can correct me if I'm somewhat inaccurate on this -- but

9    there were a number of claims raised by the individual

10   defendants as to the proceedings down there, including as

11   to the search warrants, as to various evidentiary issues,

12   discovery issues.

13           The Courts down there felt that it would be

14   appropriate to continue the proceedings for some period to

15   hear those arguments and have additional briefing.  I

16   believe that's accurate.

17           MR. DICKEY:  Yes, that's accurate, Your Honor.

18   They're waiting for resolution of those appeals.

19           THE COURT:  Oh, the appeals, all right.

20   Because the lower Court has already ruled on the search

21   warrant.

22           And that's been appealed?  Is that --

23           MR. DICKEY:  Your Honor, the Court has made

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

6

1    the first ruling on the search warrant.  There's another

2    hearing on what the proper remedy should be.  That's not

3    scheduled until August.

4              And then that's likely either way -- however

5    that comes out, it's likely to be appealed up to the Court

6    of Appeals.

7              THE COURT:  All right.  Thank you, Mr. Dickey.

8              Mr. Burck?

9              MR. BURCK:  Thank you, Your Honor.

10             Your Honor, the Government has said in its

11   brief that our position is incredible and, as the Court

12   has mentioned, it also references that a foreign company

13   that has no address and no business here in the United

14   States, no place of business, why should it be allowed to

15   allegedly violate the criminal laws of the United States.

16             Our view is that the real critique there may

17   be of the rule itself, or Congress, and that the argument

18   is not with us but with Congress.

19             The other aspect of this I think the Court

20   should take into consideration is that the Government is

21   hardly without recourse to foreign companies like

22   Megaupload.

23             First of all, we have the extradition

7

1    proceedings that the Government has, in fact, instituted

2    down in New Zealand.  The people are the ones who are

3    alleged to commit these types of crimes.

4            The company is obviously potentially liable,

5    under respondeat superior, for the principals and other

6    corporate principals, but the people themselves are

7    certainly potentially liable.  We don't argue with the

8    extradition proceedings as proceedings.

9            They also have civil proceedings they could

10   have brought against the company.  In fact, there's a

11   whole set, as the Court is well aware, of civil rules

12   that are designed to bring corporations that have minimum

13   contacts with the United States and to serve those

14   corporations by MLAT process, through other processes,

15   and you can bring civil proceedings against a company

16   that way.

17           The other method that they could have used is

18   they could have gone to the Hong Kong authorities and

19   asked the Hong Kong authorities to go after, in a criminal

20   process or a civil process, a corporation that is an

21   entity creation of Hong Kong.

22           They chose not to do the latter two.  They did

23   choose to do the first, and those remedies are designed --

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

8

1    and that's what we believe Congress has allowed the

2    Government to do -- to go after companies that allegedly

3    commit crimes in the United States.  That's how it's

4    supposed to be done.  That's what the rule permits.

5              We think it's very important to understand

6    that the Government has never tried to serve us, and we

7    think this is important because it indicates, with all due

8    respect to the Government, that they might have had a

9    vision here that this was a problem a long time ago.

10             They've never tried to -- they had no summons

11   issued by the court and never asked the court to issue

12   until the briefing.  They've never -- they list a whole

13   bunch of ways they say they could effect service, and they

14   have not done any of that.

15             We believe that in the case they understood

16   they had a problem from the beginning, but they decided to

17   charge the company anyway.

18             And the results to the company, obviously,

19   have been devastating.  The company has had its website

20   shut down, its business has been shut down, and all of its

21   funds have been frozen.

22             The interesting thing about that, from our

23   perspective, Your Honor, is that the Government was able

9

1   to effect that overnight because it brought a criminal

2   case.

3           THE COURT:  Could they not have done the same

4   thing just charging the individual defendants?

5           MR. BURCK:  Your Honor, I'll answer that --

6   it's three different ways.

7           First, with respect to funds, there's a

8   substantial amount of money that's in the name of the

9   corporation; it belongs to the corporation.

10          If they had charged the individuals, they

11  might have been able to go through a civil forfeiture

12  proceeding or some similar proceeding to try to seize the

13  funds of the corporation, but there would have been an

14  adversarial proceeding as part of that and the company

15  would have had the ability to have counsel argue against

16  that proceeding.

17          THE COURT:  Well, couldn't they do it

18  criminally -- like you said, (inaudible) now and the alter

19  ego theory --

20          MR. BURCK:  Your Honor, I believe that even

21  under a criminal forfeiture proceeding as a third party,

22  as an unindicted third party, the corporation still has a

23  requirement to have notice of this proceeding and would

10

1   have an opportunity to be heard.

2          Here they accomplished everything by simply

3   charging the company with a crime.  And, again, we think

4   that they sort of knew that they probably couldn't serve

5   the company and that's why they did what they've done, and

6   it's had very devastating effects.

7          For example, if they'd gone through a civil

8   proceeding to shut down the entire business, some kind of

9   injunctive relief, we would have -- the standard

10  (inaudible) for probable cause versus injunctive relief

11  are very different.

12         There's also, of course, the importance of

13  having counsel present to advocate on behalf of the

14  company.  We think that was another reason that they

15  decided not to proceed in a civil process.

