IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12CR3 |
| | ) | |
| KIM DOTCOM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF THE UNITED STATES TO THE MOTION OF
QUINN EMANUEL URQUHART & SULLIVAN LLP
AND THE ROTHKEN LAW FIRM FOR LEAVE TO ENTER LIMITED AND SPECIAL
<u>APPEARANCES ON BEHALF OF MEGAUPLOAD LIMITED</u>**

Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") and The Rothken Law Firm (collectively, "Defense Counsel") have, for the sixth time, requested leave for limited and "special" appearances in this matter, again without subjecting themselves (or their clients) to the jurisdiction of this Court. This time, they seek, on behalf of corporate defendant Megaupload Limited,[1] to ask the Court to take the unprecedented step of dismissing the Superseding Indictment ("Indictment") solely against their corporate client for an alleged violation of due process, after previously failing to obtain a dismissal because of the government's inability to successfully serve the foreign corporation to date. *See* ORDER (October 5, 2012) [Docket #127].

---

[1] Defendant Kim Dotcom has not joined this motion, but the simultaneous representation by Defense Counsel of this individual, who controls the corporate defendant and is an alter ego, is relevant to the Court's analysis of whether there can be any prejudice, as well as whether there is a conflict in the representation.

Defense Counsel have insisted that their corporate client does not have "any officers or authorized agents for service of process in the United States."[2] This Court has, however, previously ruled that government's planned method of service (*i.e.,* service upon officers and directors of the company upon extradition to the United States) would be consistent with the requirements of the Federal Rules. *See* ORDER [Docket #127]. It is hard to conceive of how meeting the requirements of the rules applicable to this Court could ever amount to a due process violation under these circumstances. Defense Counsel have asserted their client has endured prejudice and "massive harm" from a delay in formal service of a piece of paper notifying the company that it has been indicted in the Eastern District of Virginia, but such claims are belied both by reality and the sworn statements of the controlling shareholder.

For these reasons,[3] the United States respectfully requests that the Court deny this sixth Motion to Enter Special and Limited Appearances and strike the underlying proposed motion. The United States further requests that the Court decide this motion for leave on the papers and

---

[2] Motion Of Quinn Emanuel Urquhart & Sullivan LLP, The Rothken Law Firm, And Craig C. Reilly, Esq. For Leave To Enter Limited And Special Appearances On Behalf Of Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram Van Der Kolk & Finn Batato And To Exceed Page Limit & Memorandum In Support Thereof, at 5 (May 30, 2012) [Docket #96].

[3] The government would also incorporate by reference its prior arguments against granting Defense Counsel's leave to file any process before this Court without making a formal appearance, given the risk of conflicts of interest in representing the corporate defendant, an individual defendant, groups of defendants, and victims of the defendants' conduct at the same time. *See* Opposition of the United States to Motion of Quinn Emanuel Urquhart & Sullivan LLP, The Rothken Law Firm, and Craig C. Reilly, Esq. for Leave to Enter Limited and Special Appearances on Behalf of Megaupload Limited, Kim Dotcom, Mathias Ortmann, Bram Van Der Kolk & Finn Batato, at 6-10 (June 13, 2012) [Docket #104], and Opposition of the United States to Motion of Quinn Emanuel Urquhart & Sullivan LLP and The Rothken Firm for Leave to Enter Limited Appearance on Behalf of Defendants Megaupload Limited and Kim Dotcom, at 9-15 (Apr. 11, 2012) [Docket #76].

without an oral hearing, pursuant to Local Criminal Rule 47(J).[4] In the event the Court grants this sixth Motion to Enter Limited and Special Appearances, the United States requests, due to other commitments amongst the prosecution team (including other significant briefings in this matter), at least fifteen <u>business</u> days for leave to file a full response to the underlying motion.

