IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | The Honorable Liam O'Grady |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-cr-00003-LO |
| v. | ) | |
| | ) | |
| KIM DOTCOM, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD PARTY KYLE GOODWIN'S PROPOSAL RE: RETURN OF PROPERTY
UNDER FED. R. CRIM. P. 41(G)**

**INTRODUCTION**

Mr. Goodwin welcomes this opportunity, pursuant to this Court's request, to present an appropriate process for a hearing under Rule 41(g) of the Federal Rules of Criminal Procedure to determine whether and how Mr. Goodwin can regain his property.  Dkt. No. 126.  The hearing should inform the Court on three subjects: 1) whether the government disregarded the property rights of Mr. Goodwin and other innocent Megaupload users by failing to properly minimize the effect on third parties of its searches and seizure of Megaupload-leased servers ("Megaupload Servers") and domain names, e.g., its failure to segregate, or even attempt to segregate, lawful third-party data at the time of seizure, or, in the alternative, to provide for the prompt return of innocent users' property after seizure; 2) the effects of that failure on Mr. Goodwin; and (3) whether and how to require the government to take steps to return Mr. Goodwin's property as well as restore the property of other innocent Megaupload users who were harmed by the government's overbroad seizure and failure to conduct proper minimization.

1

1.    **Issues**

The law is clear: this Court may exercise its equitable jurisdiction under Rule 41(g) now.[1]

In considering whether to exercise jurisdiction at the post-indictment, pre-conviction stage,

courts should assess four factors: "(1) whether the Government displayed a callous disregard for

the constitutional rights of the movant; (2) whether the movant has an individual interest in and

need for the property he wants returned; (3) whether the movant would be irreparably injured by

denying return of the property; and (4) whether the movant has an adequate remedy at law for

the redress of his grievances." *Ramsden v. U.S.*, 2 F.3d 322, 325 (9th Cir. 1993); *see also U.S. v.

Comprehensive Drug Testing, Inc.,* 621 F. 3d 1162, 1173-74 (9th Cir. 2010) ("*CDT*"); *Chaim v.

U.S.*, 692 F.Supp.2d 461, 469 (D.N.J. 2010); *Black Hills Inst. of Geological Research v. U.S.

Dep't of Justice,* 967 F.2d 1237, 1239 (8th Cir. 1992); *Floyd v. U.S.,* 860 F.2d 999, 1003 (10th

Cir. 1988); *Mr. Lucky Messenger Serv., Inc. v. U.S.,* 587 F.2d 15, 16-17 (7th Cir. 1978).

Mr. Goodwin has already made a showing as to factors (2) – (4). Declaration of

Interested Party Kyle Goodwin, Dkt. No. 51-1, reattached hereto as Exhibit A.  Specifically, the

government's execution of search warrants for servers belonging to Carpathia and its seizure of

Megaupload's assets caused Mr. Goodwin, who has not been accused of any wrongdoing, to lose

access to his property. That property, videos of high school sporting events, was integral to his

business of creating custom video clips and other sports news packages, activities he planned to

continue.  Accordingly, he has a strong individual interest in and need for its return.  The loss of

the videos caused irreparable harm: Mr. Goodwin's hard drive failed shortly after the seizure and

---

[1] Brief of Kyle Goodwin in Support of His Motion for the Return of Property, Dkt. No. 91 at 6-8;
Reply of Kyle Goodwin in Support of His Motion for the Return of Property, Dkt. No. 105 at 6-
8; Brief of Kyle Goodwin in Support of Emergency Motion for Protective Order by Non-Party
Carpathia Hosting, Inc. Dkt. No. 51 at 8-9.

he lost his other copies.  The videos themselves are unique, and money damages would be insufficient to compensate him for their loss.

As to factor (1), the government executed the warrants and then, instead of taking steps either to minimize its seizure so that innocent third parties could continue to access their property stored on the Megaupload Servers, or to enable innocent users promptly to access their property after the seizure,[2] simply said that it "released" the data back to Carpathia.  It then informed Carpathia that all the data the government had seized could be deleted, while at the same time warning the company that allowing any access to the servers could subject the company to liability.[3]  The government also refused to release any funds or otherwise support or allow any efforts to return seized property to Mr. Goodwin or others.

Some questions do remain regarding what actually happened when the government sought court approval and then executed the search warrants on the Megaupload servers and seized Megaupload's assets.  However, the available record already shows that the government acted (and continues to act) with a callous disregard for third-party property rights in data stored on Megaupload.  For example, the government knew Megaupload operated a data storage business, and thus held the property of third parties lawfully using Megaupload's storage services.  The government knew its search and seizure of Megaupload's assets would deprive such third parties of the ability to access and retrieve their property.  In seizing domain names and executing the search warrant at Carpathia, the government took constructive possession of all the third-party owned data it had seized and to which it had prevented (and continues to

---

[2] This conclusion appears obvious from the results of the seizure and the fact that Mr. Goodwin is still deprived of his property.  However, Mr. Goodwin's Motion to Unseal, as well as the evidentiary exchanges discussed below, are attempts to gather more specific evidence about how this occurred and what consideration the government made concerning third-party rights.  *See, e.g.,* Motion of Kyle Goodwin to Unseal Search Warrant Materials, Dkt. No. 131.
[3] Hearing on Motions at 17:22-18:18, *U.S. v. Dotcom,* (June 29, 2012) (No. 1:12-cr-3).

prevent) access by their owners.  The government then "released" the third-party owned data in a manner that deliberately made the data both inaccessible to property owners and subject to government-sanctioned destruction, while at the same time blocking all reasonable efforts to allow access.

