# Exhibit A

# Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | The Honorable Liam O'Grady |
| Plaintiff, ) | |
| ) | Case No. 1:12-cr-00003-LO |
| v. ) | |
| ) | |
| KIM DOTCOM, *et al*. ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF INTERESTED PARTY KYLE GOODWIN IN SUPPORT OF
EMERGENCY MOTION FOR PROTECTIVE ORDER BY NON-PARTY CARPATHIA
HOSTING, INC. AND FOR ADDITIONAL RELIEF**

I, Kyle Goodwin, declare as follows:

1. In July 2011, I started my business, OhioSportsNet, to cover local high school sporting events throughout Ohio. Ohio is a sports-crazed state, and I felt that the market for covering high school athletics was underserved. Also in July, I incorporated a limited liability corporation in Ohio called OhioSportsNet, LLC.

2. The business of OhioSportsNet includes traveling all over Ohio to tape sporting events and broadcasting those games, some in real time and some after the conclusion of the game. The games were streamed at www.ohiosportsnet.tv.

3. In order to share the tapes of the games with my producers, we must either drive all over the state to physically exchange the files or otherwise exchange those files, which are often quite large, electronically.

4. For example, in November 2011, OhioSportsNet was the only outfit to cover, via video, the state high school soccer finals, during which time multiple games might occur on the same night. On those nights, OhioSportsNet had to dispatch three or four producers to film each game. In some instances, there was no way to share these files in a timely matter without a technical solution.

1

5.	The need for such a technical solution led me to Megaupload. I registered a premium account there for two years, for 79.99 Euros. A copy of my receipt is attached as Exhibit 1 to this declaration. This premium account allowed me to store and transfer files of unlimited size among my producers without having to drive all over Ohio, saving us time and gas money.

6.	I stored many files on Megaupload, including raw footage of games and player and coach interviews. In fact, I stored so many files, and some at different points in the editing process, that it's hard to remember the precise list of what was on Megaupload's sites. I know for a fact that video from the following high school soccer games was on Megaupload: Strongsville High School v. Magnificat High School (girls soccer), Aug. 29, 2011; Strongsville v. Brecksville High School (girls soccer), Sept. 19, 2011; Strongsville v. McDonogh (girls soccer), Sept. 24; Strongsville v. Avon Lake High School (girls soccer), Oct. 3, 2011; Strongsville v. Hudson High School (girls soccer), Oct. 5, 2011; Strongsville v. Medina High School (girls soccer), Oct. 8, 2011; Strongsville v. Amherst High School (boys soccer), Sept. 17, 2011; St. Ignatius High School v. Massillon-Jackson High School (boys soccer), Sept. 24, 2011; Avon High School v. Rocky River High School (girls soccer), Sept. 14, 2011.

7.	Over the past six months, OhioSportsNet has started to realize some commercial success. For example, its coverage of the state high school soccer finals for both boys and girls garnered more than 5,000 unique viewers. In total to date, more than 40,000 unique visitors have come to OhioSportsNet's website and its videos have received more than 55,000 hits on YouTube.

8.	I also backed up all the raw footage of games, and player and coach interviews, as well as promotional packages on a personal hard drive that I kept in my house. In mid-January, unfortunately, that hard drive crashed. I have not been able to recover any of the files from that hard drive.

9. Once my hard drive crashed, I planned to recover my files from Megaupload. When I signed on to www.megaupload.com to do that, I could not navigate past the welcome screen. I emailed one of my producers to find out if he was having problems as well, and he told me that he had seen the news that Megaupload had been shut down. That was the first I heard of this.

10. The loss of my files has made doing the business of OhioSportsNet difficult. For example, at least four parents had inquired about paying me to put together highlight reels of their children's sporting events to send to colleges for recruiting purposes. Without my files, I have been unable to do that.

11. Also, I made a full-length documentary about the Strongsville High School girls soccer team 2011 season. I have a DVD of the finished product, but without access to the original file, I've been unable to further polish it, which I had hoped to do to use it for marketing in the future. I've tried to copy the DVD into a workable file on my computer, but the editing program I have has made that technically impossible for me.

