IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:12CR3 |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| KIM DOTCOM, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPPOSITION OF THE UNITED STATES
## TO DEFENDANT MEGAUPLOAD LIMITED'S APPEARANCE AND
## PARTICIPATION IN PROCEEDINGS RELATING TO NON-PARTY KYLE
## GOODWIN'S MOTION FOR RETURN OF PROPERTY PURSUANT TO RULE 41(G)[1]

The United States, by and through its undersigned counsel, hereby responds to

Megaupload's Motion requesting leave to participate and argue in any Rule 41(g) hearing. *See*

Megaupload Supp. Br. at 11. Neither Megaupload nor Kyle Goodwin offers any legal basis for

Megaupload's intervention *as a party* into Kyle Goodwin's civil action for return of property.

There is none. The only justification offered is that Megaupload has factual information relevant

to the determination of the matter. *See* Megaupload Supp. Br. at 11; Megaupload Rebuttal at 3;

Goodwin Br. at 3. This is justification for Kyle Goodwin to use a representative from

Megaupload as a witness, not for the Court to join Megaupload as a party. S*ee* Black's Law

Dictionary, "Witness" (2009 ed.) ("One who sees, knows, or vouches for something"); 98 C.J.S.

*Witnesses* § 1. Because this request would allow Megaupload to circumvent the Federal Rules of

Criminal Procedure, federal forfeiture law, be unfair to other litigants with active disputes

---

[1] This pleading responds to Megaupload Limited's Supplemental Brief regarding the Rule 41(g) Hearing (Dkt. No. 153-2) ("Megaupload Supp. Br."), Megaupload Limited's Rebuttal Brief (Dkt. No. 157) ("Megaupload Rebuttal"), and Kyle Goodwin's Brief in Response to Megaupload's Supplemental Brief (Dkt. No. 162) ("Goodwin Br.").

against Megaupload, and because Megaupload's participation as a party is not necessary to resolve Mr. Goodwin's claim, the motion should be denied.

## I.  BACKGROUND

Though little of the background regarding the various search warrants that have been unsealed is relevant to whether Megaupload should be allowed to intervene in Kyle Goodwin's action, the government includes that history in this pleading because the information presented to the Court to date excludes most of the relevant procedural history regarding those warrants. The information that follows is drawn solely from records filed with the Court. The Court is entitled to take judicial notice of its own records. *See Burke v. Clarke*, No. 1:12 CV 755, 2012 WL 5921169, at *3 n.2 (E.D. Va. Nov. 26, 2012).

### A.  The June 24, 2010 Search Warrant

On June 24, 2010, the Honorable Ivan D. Davis signed a search warrant authorizing the search of computer servers owned by Carpathia Hosting that were leased to Megaupload. *See* In the Matter of the Search of Information Associated with Megaupload.com that is Stored at the Premises Controlled by Carpathia Hosting, No. 10 SW 320 (E.D. Va. June 24, 2010). The warrant was issued pursuant to 18 U.S.C. § 2703(c)(1)(A). The warrant authorized the seizure of specific files (and related records) that were stored on Carpathia servers, hosted by Megaupload, and linked to a website using the domain name Ninjavideo.net. *See id.* at Attachment B ¶ 1. The warrant also requested information regarding eleven specific Megaupload user accounts. *Id.* at Attachment B ¶ 3.

The affidavit in support of the warrant, signed by an agent of Immigration and Customs Enforcement, outlined a then-ongoing investigation into Ninjavideo.net. The affidavit stated that ICE was investigating Matthew Smith, Justin DeDemko, Hana Beshara, Joshua Evans, and

others operators of the website Ninjavideo.net.  It also stated that there was probable cause to believe these individuals had engaged in criminal copyright infringement.  *See* App. and Aff. for a Search Warrant, No. 1:10 SW 320, at ¶ 3 (E.D. Va. 2010).  As described in the affidavit, Ninjavideo.net allowed individuals to view pirated movies and television shows through the website.  *Id.* at ¶¶ 11-12.  Information developed in the course of the investigation revealed that the underlying pirated versions of copyrighted material that could be viewed on Ninjavideo.net were hosted on servers owned by Carpathia and leased to Megaupload.  *Id.* at ¶¶ 13-15.  The affidavit stated "Carpathia has indicated that in the event it is not able to locate the content identified on Attachment A that is stored on its servers on its own, it will work with its customer, MegaUpload, to access the content to provide in response to the search warrant."  *Id.* at ¶ 30.  The affidavit concluded with a request that the warrant papers be sealed, and requested that the government be authorized to disclose the warrant and its attachments to Megaupload in the event that Megaupload's assistance was needed to execute the warrant.  *Id.* at ¶ 32.

On September 8, 2011, Hana Amal Beshara, Matthew David Howard Smith, Joshua David Evans, Jeremy Lynn Andrew, and Zoi Mertzanis were charged in a six count indictment alleging criminal copyright violations.  *United States v. Beshara et al.*, 1:11 CR 447 (E.D. Va. 2011).  All but Mertzanis eventually pleaded guilty.  Mertzanis remains at large.