16         We don't think it was a mistake that they did

17  this.  We think they did it deliberately.  And I'm not

18  questioning the motives of the Government, but it's

19  something I think to take into account when we think about

20  the remedies that they have available that they chose not

21  to pursue.

22         The Government now is trying to justify post

23  hoc the actions that it has taken and its ability

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

1    allegedly to serve the company by offering a whole range

2    of options that they've put in their briefs, that the

3    Court, of course, has read.

4            The first thing we want to note is that

5    there's not a single citation to any case in which any of

6    the alternatives that they have offered has ever been

7    deemed sufficient for a corporate defendant in a criminal

8    case.

9            The cases they really rely on are two, Chitron

10   -- and I'm not sure if that's how you pronounce it -- but

11   Chitron and Public Warehousing.  Both of those cases had

12   the two requirements, the mailing requirement and the

13   delivery requirement of knowing the requirement was

14   satisfied.  The mailing requirement was deemed satisfied

15   because the Government had served a subsidiary of the

16   parent, and that was deemed to be -- the subsidiary was

17   deemed an alter ego.

18           There's no case that holds -- that we're aware

19   of or the Government has cited -- that takes the position

20   that the Government has advocated expressly in its brief,

21   that the mailing requirement should be read out of the

22   statute -- or the rule, excuse me -- when it is convenient

23   to do so.

12

1          THE COURT:  Should they have the opportunity

2     to argue that one of these U.S. entities which they've

3     identified is in fact an entity which they should have the

4     opportunity to demonstrate is controlled by Megaupload and

5     that the corporate veil should be pierced and that

6     therefore mailing would be appropriate under the alter ego

7     theory that's discussed in the most recent cases from the

8     Northern District of California and Georgia cases?

9          MR. BURCK:  Your Honor, if the Government had

10    identified entities that were somehow corporate affiliates

11    of Megaupload that were located in the United States,

12    there would be an argument that --

13         THE COURT:  Corporate officials, I guess.

14         MR. BURCK:  And as the corporate official --

15    the corporate officials are two gentlemen that they named

16    as potential CEOs, and they also named, of course, the

17    individual defendants when they -- if they are extradited

18    to the United States.

19         In our view, that would simply collapse the

20    delivery requirement -- or the mailing requirement into

21    the delivery requirement.

22         And if you look at the Pangang case, Your

23    Honor, that Court looked at precisely the issue of whether

13

1    or not you could simply deem serving an agent, an officer,

2    as sufficient to satisfy the mailing requirement.

3             And that Court, we would respectfully submit

4    to the Court, decided correctly and said you couldn't do

5    that because it would essentially read out the mailing

6    requirement.

7             If there was a corporate entity that was in

8    the United States that was a subsidiary or some kind of

9    affiliate of Megaupload, which the Government has not

10   alleged and we certainly are not aware of that, that would

11   then be an argument potentially for an alter ego analysis.

12            Here they offer Carpathia, a third-party

13   vendor, as a potential recipient of service on behalf of

14   Megaupload.

15            Now, there's no precedent, no citation of

16   any sort for the prospect of a third-party vendor, no

17   corporate affiliation whatsoever, complete third-party

18   relationship with Megaupload, that that kind of entity

19   could satisfy the mailing requirement.

20            THE COURT:  Well, if the officer is the alter

21   ego, why doesn't that not collapse the requirement?

22            MR. BURCK:  Your Honor, I think again I'll

23   refer back to the Pangang case.  In that case the Chinese

14

1    company, the Chinese parent that's been indicted, had a

2    corporate subsidiary located in New Jersey.

3         And the Court now analyzed the relationship

4    between these two entities, and actually one of the -- it

5    was a complicated structure, but one of the entities the

6    Court actually held in essence would be an agent for

7    purposes of the delivery requirement.

8         But as to the mailing requirement, the Court

9    said you can't simply take the agent aspect and assume

10   then the alter ego aspect of the mailing requirement.

11        THE COURT:  What about if they found that the

12   Megaupload corporate veil should be pierced, and then one

13   of the officers who are also the defendants have now been

14   extradited, wouldn't that allow them to satisfy Rule 4

15   through the mailing to the officer as the alter ego?

16        MR. BURCK:  Your Honor, we still think that

17   would not satisfy the mailing requirement because the

18   rule says that you have to mail the summons to the

19   organization's last known address or its principal place

20   of business.

21        An alter ego analysis -- all the alter ego

22   analyses that we're aware of in the case law that's dealt

23   with this issue has dealt with subsidiaries and corporate

15

1    parents.  They've never, as far as we're aware, ever dealt

2    with a human being being deemed an alter ego and then

3    therefore mailing it to the place in which the person is

4    residing currently -- or the jail, which if the person is

5    in jail would be sufficient.

6           It's always been in the classic alter ego

7    subsidiary corporation, and I think the reason for that,

8    Your Honor -- it may sound somewhat strange, but, in fact,

9    if we look at it from the perspective of the goals of the

10   criminal prosecution, the people -- only human beings are

11   ultimately subject to incarceration.