<u>The Legal Argument Offered by Defendant</u>

For the moment, the government notes that Defense Counsel have not cited a single case addressing the actual basis for the relief they are moving for leave to present to the Court. Allegations of due process violations are reviewed under well-established standards of review, and the defendant falls far short of satisfying these standards. Instead of addressing these precedents, as the rules for the conduct of counsel would seem to require,[5] Defense Counsel cite out-of-context sound bites that greatly overstate what the cases actually hold. For example, they refer to a minority opinion in *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, in which two justices broadly recognize that "a corporation is entitled to due process." 492 U.S. 257, 285 (1989) (O'Connor, J., concurring in part and dissenting in part). The majority opinion in the cited case, however, expressly declined to address due process because the petitioners failed to raise the issue before either the district or appellate courts. *Id*. at 277. The Supreme Court instead addressed the issue of "whether the Excessive Fines Clause of the Eighth Amendment applies to a civil-jury award of punitive or exemplary damages, and, if so, whether an award of $6 million was excessive in this particular case[,]" *id*. at 259, and concluded that the "Excessive Fines Clause does not apply to awards of punitive damages in cases between private

---

[4] Local Criminal Rule 47(J) provides: "Determination of Motions Without Oral Hearing: The Court may rule upon motions without an oral hearing."

[5] *See, e.g.,,* Virginia State Bar Rules of Professional Conduct, Rule 3.3.

parties[,]" *id*. at 260.

Similarly, Defense Counsel cite *United States v. Al Mudarris*, in which the Ninth Circuit recognized that district courts "may dismiss an indictment as an exercise of their inherent supervisory power . . . or to protect a defendant's due process rights . . . ." 695 F.2d 1182, 1185 (9th Cir. 1983) (internal citations omitted). That case, however, also did not address a due process claim and instead focused on an allegation of prosecutorial misconduct before a grand jury. *Id*. The appellate court ultimately upheld the indictment, in light of the "overwhelming evidence of guilt," *id*. at 1189, as the government believes any court would do in this matter upon review.

Finally, in *United States v. Ambrosio*, the third and final case cited by Defense Counsel, the district court addressed, in the context of a RICO prosecution, whether courts "may encumber the property of an 'innocent' third party in order to preserve the 'interests' of the government in the defendant's potentially forfeitable property." 575 F. Supp. 546 (E.D.N.Y. 1983). In *Ambrosio*, however, the government did not contend that the corporate co-defendant, which was not charged with RICO, would need to forfeit its assets if the individual defendant alone were convicted of the RICO charges. *Id*. at 550. Here, in contrast, two separate grand juries have found probable cause that corporate defendant Megaupload Limited was itself part of a criminal enterprise, whose assets are forfeitable pursuant to federal law regardless of whether the corporation is under indictment.

As such, the cited cases are largely irrelevant to the defendant's legal position and certainly do not support its request for relief.

<u>The Government's Plan for Service</u>

While the legal question of whether the government can properly serve a foreign company under its stated plan has been resolved by this Court, the government did not previously provide the Court with details of its attempt to address the corporate service issue directly with Defense Counsel.  On April 26, 2012, at a pre-trial conference ordered by this Court and supervised by U.S. Magistrate Judge John F. Anderson, the government asked Defense Counsel if they would accept service on behalf of the defendant Megaupload Limited.  Despite representing the corporate defendant in those proceedings (with the leave of the Court), Defense Counsel indicated they would not.  This position was verbally communicated to the government by Defense Counsel on at least one other occasion.  Later, on May 10, 2012, Defense Counsel, in a letter to the prosecution, offered to accept service of a criminal summons on behalf of its corporate client in exchange for legal and financial considerations that would likely undermine the Court's discovery and trial procedures and improperly dissipate restrained illicit proceeds.  The corporate defendant has, therefore, purposefully chosen not to accept service in order to avoid its appearance in the criminal matter, but has used the service issue as a potential bargaining chip to advance its interests in the matter before the Court (and now to lodge a vague due process complaint).  Strategic decisions to use the formality of service as a shield from the authority of this Court and also as a sword against the government certainly weigh strongly against even a sufficiently detailed claim of a due process violation.

In terms of whether the government has tried other alternatives to its stated service plan, in previous briefing, the government explicitly asked the Court: "In the event the Court concludes that service must be accomplished immediately in accordance with any of the methods

described above,[6] the United States respectfully requests that the Clerk of Court issue a summons as directed by the Court." *See* Opposition Of The United States To Motion Of Specially Appearing Defendant Megaupload Limited To Dismiss Indictment For Lack Of Personal Jurisdiction (July 13, 2012) [Docket #117], at 20. The Court, instead, recognized the government's plan for service was compatible with the Federal Rules in its October 5, 2012 order and did not issue the summons.[7]

Responsibility for Delay

The delay in bringing the individual defendants before this Court and allow service on the corporate defendant is directly attributable to the members of the Mega Conspiracy who operated and control that corporation.[8] Since they were arrested in New Zealand in January of 2012, defendants Kim Dotcom, Mathias Ortmann, Finn Batato, and Bram van der Kolk have challenged nearly every aspect of the New Zealand-based warrants and extradition proceedings in a variety of courts, including bail, the restraint of assets, their arrests, the searches and seizures planned and executed by New Zealand law enforcement, with some of these issues currently

---

[6] Such methods included service at the defendant's principal place of business in this district (*i.e.,* Carpathia Hosting, Inc.), its constructive agent at the Commonwealth of Virginia's State Corporation Commission, or two other individuals located in the United States.