These failings are striking given that the government is well familiar with the need to accommodate third-party Fourth Amendment rights through minimization when it executes searches and seizures, especially of electronic material.  For example, the laws applying to wiretaps explicitly require the government to "minimize the interception of communications not otherwise subject to interception."  18 U.S.C. § 2518(5).  Minimization's statutory construct is intended to "meet the test of the Constitution that electronic surveillance techniques be used only under the most precise and discriminate circumstances." *U.S. v. Clerkley,* 556 F.2d 709, 715 n.3 (4th Cir. 1977).  That requires, among other things, that "unnecessary intrusions be minimized, or reduced to the smallest degree possible." *Id.*

Similarly, minimization standards recognize that the government has a duty (ignored here) to promptly return citizens' property after a search and seizure.  Thus, the Foreign Intelligence Surveillance Act requires that the government may not retain the property of a U.S. person seized during a wiretap or physical search for more than 72 hours absent either a court order or a finding by the Attorney General that the seized information "indicates a threat of death or serious bodily harm."  50 U.S.C. §§ 1801(h), 1821(4).

In conducting searches and seizures over what it knew to be a large trove of third-party data, the government should have followed these basic minimization principles.  It plainly did not.

In light of the foregoing, the next logical step is for this Court to make findings on the four *Ramsden* factors.  Once the Court exercises its jurisdiction and hears evidence on these relevant factors, it will have the necessary information to fashion an appropriate remedy to make Mr. Goodwin, and others like him, whole, to the extent practicable.  Essential elements for such a hearing are set forth below.

2.     **Disclosures of Witnesses and Evidence**

The government and Mr. Goodwin should work together to identify and agree on the necessary factual witnesses, evidence to be exchanged, and potential stipulations of fact.  The parties should also exchange witness statements under the Jencks Act, 18 U.S.C. § 3500, and supportive material related to the subject matters proposed below.  These submissions should be followed by an evidentiary hearing.

   a.   For movant:

       i.   Kyle Goodwin, to testify about his ownership interest in his data and the harm he and his business suffered from their loss and provide any supporting documentation.

   b.   For government:

       i.   Witnesses able to testify on the government's consideration, if any, of third-party property rights prior to executing the search warrants on the Megaupload Servers and related seizures, as well as its representations to the Court about these matters;[4] on the government's interactions with the owners of the Megaupload Servers before, during, and following the searches; the

---

[4] Response of the United States to Non-Party Kyle Goodwin's Motion for the Return of Property, Dkt. No. 99 at 10 n. 8, claiming the government "attempted to accommodate" third-party interests.

technical and other details of the government's searches and mirroring of the Megaupload Servers;[5] and communications with foreign governments and representatives of those governments, including members of relevant law enforcement agencies, related to the possible impact of the internationally coordinated searches and seizures in this case on the rights of third parties. Mr. Goodwin anticipates that the government witnesses would include the search warrant affiant, the FBI agent who conducted the relevant searches, and FBI technical personnel necessary to describe the FBI's technological alternatives.  In addition, the government should be required to provide any supporting documentation concerning these topics, including the warrant file (comprised of at least a warrant application, accompanying affidavits, the warrant itself and its return, and an inventory), any motions or related information in support of the seizure and any correspondence with foreign governmental officials.

c.  Limited third-party evidence, which should also be submitted in writing.  Mr. Goodwin does not anticipate the need for live testimony from third parties at this time, but reserves the right to request such testimony in light of anticipated written submissions.  Witnesses should include:

i.  A representative from Carpathia, to testify on what conversations, written or oral, Carpathia has had with the government surrounding the search of the Megaupload Servers;[6] about instructions that the government gave Carpathia

---

[5] *See, e.g.,* Hearing on Motions at 7:4-10:19; 16:15-17:12, *U.S. v. Dotcom*, (June 29, 2012) (No. 1:12-cr-3).
[6] January 27 Letter from Jay V. Prabhu ("Prabhu Letter"), Dkt. No. 32.

following the searches, particularly with regard to turning off and

disconnecting the servers, or allowing access of data owners to their property;[7]

and about technical capabilities Carpathia may or may not have had with

regard to reengaging the Megaupload Servers.

ii.   An independent expert,[8] to describe possible measures that (1) could have

been taken prior to and at the time of seizure to avoid capturing the property

of innocent users and (2) can be taken now to provide access to their data in

ways that could be both practical and non-prejudicial to government

prosecutorial requirements.