12. I've also lost all the original files of OhioSportsNet's promotional videos and other news packages, leaving my business unable to make more packages that I would like to use to help promote the business as we try to secure more financing.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 29th day of March 2012, in CLEVELAND, Ohio.

Kyle Goodwin

# Exhibit 1

Exhibit 1

**Subject:** Fw: Receipt for Your Payment to Megaupload Limited
**From:** Kyle Goodwin <ohiosportsnet@yahoo.com>
**Date:** 3/26/12 2:27 PM
**To:** Julie Samuels <julie@eff.org>

Kyle Goodwin
OhioSportsNet
216-392-6696 - Cell
ohiosportsnet@yahoo.com

----- Forwarded Message -----
**From:** "service@paypal.com" <service@paypal.com>
**To:** OhioSportsNet <ohiosportsnet@yahoo.com>
**Sent:** Thursday, September 1, 2011 12:00 PM
**Subject:** Receipt for Your Payment to Megaupload Limited



Sep 1, 2011 09:00:29 PDT
Transaction ID: 4JG72185WK5977739

**Hello OhioSportsNet,**

**You sent a payment of 79.99 EUR to Megaupload Limited (paypal@megaupload.com)**

It may take a few moments for this transaction to appear in your account.

| **Merchant** | **Instructions to merchant** |
|---|---|
| Megaupload Limited<br>paypal@megaupload.com | You haven't entered any instructions. |

| Description | Unit price | Qty | Amount |
|---|---|---|---|
| 2 years premium membership<br>Item# premium (41846616701) | €79.99 EUR | 1 | €79.99 EUR |

|  | Subtotal | €79.99 EUR |
|---|---|---|
|  | Total | €79.99 EUR |
|  | **Payment** | €79.99 EUR |

Payment sent to paypal@megaupload.com

| | |
|---|---|
| From amount | $117.42 USD |
| To amount | €79.99 EUR |
| Exchange rate: 1 U.S. Dollar = 0.681229 Euros | |

**Issues with this transaction?**
You have 45 days from the date of the transaction to open a dispute in the Resolution Center.

Questions? Go to the Help Center at: www.paypal.com/help.

FOR INTERNATIONAL PAYMENTS ONLY

Commissions and Fees incurred by sender: $0.00

Rate of Exchange: The above exchange rate includes a 2.5% spread above the wholesale exchange rate at which PayPal obtains foreign currency, and the spread is retained by PayPal. If and when the Recipient chooses to withdraw these funds from the PayPal System, and if the withdrawal involves a currency conversion, the Recipient will convert the funds at the applicable currency exchange rate at the time of the withdrawal, and the Recipient may incur a withdrawal fee.

**RIGHT TO REFUND**
**You, the customer, are entitled to a refund of the money to be transmitted as a result of this agreement if PayPal does not forward the money received from you within 10 days of the date of its receipt, or does not give instructions committing an equivalent amount of money to the person designated by you within 10 days of the date of the receipt of the funds from you unless otherwise instructed by you.**

**If your instructions as to when the money shall be forwarded or transmitted are not complied with, and the money has not yet been forwarded or transmitted, you have a right to a refund of your money.**

**If you want a refund, you must mail or deliver your written request to PayPal at P.O. Box 45950, Omaha, NE 68145-0950. If you do not receive your refund, you may be entitled to your money back plus a penalty of up to $1,000.00 USD and attorney's fees pursuant to Section 1810.5 of the California Financial Code.**

Important Note: The Right to Refund claim process applies only to payments that have not been successfully transmitted to the recipient. With PayPal, almost all payments are transmitted to the recipient immediately, except for eCheck payments, and payments to non-PayPal members.

Please do not file a Right to Refund claim if your payment has already been completed. If you have problems with a completed payment or need assistance settling a dispute with a seller, log in to your account and click **Resolution Center** at the top of the page.

You can also click **Help** at the top right of any PayPal page for more information about the Resolution Center and filing complaints.

MA residents only: PayPal holds a Foreign Transmittal Agency license in the State of Massachusetts - License Number FT3345.

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click **Help** in the top right corner of any PayPal page.