B.      The First Megaupload Indictment

On January 5, 2012, a grand jury returned a five-count indictment alleging that the defendants in this case, including Defendant Megaupload Limited, were part of a criminal conspiracy to commit copyright infringement, racketeering, and money laundering.  *See United States v. Kim Dotcom et al*, 1:12 CR 3 (E.D. Va. 2012) (Dkt. No. 1) ("January 5 Indictment").  The grand jury made numerous findings regarding the criminal intent of the various members of

the conspiracy, including:

(1) defendants purposefully concealed the scope of infringing content on their websites, *id.* at ¶¶ 10, 15;

(2) defendants instructed others on how to locate infringing content on websites controlled by Megaupload, *id.* at ¶¶ 13, 69;

(3) defendants searched Megaupload's internal databases to locate and share copyright-infringing content stored on Megaupload's websites, *id.* at ¶¶ 14, 69;

(4) defendants purposefully copied content from Youtube.com to Megaupload.com for the purpose of increasing content on Megaupload.com, *id.* at ¶¶ 20 & n.2, 69(h)-(l);

(5) defendants created tools that misled copyright holders into believing that infringing content had been removed from Megaupload's systems when in fact such content had not been removed, *id.* at ¶¶ 22-23; and

(6) defendants were repeatedly put on notice of the use of their site for copyright infringement, both by rights holders and from admissions by users of the site, *id.* at ¶ 69 & 69(ttt).  There are numerous additional examples of criminal intent listed in the indictment.

The January 5 Indictment also included an extensive list of property subject to forfeiture. *Id.* at ¶ 98.  The listed property subject to forfeiture included the eighteen following domain names:  Megastuff.co; Megaworld.com; Megaclicks.co; Megastuff.info; Megaclicks.org; Megaworld.mobi; Megastuff.org; Megaclick.us; Mageclick.com; HDmegaporn.com; Megavkdeo.com; Megaupload.com; Megaupload.org; Megarotic.com; Megaclick.com; Megavideo.com; Megavideoclips.com; and Megaporn.com.  The grand jury specifically alleged that illicit proceeds from Megaupload.com were used to promote the websites, services, and domains that were subject to forfeiture.  *Id*. at ¶ 27.

C.    The Domain Seizure Warrants

On January 13, 2012, this Court authorized the seizure of eighteen domain names pursuant to five separate seizure warrants. *See In the Matter of the Seizure of The Domain Name Megaupload.com and Nine Associated Domain Names*, No. 1:12 SW 34 (E.D. Va. Jan. 13, 2012); *In the Matter of the Seizure of The Domain Name Megaclick.us*, No. 1:12 SW 35 (E.D. Va. Jan. 13, 2012); *In the Matter of the Seizure of The Domain Names Megaupload.org, Megaclicks.org, and Megastuff.org*, No. 1:12 SW 36 (E.D. Va. Jan. 13, 2012); *In the Matter of the Seizure of The Domain Names Megastuff.info and Megaworld.mobi*, No. 1:12 SW 37 (E.D. Va. Jan. 13, 2012); *In the Matter of the Seizure of The Domain Names Megastuff.co and Megaclicks.co*, No. 1:12 SW 40 (E.D. Va. Jan. 13, 2012). The eighteen domain names identified in the seizure warrant were the same domains listed as property subject to forfeiture in the January 5 Indictment.

The seizure warrants were substantially identical. Each warrant stated that the domain names were being seized as property subject to forfeiture. The warrants were not issued under Federal Rule of Criminal Procedure 41(c). The application in support of each warrant identified the statutes that authorized the forfeiture, namely 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 1963(a), and 2323. Title 18, United States Code, Section 981(a)(1)(C) authorizes the civil forfeiture of any property, real or personal, which is derived from proceeds traceable to any offense that is defined as a "specified unlawful activity" in Title 18, United States Code Section 1956(c)(7), or any conspiracy to commit such an offense. The January 5 Indictment charged the defendants with conspiring to commit violations of Title 18, United States Code, Section 2319 (conspiracy to commit criminal copyright infringement), as well as substantive violations of that statute. Violations of 18 U.S.C. § 2319 are defined as "specified unlawful activity" in 18 U.S.C.

5

§ 1956(c)(7). Property that is subject to civil forfeiture may also be forfeited criminally. *See* 28 U.S.C. § 2461(c).

Title 18, United States Code, Section 982(a)(1) states that a Court, when imposing a sentence for a violation of 18 U.S.C. § 1956, shall order the defendant forfeit any property, real or personal, involved in the offense or any property traceable to such property. The January 5 Indictment charged the defendants with a violation of 18 U.S.C. § 1956(h). Title 18, United States Code, Section 982(b)(1) states that the forfeiture of property under 18 U.S.C. § 982, including any seizure of such property and any related proceedings, is governed by the forfeiture procedures located in 21 U.S.C. § 853.

Title 18, United States Code, Section 1963(a) directs that any person convicted of a violation of 18 U.S.C. § 1962 shall forfeit any property of any enterprise which the person has operated in violation of 18 U.S.C. § 1962, as well as any proceeds from violations of § 1962. Moreover, the property subject to forfeiture includes both intangible and tangible property, and the property is forfeit upon the commission of the act giving rise to the forfeiture. 18 U.S.C. §§ 1962(b)-(c). The January 5 Indictment charged the defendants with a conspiracy to commit violations of 18 U.S.C. § 1962(d).

Title 18, United States Code, Section 2323 authorizes the criminal and civil forfeiture of any property used to commit or facilitate the commission of a violation of 18 U.S.C. § 2319 (criminal copyright infringement), as well as any property derived from the proceeds of such infringement. As noted, the January 5 Indictment charged the defendants with multiple violations of 18 U.S.C. § 2319 as well as a conspiracy to violate § 2319.

The domain seizure warrants were supported by a sworn affidavit. The affidavit described the property subject to forfeiture and outlined the statutes that authorized forfeiture of

the relevant domain names. *See, e.g.*, Aff. in Supp. of Seizure Warrant, *In the Matter of the Seizure of: The Domain Name Megaupload.com and Nine Associated Domain Names*, No. 1:12 SW 34, at ¶¶ 3-5 (E.D. Va. Jan. 13, 2012). The Affidavits in support of the warrants noted how various domains were used by the defendants to distribute copyrighted material. *See, e.g.*, *id.* at ¶¶ 7-8. The affidavits then referenced and highlighted various portions of the January 5 Indictment, including portions regarding the Mega Conspiracy's attempts to hide the scope of their illegal activities as well as individual defendants directly accessing copyrighted material. *See, e.g.*, *id.* at ¶¶ 13-14. Finally, each affidavit concluded with the following statement: "Based on the information contained in the Indictment and this affidavit there is probable cause to believe that the Subject Domain Names are subject to seizure and forfeiture . . . ." *See, e.g.*, *id.* at ¶ 39.