12          Corporations are only subject to potentially

13   being -- reputation being destroyed, it's shut down in

14   some way, appliance penalties.  But here it's -- the

15   people are still under the threat of prosecution

16   regardless of what happens with this motion.

17          The issue is the corporation, can the

18   corporation be held to account under this method, and our

19   view is that it can't be.  And the rule is clear on that.

20          And in all the cases that we have found and

21   all the cases that we've cited and all the cases the

22   Government has cited, there's never been a case in which

23   any of the alternatives that the Government offered has

16

1    been deemed sufficient in an analogous case.

2            And we don't think that's because Megaupload

3    is a weird company or some kind of oddball; we think it's

4    by virtue of the fact that the Government decided to

5    charge a company that had no presence in the United States

6    that would be sufficient for purposes of service.

7            The reason why we believe there are so few

8    cases that actually argue or actually decide these issues

9    or address these issues is because it doesn't happen that

10   often.  The Government usually doesn't charge companies

11   that are of this sort.

12           So, Your Honor --

13           THE COURT:  Well, there are a lot of the

14   worldwide Internet companies that are doing business

15   versus providing information.

16           Like, Google doesn't register with the state

17   corporation commissions in the various states, but there

18   are a lot of international entities which do register and

19   subject themselves, at least (inaudible) service by

20   mailing to a state corporation commission or a registered

21   agent.

22           And, of course, Megaupload didn't do that, and

23   they didn't acquire their domain name themselves; they did

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

17

1    it through another entity.  You might look at whether the

2    -- in the United States address was actually even verified

3    in some way, the domain name which permitted them to do

4    business.

5              But I agree with you.  We don't have facts

6    that give rise to either of those.

7              Let me change the topic a little bit.  Let's

8    assume that Rule 4 was very carefully drafted, that the

9    Criminal Rule 4 applies to mailing to entities which only

10   have a residence in the United States.

11             Why isn't it completely consistent, then, to

12   move over to the international context, the Mutual Legal

13   Assistance Treaty, and say that there's nothing

14   inconsistent with Rule 4 in providing that mailing through

15   the MLAT, which specifically provides for notice of

16   criminal prosecution?

17             MR. BURCK:  Your Honor, our answer to that

18   again is the statutory construction argument, which I

19   think we say in our brief, the civil process very

20   explicitly allows for MLAT -- service to an MLAT of a

21   subpoena of a similar type of summons, but the criminal

22   process itself, the criminal rules, do not provide for any

23   such MLAT procedure for service of a criminal summons.

18

1    THE COURT:  Well, MLAT considers cases of

2    notice about criminal proceedings being brought up in the

3    United States against a foreign entity, does it not?

4    MR. BURCK:  It does, Your Honor, but the

5    service, the actual concept of the service is still

6    governed solely by Rule 4.

7    THE COURT:  Why?

8    MR. BURCK:  Because Rule 4 -- unlike the civil

9    rule, Your Honor, which has a very explicit, very long set

10   of provisions for how we go about using the MLAT process

11   for mutual understanding treaties to serve civil process,

12   the criminal process says we can do one thing -- you can

13   do one thing to serve a company; you can use Rule 4.

14        The MLAT process is used often by the

15   Government for all kinds of criminal-related search

16   warrants, subpoenas, et cetera.  But we haven't seen,

17   again, a single citation from the Government, nor are we

18   aware of a single example in which a summons was served,

19   deemed served, in a criminal case against a corporation

20   with the MLAT process.

21        THE COURT:  My question is a little different.

22   I understand there's not a body of case law on it, but why

23   are they mutually exclusive?  Why doesn't Rule 4 capture

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

19

1    any ability to serve under the MLAT?

2              MR. BURCK:  Your Honor, I have two responses.

3    First, it is --

4              THE COURT:  For mailing.  Mailing.

5              MR. BURCK:  For mailing.

6              Your Honor, two responses.  Congress could

7    very easily have said -- replicated the rules of the civil

8    proceedings, codes of civil procedure in the Federal Rules

9    of Criminal Procedure.  They very easily could have done

10   that.  There were many differences between the rules, and

11   they chose not to do it for the federal criminal rules.

12             We think that the reason -- or a very good

13   reason for that is that a corporation is of a different

14   nature than a person.

15             And the corporation is a creation of the

16   foreign sovereign, and the deference to comity interests

17   to other -- to similar international law issues, interests

18   and principles could dictate that Congress, which in our

19   view is clear from the rules, decided that for a foreign

20   corporate defendant in a criminal case it would be

21   inappropriate for the Government to serve or prosecute

22   such an entity when it belongs to -- is a creature of the

23   sworn sovereign.

20

1          It's not here in the U.S., it may have

2     contacts in the U.S., but also Congress again gave a whole

3     set of other alternative ways for the Government to do

4     this.

5          THE COURT:  So, why is this any different than

6     having to go through the Hague in a similar context?

7          And, for the very same reasons, the

8     appreciation of the sovereignty of foreign nations

9     requires a treaty, because the Hague convention where

10    countries either sign on to or they don't sign on to the

11    Hague and (inaudible) for discovery.

12         And here you've got the MLAT, which, again,

13    out of deference to the sovereignty of foreign nations,

14    has identified the way to proceed when you're dealing with

15    criminal matters for a company in the United States.