[7] The plain language of Federal Rule of Criminal Procedure 4 imposes no deadline on service in a criminal case. Similarly, Federal Rule of Criminal Procedure 9 does not indicate when a summons must be requested by the government or when a summons must issue after a request is made.

[8] The ability of the Court to attribute delays to all defendants in a matter (even putting aside that the corporate defendant here is directly controlled by other individual defendants who are choosing to cause the delay) is clear. For example, courts have found that, in Speedy Trial Act cases involving multiple defendants, a "single speedy trial clock and that delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants." *United States v. Byrd*, 466 F.Supp.2d 550, 551–52 (S.D.N.Y. 2006) (citing *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 1986)); *see also United States v. Walker*, 116 F.3d 1474 (4th Cir. 1997) (citing *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)).

under review before the New Zealand Court of Appeal (and with the likely prospect of being ultimately resolved before the Supreme Court of New Zealand). On July 6, 2012, at the defendants' request, the New Zealand District Court at North Shore continued the extradition hearing from August of 2012 until March of 2013, at the earliest.[9] In addition to resisting extradition and challenging the criminal proceedings in New Zealand, the defendants have, *inter alia*, challenged the lawful restraint of forfeitable assets in Hong Kong and the search and seizure of relevant evidence in Canada. Though the government recognizes the defendants' ability to raise these issues and choose to resist the orders and jurisdiction of this Court, it would be improper to hold any related delay against the government.

No Prejudice To Defendant

There can be no real dispute that the defendant Megaupload Limited is on notice of its indictment on criminal charges in the Eastern District of Virginia on two separate occasions in January and February of this year. Since January 20, 2012, the defendant and the individual defendants have hired at least four law firms in the United States who have incurred millions of dollars in legal fees in the United States trying to resist this Court's jurisdiction and millions more fighting the extradition of the individual defendants in New Zealand, which demonstrates that the company certainly is aware of the nature of the charges it is facing. Equally important, these facts show that the government has vigorously, persistently, and expeditiously prosecuted

---

[9] During the July 27, 2012 hearing, in response to this Court's question about why the extradition hearing was continued until March of 2013, defense counsel represented: "Your Honor, as I understand it, the reason, the principal reason -- and the Government can correct me if I'm somewhat inaccurate on this -- but there were a number of claims raised by the individual defendants as to the proceedings down there, including as to the search warrants, as to various evidentiary issues, discovery issues. The Courts down there felt that it would be appropriate to continue the proceedings for some period to hear those arguments and have additional briefing." Transcript of Hearing on Motions, at 5:2-16 (July 27, 2012) [Docket #125].

this matter, and that delays are not due to government inaction. Certainly, there has been no prejudice to the ability to the company from defending itself, since it has already raised an unsuccessful jurisdictional challenge to the Indictment and continues to tax prosecutorial and judicial resources safely *in absentia.*

Defendant Megaupload's insistence that it be dismissed at this time is also at odds with the company's position in contemporaneous civil litigation, where it has sought to stay the civil action pending the arrival of the individual defendants following extradition. *See generally* Mem. of Law in Supp. of Mot. by Defendants Kim Dotcom and Megaupload Ltd. for a Stay Pending a Parallel Criminal Prosecution, *Microhits, Inc. et al. v. Megaupload, Ltd., et al.*, Case No. 1:12-cv-327 (E.D. Va. May 10, 2012) (Docket #17). In support of that request, the company has argued that any extradition-related delays would not prejudice the civil plaintiff: "While there may be some delay due to extradition proceedings, that is simply part-and-parcel of an international case of this sort." *Id*. at 12. On May 30, 2012, the motion was granted, and the civil matter was stayed for 180 days, absent a substantive change in circumstances. *See* Order at 1, *Microhits*, (Docket #31). Despite arguing to this very Court that the civil plaintiffs who allege that they have been harmed by the defendant's infringement would suffer no prejudice from any extradition-related delay, the company now suggests that such delays (which are significantly within their management's control and are now being funded at an unprecedented level by previously restrained funds that may have otherwise become restitution to the defendants' victims – including these same plaintiffs) amount to a due process violation.