3.   **Scheduling/Procedure**

a.   60 days prior to the scheduled hearing: parties exchange proposed witness lists,

agreed-to subject matter of written and oral testimony, proposed stipulations of fact

and written documentation in support of the points noted above.

b.   30 days prior to the scheduled hearing: parties exchange and submit to the court

written testimony of witnesses listed along with stipulations of fact.

c.   20 days prior to the scheduled hearing: parties to the court submit and exchange

requests for oral testimony from witnesses and potential third-party witnesses, if

necessary.

d.   7 days prior to the scheduled hearing: parties exchange statements of witnesses

pursuant to Fed. R. Crim. P. 26.2.

---

[7] Hearing on Motions at 17:22-18:18, *U.S. v. Dotcom*, (June 29, 2012) (No. 1:12-cr-3).
[8] Mr. Goodwin believes that the parties should be able to agree to appointment of an independent expert. If that is not the case, he reserves the right to call one independently.

Mr. Goodwin's counsel anticipate that any resulting hearing should require no more than two days of testimony, taking into account that direct testimony would largely be limited to the written statements submitted.

4.      **Other Matters**

Should the Court determine that the government acted with a callous disregard for the rights of innocent users, the Court should structure a process that requires the government to take steps to return the property of all lawful Megaupload users, including but not limited to Mr. Goodwin.  The government's failure to properly engage in minimization harmed *all* of those affected, not just Mr. Goodwin; the remedy the government supplies should include all those harmed.  A contrary result would create a perverse incentive for the government in future digital seizure cases: it would allow it to deprive innocent people of their property (here, likely millions of them) yet only have to take steps to return it to the relative few who have the wherewithal to mount a federal court evidentiary hearing in a likely far-away court. Such an outcome would give the government little incentive to avoid such harm in the first place.  A reasonable model for the return of property to innocent claimants could be based on the processes routinely used in consumer class actions, where individual class members across the country present their claims through a single website interface or similar process to allow efficient processing.[9]

In the past, when courts have been presented with the question of applying existing Fourth Amendment law (in the privacy context) to the digital realm, they have recognized "the reality that over-seizing is an inherent part of the electronic search process" and proceeded "on the assumption that, when it comes to the seizure of electronic records, this will be far more

---

[9] *See, e.g.,*
http://web.archive.org/web/20061221221411/http://www.sonybmgcdtechsettlement.com/;
http://www.rustconsulting.com/Legal_Sector/Class_Action/Consumer.aspx

common than in the days of paper records." *CDT,* 621 F.3d at 1177.  *See also* Brief of Kyle

Goodwin in Support of His Motion for the Return of Property, Dkt. No. 91 at 12.  In *CDT,* the

Ninth Circuit upheld the quashing of subpoenas and search warrants where the government

failed to consider the privacy rights of third parties' whose information was caught up in a larger

dragnet.  *CDT,* 621 F.3d at 1177.  Here, similarly, the government failed to consider third-party

Fourth Amendment property rights.  This Court could remedy this—and prevent similar actions

in the future—by structuring a process that may include all third parties similarly situated to Mr.

Goodwin.  Indeed, that is precisely what Rule 41 contemplates.[10]


Attorneys for Defendant(s)


Dated:  October 30, 2012                    Respectfully submitted,


                                          _____/s/_____
                                          John S. Davis
                                          WILLIAMS MULLEN
                                          200 So. 10th St.
                                          Richmond, VA 23218
                                          Telephone: (804) 420-6296
                                          Facsimile: (804) 420-6507
                                          Email: jsdavis@williamsmullen.com

                                          Julie P. Samuels
                                          Corynne McSherry
                                          ELECTRONIC FRONTIER FOUNDATION
                                          454 Shotwell Street
                                          San Francisco, CA 94110
                                          Telephone: (415) 436-9333

---

[10] "When the 'person aggrieved' requires access to the storage media or the electronically stored information earlier than anticipated by law enforcement or ordered by the court, the court on a case by case basis can fashion an appropriate remedy, taking into account the time needed to image and search the data and any prejudice to the aggrieved party."  Fed. Rule Crim. P. 41(g) advisory committee's note (2009).

Facsimile: (415) 436-9993
Email: julie@eff.org

Abraham D. Sofaer
THE HOOVER INSTITUTION
Stanford University
434 Galvez Mall
Stanford, CA 94305-6010
Telephone: (650) 723-1754
Email: asofaer@stanford.edu

*Attorneys for Interested Party Kyle Goodwin*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2012, the foregoing was filed and served

electronically by the Court's CM/ECF system upon all registered users, upon the following:

Jay V. Prabhu
Chief, Cybercrime Unit
Assistant United States Attorney
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

Christopher Harlow
Thomas Millar
SNR DENTON
1301 K St. NW, Suite 600 East Tower
Washington, D.C.   20005

*Counsel to Carpathia Hosting, Inc.*

Ira Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA 94949

Ed McNicholas
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005

*Counsel to Megaupload Limited*

*Counsel to Megaupload Limited*

Stephen Fabrizio
JENNER & BLOCK
1099 New York Avenue, NW
Suite 900
Washington, DC 20001

*Counsel to Motion Picture Association of America*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 30, 2012                        _____/s/_____
                                                                    John S. Davis