You can receive plain text emails instead of HTML emails. To change your Notifications preferences, log in to your account, go to your Profile, and click **My settings**.

PayPal Email ID PP120

# Exhibit B

# Exhibit B

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,            :

              Plaintiff,             :

          - v. -                     :    11 Civ. 2564 (LBS)

POKERSTARS; FULL TILT POKER;         :
ABSOLUTE POKER; ULTIMATE BET;
OLDFORD GROUP LTD.; RATIONAL         :
ENTERTAINMENT ENTERPRISES LTD.;
PYR SOFTWARE LTD.; STELEKRAM LTD.;   :
SPHENE INTERNATIONAL LTD.;
TILTWARE LLC; KOLYMA CORPORATION     :
A.V.V.; POCKET KINGS LTD.; POCKET
KINGS CONSULTING LTD.; FILCO LTD.;   :
VANTAGE LTD.; RANSTON LTD.; MAIL
MEDIA LTD.; FULL TILT POKER LTD.;    :
SGS SYSTEMS INC.; TRUST SERVICES
LTD; FIDUCIA EXCHANGE LTD.; BLUE     :
WATER SERVICES LTD.; ABSOLUTE
ENTERTAINMENT, S.A.; and BLANCA      :
GAMES, INC. OF ANTIGUA;
                                     :
              Defendants;
                                     :
ALL RIGHT, TITLE AND INTEREST IN
THE ASSETS OF POKERSTARS; FULL       :
TILT POKER; ABSOLUTE POKER;
ULTIMATE BET; OLDFORD GROUP LTD.;    :
RATIONAL ENTERTAINMENT ENTERPRISES
LTD.; PYR SOFTWARE LTD.; STELEKRAM   :
LTD.; SPHENE INTERNATIONAL LTD.;
TILTWARE LLC; KOLYMA CORPORATION     :
A.V.V.; POCKET KINGS LTD.; POCKET
KINGS CONSULTING LTD.; FILCO LTD.;   :
VANTAGE LTD.; RANSTON LTD.; MAIL
MEDIA LTD.; FULL TILT POKER LTD.;    :
SGS SYSTEMS INC.; TRUST SERVICES
LTD; FIDUCIA EXCHANGE LTD.; BLUE     :
WATER SERVICES LTD.; ABSOLUTE
ENTERTAINMENT, S.A.; and BLANCA      :
GAMES, INC. OF ANTIGUA; INCLUDING
BUT NOT LIMITED TO THE PROPERTIES    :
LISTED IN SCHEDULE A, SUCH AS BUT
NOT LIMITED TO THE DOMAIN NAMES      :
POKERSTARS.COM; FULLTILTPOKER.COM;
ABSOLUTEPOKER.COM;                   :
```

ULTIMATEBET.COM; and UB.COM; and :
ALL RIGHT, TITLE, AND INTEREST IN
THE PROPERTIES LISTED IN SCHEDULE :
B;
                                          :
                Defendants-in-rem.
- - - - - - - - - - - - - - - - - -x

## NOTICE OF AGREEMENT BETWEEN THE UNITED STATES ATTORNEY'S OFFICE AND VANTAGE LIMITED d/b/a FULL TILT POKER REGARDING USE OF DOMAIN NAME FULLTILTPOKER.COM

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

One St. Andrew's Plaza
New York, New York 10007
(212) 637-1060/2193/2479
Fax: (212) 637-0421

SHARON COHEN LEVIN
MICHAEL LOCKARD
JASON COWLEY
Assistant United States
Attorneys

COZEN O'CONNOR

1627 I Street, NW, Suite 1100
Washington, DC 20006
(202) 912-4818
Fax: (866) 413-0172

BARRY BOSS, ESQ.
Attorney for Vantage Ltd.
d/b/a Full Tilt Poker

2



U.S. Department of Justice

United States Attorney
Southern District of New York

---

The Silvio J. Mollo Building

One Saint Andrew's Plaza
New York, New York 10007

April 19, 2011

**Via Federal Express**
Barry Boss
Cozen O'Connor
1627 Eye Street, NW
Suite 1100
Washington, DC 20006

   Re: Full Tilt Poker - Use of Fulltiltpoker.com Domain Name;
     *United States v. Pokerstars, et. al.*, 11 Civ. 2564 (LBS)

Mr. Boss:

   Pursuant to our discussions and written exchanges, the United States Attorney's Office for the Southern District of New York ("this Office") and the defendant Vantage Limited d/b/a/ Full Tilt Poker ("FTP"), hereby enter into this agreement (the "Agreement") in which this Office agrees to grant FTP access to, and use of, the defendant-*in-rem* domain name fulltiltpoker.com (the "Domain") for certain limited purposes as established herein.[1]

### FTP's Cessation of Real Money Poker Play in the United States

   1. FTP hereby agrees that for the duration of the Agreement, it will not allow for, facilitate, or provide the ability for players located in the United States to engage in playing online poker for "real money" or any other thing of value. This prohibition applies to the Domain as well as any other domain names, sub-domain names, websites, or other Internet-based means of communication under the control of FTP. Among other things, FTP will utilize geographic blocking technology relating to I.P. addresses and analysis of source information for financial transactions, subject to verification as discussed below, to comply with the provisions of the Agreement. FTP agrees to monitor regularly the effectiveness of its procedures and controls designed to comply with the provisions of the Agreement and FTP will revise and update its procedures and controls as necessary to achieve such compliance.