The warrants were executed on the basis of both 18 U.S.C. § 981(d) and 18 U.S.C. § 982(b). Accordingly, they were "hybrid" warrants, authorizing the seizures of the domain names for both civil and criminal forfeiture. The seized domain names are being preserved pending the completion of the criminal proceedings against the defendants. *See* 18 U.S.C. § 982(b)(1) (incorporating 21 U.S.C. § 853(f)). Particularly in light of the uncertainty regarding when the criminal proceedings will be completed, the government reserves the right to initiate civil judicial forfeiture proceedings against the seized domain names. Where, as here, no administrative forfeiture proceedings were initiated against the seized property, there are no statutory deadlines for the initiation of civil judicial forfeiture actions other than the statute of limitations. *See United States v. 1866.75 Board Feet and 11 Doors and Casings*, 587 F. Supp. 2d 740, 751 (E.D. Va. 2008), *aff'd*, *United States v. Thompson*, 332 F. App'x 882 (4th Cir. 2009).

D.     The Carpathia Hosting Search Warrant

On January 18, 2012, this Court authorized a search of the premises owned by Carpathia

Hosting within the Eastern District of Virginia. *See In the Matter of the Search of the Premises*

*Located at 21691 Filigree Court, 21701 Filigree Court, and 21715 Filigree Court, Bldg. D,*

*Ashburn, VA 20147*, No. 1:12 SW 41 (E.D. Va. Jan. 18, 2012). The warrant authorized the

search of a large number of servers owned by Carpathia and leased to Megaupload. While

executing the warrant, agents imaged a number of servers, and also took logical copies of some

of the files stored on particular servers.

E.     The Superseding Indictment

On February 16, 2012, the grand jury returned a thirteen-count indictment charging the

defendants with additional criminal copyright infringement counts and multiple counts of wire

fraud. *See United States v. Kim Dotcom et al.*, 1:12 CR 3 (E.D. Va. 2012) (Dkt. No. 34). The

indictment again listed numerous specific instances demonstrating criminal intent on the part of

the defendants, *see id.* at ¶ 72, and identified the domain names in the domain seizure warrants as

property subject to forfeiture, *id.* at ¶ 115(110).

F.     Kyle Goodwin's Motion for Return of Property and the Instant Pleadings

On May 25, 2012, Kyle Goodwin filed his instant motion for return of property. (Dkt.

Nos. 90, 91.) On October 2, 2012, the Court stated that it was unable to reach a conclusion

regarding Mr. Goodwin's motion without an evidentiary hearing "limited to the applicability of

Federal Rule of Criminal Procedure 41(g)." *United States v. Kim Dotcom et al.*, No.1:12 CR 3

(E.D. Va. Oct. 2, 2012) (Dkt. No. 126). The Court found that 18 U.S.C. § 1963 did not pertain to

Mr. Goodwin's motion. *Id.* at n.1. The Court directed Kyle Goodwin and the government to file

position papers regarding the format and breadth of any hearing. *Id.* at 1. On October 30, 2012,

Defendant Megaupload sought leave to file its own brief regarding any Rule 41 evidentiary hearing. *See* Dkt. No. 133. The Court granted the request on November 20, 2012. (Dkt. No. 148.) On January 2, 2013, Megaupload sought leave to file an additional brief regarding its participation in any Rule 41 hearing. (Dkt. No. 153.) The Court granted the motion on January 15, 2013, and gave the government thirty days to file this response. (Dkt. No. 156.)

## II.   ARGUMENT

Megaupload seeks to intervene in this civil dispute, where it lacks standing, to pre-litigate the pending criminal case, where it has not appeared. Megaupload initially proffered multiple justifications for its request to intervene as a participating party in any hearing (offered without any support from any case, statute, or rule), but each proffered justification was a different way of saying the same thing: Megaupload believes it should be allowed to join Kyle Goodwin's motion as a party because it knows facts that it believes are relevant to the determination of the motion. *See, e.g.*, Megaupload Supp. Br. at 5 ("Megaupload respectfully submits that the issues outlined above . . . would be relevant and properly heard at the Rule 41(g) hearing[.]"); *id.* at 11 ("Because Megaupload is in the best position to analyze the evidence illuminating these matters … it should be afforded an opportunity to specially participate … ."). In its third pleading related to its intervention in the hearing, Megaupload offered two additional justifications: that Megaupload is best situated to retrieve Mr. Goodwin's data and because "issues of data preservation and consumer access are inextricably bound up with Megaupload's criminal defense." Megaupload Rebuttal at 3. Again, the proffered justifications were offered without any supporting law.

But even if Megaupload's claims are true, they are not a justification for Megaupload's intervention as a party in the civil dispute between Mr. Goodwin and the United States. Neither

Federal Rule of Criminal Procedure 41, nor the federal forfeiture statutes, nor any other legal principle supports joining Megaupload as a party in Mr. Goodwin's action. Indeed, allowing Megaupload to participate as a party would violate well-established principles of criminal jurisprudence and basic principles of fairness. Moreover, every benefit Megaupload claims to its participation can be obtained through the participation of representatives from Megaupload with personal knowledge of the underlying facts as witnesses. Thus, Megaupload's motion should be denied.