16         MR. BURCK:  Your Honor, our view is that the

17    nature of using criminal proceedings versus civil

18    proceedings raises a whole different comity issue with

19    respect to the interest of nations.

20         The individuals in this case and in any case

21    when they're located overseas, when there is a criminal

22    proceeding brought against them, there is a very --

23    there's a substantial deference to the extradition

21

1    proceedings.  Obviously, there's a connection with the

2    extradition proceedings and the laws of that local

3    country.

4              Here, Congress made a judgment that the

5    criminal proceeding itself against a foreign corporation

6    that is not physically present, that would raise --

7    bringing a criminal case against that company would raise

8    comity issues of such a serious degree that they have

9    prohibited it.

10             Now, the Hague convention, the MLAT process,

11   we would submit that really goes to civil proceedings as

12   it relates to foreign corporate defendants, and civil

13   proceedings are the lower -- although serious, they are

14   the lower magnitude in terms of the threat to a

15   corporation.

16             Again, if you look at this case, had the

17   Government proceeded in a civil manner as opposed to a

18   criminal manner, there potentially would have been a very

19   different outcome to what happened seven months ago.  The

20   company might still be alive, their websites might still

21   be alive, their funds may not be frozen.

22             But the process that was chosen here just

23   illustrates, I think, the threat that the rule was

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

22

1    designed to prevent.

2             They wiped out a foreign company that does not

3    reside in the United States by bringing a criminal case

4    against it, and there's no way -- unless the company would

5    have waived its service rights, there's no way for the

6    Government to actually prosecute them.

7             And, Your Honor, with respect to the MLAT and

8    comity issues, one issue that's particularly, I think,

9    specific to this case -- but again, the Pangang case --

10   and I hope I'm saying that correctly -- is illustrative.

11            In that case we're actually dealing with the

12   same government that we have in this case, the Chinese

13   government.  The Hong Kong government is obviously

14   somewhat different, but it's part of the People's Republic

15   of China.

16            In the Pangang case the MLAT issue was left

17   open by the District Court, but the Government in that

18   case told the District Court, according to the opinion,

19   that serving going through the MLAT process would be

20   futile because they understood the Chinese would never

21   actually perform the service and were not required to do

22   so under the MLAT.

23            In this case we had no idea if the Chinese

23

1    government would entertain an MLAT process.  We know, at

2    least as far as we are aware -- and perhaps the government

3    has done it now or they have not disclosed it to us or the

4    Court -- they have not tried to do this to the government,

5    with the Chinese, and given what the government in

6    California -- the U.S. Attorney's Office in California

7    says, it would be interesting to find out here whether or

8    not the government believes that the Chinese would even

9    entertain such an MLAT in this case.

10               So, the principles of comity, we think, are

11   very, very, very -- the highest with a criminal case.  We

12   think that Congress took that into account in designing

13   the rules.

14               The civil rules are very different from the

15   criminal rules, and the Pangang case in particular raises

16   an issue about the Chinese willingness to actually go

17   ahead and even entertain such an MLAT process.

18               THE COURT:  Well, even if you disregard Rule 4

19   entirely and focus on the MLAT for both the mailing and

20   the service, the statute just says the requested party may

21   effect service of any document by mail.  And it then goes

22   on further about requesting (inaudible) of the parties.

23               But we've got, you know, a treaty here which

24

1    is obviously a separate body of law, and I understand your

2    comity argument and the fact that criminal proceedings are

3    different.

4              There's a case out of the 4th Circuit from

5    March of 2011, In re: Grand Jury Subpoena, where they

6    discuss a criminal service under Rule 17 of the Criminal

7    -- the Rules of Criminal Procedure.

8              In that case they --found that application of

9    the MLAT was appropriate, but the rule did not allow for

10   foreign service under the Criminal Rules themselves but

11   did allow it under the MLAT.

12             Did you have a chance to review that case or

13   not?

14             MR. BURCK:  No, Your Honor, we have not had a

15   chance to review that case, but we are aware of the

16   arguments.

17             Your Honor, I think that -- you've heard our

18   arguments on the merits.  I think that here we still have

19   no effort by the Government whatsoever to take any of the

20   steps that could have been available to them, possibly

21   available to them.

22             The MLAT -- obviously they are quite aware of

23   the MLAT.  They could have done this a long time ago, they

25

1    could have done it before they indicted the company, but

2    they chose not to.  And to this day we have no idea if

3    they have tried or if they have not tried.

4           So, from -- we believe the MLAT would not be

5    appropriate.  We still maintain that there hasn't been a

6    case in this type of context in which the MLAT has been

7    used to effectuate service against a corporate defendant

8    that's located overseas that would be contrary to Federal

9    Rule of Criminal Procedure 4.

10          But even granting all that, putting everything

11    else aside, the Government hasn't done this, and we think

12    that there's an injustice built into that.  Because the

13    company, again, suffered all the consequences of a

14    criminal prosecution but has not even been offered the

15    ability to respond until the Court graciously allowed us

16    to appear on a limited basis.