While Defense Counsel have made unsubstantiated statements about the potential of the corporate defendant to resume operations and complain of the "massive harm" caused by their client's refusal to accept formal service of a criminal summons,[10] all of Megaupload Limited's management has been indicted and is either fighting extradition to the jurisdiction of this Court or have escaped to safe havens; all of the assets of the corporate entity and associated businesses and individuals have been or will be restrained. Importantly, the controlling shareholder (68%) of the corporate defendant dismissed the possibility of re-constituting the operations of the business when he was trying to avoid pre-extradition confinement in New Zealand. In a January 23, 2012 affidavit given under oath in New Zealand, defendant Kim Dotcom said:

> Due to the actions in the United States taken by the US government on Friday 20 January 2012, the entire operation of Megaupload and the operation of a number of its related and subsidiary corporations was effectively and emphatically terminated. There is no realistic prospect or possibility of restoring the business or recommencing the business having regard to both the seizure of the requisite servers and data storage equipment and to the seizure of all funds, monies and assets held both by Megaupload and by me personally. Further, it is likely that users would consider any new iteration of Megaupload as inherently unreliable as it could be subject to a further incident in which the US government takes action to close the site down and thereby prevents users from having legitimate access to their data. Until the merits of the US government's charges against me and my co-defendants, as well as the company, have been determined there is no ability, let alone financial incentive available to me, to try to continue to operate the business as is alleged. Indeed I have no financial ability to conduct any business at all as all of my bank accounts have been identified by the US government and have been frozen due to the effect of the restraining order issued by the Courts both here in New Zealand and in the US.

Affidavit of Kim Dotcom in Support of Application for Bail, at ¶ 25(a). Defendant Dotcom

---

[10] During the July 27, 2012 hearing, defense counsel stated: "So, we think that the due process claims trump all the other issues, and we think that if the Court were so inclined, that the Government should take certain steps in order to effectuate service, then -- or if the extradition proceedings would be the relevant time line for that, *again, the company should have an opportunity during that period of time to try to rehabilitate itself*, because there isn't currently a criminal case that is sufficient for purposes of services and *they've suffered massive harm*." Transcript of Hearing on Motions, at 41:10-19 (July 27, 2012) (Docket #125) (emphasis added).

continued:

> As noted above, there is no ability for me to reinstate Megaupload either as it was prior to the police operation or as some new iteration of the site. The seizing of the company's servers and the freezing of any resources would prevent me from attempting to do so.

*Id.* ¶ 35.

Similarly during a February 3, 2012 New Zealand bail hearing, defendant Dotcom further said under oath, again trying to avoid his incarceration:

> Q. What about the suggestion that you - at liberty, you would be in a position to restart Megaupload or something like it and continue to effectively, in the view of the US Government, offend or re-offend?
>
> A. I have a piece of paper here. When you go to Megaupload.com now, what you are seeing is a page that this site has been seized, so the domain is not even under our control anymore. It is impossible to restart the business and all the servers are not …

Notes of Evidence Taken Before the Hon. Justice Asher, at 11:1-7.

Finally, in a February 15, 2012 affidavit, defendant Dotcom said:

> I note that given the proceedings that are in train both here and in the United States, I need to be able to be in close and regular contact with both my New Zealand based and American lawyers. A prohibition on my accessing the internet, and particularly having access to email correspondence, would be onerous and punitive and would prevent me from effectively preparing and conducting my defence. I can assure the Court that I have no intention and there is no risk of my reactivating the Megaupload.com website or establishing a similar internet-based business during the period until the resolution of the extradition proceedings.

Further Affidavit of Kim Dotcom in Support of Further (Second) Application for Bail, at ¶ 10.