---

[1] The term "FTP" includes all affiliated and subsidiary companies.

2. The Agreement does not prohibit, and, in fact, expressly allows for, FTP to provide for, and facilitate, players outside of the United States to engage in playing online poker for real money through the Domain, or any other domain names, sub-domain names, websites, or Internet-based means of communication under the control of FTP.

3. This Agreement does not prohibit, and, in fact, expressly allows for, FTP to utilize the Domain (and any other forms of communication) to facilitate the withdrawal of U.S. players' funds held in account with FTP. While withdrawal of funds is expressly permitted, the deposit of funds by U.S. players is expressly prohibited. FTP agrees that any financial transactions with players located in the United States shall be strictly limited to the return of those players' funds held in account with FTP.

### Records Preservation

4. FTP hereby agrees to retain in relation to its business in the United States and its facilitation of "real money" poker playing (or for anything else of value) in the United States: (1) all records relating to all of its financial transactions; (2) all records relating to FTP website databases; (3) all internal FTP email correspondence; and (4) all FTP business records generally.

### Appointment of a Monitor

5. Beginning on a date solely within the discretion of this Office, FTP shall retain, at its own expense, the services of a firm (the "Monitor") approved by this Office to monitor FTP's compliance with the terms of the Agreement. The Monitor's duties and responsibilities shall be limited to monitoring compliance with this Agreement. FTP shall have the ability to recommend possible monitors. FTP agrees to continue to retain the services of the Monitor to monitor FTP's compliance with FTP's obligations under this Agreement as follows: (i) forty-five (45) days after the appointment of the Monitor, the Monitor will issue an initial Compliance Report assessing whether FTP has complied with the terms of the Agreement; (ii) subsequent compliance reports shall be issued by the Monitor every forty-five (45) days thereafter for the duration of this Agreement unless this Office, in its sole discretion, determines subsequent reports should be issued in a different manner; (iii) where a Compliance Report identifies a defect in FTP's internal controls regarding its obligations under this Agreement, FTP shall have ten (10) calendar days to cure the defect from the date that the Compliance Report is provided to this Office and FTP, or such other time as is reasonably necessary to cure the defect, and FTP shall retain the Monitor to assess FTP's success at remediating the identified defect and to provide a supplementary report to this Office within fifteen (15) calendar days describing its assessment of the efficacy of such remediation; (iv) FTP shall, on a timely basis, provide the Monitor with, or access to, any information, documents, or other records, including electronic records, as are reasonably necessary for the Monitor to prepare and provide the Compliance Reports to this Office; and (v) FTP shall use its best efforts to make available to the Monitor, on a timely basis, such employees as are reasonably necessary to assist and provide information to the Monitor to permit the Monitor to perform the work necessary to provide the Compliance

Reports, and any supplementary report. If the Monitor requests access to any information, document, or other record that FTP may reasonably believe to be protected by the attorney-client privilege or work-product doctrine, FTP shall in good faith consider and respond to that request, taking into account whether providing access to the requested material is necessary for the Monitor in performing its duties under the Agreement. This Agreement expressly does not require that FTP waive its attorney-client or work-product privileges. It shall be a condition of the Monitor's retention that the Monitor is independent of (*i.e.* stands at arm's length to) FTP and that no attorney-client or work product relationship shall be formed between them.