        A.      <u>Federal Rule of Criminal Procedure 41 Does Not Authorize Megaupload's Intervention to Present Irrelevant Facts.</u>

The mere fact that a third-party Rule 41(g) motion arises from a separate, criminal action does not justify a criminal defendant's intervention in the action. Megaupload is an indicted, criminal defendant. As such, Megaupload is governed by the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 1. The Federal Rules of Criminal Procedure prescribe what motions a criminal defendant may file, and when they may be filed. *See, e.g.*, Fed. R. Crim. P. 12. Here, Federal Rule of Criminal Procedure 41(g) authorizes persons "aggrieved by an unlawful search and seizure of property or by the deprivation of property" to move for its return. Yet Megaupload has not requested the return of any property. Instead, Megaupload simply seeks leave to argue that the domain seizure warrants were unlawful. Megaupload Supp. Br. at 5, 11. Such a claim is a motion to suppress under Rule 41(h), not a motion for return of property under Rule 41(g). *Cf. Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 48 & n.14 (D.D.C. 2005) (noting that Rule 41(g) and (h) are distinct and that a post-indictment motion by a defendant pursuant to Rule 41(g) should be treated as a motion to suppress). Such a motion is governed by Rule 12. *See* Fed. R. Crim. P. 41(h). As Megaupload has not yet appeared and has refused to appear prior to the conclusion of extradition proceedings in New

Zealand, any motion to suppress is premature.

Moreover, even if Megaupload could at this time file a Rule 41(g) motion, Megaupload may not be a party to Kyle Goodwin's motion because it has not and, to the government's knowledge, cannot assert a property interest in the property that is the subject of Mr. Goodwin's motion. In a declaration accompanying his initial motion for an emergency protective order, Kyle Goodwin identified the property that was the subject of his Rule 41(g) motion. Mr. Goodwin stated "I stored many files on Megaupload." Decl. of Interested Party Kyle Goodwin In Supp. of Emerg. Mot. for Protective Order by Non-Party Carpathia Hosting, Inc. ("Goodwin Decl.") at ¶ 6. Mr. Goodwin continued to describe specific videos of high school sporting events. *Id.* Later, in the memorandum of law in support of his motion for return of property, Goodwin again described the property he sought returned. Mr. Goodwin argued that he had lost specific video files. *See* Br. of Kyle Goodwin in Supp. of His Mot. for the Return of Property Pursuant to 18 U.S.C. § 1963 and/or Fed. R. of Cr. Proc. 41(g) at 4-6. Yet Megaupload has not asserted a property interest in Mr. Goodwin's files. Thus it should not be allowed to intervene in a motion for return of those files.

To the extent Megaupload has raised a claim regarding any seized property, the claim is irrelevant to Mr. Goodwin's motion for the return of his videos. Rather than asserting an interest in the videos that are the subject of Mr. Goodwin's motion, Megaupload seeks to intervene to litigate the seizure of the domain names. *See* Megaupload Rebuttal at 6 ("[the search warrant of the premises of Carpathia hosting (1:12 SW 41)] is largely if not completely beside the point to the 41(g) proceedings instituted by Goodwin …. Rather, Mr. Goodwin's property was rendered inaccessible specifically when the Government seized Megaupload's various domain names, thereby taking down the website."). But Mr. Goodwin has never asserted a property interest in

any domain names owned by Megaupload.  And even if he had, because the domain names were listed as property subject to forfeiture in a grand jury indictment, and seized as property subject to forfeiture under numerous statutes (but not Rule 41), such a Rule 41(g) claim would be affirmatively barred by Title 21, United States Code, Section 853(k).  *See Libretti v. United States*, 516 U.S. 29, 44 (1995); *United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009); *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005); *Chaim v. United States*, 692 F. Supp. 2d 461, 471 (D.N.J. 2010); *see also United States v. Rudisill*, No. 09-7046, 2009 WL 5125627, at *1 (4th Cir. Dec. 28, 2009) (noting that a Rule 41 motion may be denied where the property at issue is subject to forfeiture).

Thus, Megaupload's claims are either unnecessary or irrelevant.  If Megaupload is correct that Mr. Goodwin's motion is actually about the domain names, then Mr. Goodwin's claim regarding the domain seizures is barred and Megaupload's intervention is unnecessary.  But even if Megaupload is wrong regarding the property at issue in Mr. Goodwin's motion (and the domain names are not part of the property Mr. Goodwin wants returned), Megaupload's testimony is irrelevant.  Megaupload has admitted its claims pertain only to the validity of the domain seizure warrants.  Megaupload Rebuttal at 6.  As Mr. Goodwin lacks a property interest in any of the domains, any inadequacy in those warrants cannot be a basis for relief for Mr. Goodwin.  *See United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) (holding that a Rule 41(g) plaintiff must make a *prima facie* showing of an interest in seized property).  Therefore Megaupload's supposed testimony is not relevant to any issue before the Court.