17          If this was a person that was in similar

18    circumstances and the Government had indicted the person

19    and then decided, "We're not going to serve you yet, we're

20    not going to arrest you yet, we're just going to let the

21    indictments hang out there, we're going to freeze your

22    assets, we're going to wipe out your reputation, kill your

23    business," I think that there would be very little

26

1    argument that there was a very serious due process

2    problem.

3             Here we have -- although it's not a person,

4    it has the same effect on the corporation.  And there is

5    a right that these corporations have to due process and to

6    constitutional protections, and that is not being

7    vindicated here.

8             In our view, it's futile for the Government

9    to even attempt to do any of these measures that they have

10   now come up with, that they have now suggested, and for

11   those reasons we believe that the appropriate remedy here

12   is to dismiss the indictment, the superceding indictment,

13   with prejudice.

14            THE COURT:  Which has never been done by any

15   court previously.

16            MR. BURCK:  Your Honor, with respect, the

17   cases that we cited, they've been quashed.  We can't even

18   quash because we haven't been served.

19            So, the only option would be -- could be a

20   remedy -- we have no remedy in that case because they can

21   just simply not serve us and say, "Well, we'll serve you

22   one day."  And the only remedy we have is dismissal.

23            And we believe, as we've set forth in our

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

27

1   brief, that the devastation to the company and the clear

2   due process violations that have occurred would justify

3   dismissal.

4         We think the only reason why there isn't a

5   precedent for doing this is not because Megaupload is a

6   strange company that's operating in the United States

7   without an office; it's because the Government has not

8   really gone after companies like this, certainly not based

9   on the case law that we've reviewed.

10        So, we think it's a result of the nature of

11   the prosecution they've brought, not the nature of the

12   corporation that's at issue.

13        And just on the question that the Government

14   has suggested -- and I think it's important to discuss

15   this briefly -- that Megaupload has somehow designed

16   itself to evade process in the United States, nothing

17   could be further from the truth.

18        The company had servers -- half its servers

19   in the country, and it certainly had a lot of customers in

20   the United States, customers in Virginia, it had brought

21   cases in the United States.

22        The idea that the company thought five years

23   ago or six years ago that, "We're going to not put an

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

28

1   office in the U.S. so that we might one day -- just so we

2   don't get criminally prosecuted one day," is implausible

3   at best, in our view.

4           So, we think the company has not done anything

5   to evade anything.  They simply don't -- aren't here for

6   purposes of a criminal prosecution.

7                   THE COURT:  All right.  Thank you, Mr. Burck.

8                   MR. BURCK:  Thank you, Your Honor.

9                   THE COURT:  Does the Government want to

10  respond?

11                  MR. DICKEY:  Thank you, Your Honor.

12          And actually, Your Honor, with the help of

13  the Court Security Officer, we'd like to pass up a case.

14          (Mr. Dickey handed a document to the Court

15  Security Officer, who handed it up to the Court for his

16  examination.)

17                  MR. DICKEY:  And, Your Honor, I apologize that

18  we didn't get this in to our opposition.  This is a case

19  that we just found yesterday.  It's --

20                  THE COURT:  Have you given a copy to counsel?

21                  MR. DICKEY:  We have, Your Honor.

22          And it's a case from the District of Columbia,

23  and it's one where the defendant in that case is FARC, out

29

1    of South America, and it's a case where the Court allowed

2    service by, I think, email, publication, but not by the

3    methods that the Defendant is asking for.

4            But we're not going to focus on that, Your

5    Honor, but we did want to pass it up because we think it

6    would be helpful to the Court's decision.

7            THE COURT:  All right.  Thank you.

8            MR. DICKEY:  First, Your Honor, just to

9    respond to a couple of points raised by Defense counsel,

10   starting with Congress.  I think Defense counsel opened by

11   saying that this was -- this is more of an issue of

12   Congress than it is with the case or the rule.

13           We think that Congress has spoken very clearly

14   in the legislative history of the copyright laws, in

15   criminal copyright laws, in terms of this is a global

16   problem, this is a worldwide problem.

17           We think it's clear that Congress intended

18   that when foreign companies or foreign actors commit

19   copyright crimes in the United States, that courts would

20   have jurisdiction over those crimes.

21           But also, Your Honor, Defense counsel

22   mentioned possible repercussions to the restrained funds,

23   even funds that were in the name of the company.

30

1          Those funds are the proceeds of criminal acts,

2     whether they were put into accounts under the name of the

3     company or the individuals, so it's the Government's

4     position, Your Honor, that even if the corporation were to

5     be dismissed it's going to have no impact, it's going to

6     have no effect on whether those funds should be restrained

7     or not.

8          But it seems that that's a battle that we'll

9     have for a future day, Your Honor, but we believe that

10    there would be no impact there.

11         On the Pangang case, the one that counsel

12    brought to the Court's attention earlier this week, that's

13    a case where the MLAT was with China.