Since defendant Dotcom, who controls the corporate defendant and is an alter ego, has sworn that the company and its associated businesses will not and, in fact, <u>cannot</u> operate during the delay caused by the individuals' fight against extradition, Defense Counsel's argument of "massive harm" seems untethered from reality. Similarly, their assertion that the company has the potential to operate in order "to rehabilitate itself" during the delay caused by the defendants'

extended challenge of this Court's jurisdiction must be disregarded as spurious.[11]

Prejudice to the United States

Not only is the Defense Counsel request for temporary dismissal without any merit here, it would significantly prejudice the government in a meritorious case. First, it would undermine the decisions of two separate grand juries which investigated the case and voted to indict the corporate defendant. Grand juries are an independent body whose decisions are to be given great respect. *See, e.g., United States v. Promise*, 255 F.3d 150, 187 (4th Cir. 2001); *see also United States v. United States District Court for the Southern District of West Virginia*, 238 F.2d 713 (4th Cir. 1957) (grand juries are not subject to court's directions and orders with respect to the exercise of its essential functions); *cf. United States v. Bolden*, 325 F.3d 471, 493 (4th Cir. 2003) (constructive amendments to indictments are reversible error). To dismiss the indictment without any legitimate reason here (much less a compelling one) would undermine and disrespect the authority and role of the grand jury and the U.S. judicial system.

Secondly, a dismissal of just one of nine co-defendants in an indictment – even without prejudice – would require duplicative expenditures of court, prosecution, and defense resources to re-indict that single defendant. For example, another grand jury would need to convene to indict the case against the single corporate defendant on the same facts and lengthy charges.

---

[11] Defense Counsel's claim that the corporate defendant can and should be allowed to operate undermines the sworn statements of Dotcom that he has no plans or ability to continue to operate or fund the businesses in the Indictment during pendency of the extradition process. If defendant Dotcom intentionally misled the court in New Zealand about his intentions and capabilities in order to obtain his release from pre-extradition confinement, it seems Defense Counsel's representation might endanger Dotcom's bail situation or even subject him to additional charges. The issue raised by the claim of Defense Counsel is particularly awkward since defendant Dotcom is also their client. As the government has pointed out repeatedly, there are a number of conflicts in Defense Counsel's representations of the various defendants in this matter, of which this is only the most recent example, that have yet to be reviewed by the Court.

Such evidence would necessarily involve witnesses and documentation related to all nine co-defendants from the original Indictment, because the corporate defendant is charged in all counts and the illegal conduct of its shareholders, management, and employees is directly relevant to the company's criminal liability. This is particularly true in a case that involves the charge that the corporate defendant was part of a criminal enterprise (*i.e.,* a Racketeer Influenced and Corrupt Organization). Such an effort to educate another grand jury of the broad array of illegal acts carried out by the Mega Conspiracy throughout the world and their willful misrepresentations to the public about how they operated would be significant. With a new indictment, the Court would likely then have to entertain a new round of pre-appearance litigation on the new indictment, which, assuming the Court was consistent in its rulings, would nonetheless provide no new benefit to the corporate defendant and yet would waste significant additional resources.

Thirdly, without a valid pending indictment tolling the applicable statutes of limitations in this matter, various allegations in the Indictment may be unfairly time-barred upon re-indictment. *See United States v. Ben Zvi*, 242 F.3d 89, 98 (2d Cir. 2001) (a superseding indictment that relates back to and supplants a timely-filed indictment "continues its predecessor's tolling of the statute of limitations and inherits its predecessor's timeliness"); *United States v. Crawford*, 60 Fed. Appx. 520, 530 (6th Cir. 2003) (not precedential) (where an indictment has tolled the statute of limitations, a superseding indictment that "relates back" to the previous indictment will not be barred by the statute of limitations if it is brought at a time when the previous indictment is still "validly pending."). An indictment remains pending until dismissed. *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990). In fact, here, it is likely within the ability of the individual defendants to delay their appearance before this Court until much, if not all, of the criminal conduct is time-barred against the corporate defendant

(especially given the unprecedented surrender of millions in illicit proceeds to the defendants and their counsel in New Zealand).[12] Even when extradition of the individual defendants is eventually granted, the trial of a re-indicted corporate defendant would likely involve evidence of conduct by an individual that was subject to one limitation period and the fact finder would have to determine whether each specific allegation was also attributable to the corporate defendant who is operating in a shorter limitations period. Given the expanse of the conduct alleged in the Indictment and the centrality of the corporate defendant, such a result is not consistent with the efficient use of judicial resources and is certainly not justified by the unsubstantiated claims of Defense Counsel.