## Agreement to Presence of Seizure Banner and Posting of Notice to U.S. Players

6. FTP agrees that upon regaining access to, and use of, the Domain, it shall place on the homepage of the "U.S. facing" websites affiliated with the Domain a banner message, provided by the Office and with its content determined solely by this Office, relating to the seizure of the Domain. FTP also agrees to place on the U.S. facing websites affiliated with the Domain its own notice to players in the United States that FTP will not provide for, or facilitate, individuals in the United States playing poker for "real money" or any other thing of value through FTP. FTP may place on this page communications not inconsistent with this paragraph, including instructions for arranging for the return of U.S. players' funds and otherwise contacting FTP for customer support purposes. While the banner and notice must appear to any visitors to the site located in the United States, these items do not need to appear to visitors accessing the site from foreign jurisdictions.

## Waiver of Challenge to Seizure of Domain

7. FTP agrees that it shall not seek to challenge or overturn the seizure of the Domain during the duration of this Agreement, including through the filing of hardship petitions or any other mechanism that would undermine the seizure of the Domain.

## Use of Domain

8. In consideration of the obligations and understandings of FTP as set forth herein, this Office shall direct the registry for the Domain that it shall set the name servers (and corresponding I.P. addresses) for the Domain to those provided to this Office by FTP and to take any other steps necessary for FTP to utilize the Domain in accordance with the terms and conditions of this Agreement. This Office also agrees to take any other steps necessary for FTP to utilize the Domain in accordance with the terms and conditions of this Agreement. FTP expressly understands that under this Agreement, the Domain is still considered seized and FTP's access to, and use of, the Domain is only by virtue of the Agreement with this Office.

### Duration of Agreement

9. This Agreement shall remain in place until: (i) the conclusion of the litigation in *United States v. PokerStars, et. al.*, 11 Civ. 2564 (LBS) in the United States District Court for the Southern District of New York; (ii) a superseding Agreement is reached between this Office and FTP; or (iii) this Office and FTP mutually agree to terminate the Agreement.

### Determination of Breach

10. It is further agreed that this Office, in its sole discretion, may determine if FTP has violated any provision of this Agreement, including FTP's failure to meet its obligations under this Agreement. FTP expressly understands and acknowledges that the Office is the sole decision-maker regarding whether a breach has occurred and that no appeal to any court is available regarding such a determination. FTP also understands that if the Office does determine a breach has occurred, this Office may terminate FTP's access to, and use of, the Domain. Should this Office determine that FTP has violated this Agreement, this Office shall provide notice to FTP of that determination and provide FTP with an opportunity to make a presentation to this Office to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the termination of FTP's use of the Domain. In the event that this Office adheres to its determination that a breach has occurred, this Agreement shall terminate.

### No Admission of Liability or Jurisdiction

11. This Agreement does not constitute an admission of liability as to any matter nor a consent to jurisdiction.

### Public Filing

12. FTP and this Office agree that this Agreement shall be filed publicly in the proceedings regarding *United States v. PokerStars, et. al.*, 11 Civ. 2564 (LBS) in the United States District Court for the Southern District of New York.

## Integration Clause

13. This Agreement sets forth all the terms of the agreement between FTP and this Office. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by this Office, FTP's attorneys, and a duly authorized representative of FTP.

PREET BHARARA
United States Attorney
Southern District of New York

By: _____
Sharon Cohen Levin
Michael Lockard
Jason Cowley
Assistant United States Attorneys

Accepted and agreed to:

_____
Barry Boss
Cozen O'Connor
*Counsel to Vantage Ltd. d/b/a/ Full Tilt Poker*

5