B.  <u>Megaupload Should Not Be Allowed to Use a Civil Action to Obtain Additional Privileges In a Criminal Case.</u>

Not only is Megaupload's request not authorized by the Federal Rules of Criminal Procedure, such a request should be prohibited.  Criminal defendants may not use a civil action,

and civil discovery, to circumvent the Federal Rules of Criminal Procedure, even if a third party's claim may be "inextricably bound up" with the criminal defendant's criminal defense. Megaupload Rebuttal at 3. Kyle Goodwin's Rule 41(g) motion for return of property is a civil action in equity against the United States. *See United States v. Jones*, 215 F.3d 467, 469 (4th Cir. 2000); *United States v. Garcia*, 65 F.3d 17, 20-21 (4th Cir. 1995); *Chaim*, 692 F. Supp. 2d at 468-69. Courts may stay or otherwise hold civil litigation where a criminal defendant seeks to use that litigation to circumvent criminal discovery rules. *See Eastwood Enterprises v. Farha*, No. 8:07-cv-1940-T, 2010 WL 2836719, at *1 (M.D. Fla. July 19, 2010) ("[A] stay may be justified by a litigant's use of civil discovery procedures to circumvent the limitations imposed by the criminal discovery rules."); *United States v. Dowl*, Crim. No. 08-0164, 2008 WL 4544356, at *7 (E.D. La. Oct. 7, 2008); *Robertson v. Qadri*, No. C06004625, 2008 WL 162530, at *1 (N.D. Cal. Jan. 17, 2008); *Raphael v. Aetna Casualty & Surety Co.*, 744 F. Supp. 71, 75 (S.D.N.Y. 1990) ("Where discovery documents are sought in connection with civil litigation while a criminal prosecution arising from the same facts is pending, courts will not permit the defendant to circumvent the restrictions placed upon criminal discovery by attempting to compel disclosure in the civil case.").

Here, Megaupload seeks to circumvent numerous procedural rules, as well as basic legal principles, by selectively appearing as a party in one civil proceeding that parallels the criminal prosecution, while seeking to stay all others. For instance, as described above, Megaupload cannot yet file a motion to suppress, because it has not yet appeared and has refused to appear prior to the conclusion of extradition proceedings in New Zealand. *See* Fed. R. Crim. P. 12(b) & 41(h). Yet Megaupload seeks leave to challenge the validity of the domain seizure warrants. Megaupload Supp. Br. at 12. As part of its general attack on the warrants, Megaupload has also

accused the government of intentional misconduct, citing *Franks v. Delaware*, 438 U.S. 154

(1978), and requested leave to investigate the alleged misconduct at any hearing.  Megaupload

Rebuttal at 5.

Megaupload attempts to raise this issue in a civil proceeding without even attempting to

meet the actual standard for a *Franks* hearing.  The Supreme Court noted in *Franks* that there is a

"presumption of validity with respect to search warrant affidavits" and imposed substantial pre-

conditions on such hearings:

> To mandate an evidentiary hearing, the challenger's attack must be
> more than conclusory and must be supported by more than a mere
> desire to cross-examine.  There must be allegations of deliberate
> falsehood or of reckless disregard for the truth, and those
> allegations must be accompanied by an offer of proof.  They
> should point out specifically the portion of the warrant affidavit
> that is claimed to be false; and they should be accompanied by a
> statement of supporting reasons.  Affidavits or sworn or otherwise
> reliable statements of witnesses should be furnished, or their
> absence satisfactorily explained.

*Franks*, 438 U.S. at 171.  Megaupload has supplied nothing but a conspiracy theory; this is not

enough.  *See, e.g.*, *United States v. Chandia*, 514 F.3d 365, 373 (4th Cir. 2008); *United States v.

Furrow*, 229 F.3d 805, 815 (9th Cir. 2000) (*Franks* hearing barred where defendant filed no

affidavits or other offers of proof supporting his allegations of intentional falsity); *United States

v. Higgins*, 995 F.2d 1, 4 n.5 (1st Cir. 1993) (no *Franks* hearing where motion was supported

solely by affidavit of defense counsel).

Megaupload also seeks access to, and the ability to participate in, pre-appearance

discovery.  Yet the federal rules do not authorize pre-appearance discovery, *see* Fed. R. Crim. P.

16, and it is not error to preclude a criminal defendant from interrogating government witnesses

at a Rule 41(g) hearing.  *See United States v. Omondi*, 369 F. App'x 487, 491 (4th Cir. 2010)

(upholding district court's decision to deny claimant's request to question a federal agent in a

Rule 41(g) hearing).

Even more, Megaupload seeks to obtain the benefits of any pre-appearance proceedings related to this civil action while simultaneously seeking to stay other civil litigation that it believes may cause it harm. Megaupload is a defendant in another civil case filed in this district, where it has sought and obtained a stay of the proceedings due to the risk of prejudice against Megaupload. *See* Mot. by Defendants Kim Dotcom and Megaupload Ltd. For a Stay Pending a Parallel Criminal Prosecution, *Microhits v. Megaupload, Ltd.*, No. 1:12 CV 327 (E.D. Va. 2012) (Dkt. No. 16). Megaupload should not be able to use its participation in civil litigation as a sword to circumvent criminal discovery rules and procedures while simultaneously shielding itself from the burdens of civil proceedings elsewhere.

Not only would allowing Megaupload to intervene in civil litigation be unfair to other litigants, such a rule also creates perverse incentives. Rule 41(g) motions must arise out of some type of seizure. Thus, a third-party Rule 41(g) motion arising from a criminal seizure will always be "inextricably bound up" with some criminal defendant. Megaupload Rebuttal at 3. Criminal defendants would be incentivized to file (or encourage others to file) Rule 41(g) motions, as such motions would be unbounded by (1) the traditional ban on intervention and discovery by third parties into criminal prosecutions; (2) the limitations on motions in Federal Rule of Criminal Procedure 12; or (3) the limitations of Rule 16 on criminal discovery. Moreover, as the Brief in support of Megaupload's intervention by Kyle Goodwin makes clear, parties to Rule 41(g) motions would be encouraged to put not only the criminal investigation on trial, but also prior, closed criminal investigations that have little to no bearing on the matter at hand. *See* Goodwin Br. at 3 ("It is now clear that the government's actions involving Megaupload and the 2010 warrant are directly relevant to the government's actions surrounding

the searches and seizures that resulted in the deprivation of Mr. Goodwin's property in 2012.").