14         But in this case there is a separate and

15    distinct MLAT that the United States has with Hong Kong,

16    and so the concerns of the government, the overseas

17    government not effecting service aren't present with Hong

18    Kong, Your Honor.

19         And so, if the Court were to direct the

20    Government to go down that path, then we should be able to

21    effect service that way.  Alternatively, New Zealand might

22    be another country that we could effect service with, Your

23    Honor.

31

1            And while we're on the topic of MLAT, Your

2    Honor, we didn't brief this issue as well, but it's our

3    understanding that MLAT being a treaty between the United

4    States and a foreign government would override a rule just

5    in terms of the structure of laws, Your Honor.

6            So, very quickly, Your Honor, I just want to

7    comment briefly and summarize the case law that the Court

8    has and then talk about some of the practical implications

9    of where we're at here.

10           As far as the case law is concerned, Your

11   Honor, if you look at all of the cases, not just the two

12   that Defense counsel is saying are the Government's main

13   cases -- but if you look at all of the cases that the

14   parties have cited, none of them adopt the Defendant's

15   interpretation of the rule.

16           If they did, then those cases would begin and

17   end with whether there's an office in the United States.

18   They don't do that; they go beyond that.

19           None of the cases impose a time limit on

20   service, none of the cases even acknowledge that dismissal

21   would be a possible remedy, let alone actually grant it,

22   and all of the cases interpret Rule 4 as the Government

23   is suggesting here, Your Honor; namely, that the mailing

32

1   provision can be satisfied in a variety of ways.  There's

2   not just one way to satisfy that requirement.

3           And all of the cases have an underlying

4   principle which is basically that there are sufficient

5   contacts in a district.  If a crime is being committed in

6   a district, then there is personal jurisdiction.

7           And, Your Honor, we don't need to belabor the

8   contacts that the company had.  We've outlined those in

9   our brief.  They were many, they were continuous; it's not

10  just a few isolated events but it was over a course of

11  years, millions of dollars being poured into this

12  district.

13          And most recently, we should add that the

14  Defendant did make an appearance in a civil matter in this

15  very court, so we don't think that it's even a question of

16  whether or not there were contacts with this district,

17  Your Honor.

18          And just to finish up, Your Honor, even if

19  this Court were to adopt the Defendant's interpretation of

20  Rule 4, the Government is and would be in a position to

21  accomplish service as we've outlined in our opposition.

22          At this time, right now, it's premature to

23  grant the relief sought by the Defendant because the rule

33

1   doesn't impose a deadline, the rule doesn't permit that

2   relief and because the U.S. should be given an opportunity

3   to effect service according to the methods we've outlined,

4   Your Honor.  And if the Defendant feels at that time that

5   it's inappropriate, they can move to quash.

6           Your Honor, the Government has been accused of

7   rewriting the rule in this case, but it's the Defendant's

8   construction that tries to read in a number of the

9   requirements, the timing requirement, the dismissal

10  requirement, none of which are found in the rule.

11          The Government's interpretation, on the other

12  hand, is consistent with the plain language.  It's

13  consistent with the drafter's intent --

14          THE COURT:  Well, you know, it's a two-prong

15  rule under Rule 4, right?  It's serve it and mail it to a

16  location in the United States, and you don't have a

17  location in the United States to mail it to.

18          MR. DICKEY:  Your Honor, we believe --

19          THE COURT:  At least that's the plain reading

20  of the words of the statute, right?

21          MR. DICKEY:  That's right, Your Honor.  We've

22  given a couple of options that would involve a mailing in

23  the United States, one of which would be to the individual

34

1   defendants when they're here.  We would also mail copies

2   to wherever they're located.

3           Another would be the data center that was in

4   this district.  The rule says the organization's last

5   known address within the district.  It doesn't have to be

6   the principal place of business in the district; it just

7   has to be the last known address.

8           THE COURT:  It's never had an address in the

9   district, right?

10          MR. DICKEY:  Your Honor, they certainly had

11  hundreds of servers that were the very heart of the

12  business in that location, and that could be considered to

13  be their address in the district.

14          They were also given a couple of other

15  alternatives that would satisfy this plain language.

16  We've offered to serve the CEOs at their offices, those to

17  be considered the principal place of business elsewhere in

18  the United States, or to perhaps counsel's office in

19  California, which by their very own terms of service they

20  were demanding that users would have to bring suits in

21  southern California.

22          So, Your Honor, we believe that under these

23  circumstances we can satisfy the rule.  We also think that

35

1    we don't have to guess at what the intent was of the

2    drafters.  We've got this (indicating), this proceedings

3    of the drafters which we've cited to some of what they've

4    had to say.

5              And namely, Your Honor, they have a lot to say

6    about jurisdiction and how to apply the rules.  They said

7    that the rules would never apply to a foreign company

8    unless that company committed a crime in the district and

9    that gives the Court jurisdiction.

10             They said you just can't get jurisdiction

11   unless the law creates it, and here Congress has made it

12   crystal clear that they intended to address the worldwide

13   problem.

14             How do we apply the rule?  The drafters said

15   the provision for a summons was principally for the

16   convenience of both the Government and the Defendants.

17   The drafters said that it was to make things easier than

18   it would be to get in touch with the corporation

19   otherwise.

20             And so, we don't have to guess, Your Honor.

21   We don't have to compare to the civil rules to figure out

22   what the drafters intended here.  Congress and the

23   committee that passed these rules have made it crystal

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

36

1    clear.