Lastly, through a temporary dismissal of the indictment against the corporate defendant, any victims who were victimized outside of the "new" statute of limitations period would likely be denied the right to have their interests vindicated in the criminal case. As alleged in the Indictment, there are literally thousands of copyright holders whose property was willfully infringed by the corporate defendant for profit. Many of these victims, particularly those who were unable to afford bringing the worldwide-Mega Conspiracy that defrauded them and stole their property to justice, might end up having their only opportunity for a day in court taken

---

[12] For example, Count Eight of the Indictment charges the defendants, including the corporate defendant, with criminal copyright infringement during the 180-day period up to and including October 31, 2007. The five-year statute of limitations for that offense expires one week from the date of this pleading. In the event this Court dismisses the indictment against the corporate defendant, even without prejudice, the United States would be afforded only six months, pursuant to either 18 U.S.C. §§ 3288 or 3289 — depending on whether the dismissal occurs before or after October 31 — to complete the extradition process and re-indict the corporation. As discussed above, the extradition process is unlikely to be resolved within six months, and the government is therefore nearly certain to suffer prejudice from the granting of the defendant's underlying motion.

away by a dismissal that would otherwise appear to be a formality (*i.e.,* another date on the substantially same piece of paper).

In sum, dismissal of the corporate defendant – even without prejudice – would harm the respect for the criminal process, the government's ability to fully prosecute serious criminal conduct, the ability of victims to obtain justice, and the public interest in resolving this case efficiently.

While the government believes that the underlying motion is without any potential merit, there is simply no showing that the requested leave is necessary or appropriate for the Court to entertain at either this time or for this counsel.

**CONCLUSION**

For these reasons, the United States respectfully suggests that an oral hearing on this matter is unnecessary and requests that this Court deny on the papers Defense Counsel's Motion to Enter Limited and Special Appearances and strike the underlying proposed motion. In the event the Court wishes briefing on the underlying proposed motion, the government would request additional time to respond of at least 15 <u>business</u> days.


Dated: October 24, 2012						Respectfully submitted,

								Neil H. MacBride
								United States Attorney


					By:	  /s/ Jay V. Prabhu
								Jay V. Prabhu
								Ryan K. Dickey
								Alexander T.H. Nguyen
								Assistant United States Attorneys

								Lanny A. Breuer
								Assistant Attorney General
								U.S. Department of Justice
								Criminal Division

								Glenn C. Alexander
								Trial Attorney
								U.S. Department of Justice
								Computer Crime & Intellectual Property Section

**CERTIFICATE OF SERVICE**

      I hereby certify that on the October 24, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

| | |
|---|---|
| Christopher L. Harlow, Esq.<br>Thomas R. Millar, Esq.<br>SNR Denton US LLP<br>1301 K Street, NW, Suite 600, East Tower<br>Washington, DC 20005<br>Tele: (202) 408-6816<br>christopher.harlow@snrdenton.com<br>thomas.millar@snrdenton.com | John S. Davis, V, Esq.<br>Williams Mullen<br>200 South 10th Street, 16th Floor<br>Richmond, VA 23219<br>Tele: (804) 420-6296<br>jsdavis@williamsmullen.com |
| Julie Moore Carpenter, Esq.<br>Jenner & Block LLP<br>1099 New York Ave, NW, Suite 900<br>Washington, DC 20001-4412<br>Tele: (202) 639-6000<br>jcarpenter@jenner.com | Ira P. Rothken, Esq.<br>The Rothken Law Firm<br>3 Hamilton Landing, Suite 280<br>Novato, CA 94949<br>Tele: (415) 924-4250<br>ira@techfirm.net |
| William A. Burck, Esq.<br>Paul F. Brinkman, Esq.<br>Heather H. Martin, Esq.<br>Quinn Emanuel Urquhart & Sullivan LLP<br>1299 Pennsylvania Avenue, NW, Suite 825<br>Washington, DC 20004<br>Tele: (202) 538-8000<br>williamburck@quinnemanuel.com<br>paulbrinkman@quinnemanuel.com<br>heathermartin@quinnemanuel.com | Craig C. Reilly, Esq.<br>111 Oronoco Street<br>Alexandria, VA 22314<br>Tele: (703) 549-5354<br>craig.reilly@ccreillylaw.com |

      By:   /s/ Jay V. Prabhu
            Jay V. Prabhu
            Assistant United States Attorney
            United States Attorney's Office
            2100 Jamieson Avenue
            Alexandria, Virginia 22314
            Phone: (703) 299-3700
            Fax:   (703) 299-3981
            Email: Jay.Prabhu@usdoj.gov