Allowing parallel civil litigation to interfere in the criminal prosecution process undermines the

rules of criminal procedure as well as the public's interest in efficient prosecution. *See United*

*States v. Moussaoui*, 483 F.3d 220, 236-38 (4th Cir. 2007).

Megaupload argues that Mr. Goodwin's motion is not a civil action but is actually part of

the criminal action against Megaupload. Megaupload Rebuttal at 3. This argument is plainly

wrong, as it confuses Mr. Goodwin's choice to use the docket number assigned by the clerk's

office to the criminal action with the action itself. *See Jones*, 215 F.3d at 469 ("Rule 41(e) [now

Rule 41(g)] motions are civil insofar as they do not involve the punishment of crime but rather

seek property or money from the government."). Third parties are generally barred from

intervening in criminal cases, and Mr. Goodwin has not sought to intervene in the criminal

prosecution of Megaupload. S*ee* Goodwin Br. at 2 n.2; *see also* 21 U.S.C. § 853(k); *United*

*States v. Slovacek*, 699 F.3d 423, 427 (5th Cir. 2012) ("Unlike the Federal Rules of Civil

Procedure, there is no procedure for nonparty intervention in criminal cases."). As the Fourth

Circuit has prevented civil parties from intervening in a criminal matter for the purpose of

obtaining discovery, *see Moussaoui*, 483 F.3d at 236-38, so too should the Court prohibit a

criminal defendant from intervening in civil litigation to circumvent criminal rules and

procedure.[2]

---

[2] The Court may, if it chooses, take steps to eliminate this confusion by requiring Mr. Goodwin
to file a civil complaint or transferring the matter to a miscellaneous docket. In other districts
where Rule 41(g) motions have been filed by a movant who is not indicted or otherwise currently
a criminal defendant, courts have transferred the Rule 41(g) motion to a civil docket or outright
dismissed the Rule 41(g) motion and required the movant to file a civil complaint. *See United
States v. Savage*, No. 03-1473, 2004 WL 957932, at *1 (6th Cir. Apr. 30, 2004) (upholding
district court's decision dismissing a Rule 41(g) motion filed post-conviction by a criminal
defendant in lieu of the filing of a civil complaint); *United States v. Al-Saud*, No. 2:12 MC
50076, 2012 WL 6060993, at *2 (E.D. Mi. Oct. 12, 2012); *United States v. Pegues*, No. 3:09 CR

C.    Megaupload's Remaining Arguments Do Not Justify Intervention.

As no rule of law or procedure authorizes Megaupload's intervention, Megaupload instead argues that it has factual knowledge or expertise that may be relevant to the disposition of Kyle Goodwin's motion.  Megaupload Supp. Br. at 5.  Mr. Goodwin seconds this argument, stating "[s]ince Megaupload and the government alone have full knowledge of each party's actions pursuant to the 2010 warrant … the Court should welcome – in fact, require – Megaupload's participation in any hearing."  Goodwin Br. at 3.   Megaupload later adds that it may have expertise relating to any remedy ordered, as it may be best situated to locate, access, and retrieve the data at issue.  Megaupload Rebuttal at 3.  This may be a justification for representatives of Megaupload with personal knowledge of the underlying events to appear at any hearing as witnesses, but it is not a justification for Megaupload's intervention as a party.

A person or entity with relevant factual knowledge regarding a case can be called as a witness.  *S*ee Black's Law Dictionary, "Witness" (2009 ed.) ("One who sees, knows, or vouches for something"); 98 C.J.S. *Witnesses* § 1.  Here, Mr. Goodwin bears the burden of demonstrating both a *prima facie* case that he is entitled to the possession of property which the government has seized, *see Chambers*, 192 F.3d at 377, as well as the burden of demonstrating that the Court should exercise its discretionary equitable jurisdiction to hear his claim.  Assuming the Court decides to exercise its jurisdiction, Mr. Goodwin, as the plaintiff, again bears the burden of proof that he is entitled to some relief.  *See, e.g.*, *United States v. Assil*, No. 07 Civ. 11037, at *3 (S.D.N.Y. Aug. 26, 2008).  To the extent Mr. Goodwin believes that Megaupload has factual information necessary to establish the requisite probable cause, he can seek leave from the court

_____

0253-D(01), 2010 WL 4340253, at *1 (N.D. Tex. Sept. 10, 2010).  Though the United States has not recommended such a course here, if confusion continues the government recommends the court transfer Mr. Goodwin's motion to a separate docket.

to call the individuals with relevant personal knowledge as witnesses. Those individuals from Megaupload can then provide the necessary testimony.[3]

Of course, for the reasons stated in its October 30, 2012, position on the Court's proposed Rule 41(g) hearing, the government continues to believe that no witnesses or live testimony are necessary for the Court to resolve Mr. Goodwin's motion, and that calling such witnesses would cause undue harm to the government's ongoing prosecution. *See generally* Br. of the United States Regarding the Breadth and Format of a Hr'g to Determine the Applicability of Fed. R. Crim. P. 41(g) (Dkt. No. 136). As Megaupload's proposed testimony is relevant only to one of the four *Ramsden* factors and Mr. Goodwin cannot satisfy any of them, *see Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993), the Court could determine Mr. Goodwin's motion without the need for testimony from representatives of Megaupload.[4] However, to the extent Mr. Goodwin, or Megaupload, believes that Megaupload is in possession of relevant facts, representatives from Megaupload can appear as fact witnesses to present them.

D.    Megaupload's Allegations Regarding the Search Warrants at Issue Are Unfounded.

Because Megaupload's claims are insufficient as a matter of law to authorize its intervention in this matter, Megaupload has wrapped them in layers of sensationalist rhetoric. However, Megaupload's claims regarding government misconduct are unfounded.