2            And just to conclude, Your Honor, the heart

3    of the issue here is whether a foreign company like the

4    Defendant, like Megaupload Limited, can commit crimes in

5    the United States, can commit crimes in this district and

6    never be brought to justice -- and all because the company

7    chose not to have an office, which under these

8    circumstances is also a violation of the Virginia law

9    that we've cited.

10           That just can't be the case, Your Honor.

11   Thank you.

12           THE COURT:  All right.  Thank you, Mr. Dickey.

13           MR. BURCK:  Your Honor, may I just briefly

14   respond?

15           THE COURT:  Yes, sir.

16           MR. BURCK:  Just a few points, Your Honor, and

17   I'll start from back to forward.

18           On the copyright point, I don't think the

19   Government is suggesting that anything in the copyright

20   laws or the legislative history would suggest that the

21   Federal Rules of Criminal Procedure are tossed out when

22   you have a copyright case.

23           The copyright laws are obviously -- the

37

1    jurisdiction that we're talking about here, I think

2    they're conflating subject matter into personal

3    jurisdiction.  But I will -- we can brief that further

4    on the legislative history if that will be necessary.

5              A lot of the arguments that the Government

6    is relying on are terrific civil case arguments, the

7    (inaudible) contacts and all the usual that you hear in a

8    civil case.

9              But we're not in a civil case.  They've chosen

10   to criminally prosecute this company.  Had they brought a

11   civil proceeding where there was an opportunity for an

12   adversarial appearance and there's an opportunity to be

13   heard in front of a Court before they took certain

14   actions, drastic actions that can't be unrung, that would

15   be -- the arguments they are making -- I mean, I don't

16   want to concede them, but I would certainly say that they

17   would be more convincing than they are in a criminal

18   prosecution.

19             The case that the Government has handed up,

20   which is United States of America versus Fuerzas Armadas

21   and FARC, which is a -- the Revolutionary Armed Forces of

22   Columbia, a well-known terrorist organization, we received

23   it in court this morning so we haven't had a chance to

38

1   review it other than to read the order.  But I would note

2   a few things about it that I think make it inapplicable

3   and of little value here.

4            Obviously, FARC is not a corporation; it is

5   an organization; it actually is a terrorist organization.

6   This is a corporation that is created under the rules of a

7   foreign sovereign that we owe comity to.  I don't think

8   anyone, certainly on this side of the court, is suggesting

9   that FARC would be owed any comity; nor, I think, would

10  Columbia be a party given comity.

11           There was no adversarial proceeding, as far as

12  we can tell from this order; it was simply an order issued

13  by a district court judge in D.C., ordering service upon

14  FARC through these various methods.  Again, we have no

15  evidence that there was any kind of challenge to any of

16  this.  Probably there wasn't, given it's a terrorist

17  organization.

18           So, we don't think, again, that this is really

19  something to rely upon in contrast to the various

20  citations, the case citations that we've given to the

21  Court.

22           And just on that last point, the case

23  citations, the Government again says that there are many

39

1   cases from which they cite that support their principle.

2   Your Honor, with respect to the Government, not a single

3   one of those cases is a criminal case.  Every one of those

4   cases is a civil case.

5           This is a criminal proceeding.  If the

6   Government had chosen to take this in a different path,

7   we'd have a different argument.  Right now, Your Honor,

8   we are resting on the rule and the plain language of the

9   rule.

10          Thank you, Your Honor.

11          THE COURT:  Let me ask you this.  Say, you

12  know -- say I rule that -- and perhaps there's a couple

13  other different ways.  One is that Rule 4 is one means of

14  serving a foreign defendant in a criminal action and that

15  the MLAT is a separate, independent way of fulfilling both

16  the mailing and the service requirement under due process

17  considerations.

18          If I rule that way and/or in the alternative

19  that mailing service would be available to the Government

20  when the Defendants appear in the United States after

21  extradition and that they should then have an opportunity

22  to argue that officers of the company are the alter ego

23  and that as a result the service could be under Rule 4 and

40

1    complied with by serving those defendants/officers.

2              Is this a matter which is never ripe for

3    interlocutory appeal, in your mind, so that you never can

4    get some resolution as to what's required and what isn't

5    required before, you know, the extradition proceeding is

6    finished?  Or, do you think the 4th Circuit is just going

7    to send it back and say it's not a case in controversy and

8    check with us later?

9              MR. BURCK:  Your Honor, I submit our view

10   would certainly be that it should be ripe for

11   interlocutory appeal.  The harm has occurred to the

12   company.

13             If the MLAT was -- if the Court ruled that

14   the MLAT was an alternative to Rule 4 and presumably the

15   Government went through the MLAT process and served the

16   company consistent with whatever the Court had ruled --

17             THE COURT:  Well, that -- can I require them

18   to serve the company on any particular date?  There's no

19   date in the rule -- there appears to be no statutory

20   limitation, and I understand your due process argument.

21             So I -- what if I, you know, would start with

22   a premise that I don't control when the Government decides

23   to serve the company.  Where do we go from there?