---

[3]Megaupload's proffer to date is insufficient because it is inadmissible. Any proceeding under Rule 41(g) would be subject to the Federal Rules of Evidence. *See* Fed. R. Evid. 1101. Thus, any evidence offered by Mr. Goodwin would need to be admissible. As such, any witness from Megaupload would need to have personal knowledge of the underlying events at issue. *See* Fed. R. Evid. 602. Attorney proffers are not evidence, and even if they were, an attorney may not be a witness in his or her own case. *See United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997).

[4] However, if a Megaupload representative is called as a witness the government would seek to elicit testimony regarding the other *Ramsden* factors.

1.      The Domain Seizure Warrants Were Supported By Probable Cause.

To obtain a warrant to seize property that is subject to forfeiture, the government must demonstrate probable cause that the property would be subject to forfeiture upon conviction. *See* 21 U.S.C. § 853(f); *In re Billman*, 915 F.2d 916, 919 (4th Cir. 1990). This standard is not identical to the probable cause standard for a Rule 41 warrant, which requires probable cause to believe the property to be seized is evidence of a crime, contraband, or property used in committing a crime. *See* Fed. R. Crim. P. 41(c). However, the definition of probable cause is the same in each context, namely "a fair probability." *See United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990). Where a grand jury has returned an indictment that describes certain property as subject to forfeiture, the indictment itself satisfies the government's burden of demonstrating the requisite probable cause. *United States v. Bollin*, 264 F.3d 391, 421 (4th Cir. 2001); *In re Billman*, 915 F.2d at 919; *United States v. Wingerter*, 369 F. Supp. 2d 799, 806 & n.10 (E.D. Va. 2005). If the government makes the requisite probable cause showing, the Court must restrain the asset subject to forfeiture. *See Wingerter*, 369 F. Supp. 2d at 811.

Here, the existence of the domain name as property subject to forfeiture, in both the January 5 Indictment and the Superseding Indictment, is sufficient to end the inquiry. A grand jury found that the property at issue in the domain seizure warrants was property subject to forfeiture. What's more, even if the initial warrants were somehow invalid, the Superseding Indictment listing the domain names as property subject to forfeiture would cure any defect and independently authorize the restraint of the domain names. *See United States v. Martin*, 662 F.3d 301, 306 (4th Cir. 2011) ("Even assuming . . . that the government seized Martin's property illegally, we cannot grant the remedy—the vacature of the property's later criminal forfeiture— that she seeks. The illegal seizure of property does not immunize that property from forfeiture as

long as the government can sustain the forfeiture claim with independent evidence.").

Megaupload wrongly claims that the search warrant affidavits had insufficient evidence of Megaupload's criminal intent.[5]  This is incorrect.  First, disregarding the specific "snippet" that Megaupload complains of, Megaupload Supp. Br. at 2, each affidavit included sworn statements from which the Court could conclude there was sufficient probable cause.  For instance, while incorporating the January 5 Indictment, the affidavit stated that the Megaupload website was intentionally designed to conceal infringing activity and that Megaupload directly incentivized copyright-infringing activity by making payments to users who distributed infringing works.  *See, e.g.*, Aff. In Support of Seizure Warrant, No. 1:12 SW 34, at ¶¶ 12, 14 (E.D. Va. 2012).  The affidavit noted infringing content was present on the website, *see id.* at ¶ 13, and included evidence of Megaupload's awareness of infringing content on its own system by describing how members of the Mega Conspiracy had searched Megaupload databases in order to personally access infringing content.  *Id.* at ¶ 13.  The affidavit also stated, based on reviews of e-mails sent or received by members of the conspiracy, that Megaupload willfully ignored takedown notices regarding infringing content, and that members of the Mega Conspiracy had themselves uploaded infringing content to the website.  *Id.* at ¶ 15.  Finally, the affidavit stated that the various domains to be seized had been facilitated and promoted by the conspiracy's illicit proceeds.  *Id.* at ¶ 18.  This was more than sufficient to demonstrate "a fair probability" that the domain names were subject to forfeiture.

    2.    <u>The Government Did Not Omit Exculpatory Evidence or Affirmatively Mislead the Court.</u>

Megaupload has offered no evidence that the government omitted exculpatory evidence

---

[5] The government here only discusses the domain seizure warrants, as Megaupload appears to have abandoned any argument regarding the Carpathia warrant.  *See* Megaupload Rebuttal at 6.

or misled the Court.  As noted *supra*, Megaupload seeks to turn Mr. Goodwin's motion into a

*Franks* hearing.  But the burden for a *Franks* hearing is a heavy one.  Even more so when what is

alleged is an omission of a relevant fact, rather than a falsehood.  *See United States v. Srivastava*,

411 F. App'x 671, 672 (4th Cir. 2011) (unpublished); *United States v. Tate*, 524 F.3d 449, 454-

55 (4th Cir. 2008).  Any omission must be "designed to mislead" or made with reckless disregard

to the fact that it would be misleading.  *Srivastava*, 411 F. App'x at 672.  Here, Megaupload

claims that the government omitted facts that would have shown that the government planted

evidence of Megaupload's criminal intent by serving a search warrant for infringing works

which required Megaupload's assistance to execute, requesting Megaupload retain the infringing

works, and then using those files as the basis for the domain seizures.  *See* Megaupload Supp. Br.

at 3-4.  According to Megaupload, if the affiant had informed the Court that the government had

previously served a search warrant for the files, that fact would have negated Megaupload's

criminal intent and thereby invalidated the domain seizure warrants.  Megaupload's theory does

not hold water.

First, Megaupload's claim that it retained the infringing files on its systems due to a

preservation obligation – and that the affiant should have included a statement to that effect in

the affidavit – would have required the affiant to include facts he or she could not have known.