41

1          MR. BURCK:  Well, Your Honor, we would submit

2     that if the Court were ruling -- going in that direction

3     as a reasoning matter, that the appropriate result would

4     be to dismiss the indictment without prejudice.

5          Because the company, again, has already

6     suffered all the consequences of a criminal prosecution,

7     so the -- even if there's a trial and the company is

8     acquitted and the individuals are acquitted, of course the

9     company is still done.

10          So, we think that the due process claims trump

11     all the other issues, and we think that if the Court were

12     so inclined, that the Government should take certain steps

13     in order to effectuate service, then -- or if the

14     extradition proceedings would be the relevant time line

15     for that, again, the company should have an opportunity

16     during that period of time to try to rehabilitate itself,

17     because there isn't currently a criminal case that is

18     sufficient for purposes of service and they've suffered

19     massive harm.

20          So, of course, that would not be our

21     preference, and we do think that the Supreme Court has

22     said you can't change the rules of service, et cetera, but

23     the -- that's all in our brief -- but we do think that the

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

42

1   alternative would be dismissal without prejudice, allow

2   the Government at the appropriate time to then supercede

3   the indictment again, add the corporation into the

4   indictment.

5          And at that point, a year down the road, two

6   years, however long it takes and wherever the MLAT process

7   or the extradition process takes, at that point we could

8   have this argument as to specific individuals,

9   corporations, entities.

10          But, in the meantime, having the company

11   subject to the burden of a -- the incredible burden of a

12   criminal prosecution with no ability to defend itself and

13   no service is an extraordinary result and one that is

14   unprecedented.

15          THE COURT:  All right.  Thank you.

16          MR. BURCK:  Thank you, Your Honor.

17          THE COURT:  Mr. Dickey, did you want to

18   respond to the interlocutory appeal question?

19          MR. DICKEY:  Yes, very briefly, Your Honor.

20          THE COURT:  All right.  Take whatever time you

21   need.

22          MR. DICKEY:  Thank you.  Although, if it's

23   okay with the Court, may I just address the second point

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

43

1    that counsel discussed and then come back to the --

2              THE COURT:  All right.  Go ahead.

3              MR. DICKEY:  So, Your Honor, Defense counsel

4    is saying that if the Defendant is dismissed without

5    prejudice in this case -- I mean, first of all, that would

6    be a huge waste of resources to put another grand jury,

7    the Government and this Court through another round of

8    bringing them into the case at a later date.

9              And meanwhile they've asked for a stay in

10   their civil litigation based on this criminal litigation,

11   and so I think that even if the Court were to let them out

12   of the criminal case, that's not a -- they're not going to

13   be free, so to speak, to use Defense counsel's words, to

14   do whatever they want.  They're still going to have to be

15   dealing with that litigation.

16             As to the 4th Circuit, Your Honor, I think

17   that they would be waiting for -- although I'm a bit rusty

18   on the rules for bringing the appeal, I think they would

19   be waiting for a final disposition in this case.  And so,

20   it's not clear if they would be willing to take that

21   interlocutory appeal.

22             THE COURT:  What -- not to put you on the

23   spot, but what's the Government's intent with service on

44

1    the company?

2              I mean, I have alluded to the fact that, you

3    know, the Government likely would wait until it sees

4    individual defendants present here in the district before

5    enjoining the corporation.

6              But, you know, that was my musing.  What's the

7    present intent of the Government?

8              MR. DICKEY:  Your Honor, I'll say two things

9    about that.  First, the Government intends to comply with

10   whatever order the Court rules in this case and this issue

11   before you.

12             But second, that yes, it is the Government's

13   intent, as we've intended from the beginning of this case

14   when it was first indicted, to extradite the individual

15   defendants.  We've been working diligently toward that.

16             And then when we get them here to the

17   district, to serve a summons on them and mail a copy for

18   the corporations -- both corporations, Your Honor, not

19   just the one that's at issue in this motion but the other

20   one as well.

21             THE COURT:  All right.  Thank you.

22             All right.  As I've said before, it's a really

23   interesting issue.  There's lots of issues raised in the

45

1    case that are interesting.

2            But we'll look at it a little further and

3    we'll get you a ruling, and then you can decide what to do

4    at that point once you get it.

5            All right.  I appreciate the quality of the

6    arguments today.  We're in recess.  Have a good weekend.

7    Thank you all.

8            MR. BURCK:  Thank you, Your Honor.

9            MR. DICKEY:  Thank you, Your Honor.

10                           * * *

11           (Whereupon, at approximately 12:05 o'clock

12    p.m., the hearing in the above-entitled matter was

13    concluded.)

14

15

16

17

18

19

20

21

22

23

46

* * * * *

CERTIFICATE OF REPORTER


I, KATHLEEN M. ELIAS, a Certified Verbatim Reporter, do hereby certify that I took the stenographic notes of the foregoing proceedings which I thereafter reduced to typewriting; that the foregoing is a true record of said proceedings; that I am neither counsel for, related to, nor employed by any of the parties to the action in which these proceedings were held; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.


_____S_____
KATHLEEN M. ELIAS, CVR
Certified Verbatim Reporter

CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136