Megaupload Supp. Br. at 7.  The government made no preservation request, and the government

is not aware that the service of a search warrant creates an obligation on the part of the recipient

of a search warrant to preserve infringing content on a computer in a way that continues to make

it available for illegal download.  No agent could swear, as Megaupload now in hindsight

demands, that the sealing order required preservation of the infringing content on Megaupload's

servers in perpetuity.  Megaupload Supp. Br. at 9.  Such a statement would have been false.

Instead, the affidavit simply included statements regarding the existence of the infringing content, the date of Megaupload's awareness of that content, and the fact that more than eighteen months later (and notably after all but one of the defendants in the Ninjavideo.net case had pleaded guilty) the infringing content remained on Megaupload's servers.

Megaupload implies (with no factual basis) that if it had removed or disabled the infringing content from its servers it would have violated the sealing order by alerting the targets of that investigation. The government is not in a position to respond to that claim without additional information from Megaupload. For instance, as described in the indictment, Megaupload sometimes (albeit selectively) disabled links to infringing content. *See, e.g.*, January 5 Indictment at ¶¶ 69(jj) & 69(zz). If this practice was common, it would not necessarily be alerting. Megaupload also, when removing infringing content, did not as a practice inform customers that their content had been removed. It is also unlikely that any Court would interpret a sealing order to require the continued distribution of infringing content. The lack of context surrounding Megaupload's unsworn, unsupported claims is one reason why a defendant must submit a detailed offer of proof in support of any *Franks* hearing, and why, if Megaupload's claims are to be used in support of Mr. Goodwin's motion, a representative of Megaupload with personal knowledge of the underlying facts should be called as a witness and subject to cross examination.

Second, Megaupload's theory that the government misled the Court by omitting a discussion of the June 24, 2010 search warrant misstates the relevant law. Megaupload Supp. Br. at 4. An affiant does not need to include every potentially relevant fact in a seizure warrant affidavit. The affidavits themselves make that clear. *See, e.g.*, Aff. In Support of Seizure Warrant, No. 1:12 SW 34, at ¶ 5 (E.D. Va. 2012). This is entirely proper. *See Tate*, 524 F.3d at

455; *United States Colkley*, 899 F.2d 297, 301 (4th Cir. 1990); *see also Srivastava*, 411 F. App'x at 676 (upholding denial of *Franks* hearing where defendant alleged agent failed to include exculpatory information in affidavit). Moreover, where a fact is omitted from an affidavit, to obtain a *Franks* hearing the movant must demonstrate not only that the affiant affirmatively mislead the court but also that the omission is necessary to the determination of probable cause. *See United States v. Andrews*, 577 F.3d 231, 239 (4th Cir. 2009). As described *supra*, Megaupload cannot make either showing. Thus, even if Megaupload is right that the affiant should have included additional information regarding the June 24, 2010 warrant in the affidavit, Megaupload is still not entitled to intervene in Mr. Goodwin's motion.

## III.    CONCLUSION

Megaupload has provided no legal basis for its intervention into Mr. Goodwin's action. The only basis it has provided – unsupported claims of government misconduct – is irrelevant to the disposition of the motion because they relate to property that is not and cannot be at issue. However, though Megaupload's claims are false, nothing prevents Kyle Goodwin from asserting them. If Mr. Goodwin wants to develop a factual basis for his claim, and the Court allows the live testimony, Mr. Goodwin could call a representative from Megaupload as a witness.

That said, Megaupload's pleadings, and Mr. Goodwin's attempts to use Megaupload's unsupported claims to expand the scope of any hearing on Rule 41(g), emphasize the need for the Court to limit the scope of any hearing on the Mr. Goodwin's motion. A criminal defendant is not entitled to an evidentiary hearing regarding a search or seizure warrant without a substantial showing, grounded in evidence. Yet Mr. Goodwin – a private party – seeks to put the government's investigation of Megaupload on trial here based on nothing more than the fact that a service he used is no longer available. The Court should limit the scope of the hearing to

jurisdictional facts, and the Court should deny Megaupload's request to intervene.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: _____/s/_____
Andrew Peterson
Jay V. Prabhu
Assistant United States Attorneys

Lanny A. Breuer
Assistant Attorney General
U.S. Department of Justice
Criminal Division

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to:

Jonathan Frankel, Esq.
ZwillGen PLLC
*Counsel for Carpathia Hosting, Inc.*
1705 N Street NW
Washington, DC 20036
Tele:  (202) 706-5298
jon@zwillgen.com

John S. Davis, Esq.
Williams Mullen
*Counsel for Kyle Goodwin*
200 South 10th Street, 16th Floor
Richmond, VA 23219
Tele:  (804) 420-6296
jsdavis@williamsmullen.com

Julie Moore Carpenter, Esq.
Jenner & Block LLP
*Counsel for Motion Picture Association*
*of America*
1099 New York Ave, NW, Suite 900
Washington, DC 20001-4412
Tele:  (202) 639-6000
jcarpenter@jenner.com

Ira P. Rothken, Esq.
The Rothken Law Firm
*Counsel for The Rothken Law Firm*
3 Hamilton Landing, Suite 280
Novato, CA 94949
Tele:  (415) 924-4250
ira@techfirm.net

William A. Burck, Esq.
Paul F. Brinkman, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
*Counsel for Quinn Emanuel Urquhart &*
*Sullivan LLP*
1299 Pennsylvania Avenue NW, Suite 825
Washington, DC 20004
Tele:  (202) 538-8000
williamburck@quinnemanuel.com
paulbrinkman@quinnemanuel.com

＿＿/s/＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Andrew Peterson
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tele: 703-299-3700
Fax: 703-299-3981